## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROZ TRADING LTD.<br>Elizabeth Square<br>P.O. Box 847<br>Grand Cayman<br>Grand Cayman Islands<br>British West Indies<br><br>and<br><br>ROZ TRADING LTD. (UZBEKISTAN)<br><br>    Plaintiffs,<br><br>v.<br><br><br>ZEROMAX GROUP, INC.<br>1725 I Street, NW<br>Suite 300<br>Washington, DC 20006<br><br>    Defendant. | Case No. _____ |

### COMPLAINT FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES, TEMPORARY INJUNCTIVE RELIEF, AND PERMANENT INJUNCTIVE RELIEF

### INTRODUCTION

The Plaintiffs had an ownership interest in a lucrative joint venture in the quickly growing soft drink industry in Uzbekistan. By unlawfully obtaining Plaintiffs' interest in the joint venture, Defendant has willfully and deliberately deprived the Plaintiffs of that interest, worth hundreds of millions of dollars. Plaintiffs, by and through their undersigned counsel,

bring this action seeking compensatory and punitive damages, as well as injunctive relief, arising out of Defendant's conduct.

## JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this case arises from 28 U.S.C. § 1332, as the parties are diverse in citizenship and more than $75,000 is at stake.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff ROZ Trading Ltd. ("ROZ") is a limited liability company, located at Elizabeth Square, P.O. Box 847, Grand Cayman, Grand Cayman Islands, British West Indies. ROZ is organized under the laws of the Cayman Islands, British West Indies, and its principal place of business is New Jersey. ROZ is a subsidiary of ROZ Group, Inc., a Delaware corporation, with its principal place of business in Morristown, New Jersey.

4. Plaintiff ROZ Trading Ltd. (Uzbekistan) ("ROZ (Uzbekistan)") was a wholly-owned subsidiary of ROZ organized under the laws of Uzbekistan, until it was purportedly dissolved as part of the wrongful conduct relating to this civil action. Until its dissolution, ROZ (Uzbekistan)'s principal place of business was Uzbekistan.

5. Defendant Zeromax Group, Inc. ("Zeromax") is a Delaware corporation, with its principal place of business at 1725 I Street, NW, Suite 300, Washington, DC 20006. Incorporated in September 2002, Zeromax primarily develops and rehabilitates the oil and gas sectors in the Commonwealth of Independent States, including Uzbekistan. Zeromax and Tijorat, an Uzbekistani state-owned food distribution company, formed a joint venture called Muzimpex. Zeromax or Muzimpex currently holds a 57.1% interest in Coca-Cola Bottlers of Uzbekistan ("CCBU").

## ALLEGATIONS OF FACT

6. On June 16, 1993, ROZ entered into a Joint Venture Agreement ("JVA") with The Coca-Cola Export Corporation, a wholly-owned subsidiary of The Coca-Cola Company, and with the government of Uzbekistan. Prior to signing the JVA, The Coca-Cola Export Corporation played a key role in finalizing the details of the arrangement with ROZ. According to the JVA, the purpose of the joint venture was to "engage in and maximize the profitable growth of the business of the preparation, packaging, distribution and sale of [Coca-Cola] Beverages in authorized containers" pursuant to a Bottler's Agreement between the joint venture and The Coca-Cola Company.

7. The joint venture was originally called Coca-Cola Bottlers Tashkent Ltd., but, in or around 1996, due to its expanded sales territory, the name was changed to Coca-Cola Bottlers of Uzbekistan Ltd. ("CCBU").

8. Effective December 1, 1993, CCBU and The Coca-Cola Company entered into a Bottler's Agreement allowing CCBU to use Coca-Cola's Authorized Beverage Containers and to distribute and sell the beverages using Coca-Cola's trademarks for five years.

9. During the first three years of operation, CCBU needed additional capital in order to permit it to expand by, among other things, purchasing a more productive facility. By the end of 1996, ROZ had contributed $8,152,000 of the total $14,807,000 capital infusion necessary to make these improvements.

10. In October 1997, The Coca-Cola Company and CCBU executed a new Bottler's Agreement valid through November 30, 2003, with the option to renew for an additional five-year term.

