# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROZ TRADING LTD., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | 1:06-CV-01040 CKK |
| | ) | |
| ZEROMAX GROUP, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

## ZEROMAX GROUP, INC.'S MOTION TO
## DISMISS THE COMPLAINT IN ITS ENTIRETY

Zeromax Group, Inc., a dissolved Delaware Corporation, respectfully moves this Court for an order dismissing with prejudice Plaintiffs' Complaint in its entirety pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction; pursuant to Rule 12(b)(3) for improper venue; the forum non conveniens doctrine; the act of state doctrine; and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of its motion, Zeromax Group, Inc. submits the accompanying memorandum of points and authorities.

Dated: August 23, 2006

Respectfully submitted,

**WHITE & CASE** LLP

/ S / Carolyn B. Lamm
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb  (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROZ TRADING LTD., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | 1:06-CV-01040 CKK |
| ) | |
| ZEROMAX GROUP, INC., ) | |
| ) | |
| *Defendant*. ) | |

**ZEROMAX GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY**

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005

August 23, 2006                    *Attorneys for Zeromax Group, Inc.*

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................2

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER ZEROMAX ...................2

      A.    General Jurisdiction Is Lacking ................................................................2

      B.    Specific Jurisdiction Is Lacking ................................................................4

II.   VENUE IN THE DISTRICT OF COLUMBIA IS IMPROPER .........................................6

III.  THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE
      FORUM ...........................................................................................................................7

      A.    Both Private And Public Interest Factors Weigh Against Hearing This
            Case In The District Of Columbia ................................................................8

      B.    There Are Available Adequate Alternative Forums For This Dispute .................10

IV.   PLAINTIFFS' CLAIMS ARE BARRED UNDER THE ACT OF
      STATE DOCTRINE .......................................................................................................11

      A.    The Act Of State Doctrine Precludes This Court's Review Of Uzbekistan's
            Expropriation Of ROZ Trading's Interest In CCBU ...............................12

      B.    The Act Of State Doctrine Also Precludes This Court's Review
            Of Uzbekistan's Privatization Of Its State-Owned Interest In CCBU..................14

V.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE
      GRANTED .....................................................................................................................15

      A.    The Statute Of Limitations Expired As To Plaintiffs' Conversion, Tortious
            Interference, And Conspiracy Claims In September 2005 ...................16

      B.    Plaintiffs Fail To State A Claim For Conversion.....................................16

            (i)    Plaintiffs Admit That Zeromax Does Not Possess Their
                   Interest In CCBU ................................................................................17

            (ii)   Plaintiffs Cannot Demonstrate That Any "Unlawful" Action
                   Of Defendant Divested Them Of Their Property ......................18

            (iii)  Zeromax Did Not Proximately Cause Plaintiffs' Injury .............19

      C.    Plaintiffs Fail To State A Claim For Tortious Interference ....................19

      D.    Plaintiffs Fail To State A Claim For Conspiracy To Commit Conversion
            And Tortious Interference..........................................................................20

      E.    Plaintiffs Fail To State A Claim To Quiet Title.......................................21

CONCLUSION...............................................................................................................22

## **TABLE OF AUTHORITIES**

FEDERAL CASES                                                              PAGE(S)

*Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1 (D.D.C. 2003) ....................................7

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ........................................11, 13, 18

*Bowhead Info. Tech. Servs., LLC v. Catapult Tech.*, 377 F. Supp. 2d 166 (D.D.C. 2005)...... 19-20

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir 2002) ............................................................. 17-18

*Buchanan v. Manley*, 145 F.3d 386 (D.C. Cir. 1998)................................................................6, 7

*Bynum v. Equitable Mortgage Group*, No. Civ. 99CV2266-SBC-JMF,
2005 WL 818619 (D.D.C. April 7, 2005).......................................................................................20

*Calvetti v. Antcliff*, 346 F. Supp. 2d 92 (D.D.C. 2004)........................................................ 16-17

*Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993) .............................................................6

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................................16

*Contact Lumber Co. v. P.T. Moges Shipping, Co.*, 918 F.2d 1446 (9th Cir. 1990)......................10

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*,
212 F. Supp. 2d 30 (D.D.C. 2002) .............................................................................................8, 9

*Daisley v. Riggs Bank*, 372 F. Supp. 2d 61 (D.D.C. 2005)...........................................................20

*Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203 (D.C. Cir. 1987) ............................12

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988) ....................................2

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)..............................................13

*Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006)......................................15, 18

*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) .....................................2, 3

*Graves v. United States*, 961 F. Supp. 314 (D.D.C. 1997) ...........................................................20

*Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204 (9th Cir. 1980)..................................................2

*Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947)...........................................................................7, 8, 9

*Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002) .............................................................................20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................................3

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)........................................................10

*Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977)...............................................................11

*Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1 (D.D.C. 1995)................................................19

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)............................................16, 18

*Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456 (D.C. Cir. 1989).........................16

*Nielsen v. Sec'y of Treasury*, 424 F.2d 833 (D.C. Cir. 1970)..................................................9

*Oetjen v. Cent. Leather Co.*, 246 U.S. 297 (1918)................................................................15

*Pain v. United Techs. Corp.*, 637 F.2d 775 (D.C. Cir. 1980) .................................................8

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).............................................................8, 9

*Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407 (D.D.C. 1978)............................................3

*Ray v. Heritage Care, Inc.*, Civ. No. 06-322 (RMU), 2006 WL 2078550
(D.D.C. July 24, 2006)................................................................................................7

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004) .........................................................11

*Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69 (1926) ..........................................21

*Ricaud v. Am. Metal Co.*, 246 U.S. 304 (1918) ................................................................15