11. By all accounts, the joint venture was financially successful. In the 2000 annual audit, the assets of CCBU were valued at approximately $150 million. Indeed, in terms of beverage production, CCBU was among The Coca-Cola Company's top 35 bottlers from over 200 countries worldwide. CCBU was also the first bottler to receive the "Bottler of the Year" award from The Coca-Cola Company two years in a row.

12. During the formation and early years of the joint venture, Mansur Maqsudi ("Maqsudi"), Managing Director of ROZ, was married to Gulnora Karimova ("Karimova"), the daughter of Islam Abduganievich Karimov, the President of Uzbekistan. President Karimov had ruled Uzbekistan while it was part of the Soviet Union, and he was "elected" President after its independence, a position he continues to hold currently. Uzbekistan has taken the position that Karimova is an official of the Uzbekistani government and that she is entitled to diplomatic immunity.

13. In July 2001, Maqsudi told Karimova that he was separating from her, citing irreconcilable differences. Karimova's response was extreme and vicious. Her actions included kidnapping their two young children from their home in New Jersey, fleeing to Uzbekistan, attempting to extort money from Maqsudi, and threatening Maqsudi and his family.

14. Within weeks of the separation, agents from Uzbekistan's feared National Security Service (the successor to the KGB in Uzbekistan) ("Secret Police") raided both ROZ's and CCBU's offices in Tashkent, seized company documents, and threatened employees, holding some of them hostage.

15. CCBU's Managing Director and his Deputy were both taken away by the Secret Police and held for "interrogation" for more than 24 hours.

16. Maqsudi has not seen his children since Karimova kidnapped them and took them to Uzbekistan nearly five years ago. Maqsudi believes his children remain in Uzbekistan today, but he does not know their exact whereabouts. Several of Maqsudi's family members were taken hostage in Uzbekistan, and some remain imprisoned today.

17. In September 2002, the Superior Court of New Jersey found that it had jurisdiction over the Maqsudi children to hear the custody dispute under the Uniform Child Custody Jurisdiction Act, which applies to jurisdictional custody issues between states in the United States and foreign countries. After hearing the case, the court ordered Karimova to return the children to New Jersey and to arrange immediate telephone contact between the children and their father. *See Maqsudi v. Maqsudi*, 830 A.2d 929 (N.J. Super. Ch. 2002).

18. Karimova has refused to comply with these court orders and Maqsudi has had no contact with his children – by phone, in person, or otherwise – since the court's decision.

19. Eventually, ROZ's and ROZ (Uzbekistan)'s ownership interests in CCBU were formally extinguished through sham "judicial" proceedings in the Uzbekistani "courts." It is well documented that the courts of Uzbekistan lack judicial independence and are wholly subservient to President Karimov and his family, who have complete authority to appoint and to remove the judges at will.

20. By September 2002, Uzbekistan, with the approval of the Uzbekistani courts, had seized both ROZ's and ROZ (Uzbekistan)'s interests in CCBU.

21. At the time of the seizure, ROZ owned 45.171% of CCBU, The Coca-Cola Export Company owned 42.882% of CCBU, ROZ Trading (Uzbekistan) owned 9.947% of CCBU, and Uzbekistan owned 2% of CCBU. At the time of the seizure, CCBU was worth over $150 million.

22. In addition to ROZ's immediate and future financial loss due to this seizure, the operations of ROZ (Uzbekistan) ceased. This purported judicial dissolution led to an immediate loss of over $50 million, including cash in the bank, accounts receivable for concentrate and other material purchased on CCBU's behalf, and other property.

23. No compensation was provided to ROZ or ROZ (Uzbekistan), despite the seizure of the ownership interest in CCBU stock, the wrongful confiscation of cash, and the taking of other property.

24. By January 2002, Gulnora Karimova, acting through her assistant, Farhod Inogambaev, formed companies within Uzbekistan and a company in Dubai, United Arab Emirates, called Revi Holdings, FZE. These companies did business with CCBU. Karimova used these companies, in part, to further ROZ's and ROZ (Uzbekistan)'s exclusion from CCBU.

25. Defendant Zeromax has had close business and personal ties with Karimova for many years. In 2003, Zeromax paid Karimova for her assistance in obtaining a multi-million dollar contract with Uzbekistan for the construction of the Shurtan-Sherabad natural gas pipeline. Upon information and belief, shortly after Uzbekistan's Cabinet of Ministers approved this contract on March 3, 2003, Zeromax deposited a $1 million payment in Karimova's personal account in the Rietumu Bank in Riga, Latvia.