*Saudi v. Northrop Grumman Corp.*, 273 F. Supp. 2d 101 (D.D.C. 2003).................................7

*Shafer v. Children's Hosp. Soc'y of Los Angeles*, 265 F.2d 107 (D.C. Cir. 1957).....................21

*Sharon v. Tucker*, 144 U.S. 533 (1892) .........................................................................21

*Shulman v. Voyou, L.L.C.*, 251 F. Supp. 2d 166 (D.D.C. 2003).............................................17

*Soc'y of Lloyd's v. Siemon-Netto*, No. 04-7214, 2006 WL 2252864,
(D.C. Cir. Aug. 8, 2006) ........................................................................................13, 19

*Thomas v. Dep't. of Def.*, Civ. No. 03-2483 (RBW), 2006 WL 1890009
(D.D.C. July 7, 2006)...............................................................................................6

*Tramontana v. SA Empresa De Viacao Aerea Rio*, 350 F.2d 468 (D.C. Cir. 1964).....................9

*United States v. Martin-Banker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004) ....................15-16

*United States v. Merit*, 962 F.2d 917 (9th Cir. 1992) .......................................................13, 19

*W. Assocs. Ltd. P'ship v. Market Square Assocs., 235 F.3d 629 (D.C. Cir. 2001) ...............16, 21

Whetstone Candy Co. v. Nat'l Consumers League, 360 F. Supp. 2d 77 (D.D.C. 2002) ..............20

*World Wide Minerals, Ltd. v. Kazakhstan, 296 F.3d 1154 (D.C. Cir. 2002).......11, 12, 13, 14, 19

STATE CASES

AMAF Int'l Corp. v. Ralston Purina Co., 428 A.2d 849 (D.C. 1981).............................................3

Beard v. Edmondson & Gallagher, 790 A.2d 541 (D.C. 2002) ...................................................16

Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192 (D.C. 1984)....................................................16

First Am. Bank, N.A. v. District of Columbia, 583 A.2d 993 (D.C. 1990) ...................................18

Forte v. Goldstein, 461 A.2d 469 (D.C. 1983) ...........................................................................16

Gonzalez v. Internacional de Elevadores, 891 A.2d 227 (D.C. 2006) ...........................................3

*In re Orshansky, 804 A.2d 1077 (D.C. 2002).............................................................................3

In re Tyree, 493 A.2d 314 (D.C. 1985)......................................................................................21

FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6)........................................................................................................15, 18

Fed. R. Civ. P. 44.1 ...................................................................................................................5

9 U.S.C. §§ 3, 4 (2005) ...........................................................................................................10

28 U.S.C. § 1391 (2002) .........................................................................................................6, 7

STATE STATUTES

D.C. Code § 12-301(8) (2001)............................................................................16

D.C. Code § 13-334(a) (2001) .........................................................................2, 3

D.C. Code § 13-423 (2001).................................................................................4

D.C. Code § 16-3301 (2001)..............................................................................21

Del. Code. Ann. tit. 8, § 278 (2006) ...................................................................3

OTHER MATERIALS

Restatement (Second) Conflict of Laws § 413 (1971)....................................9

Restatement (Second) of Torts § 222A cmt. D (1965) ................................17

In this action, Plaintiffs ROZ Trading Ltd. ("ROZ"), a Cayman Islands limited liability company, and ROZ Trading Ltd. (Uzbekistan) ("ROZ (Uzbekistan)"), a company that was organized, located, and dissolved in Uzbekistan (collectively "ROZ Trading") seek $500,000,000 in retribution against Zeromax Group, Inc. ("Zeromax"), a dissolved Delaware corporation, for the Republic of Uzbekistan's alleged expropriation of ROZ Trading's ownership interest in a joint venture known as Coca-Cola Bottlers Uzbekistan Ltd. ("CCBU"), and Uzbekistan's purported subsequent sale and transfer of that interest to Zeromax. Compl. ¶¶ 3-7, 29.

According to the Complaint, ROZ Trading's ownership interests in CCBU were extinguished when the Uzbekistan allegedly expropriated ROZ Trading's shares with the approval of the courts in Uzbekistan in September 2002. Compl. ¶¶ 19, 20. ROZ alleges that a subsidiary of Zeromax called Muzimpex — i.e., not Zeromax itself — acquired an interest in CCBU some *two years later* in late 2004. Compl. ¶¶ 29, 31. Even assuming Muzimpex was a subsidiary of Zeromax — which it is not — as a purported indirect third-party purchaser of ROZ Trading's former ownership interest in CCBU, Zeromax could not be held liable for Uzbekistan's allegedly unlawful acts of state. Further, because Zeromax is a dissolved corporation that does not even hold the shares at issue, any order against Zeromax would not redress ROZ Trading's claims.

Neither of the Plaintiffs is a resident of the District of Columbia and none of the acts or omissions set forth in the Complaint is alleged to have occurred in the District of Columbia. Zeromax is a dissolved Delaware corporation, and, as such, it is not present in the District of Columbia either. All of the alleged acts giving rise to Plaintiffs' claims are alleged to have taken place in Uzbekistan. In addition, ROZ has initiated an arbitration in Vienna, Austria against

Uzbekistan, The Coca-Cola Export Corporation ("TCCEC") and Zeromax seeking redress for the same claims as ROZ Trading has advanced here.

As detailed below, Plaintiffs' Complaint must be dismissed in its entirety for several reasons: (i) this Court lacks personal jurisdiction over Zeromax; (ii) venue is improper in the District of Columbia; (iii) the District of Columbia is an improper and inconvenient forum; (iv) the act of state doctrine precludes this Court's inquiry into the legality of the alleged acts of Uzbekistan; and (v) ROZ Trading has failed to state a claim upon which relief may be granted.