26. Furthermore, Karimova was (and may continue to be) a part owner of Zeromax. Zeromax knew that this "investment opportunity" in CCBU arose because of the wrongful seizure of ROZ's and ROZ (Uzbekistan)'s ownership interest.

27. In late 2004, Defendant Zeromax, Uzbekistan, and Karimova conspired to transfer the CCBU shares taken from ROZ and ROZ (Uzbekistan) to Zeromax, frequently acting through its subsidiary, Muzimpex. Upon information and belief, Zeromax exercises complete control

6

over Muzimpex. Upon information and belief, Muzimpex is a mere instrumentality of Zeromax, and Zeromax directs the activities and operations of Muzimpex.

28. Not only were ROZ's and ROZ (Uzbekistan)'s shares purchased by Zeromax, but Zeromax's involvement further prevented ROZ from exercising its rights under the Joint Venture Agreement ("JVA"). For example, Section 12.2.3.6 of the JVA provides that ROZ could terminate the Joint Venture if it is impeded from exercising its rights of management. Because Zeromax has knowingly deprived ROZ of its ownership interest, it has interfered with ROZ's termination rights under the JVA.

29. ROZ learned through news reports of Uzbekistan's transfer of these expropriated shares to Zeromax. Indeed, Zeromax's "ownership interest" in CCBU is confirmed by its two websites which announced that "Coca-Cola Bottlers of Uzbekistan is an investment made by the Zeromax subsidiary, Muzimpex, with a 57.1% interest via a share purchase contract with the Case-by-Case Privatization Bureau." Upon information and belief, the Case-by-Case Privatization Bureau is an entity of the Uzbekistani Government.

30. In addition, after fleeing from Uzekistan and being granted political asylum in the United States, Farhod Inogambaev, Karimova's trusted assistant, sought out Maqsudi to inform him of the actions taken against him, ROZ, and ROZ (Uzbekistan) to complete their exclusion from CCBU. These actions include transferring shares to Zeromax and preventing ROZ from exercising ownership rights under the JVA.

31. Zeromax, acting through Muzimpex, now possesses ROZ's and ROZ (Uzbekistan)'s ownership interest in CCBU.

## COUNT I

## CONVERSION

32. Paragraphs 1 through 31 are incorporated herein as if fully set forth.

33. With full knowledge of the illegal seizure of the stock, Defendant has unlawfully exercised ownership, dominion, and control of Plaintiffs' property, thus denying Plaintiffs' their rights to that property. As a result, Defendant has achieved great financial benefit, whereas the Plaintiffs have experienced financial ruin.

34. The willful, wrongful, intentional, and reckless acts of Defendant Zeromax constituted conversion of the Plaintiffs' assets.

35. As a direct and proximate result of these acts, Plaintiffs have been injured.

WHEREFORE, Plaintiff ROZ and Plaintiff ROZ (Uzbekistan) demand that judgment be entered against Defendant Zeromax, in the amount of EIGHTY MILLION DOLLARS ($80,000,000.00).

## COUNT II

## CONSPIRACY TO COMMIT CONVERSION

36. Paragraphs 1 through 31 are incorporated herein as if fully set forth.

37. Defendant Zeromax wrongfully conspired with others to obtain illegal ownership of Plaintiffs' shares in CCBU. In furtherance of the conspiracy, several entities reached and executed an agreement to formalize the transfer of ownership to Zeromax.

38. The willful, wrongful, intentional, and reckless acts of Defendant Zeromax constituted conspiracy to convert the Plaintiffs' assets.

39. As a direct and proximate result of these acts, Plaintiffs have been injured.

WHEREFORE, Plaintiff ROZ and Plaintiff ROZ (Uzbekistan) demand that judgment be entered against Defendant Zeromax, in the amount of SIXTY MILLION DOLLARS ($60,000,000.00).

## COUNT III

## TORTIOUS INTERFERENCE

40. Paragraphs 1 through 31 are incorporated herein as if fully set forth.

41. As a direct and proximate result of these malicious acts, Plaintiffs have been injured.

42. Zeromax knew of the business relationship that ROZ and ROZ (Uzbekistan) had with CCBU, and it has intentionally acted to deprive Plaintiffs of their ownership interest, contractual rights, and economic advantage associated with CCBU.