## ARGUMENT

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER ZEROMAX

Personal jurisdiction over Zeromax is lacking because Zeromax is not "doing business" in the District of Columbia and because none of the acts or omissions alleged in the Complaint is purported to have occurred in the District of Columbia.

Personal jurisdiction in actions based on diversity of citizenship is governed by the law of the forum. *See, e.g.*, *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). Under District of Columbia law, ROZ Trading bears the burden of making a "*prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). Plaintiffs cannot satisfy this burden with "bare allegations," but instead must "allege specific acts connecting [Zeromax] with the forum." *Id.* at 1378-79 (quoting *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980)). Plaintiffs fail to meet this burden.

### A.     General Jurisdiction Is Lacking

Under the laws of the District of Columbia, courts may "exercise 'general jurisdiction' over a foreign corporation . . . if the corporation is 'doing business' in the District." *Gorman*, 293 F.3d at 509 (citing D.C. Code § 13-334(a)). The reach of "doing business" jurisdiction

under § 13-334(a) is "coextensive with the reach of constitutional due process." *Gorman*, 293 F.3d at 510.

The Due Process Clause permits general jurisdiction over foreign corporations for doing business "only . . . if the defendant's business contacts with the forum district are '***continuous and systematic***.'" *Gorman*, 293 F.3d at 510 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)) (emphasis added). In particular, D.C. courts require a "continuing corporate presence in the forum . . . directed at advancing the corporation's objectives." *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981); *accord Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407, 409 (D.D.C. 1978). Thus, a defendant "must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here." *Gonzalez v. Internacional de Elevadores*, 891 A.2d 227, 233 (D.C. 2006).

Zeromax is not subject to the Court's general jurisdiction under § 13-334(a) because ***Zeromax has no "continuing corporate presence"*** at all, let alone in the District of Columbia, and had no such presence when Plaintiffs filed this lawsuit. *See In re Orshansky*, 804 A.2d 1077, 1091-92 (D.C. 2002) ("In personam jurisdiction generally is determined as of the commencement of an action . . . ."). Zeromax was dissolved on August 2, 2005, nearly one year before ROZ Trading filed this lawsuit. *See* Declaration of Nicole Erb ("Erb Decl.") Ex. A (attaching Delaware Certificate of Voluntary Dissolution of Zeromax Group, Inc., dated July 22, 2005 and filed August 2, 2005); *see also* Del. Code. Ann. tit. 8, § 278 (2006) (providing that, upon dissolution, a corporation no longer exists "for the purpose of continuing the business for which [it] was organized").

Plaintiffs concede that Zeromax is not present in the District of Columbia and have filed a notice informing the Court that Zeromax purportedly relocated to Davidsonville, Maryland. *See* Notice (June 26, 2006) (Docket No. 5); *see also* Erb Decl. Ex. A (attaching Zeromax Certificate of Voluntary Dissolution noting Maryland address of officer). The Maryland address of Zeromax's officer was publicly available to Plaintiffs long before they filed this lawsuit.

### B. Specific Jurisdiction Is Lacking

The Complaint also does not support an exercise of specific jurisdiction over Zeromax. Under the relevant provisions of the District of Columbia long-arm statute, the exercise of specific jurisdiction requires a showing either that Zeromax "transact[s] business" in the District of Columbia, or that the alleged tortious injury occurred in the District. D.C. Code §§ 13-423(a)(1), (a)(3)-(4) (2001). Further, the claim must "aris[e] from" these alleged contacts with the District of Columbia. *Id.* § 13-423(b). For the same reasons that Zeromax is not "doing business" in the District of Columbia, Zeromax is not "transacting business" in the District of Columbia: Zeromax is a dissolved Delaware corporation that does not maintain any business presence whatsoever in the District of Columbia. Plaintiffs, moreover, do not claim that the alleged injury occurred in the District of Columbia, or that their claims arise from any contact with the District of Columbia. Rather, they claim that all meaningful actions occurred in Uzbekistan. Compl. ¶¶ 5, 17, 14-15, 19-20.

Even if Zeromax was "transacting business" in the District of Columbia — which it is not — specific jurisdiction still would be lacking because the alleged acts that Plaintiffs claim caused their injury are not attributable to Zeromax. Contrary to Plaintiffs' allegations (Compl. ¶¶ 28-29), *Zeromax* never acquired ROZ Trading's shares in CCBU. Rather, by the Complaint's own admission, *Muzimpex*, a purported subsidiary of Zeromax, acquired and "now possesses ROZ's and ROZ (Uzbekistan)'s ownership interest in CCBU." *Id.* ¶ 31.

4

The Complaint fails to allege any fact in support of a theory that would justify this Court's disregard of Muzimpex's separate corporate form.  Muzimpex is an Uzbek-registered limited liability joint venture company between Zeromax GmbH (not the Defendant here) and Tijorat, the Uzbek state-owned food distribution company, established in accordance with Uzbek law.  *See* Declaration of Uzbek Law by Azamat R. Fayzullaev ("Fayzullaev Decl.")[1] ¶¶ 4-14 (describing Uzbek legal registration requirements for companies with foreign investment); *see also id.* Ex. E (attaching 2005 Certificate of Registration of Muzimpex as an Uzbek-Swiss joint venture issued by Uzbek Ministry of Justice); *id.* Ex. F (attaching December 2005 Charter Amendments identifying Zeromax GmbH as the Swiss foreign member).  Muzimpex's initial charter expressly provides that Muzimpex was established pursuant to Uzbek law and sets forth in detail the business activities of Muzimpex.  *Id.* Ex. C, arts. 1, 3.