WHEREFORE, Plaintiff ROZ and Plaintiff ROZ (Uzbekistan) demand that judgment be entered against Defendant Zeromax, in the amount of THREE HUNDRED MILLION DOLLARS ($300,000,000.00).

## COUNT IV

## CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE

43. Paragraphs 1 through 31 are incorporated herein as if fully set forth.

44. Defendant Zeromax wrongfully conspired with others to interfere with Plaintiffs' interest in CCBU. In furtherance of the conspiracy, these parties reached and executed an agreement to formalize ROZ's and ROZ (Uzbekistan)'s exclusion from the ownership and management of CCBU.

45. The willful, wrongful, intentional, and reckless acts of Defendant Zeromax constituted conspiracy to interfere with the Plaintiffs' ownership, economic interests, and management rights.

46. As a direct and proximate result of these acts, Plaintiffs have been injured.

WHEREFORE, Plaintiff ROZ and Plaintiff ROZ (Uzbekistan) demand that judgment be entered against Defendant Zeromax, in the amount of SIXTY MILLION DOLLARS ($60,000,000.00).

## COUNT V

## ACTION TO QUIET TITLE

47. Paragraphs 1 through 31 are incorporated herein as if fully set forth.

48. Plaintiffs have a present ownership interest in the CCBU stock.

49. Defendant Zeromax claims an interest in the stock that is adverse to the Plaintiffs. Defendant's claim is without right, and Defendant has no right or lawful interest to such property.

WHEREFORE, Plaintiffs demand that Defendant shall be required to set forth the nature of its claim to the CCBU stock. Any and all adverse claims to this stock shall be determined by a decree of this Court. The decree shall adjudge that the Plaintiffs are the true and rightful owners of the stock and that the Defendant has no right to this interest. This decree shall permanently enjoin the Defendant from asserting any adverse claim to the ownership of the Plaintiffs' property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ROZ and Plaintiff ROZ (Uzbekistan) pray that this Court grant judgment in their favor and against Defendant on Counts I through V, and grant Plaintiffs:

a) Compensatory damages as demanded in Paragraphs 35, 39, 42, and 46;

b) Suitable relief to quiet title as demanded in Paragraphs 47 through 49;

c) Punitive damages against Defendant in an appropriate amount to be determined at trial;

d) Permanent injunctive relief. The wrongful conduct of Defendant, unless enjoined by an order of this Court, will continue to cause great and irreparable harm to the Plaintiffs. Plaintiffs have no adequate remedy at law for the injuries they have suffered. Plaintiffs request that this Court order Defendant Zeromax and all of it agents, employees, and subsidiaries to immediately return full possession and control of the CCBU shares to the Plaintiffs;

e) Preliminary injunctive relief. Plaintiffs request issuance of a preliminary injunction preventing the Defendant and its agents, employees, and subsidiaries from transferring possession or control of the CCBU stock;

f) Declaratory judgment. Pursuant to 28 U.S.C. §§ 2201, 2202, Plaintiffs request declaration that Defendant knowingly deprived Plaintiffs of their interest in CCBU by "purchasing" expropriated shares of corporate stock;

g) Reasonable costs and expenses;

h) Reasonable attorneys' fees; and

i) Such other relief which this Court may determine to be just and equitable under the circumstances.

## JURY DEMAND

50. Plaintiffs demand a trial by jury on all issues properly triable thereby.

Respectfully submitted,

/s/ 

Stuart H. Newberger, DC BAR #294793
Alan W.H. Gourley, DC BAR #358300
Alyssa Gsell, DC BAR #490395
Sobia Haque, DC BAR # 483440
Peter J. Eyre
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
E-mail: snewberger@crowell.com
       agourley@crowell.com
       agsell@crowell.com
       shaque@crowell.com
       peyre@crowell.com

Attorneys for ROZ Trading Ltd. and
ROZ Trading Ltd. (Uzbekistan)

Dated: June 6, 2006

Of Counsel:

Dr. Allan Gerson
2131 S Street, NW
Washington, DC 20008
Telephone: (202) 966-8557
E-mail: gerson@gilgintl.org