More fundamentally, Muzimpex is ***not*** a subsidiary of Zeromax and the shares in CCBU were ***never*** transferred to Zeromax.  Zeromax GmbH acquired its interest in Muzimpex from Zeromax LLC, a dissolved Delaware corporation, ***not*** Zeromax Group Inc., the Defendant here. *See id.* Ex. B (attaching 2003 Certificate of Registration of Muzimpex as an Uzbek-American joint venture); *id.* Ex. D (attaching July 2005 Charter Amendments identifying Zeromax LLC as the American foreign member); *see also* Erb Decl. Ex. B (attaching Delaware Certificate of Cancellation of the Certificate of Formation of Zeromax LLC, dated and filed September 28, 2005).  In short, Zeromax does not own and has never owned the shares in CCBU that are the subject of this litigation, either directly or indirectly through Muzimpex.

---

[1] The Declaration of Uzbek Law by Azamat R. Fayzullaev is submitted pursuant to Rule 44.1 of the Federal Rules of Civil Procedure to assist in the Court's consideration of Uzbek legal issues.

## II.    VENUE IN THE DISTRICT OF COLUMBIA IS IMPROPER

Venue is improper in the District of Columbia because Defendant Zeromax does not reside in the District, the events giving rise to ROZ Trading's claims did not take place in the District, and Zeromax is not subject to personal jurisdiction in the District.

Venue is governed by 28 U.S.C. § 1391(a), which provides that federal diversity actions may be brought only in a judicial district where (1) the defendant resides; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) the defendant is subject to personal jurisdiction "at the time the action is commenced, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(a) (2002).  For purposes of § 1391(a)(1), a corporate defendant is deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  *Id.* § 1391(c).

"[I]t is the plaintiff's obligation to institute the action in a permissible forum, [and] the plaintiff usually bears the burden of establishing that venue is proper."  *Thomas v. Dept. of Def.*, No. 03-2483 (RBW), 2006 WL 1890009, at *4 (D.D.C. July 7, 2006); *see also Buchanan v. Manley*, 145 F.3d 386, 389 (D.C. Cir. 1998) (affirming dismissal for improper venue where plaintiff "failed to demonstrate that venue here is proper").  "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

As discussed above, Zeromax is a dissolved Delaware corporation over which jurisdiction was lacking at the time this action was commenced.  *See* Erb Decl. Ex. A (attaching Zeromax Certificate of Voluntary Dissolution).  Therefore, venue is improper under § 1391(a)(1) and (a)(3).

Venue also is improper under § 1391(a)(2) because Plaintiffs do not allege a single event or omission in the District of Columbia that gave rise, directly or indirectly, to any one of their claims. Compl. ¶¶ 1-50. To the contrary, the Complaint makes clear that Plaintiffs' claims arise directly from acts alleged to have occurred entirely in Uzbekistan. *See id.* ¶¶ 7, 14-15, 19-20; *see also Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003) ("Only locations hosting a ***substantial*** part of the events that ***directly*** give rise to a claim are relevant.") (internal quotations and citation omitted) (emphasis added); *Buchanan*, 145 F.3d at 389 (affirming dismissal where "no part of the events or omissions which gave rise to the claim are alleged to have occurred here"); *Ray v. Heritage Care, Inc.*, No. 06-322 (RMU), 2006 WL 2078550, at *3 (D.D.C. July 24, 2006) (holding that venue was improper where "plaintiff's complaint [did] not allege any tortious conduct which occurred in the District of Columbia"); *Saudi v. Northrop Grumman Corp.*, 273 F. Supp. 2d 101, 104 (D.D.C. 2003) (holding that the alleged facts were "too far removed to allow the Court to find that a '*substantial* part of the events or omissions *giving rise* to the claim occurred' in the District of Columbia").

Because the statutory grounds for establishing venue in the District of Columbia cannot be satisfied here, the Complaint must be dismissed. *See* 28 U.S.C. § 1391(a); *see also Buchanan*, 145 F.3d at 389.

## III.    THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM

This Court also should dismiss ROZ Trading's Complaint because the District of Columbia is an inconvenient and inadequate forum. "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized . . . ." *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 507 (1947). In determining whether to dismiss a case in favor of a different forum, courts consider the availability of an adequate

alternate forum as well as public and private interest factors.  *See Pain v. United Technologies Corp.*, 637 F.2d 775, 782 (D.C. Cir. 1980).

### A.    Both Private And Public Interest Factors Weigh Against Hearing This Case In The District Of Columbia

Private interest factors relate to the convenience of the litigants and include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Pain*, 637 F.2d at 782 (citing *Gulf Oil*, 330 U.S. at 508); *accord Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 37-38 (D.D.C. 2002).  These factors strongly support an Uzbek forum.

Few of ROZ Trading's allegations concern Zeromax; the majority of the allegations concern the Government of Uzbekistan and entities located in Uzbekistan.  Compl. ¶¶ 7-24.  Virtually all of the documentary evidence and witnesses, thus, are located in Uzbekistan.  And most, if not all, of the third-party witnesses and evidence necessary to prosecute and defend the present case are in Uzbekistan and would be difficult or impossible to obtain.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257-58 (1981) (favoring dismissal when "a large proportion of the relevant evidence is located [overseas]").

An additional burden of litigating in the District of Columbia would be the expense of translating the Uzbek language documentary evidence into English.  *See Croesus*, 212 F. Supp. 2d at 39 (dismissing case because litigation would require numerous foreign-language documents that would be "expensive, cumbersome and time-consuming").

Public interest factors also tilt in favor of dismissal.  Public interest factors include "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it," *Pain*, 637 F.2d at 791, and the "burden on the

community in light of the connection between the event in dispute and the chosen forum, the local public interest in the dispute, and the court's familiarity with the applicable law," *Croesus*, 212 F. Supp. 2d at 39.  As noted above, none of the events at issue or the parties involved has any connection to the District of Columbia.  *See id.* at 40 (holding that the citizens of the District of Columbia have no interest in litigation when "none of the events in question and none of the parties claims to have any connection to the district").

The application of Uzbek law in this case also weighs against proceeding in the District of Columbia.  *See Piper Aircraft*, 454 U.S. at 260; *Gulf Oil*, 330 U.S. at 515 (holding that the need to apply foreign law favors dismissal).  If the Court determines it has jurisdiction, not only would it need to examine Uzbek law to determine the legality of Uzbekistan's expropriation of ROZ Trading's shares in CCBU, but it also would need to apply Uzbek law to ROZ Trading's claims against Zeromax.  *See Nielsen v. Sec'y of Treasury*, 424 F.2d 833, 842 (D.C. Cir. 1970) ("[T]he rights of those investing in a venture organized in corporate form are defined by the law of the place of incorporation . . . ."); *Tramontana v. SA Empresa De Viacao Aerea Rio*, 350 F.2d 468, 471, 476 (D.C. Cir. 1964) (holding that the law of the jurisdiction with the strongest connection to the dispute and the parties, and the greatest interest in the resolution of the issue applies); Restatement (Second) Conflict of Laws § 413 (1971) ("[T]he rights and liabilities of the parties in tort are said to be governed by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties.").

Given this case has nothing to do with the District of Columbia — or, for that matter, with the United States — dismissal on grounds of forum non conveniens is completely appropriate and justified.

**B.**     **There Are Available Adequate Alternative Forums For This Dispute**

On June 1, 2006 — just days before filing this Complaint — ROZ Trading filed an arbitration proceeding in Vienna, Austria against Zeromax, as well as the Republic of Uzbekistan, TCCEC, and Uzpishcheprom (an Uzbek state-owned entity also known as OziqOvqatSanoat), asserting claims similar to the present ones and based on the same set of facts alleged here. United States courts have long recognized and enforced a liberal federal policy favoring arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The Federal Arbitration Act, accordingly, requires federal courts to dismiss or stay actions brought in federal court pending the outcome of arbitration. 9 U.S.C. §§ 3, 4 (2005). This Court should not permit ROZ Trading to hedge its bets by allowing it to bring two separate actions against Zeromax on the same facts. *See Contact Lumber Co. v. P.T. Moges Shipping, Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990) ("There are significant advantages in having all the parties . . . assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits."). At a minimum, if this case is not dismissed forthwith, the Court should stay these proceedings pending the outcome of the arbitration against Zeromax.

Moreover, aside from Plaintiffs' attempt to arbitrate this dispute concurrently with this litigation, this Court should dismiss the Complaint in favor of the courts of Uzbekistan, which are better suited to resolve this case. As stated, Uzbekistan has the most significant relationship to this dispute because (i) Plaintiff ROZ (Uzbekistan) and CCBU (the joint venture the shares of which form the subject of the Complaint) are both Uzbek-registered entities; (ii) virtually all of the events set forth in the Complaint are alleged to have taken place in Uzbekistan; and (iii) Uzbek law applies to Plaintiffs' claims. Accordingly, the Complaint can and should be dismissed outright on the grounds of forum non conveniens.

## IV. PLAINTIFFS' CLAIMS ARE BARRED UNDER THE ACT OF STATE DOCTRINE

"The act of state doctrine 'precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.'" *World Wide Minerals, Ltd. v. Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)); *accord Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977) (holding that the examination of Libya's motives for property seizure as required to prove causal connection between defendant's alleged acts and plaintiffs' injury inevitably entailed consideration of the validity of the government's acts and this was nonjusticiable under the act of state doctrine). The act of state doctrine is not simply a doctrine of abstention, but serves as "a rule of decision for the courts of this country, which requires that in the process of deciding a case, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *World Wide Minerals*, 296 F.3d at 1165 (internal citations and quotations omitted).

The act of state doctrine is premised on principles of "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." *Id.* (quoting *Sabbatino*, 376 U.S. at 308) (internal quotations omitted). Parties, accordingly, must obtain redress of grievances arising from acts of state through diplomatic channels rather than the courts. *See Republic of Austria v. Altmann*, 541 U.S. 677, 700 n.20 (2004) ("[R]edress of grievances . . . must be obtained through diplomatic channels."); *Sabbatino*, 376 U.S. at 416 ("Redress of grievances . . . must be obtained through the means open to be availed of by sovereign powers as between themselves.").

### A.    The Act Of State Doctrine Precludes This Court's Review Of Uzbekistan's Expropriation Of ROZ Trading's Interest In CCBU

Uzbekistan's alleged expropriation of ROZ Trading's interest in CCBU presents "the classic act of state addressed in the case law." *World Wide Minerals*, 296 F.3d at 1166; *accord Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203, 206 (D.C. Cir. 1987) (holding that claims for compensation arising from the nationalization of factories in Czechoslovakia presented a "prime case" for the application of the act of state doctrine). Plaintiffs freely admit and allege that the purported expropriation was conducted under color of Uzbek law. Compl. ¶ 20 (alleging that Uzbekistan expropriated ROZ Trading's shares in September 2002 "with the approval of the Uzbek courts"). In a decision dated September 11, 2002, the Supreme Economic Court of the Republic of Uzbekistan upheld a lower court decision removing the participatory interest of ROZ Trading for the benefit of ROZ Uzbekistan to pay its debts to the State budget. *See* Fayzullaev Decl. ¶ 17, Ex. G (attaching September 11, 2002 decision of the Supreme Economic Court of the Republic of Uzbekistan). This decision is consistent with Decree No. 327 of the Cabinet of Ministers dated July 3, 1999, which provides for the liquidation of companies that have not established their declared charter funds in due time. *Id.* ¶ 17, Ex. H. The Supreme Economic Court's decision is legally binding, valid and enforceable under Uzbek law. *Id.* ¶ 18.

Moreover, the State acquired possession of ROZ Trading's shares in CCBU pursuant to an official decree of the Cabinet of Ministers of the Republic of Uzbekistan, dated July 5, 2002 ("Decree No. 420"). *See* Fayzullaev Decl. ¶ 20, Ex. I (attaching Decree No. 420). By operation of Decree No. 420, ROZ Trading's shares reverted to the State, through its state-owned entity, Uzpishcheprom. *Id.* Ex. I ¶ 2. Decree No. 420 endorsed the proposal of the State Committee of the Republic of Uzbekistan on Management of State Property ("SPC"), the Ministry of Finance,

Uzpishcheprom and ROZ Trading's liquidation committee to transfer ROZ Trading's interest in CCBU to the State. *Id.* Decree No. 420 is a valid, binding and enforceable decree of the Cabinet of Ministers under Uzbek law. Fayzullaev Decl. ¶ 21.

The act of state doctrine bars this Court from second-guessing Uzbekistan's official sovereign acts of expropriating ROZ Trading's interest in CCBU pursuant to Uzbek law and of regulating the activities of companies with foreign investment within its territory. *See Sabbatino*, 376 U.S. at 414, n.17 ("An inquiry by United States courts into the validity of an act of an official of a foreign state under the law of that state would not only be exceedingly difficult but, if wrongly made, would be likely to be highly offensive to the state in question."); *Society of Lloyd's v. Siemon-Netto*, No. 04-7214, 2006 WL 2252864, at *7 (D.C. Cir. Aug. 8, 2006) (defendants' counterclaim, that English statute constituted an unlawful delegation of governmental authority, was barred by act of state doctrine); *United States v. Merit*, 962 F.2d 917, 921 (9th Cir. 1992) (holding act of state doctrine precluded examination of South Africa's failure to issue a warrant under its extradition statute, because "[e]ven if the Republic did disregard its own laws in failing to issue a warrant of extradition, this court cannot question the validity of South Africa's domestic actions"); *World Wide Minerals*, 296 F.3d at 1165-66 (holding that act of state doctrine barred court from second-guessing Kazakhstan's sovereign decision to expropriate and transfer assets to Kazatomprom, a state-owned entity); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 24 (D.D.C. 1998) (holding "[a]n act which is acknowledged to be within a state's discretion, although it violates federal and international law, can still be a valid act for the purposes of the Act of State doctrine"). Accordingly, this case should be dismissed.

**B.    The Act Of State Doctrine Also Precludes This Court's Review Of Uzbekistan's Privatization Of Its State-Owned Interest In CCBU**

Separate and apart from the alleged expropriation, the Complaint alleges that Uzbekistan sold its shares in CCBU through a state-owned privatization authority.  Compl. ¶ 29.  Pursuant to its inherent authority to privatize state-owned property, Uzbekistan, through the SPC, sold Uzbekistan's interest in CCBU to Muzimpex in accordance with Uzbek privatization law.  *See* Fayzullaev Decl. ¶¶ 22-28 (describing Uzbek denationalization and privatization laws).  The SPC is an Uzbek governmental body responsible for implementing Uzbekistan's denationalization and privatization procedures.  Fayzullaev Decl. ¶ 24.  It is accountable to the Cabinet of Ministers of the Republic of Uzbekistan and derives its authority from the Constitution and the laws of Uzbekistan, decrees and orders of the President of Uzbekistan, and resolutions of the Cabinet of Ministers of the Republic of Uzbekistan and The Regulation "On the State Property Committee."  *Id.*  The SPC's decisions are binding on the ministries, departments, concerns, associations, organizations, institutions, and local government authorities.  *Id.* ¶ 25.

Pursuant to its sovereign authority, the SPC issued an order, dated September 13, 2004 ("Order"), approving the sale of the state-owned participatory interest in CCBU to Muzimpex.  *Id.* ¶ 26, Ex. J (attaching official SPC Order evidencing sale of state-owned interests in CCBU to Muzimpex in accordance with Uzbek law).  That Order, like Decree No. 420, constitutes an official state act of Uzbekistan, the validity of which is not subject to challenge in U.S. courts.  *World Wide Minerals*, 296 F.3d at 1165 ("the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid") (internal citations and quotations omitted).  Accordingly, the act of state doctrine also applies to the alleged privatization, separate and apart from the alleged expropriation.

Moreover, when a third party purchases expropriated property from a foreign sovereign, the prior owner of that property cannot sue the third-party purchaser because the third party's title is derived from an act of state. *See Oetjen v. Cent. Leather Co.*, 246 U.S. 297 (1918) (holding that former owners of private property expropriated during the Mexican revolution could not sue the new owners of the property, because the new owners' titles derived from an act of state); *Ricaud v. Am. Metal Co.*, 246 U.S. 304 (1918) (same); *see also Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006). In *Glen*, the Cuban government expropriated plaintiffs' beachfront property in conjunction with the Cuban revolution in 1959. *Id.* at 1252. Defendant Club Mediterranee subsequently executed a joint venture with the Cuban government to construct and operate a luxury hotel on the property that the plaintiffs had owned. *Id.* The plaintiffs brought claims against Club Mediterranee for unjust enrichment and trespass to land. *Id.* at 1253. In affirming the district court's dismissal of their claims, the Eleventh Circuit held that plaintiffs' claims were predicated on the Cuban government's confiscation and were barred by the act of state doctrine. *Id.*

Because the Complaint would require this Court to examine the validity of Uzbekistan's official acts undertaken pursuant to Uzbek law — i.e., Uzbek judicial decisions, Decree No. 420, and Uzbek privatization laws — the Complaint must be dismissed under the act of state doctrine.

## V.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As stated above, Uzbek law applies to ROZ Trading's claims. Even if District of Columbia substantive law were to apply (which it does not), however, the Complaint fails to state a claim. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when, as here, the applicable statute of limitations has expired and Plaintiffs cannot prove any set of facts in support of their claims entitling them to relief. *United States v. Martin-*

*Banker Aircraft Co.*, 389 F.3d 1251, 1260 (D.C. Cir. 2004) (citing *Conley v. Gibson* 355 U.S. 41, 45-46 (1957)). In considering whether Plaintiffs have stated a claim, this Court should not accept inferences that "are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

A.      **The Statute Of Limitations Expired As To Plaintiffs' Conversion, Tortious Interference, And Conspiracy Claims In September 2005**

Plaintiffs admit that they were fully divested of their ownership interest in CCBU in September 2002. Compl. ¶ 20. Plaintiffs' injury with respect to their interest in CCBU thus was complete by September 2002. Under the three-year statute of limitations for conversion, tortious interference, and conspiracy, any alleged claims accrued, if at all, in September 2002 and should have been brought by Plaintiffs no later than September 2005. D.C. Code § 12-301(8) (2001); *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989) (applying three-year statute of limitations to bar conversion claim); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (applying three-year statute of limitations to tort and contract claims); *Forte v. Goldstein*, 461 A.2d 469, 472 (D.C. 1983) (holding that three-year statute of limitations had run for conversion claims); *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546-47 (D.C. 2002) (tortious interference claim barred under the three-year statute of limitations). Plaintiffs cannot now be permitted to breathe new life into claims they should have brought prior to September 2005.

B.      **Plaintiffs Fail To State A Claim For Conversion**

"Conversion is the unlawful exercise of ownership and dominion and control over the personal property of another in denial or repudiation of that person's rights thereto." *Calvetti v.*

*Antcliff*, 346 F. Supp. 2d 92, 106 (D.D.C. 2004); *Shulman v. Voyou, L.L.C.*, 251 F. Supp. 2d 166,

170 (D.D.C. 2003).  Plaintiffs' conversion claim fails because: (i) according to Plaintiffs' own

allegations ***Zeromax does not (and did not ever) possess*** any property belonging to Plaintiffs;

(ii) even assuming Zeromax possesses Plaintiffs' property (which it does not), such possession

would not be "unlawful"; and (iii) Zeromax did not proximately cause the alleged intentional

deprivation of Plaintiffs' property.

### (i)    Plaintiffs Admit That Zeromax Does Not Possess Their Interest In CCBU

A valid claim for conversion requires that Zeromax possess Plaintiffs' property, i.e., that

it exercises "ownership and dominion and control" over such property.  *See Calvetti*,

346 F. Supp. 2d at 106 (quoting Restatement (Second) of Torts § 222A cmt. D (1965) ("In each

case the question to be asked is whether the actor has exercised such dominion and control over

the chattel, and has so seriously interfered with the other's right to control it, that in justice he

should be required to buy the chattel.")).  According to Plaintiffs' own Complaint, Zeromax does

not possess ROZ Trading's ownership interest in CCBU.  Plaintiffs allege that a purported

Zeromax subsidiary, Muzimpex, was the purchaser of the shares from Uzbekistan and the entity

that "now possesses ROZ's and ROZ (Uzbekistan)'s ownership interest in CCBU."  Compl.

¶ 31; *see also* Fayzullaev Decl. ¶¶ 22-28 (describing Uzbek denationalization and privatization

laws) & Ex. J (attaching official SPC Order).

Plaintiffs fail, however, to provide any basis from which this Court could attribute

Muzimpex's alleged activities to Zeromax.  Plaintiffs' bald assertion that Zeromax possesses the

CCBU shares through its "complete control" of Muzimpex is insufficient to pierce the corporate

veil as to Muzimpex.  Compl. ¶ 27; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir

2002) (A court reviewing a complaint under Rule 12(b)(6) may not accept either "inferences

drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations") (quoting *Kowal*, 16 F.3d at 1275). Thus Plaintiffs' claims against Zeromax fail because Zeromax is not liable for the alleged unlawful possession of shares it does not now — and did not ever — possess.

### (ii)    Plaintiffs Cannot Demonstrate That Any "Unlawful" Action Of Defendant Divested Them Of Their Property

A defendant cannot be liable for conversion unless it unlawfully possesses the plaintiff's assets. *See First Am. Bank, N.A. v. District of Columbia*, 583 A.2d 993, 998 (D.C. 1990) (dismissing alleged conversion claim against District of Columbia when city seized property in accordance with statutory grant of authority). By Plaintiffs' own admissions, Muzimpex purportedly acquired ROZ Trading's ownership interest in CCBU from the Uzbek state-owned privatization authority. Compl. ¶ 29. Plaintiffs further allege that the purported unlawfulness of this acquisition stems from Uzbekistan's prior (and allegedly unlawful) court-approved seizure and foreclosure of ROZ Trading's shares. Compl. ¶¶ 20, 28, 29 ("ROZ learned through news reports of Uzbekistan's transfer of these expropriated shares to Zeromax.").

Under Plaintiffs' theory of conversion, this Court would first need to pass judgment on the lawfulness of Uzbekistan's expropriation and subsequent privatization of ROZ Trading's shares before it could determine the legality of Zeromax's alleged acquisition of the shares. *See Glen*, 450 F.3d at 1255 (affirming dismissal of claims against third-party purchaser under act of state doctrine where resolution of claims wholly depended on questioning validity of Cuba's expropriation of plaintiffs' land). As stated above, the act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized sovereign power committed within its own territory." *Sabbatino*, 376 U.S. at 401. Moreover, when the doctrine applies, as here, it serves as a "rule of decision" for this Court, which, in deciding this case, must

deem Uzbekistan's sovereign acts lawful. *See Society of Lloyd's*, 2006 WL 2252864, at *10, n.3 (citing *World Wide Minerals*, 296 F.3d at 1165); *see also Merit*, 962 F.2d at 921. Because Plaintiffs cannot demonstrate the central element of unlawful possession, their conversion claim must fail.

### (iii)    Zeromax Did Not Proximately Cause Plaintiffs' Injury

Plaintiffs' allegations demonstrate that Zeromax did not proximately cause their injury. Compl. ¶¶ 27, 28. Plaintiffs allege that ROZ Trading was fully divested of its ownership interest in CCBU "by September 2002." *Id.* ¶ 20. Plaintiffs further allege that Zeromax, through Muzimpex, only became associated with the shares in "late 2004" — long ***after*** the alleged expropriation. *Id.* ¶ 24. The Complaint is devoid of any allegation that Zeromax participated in the alleged expropriation in the first instance. Plaintiffs assert only that Zeromax "knew" that the CCBU investment opportunity arose as a result of Uzbekistan's allegedly unlawful expropriation. *Id.* ¶ 26. This allegation is conclusory and cannot support any claim for unlawful possession and deprivation. *See Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 7 (D.D.C. 1995) ("'[B]are conclusions of law, or sweeping and unwarranted averments of fact' will not be deemed admissible in the context of a motion to dismiss . . . [t]he court will not be persuaded by conclusory allegations devoid of factual support.") (internal citations omitted).

### C.    Plaintiffs Fail To State A Claim For Tortious Interference

Under the law of the District of Columbia, to state a claim for tortious interference with business relations, a plaintiff must plead: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship on the part of the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage. *Bowhead Info. Tech. Servs., LLC v. Catapult Tech.*, 377 F. Supp. 2d 166,

174 (D.D.C. 2005); *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 (D.D.C. 2004).

Plaintiffs' admission that their ownership interest in CCBU was fully divested by September 2002 is fatal to their claim for tortious interference with business relations. Plaintiffs fail to allege that Zeromax interfered with a valid relationship and that Zeromax's interference terminated the relationship. *See Bowhead*, 377 F. Supp. 2d at 174. Zeromax could not have interfered with ROZ Trading's purported business relationship because — as the Complaint admits — that business relationship was extinguished by a sovereign act some two years prior. Compl. ¶ 20. Accordingly, Plaintiffs' claim for tortious interference must be dismissed.

**D.    Plaintiffs Fail To State A Claim For Conspiracy To Commit Conversion And Tortious Interference**

A civil conspiracy is not an independent cause of action but rather a means for establishing vicarious liability for some underlying tortious act. *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002); *Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005). To survive a motion to dismiss, Plaintiffs must allege: (1) "an agreement to take part in an unlawful action or a lawful action in an unlawful manner"; and (2) "an overt tortious act in furtherance of the agreement that causes injury." *Hall*, 285 F.3d at 82-83 (quotation omitted).

Plaintiffs fail to identify (or allege) any facts to support an actual agreement between Zeromax and Uzbekistan (or any other party) to perform an unlawful act or a lawful act in an unlawful manner. *See Bynum v. Equitable Mortg. Group*, No. Civ. 99CV2266-SBC-JMF, 2005 WL 818619, at *16 (D.D.C. Apr. 7, 2005) (dismissing conspiracy to convert property claim in the absence of agreement among defendants); *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997). Rather, Plaintiffs' sole theory of a conspiracy to commit the torts of conversion and tortious interference is premised on the bare — and insufficient — allegation that Zeromax

"conspired" to purchase the CCBU shares.   Compl. ¶¶ 37, 44; *see generally W. Assocs Ltd. P'ship*, 235 F.3d at 634 ("The court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations.").

### E.        Plaintiffs Fail To State A Claim To Quiet Title

Plaintiffs seek to have this Court declare that they are the rightful owners of the CCBU stock and that Zeromax "has no right to this interest."  Compl. ¶ 49.  Again, Plaintiffs' claim to quiet title hinges on a ruling that Uzbekistan unlawfully expropriated their interest in CCBU and that the subsequent sale of those shares to Zeromax was *a fortiori* unlawful.  *Id.* ¶¶ 20-21.  The act of state doctrine precludes this relief.

Even assuming *arguendo* that the act of state doctrine does not bar Plaintiffs' claims, the claim cannot proceed as a matter of District of Columbia law.  Specifically, no action has been found to exist within the District of Columbia to quiet title to *personal* property.  The District of Columbia has only recognized the power of its courts to quiet title *to land*.  *In re Tyree*, 493 A.2d 314, 317 (D.C. 1985) (citing *Sharon v. Tucker*, 144 U.S. 533, 544 (1892)).  The sole provision in the D.C. Code addressing quieting title concerns only "real property."  D.C. Code § 16-3301 (2001).  Shares of stock are not real property.  *See Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69, 81 (1926); *Shafer v. Children's Hosp. Soc. of Los Angeles, Cal.*, 265 F.2d 107, 109 (D.C. Cir. 1957).  Accordingly, Plaintiffs' request to quiet title must be denied.

## CONCLUSION

For all the foregoing reasons, this Court should dismiss the Complaint in its entirety with prejudice.

Dated: August 23, 2006

Respectfully submitted,

**WHITE & CASE**LLP

/ s / Carolyn B. Lamm
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb  (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc.*