## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROZ TRADING LTD., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | 1:06-CV-01040 CKK |
| | ) | |
| ZEROMAX GROUP, INC., *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ZEROMAX GROUP, INC.'S, ZEROMAX LOGISTICS, INC.'S, ZEROMAX LLC'S, AND ZEROMAX GMBH'S CONSOLIDATED MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY

Zeromax Group, Inc., Zeromax Logistics, Inc. (both dissolved Delaware corporations), Zeromax LLC (a defunct Delaware limited liability company), and Zeromax GmbH (a Swiss-registered company) (collectively the "Zeromax Defendants"), respectfully move this Court for an order dismissing with prejudice Plaintiffs' Amended Complaint in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction; the act of state doctrine; lack of standing under Article III of the United States Constitution; Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and the *forum non conveniens* doctrine.

Further, Defendant Zeromax GmbH respectfully moves this Court for an order dismissing with prejudice Plaintiffs' Amended Complaint in its entirety on the additional, separate basis of Rule 12(b)(2) for lack of personal jurisdiction.

In support of their consolidated motion, the Zeromax Defendants respectfully submit the accompanying consolidated memorandum of points and authorities.

Dated: November 6, 2006

Respectfully submitted,

**WHITE & CASE** LLP

/ s / Carolyn B. Lamm
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb  (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc., Zeromax Logistics, Inc., Zeromax LLC, and Zeromax GmbH*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

ROZ TRADING LTD., *et al.*,          )

                     )

       *Plaintiffs*,       )

                     )

      v.             )       1:06-CV-01040 CKK

                     )

ZEROMAX GROUP, INC., *et al.*,     )

                     )

      *Defendants*.      )

_____)

**CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ZEROMAX GROUP, INC.'S, ZEROMAX LOGISTICS, INC.'S,
ZEROMAX LLC'S, AND ZEROMAX GMBH'S CONSOLIDATED
<u>MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY</u>**

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005

*Attorneys for Zeromax Group, Inc.,
Zeromax Logistics, Inc.,
Zeromax LLC, and Zeromax GmbH*

November 6, 2006

## TABLE OF CONTENTS

ARGUMENT ..................................................................................................................3

I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS'
       CLAIMS ...........................................................................................................3

II.    THE COURT LACKS PERSONAL JURISDICTION OVER ZEROMAX GMBH..........5

       A.     General Jurisdiction Is Lacking ................................................................6

       B.     Specific Jurisdiction Is Lacking................................................................8

III.   THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS ............................13

       A.     The Act of State Doctrine Precludes This Court's Inquiry Into The Validity Of A
              Foreign State's Acts Taken Within Its Own Territory..........................................13

       B.     The Act of State Doctrine Precludes This Court From Reviewing Uzbekistan's
              Acts Resulting In The Removal Of ROZ Trading's Interest in CCBU ................15

              1.     Uzbekistan's Judicial Actions Resulting In The Removal Of ROZ
                     Trading's Interest In CCBU Are Not Reviewable By This Court.............15

                     a.     Uzbekistan's Anti-Monopoly Proceedings ...................................15

                     b.     Uzbekistan's Liquidation Proceedings ..........................................16

              2.     Uzbekistan's Official Decree Transferring ROZ's CCBU Interest To The
                     State Is Not Reviewable By This Court....................................................17

              3.     Uzbekistan's Regulatory Acts (Or Alleged Expropriation) Are Not
                     Reviewable By This Court.......................................................................18

       C.     The Act Of State Doctrine Also Precludes This Court's Review Of Uzbekistan's
              Privatization Of Its State-Owned Interest In CCBU ...............................................20

IV.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE ZEROMAX
       DEFENDANTS ...................................................................................................22

V.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE
       GRANTED ........................................................................................................25

       A.     Plaintiffs' Claims Are Time-Barred.........................................................28

       B.     The Amended Complaint's Allegations Against The Zeromax Defendants Do Not
              Support Any Valid Claim .......................................................................29

              1.     Count I Fails To State A Claim For Breach Of Contract..........................29

              2.     Count II Fails To State A Claim For Tortious Interference......................32

3.      Count IV Fails To State A Claim For Conversion....................................33

        a.      Plaintiffs Cannot Demonstrate That Any "Unlawful" Action Of
                The Zeromax Defendants Divested Them Of Their Property .......33

        b.      A Claim For Conversion Cannot Be Sustained Against The
                Zeromax Defendants As Purported Purchasers Of Expropriated
                Property..........................................................................................34

        c.      Plaintiffs Admit That The Zeromax Defendants Do Not Possess
                Their Interest In CCBU..................................................................35

        d.      The Zeromax Defendants Did Not Proximately Cause Plaintiffs'
                Injury..............................................................................................36

4.      Counts III And V Fail To State A Claim For Conspiracy To Commit
        Conversion And Tortious Interference .......................................................37

5.      Count VI Fails To State A Claim To Quiet Title........................................38

6.      Count VII Fails To State A Claim For Unjust Enrichment .......................39

7.      Count VIII Fails To State A Claim For Fraudulent Conveyance .............40

VI.     THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE
        FORUM ....................................................................................................................42

        A.      Both Public And Private Interest Factors Weigh Against Hearing This Case In
                The District Of Columbia .......................................................................42

        B.      Adequate Alternative Fora Are Available For This Dispute .................................44

CONCLUSION....................................................................................................................45

# TABLE OF AUTHORITIES

FEDERAL CASES                                                                              Page(s)

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64 (D.D.C. 2004) ...............8, 30, 36

*Allen v. Wright*, 468 U.S. 737 (1984) ........................................................................22

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003) ....................................7, 10

*Atuahene v. City of Hartford*, 10 Fed. Appx. 33 (2d Cir. 2001) .....................................27

*\*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) .................................. 13-15, 19, 34

*Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323 (11th Cir. 2003) .........................................18

*Bowhead Info. Tech. Servs., LLC v. Catapult Tech.*, 377 F. Supp. 2d 166 (D.D.C. 2005)............32

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir 2002) ....................................28, 36, 37, 41

*Bynum v. Equitable Mortgage Group*, No. Civ. 99CV2266-SBC-JMF,
    2005 WL 818619 (D.D.C. April 7, 2005)...................................................................38

*Calvetti v. Antcliff*, 346 F. Supp. 2d 92 (D.D.C. 2004)...................................... 33, 35-36

*Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72 (D.D.C. 2003) .............................11

*Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71 (D.D.C. 2003) ........................................28

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................27

*Contact Lumber Co. v. P.T. Moges Shipping, Co.*, 918 F.2d 1446 (9th Cir. 1990)......................45

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*,
    212 F. Supp. 2d 30 (D.D.C. 2002) ........................................................................42

*Daisley v. Riggs Bank*, 372 F. Supp. 2d 61 (D.D.C. 2005)............................................37

*\*Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203 (D.C. Cir. 1987) .............................19

*De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir. 1985).........................18, 34

*Drexel Burnham Lambert Group v. Comm. of Receivers*, 12 F.3d 317 (2d Cir. 1993)................18

*Edlow Int'l Co. v. Nuklearna Elektrarna Krsko*, 441 F. Supp. 827 (D.D.C. 1977)........................4

*Erie Islands Resort & Marina v. Fed. Deposit Ins. Corp.*, No. Civ. A. 93-2180-LFO,
    1994 WL 228982 (D.D.C. Apr. 23, 1994) ...............................................................32

Page(s)

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988) .......................... 5, 6, 8-9

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998) ..................................................20

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) ................................................ 27-28

*\*Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251 (11th Cir. 2006) ................................ 21, 33-34

*\*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) ...................................5, 6

*Graves v. United States*, 961 F. Supp. 314 (D.D.C. 1997) ............................................................38

*Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947).................................................................................42, 43

*Hall v. Clinton*, 285 F.3d 74 (D.C. Cir. 2002) ...............................................................................37

*Heckler v. Mathews*, 465 U.S. 728 (1984) ....................................................................................22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ....................................6

*Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192 (D.C. Cir. 1992) ................................................3

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)..........................................................44

*Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977)....................................................................13

*In re Belmar v. Garza*, 319 B.R. 748 (Bankr. D.D.C. 2004) ..........................................................29

*Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (Airline Div.) v. Ass'n of Flight Attendants, AFL-CIO*, 864 F.2d 173 (D.C. Cir. 1988)..................................................39

*JP Morgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88 (2002)..............4

*Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1 (D.D.C. 1995) ....................................................37

*Kissentaner v. General Motors Corp.*, No. 93-7008, 1993 WL 483946 (D.C. Cir. Nov. 9, 1993) .................................................................................................... 29-30

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ..................................................3

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ..........................................27, 36

*Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456 (D.C. Cir. 1989) ...........................29

*Long v. Sears Roebuck and Co.*, 877 F. Supp. 8 (D.D.C. 1995)...............................................10, 23

*Montanez Miranda v. Banco Progreso, S.A.C.A.*, 973 F. Supp. 89 (D.P.R. 1997) .....................18

*Nielsen v. Sec'y of Treasury*, 424 F.2d 833 (D.C. Cir. 1970).......................................................44

Page(s)

*Oetjen v. Cent. Leather Co.*, 246 U.S. 297 (1918)....................................................21, 24

*Pain v. United Techs. Corp.*, 637 F.2d 775 (D.C. Cir. 1980) ...................................42, 43

*The Paquete Habana*, 175 U.S. 677 (1900)..................................................................25

*Philippine National Bank v. U.S. Dist. Ct. of Hawaii*, 397 F.3d 768 (9th Cir. 2005).............15, 17

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)........................................................43

*Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407 (D.D.C. 1978)......................................6

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004) ...................................................14

*Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69 (1926) ..................................39

*Ricaud v. Am. Metal Co.*, 246 U.S. 304 (1918) ...........................................................21

*Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83 (D.D.C. 2005) ......................19

*Saadeh v. Farouki*, 107 F.3d 52 (D.C. Cir. 1997)........................................................4, 5

*Saudi Arabia v. Nelson*, 507 U.S. 349, 362 (1993).......................................................20

*Shafer v. Children's Hosp. Soc'y of Los Angeles*, 265 F.2d 107 (D.C. Cir. 1957).......................39

*Sharon v. Tucker*, 144 U.S. 533 (1892) ......................................................................39

*Shulman v. Voyou, L.L.C.*, 251 F. Supp. 2d 166 (D.D.C. 2003)..................................3, 33

*Soc'y of Lloyd's v. Siemon-Netto*, No. 04-7214, 2006 WL 2252864,
  (D.C. Cir. Aug. 8, 2006) ........................................................................................34

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000)...............................28

*Tramontana v. SA Empresa De Viacao Aerea Rio*, 350 F.2d 468 (D.C. Cir. 1964)....................44

*United States v. Belmont*, 301 U.S. 324 (1937) ..........................................................26

*United States v. Bestfoods*, 524 U.S. 51 (1998) .........................................................10

*United States v. Martin-Banker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004) ....................27, 41

*United States v. Merit*, 962 F.2d 917 (9th Cir. 1992) .............................................19, 34

*Universal Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579 (2d Cir. 2002)..................4, 5

*Valley Forge Christian College v. Americans United for Separation
  of Church & State, Inc.*, 454 U.S. 464 (1982) ........................................................22

Page(s)

*Week v. Cayman Islands*, No. 91-2965, 1992 WL 372241
(7th Cir. Dec. 16, 1992) ........................................................................................18

*West v. Multibanco Comermex, S.A.*, 807 F.2d 820 (9th Cir. 1987)................................19

*\*W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629 (D.C. Cir. 2001) .........10, 27, 38

*Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77 (D.D.C. 2002) ..............32

*\*World Wide Minerals, Ltd. v. Kazakhstan*, 296 F.3d 1154 (D.C. Cir. 2002).13, 14, 18, 19, 21, 34

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ................................................................................15


STATE CASES

*AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849 (D.C. 1981)........................................6, 7

*Beard v. Edmondson & Gallagher*, 790 A.2d 541 (D.C. 2002) ......................................29

*Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984)......................................29

*First Am. Bank, N.A. v. District of Columbia*, 583 A.2d 993 (D.C. 1990) ....................................33

*Forte v. Goldstein*, 461 A.2d 469 (D.C. 1983) .............................................................29

*Gonzalez v. Internacional de Elevadores*, 891 A.2d 227 (D.C. 2006) ............................................6

*\*In re Orshansky*, 804 A.2d 1077 (D.C. 2002)........................................................................7

*In re Tyree*, 493 A.2d 314 (D.C. 1985)........................................................................39

*Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236 (D.C. 1995)....................................30


FEDERAL STATUTES

U.S. Constitution art. VI, cl. 2 ........................................................................................26

9 U.S.C. § 3 (2005) ........................................................................................................44

9 U.S.C. § 4 (2005) ........................................................................................................44

28 U.S.C. § 1332 (2002) ..............................................................................................2, 3

Fed. R. Civ. P. 8........................................................................................................5

Page(s)

Fed. R. Civ. P. 9(b) ..................................................................................41

Fed. R. Civ. P. 9(c) ..................................................................................41

Fed. R. Civ. P. 12(b)(6).......................................................................27, 32

Fed. R. Civ. P. 44.1 ..................................................................................11


## STATE STATUTES

D.C. Code § 12-301 (2001)........................................................................29

D.C. Code § 13-334(a) (2001) ....................................................................6

D.C. Code § 13-423 (2001)....................................................................9, 10

D.C. Code § 16-3301 (2001)......................................................................39

Del. Code. Ann. tit. 8, § 278 (2006) ............................................................7


## OTHER U.S. AUTHORITIES

5A Charles A. Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1357 (2d ed. 1990).............28

Restatement (Second) of Conflict of Laws § 145 (1971) .............................................10

Restatement (Second) of Conflict of Laws, Introductory Note to Ch. 7, Topic 1 ............. 26-27, 44

Restatement (Second) of Torts § 222A cmt. d (1965) ............................................. 35-36

Restatement (Third) of Foreign Relations Law § 102 (1987)...................................23, 24

Restatement (Third) of Foreign Relations Law § 103 ................................................23

Restatement (Third) of Foreign Relations Law § 111 ......................................14, 23, 26

Restatement (Third) of Foreign Relations Law § 111 cmt. d ................................14, 26

Restatement (Third) of Foreign Relations § 111 cmt. e........................................14, 24

Restatement (Third) of Foreign Relations § 112 ................................................14, 24

Restatement (Third) of Foreign Relations § 712 ..........................................25, 34, 35

Page(s)

Restatement (Third) of Foreign Relations § 713 cmt. k ..................................... 26, 34-35


INTERNATIONAL AUTHORITIES

*BP Exploration Co. (Libya) v. Gov't of the Libyan Arab Rep.*, 53 I.L.R. 297 (1974)..................35

*Libyan American Oil Co. v. Libya*, 20 I.L.M. 1 (1974) .................................................35

*Luther v. Sagor* [1921] 3 K.B. 532 ..................................................................24

*N. V. Verenigde v. Deutsch-Indonesische Tabak-Hadelsge-Sellschaft*,
    28 I.L.R. 16 (1967) ...............................................................................24

*Williams & Humberts Ltd. v. W & H Trade Marks (Jersey)* [1986] A.C. 368 .............................24


British Nationality Act 1981 (Schedule 6), 31 Halsbury's Statutes 172 (4th ed. 1987)..................4

Draft Articles on Responsibility of States for Internationally Wrongful Acts with Commentaries,
    Art. 31, *in* Report of the International Law Commission on the Work of Its Fifty-third
    Session, UN GAOR, 56th Sess., Supp. No. 10, at 224, UN Doc. A/56/10 (2001)........... 34-35

Opinion of the Inter-American Juridical Committee in Response to Resolution AG/DOC
    .3375/96 of the General Assembly of the Organization, Entitled "Freedom of Trade and
    Investment in the Hemisphere," OAS Doc. CJI/SO/II/doc.67/96 rev. 5, 35 I.L.M. 1329
    (1996).........................................................................................35


Hersch Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States*, 28 Brit. Y. B.
    Int'l L. 220 (1952).............................................................................20

1 Oppenheim's International Law (9th ed. 1992).......................................................24

August Reinisch, *Widening the US Embargo Against Cuba Extraterritorially: A Few Public
    International Law Comments on the 'Cuban Liberty and Democratic Solidarity (LIBERTAD)
    Act of 1996'*, 7 Euro. J. Int'l L. 545 (1996) ..........................................35

Christopher Staker, *Public International Law And The Lex Situs Rule In Property Conflicts And
    Foreign Expropriations*, 58 B.Y. Int'l Law 151 (1988)......................................25

In this action, Plaintiffs ROZ Trading Ltd. ("ROZ"), a Cayman Islands limited liability company, and ROZ Trading Ltd. (Uzbekistan) ("ROZ (Uzbekistan)"), a company organized, located, and dissolved in Uzbekistan (collectively "ROZ Trading"), seek $500,000,000 in damages against Zeromax Group, Inc. ("Zeromax Group"), Zeromax Logistics, Inc. ("Zeromax Logistics"), both dissolved Delaware corporations, Zeromax LLC, a defunct Delaware limited liability company, and Zeromax GmbH , a Swiss-registered company (collectively the "Zeromax Defendants").[1]  Plaintiffs claim that the Zeromax Defendants should be held liable for the Republic of Uzbekistan's ("Uzbekistan") alleged expropriation of ROZ Trading's ownership interests in Coca-Cola Bottlers Uzbekistan Ltd. ("CCBU"), an Uzbek joint venture, and for Uzbekistan's privatization and purported subsequent sale of that interest to Muzimpex, an Uzbek limited liability company in which Zeromax GmbH is nothing more than a shareholder.  Am. Compl. ¶¶ 29-31, 45.

Neither of the Plaintiffs is a resident of the District of Columbia — in fact, both appear to be alien entities — and none of the acts or omissions set forth in the Amended Complaint is alleged to have occurred in the District of Columbia.  All of the alleged acts giving rise to Plaintiffs' claims are alleged to have taken place in Uzbekistan.  Indeed, there is not a single factual allegation of wrongful conduct on the part of any of the Zeromax Defendants in the District of Columbia (or elsewhere).

ROZ clearly appreciates that the District of Columbia is not the forum for the resolution of its dispute, as it already selected its forum and filed its real dispute in an arbitration before the International Arbitral Centre of the Austrian Federal Economic Chamber against The Coca-Cola Export Corporation ("TCCEC"), the Government of Uzbekistan, Uzpishcheprom (an Uzbek

---

[1] For purposes of this motion, the term "Zeromax Defendants" is used only as a convenient term of reference, and is not in any way an acceptance of Plaintiffs' conclusory allegations (*see, e.g.*, Am. Compl. ¶¶ 9-11) of agency or alter ego as between the named Zeromax entities.

State-owned entity also known as OziqOvqatSanoat), and Zeromax Group.  Indeed, the District of Columbia proceeding is really ROZ's all-too-transparent attempt to obtain discovery and potentially injunctive relief more quickly and easily than under the Vienna Rules of Arbitration.

Plaintiffs filed their original complaint on June 6, 2006 against Zeromax Group only. Zeromax Group filed a motion to dismiss on substantially the same grounds set forth herein on August 23, 2006.  ROZ Trading filed the Amended Complaint on September 1, 2006 adding Zeromax Logistics, Zeromax LLC, and Zeromax GmbH as new defendants.  ROZ Trading has failed to cure the pleading deficiencies that were present in the original complaint and that continue to warrant the outright dismissal of the Amended Complaint.  Additionally, as a consequence of ROZ Trading's joinder of an alien party as a new defendant — Zeromax GmbH — the Court appears to lack subject-matter jurisdiction under 28 U.S.C. § 1332.

According to the Amended Complaint, ROZ Trading's ownership interests in CCBU were extinguished when Uzbekistan allegedly expropriated ROZ Trading's shares through State-initiated judicial proceedings in 2002.  Am. Compl. ¶¶ 29-31.  The Amended Complaint further alleges that a partially-owned "Zeromax subsidiary" called Muzimpex — *not* any of the Zeromax Defendants themselves — acquired ROZ Trading's interests in CCBU some *two years later* in late 2004.  Am. Compl. ¶ 45.  None of the conclusory allegations in the Amended Complaint is sufficient to warrant an attribution of Muzimpex's alleged acts to any of the Zeromax Defendants under the applicable Uzbek law or even under U.S. law.  Even if such allegations were sufficient (which they are not), the Zeromax Defendants cannot be held liable for Uzbekistan's regulatory acts or its allegedly unlawful acts of state, as alleged, which were carried out by Uzbekistan in its sovereign territory and which affected property interests located exclusively within Uzbekistan's territorial jurisdiction.  ROZ Trading's sole remedy in this case,

if any, is against Uzbekistan and for compensation only — not against any one of the Zeromax Defendants, who are alleged to be nothing more than corporate "relatives" or past or present shareholders in the purported third-party purchaser of the State-owned property in question.

Accordingly, Plaintiffs' Amended Complaint must be dismissed in its entirety for several independent reasons: (i) the Court lacks subject-matter jurisdiction over this case; (ii) the Court lacks personal jurisdiction over Zeromax GmbH, a Swiss company; (iii) the District of Columbia is an improper and inconvenient forum; (iv) the act of state doctrine precludes this Court's inquiry into the legality of the alleged sovereign acts of Uzbekistan; (v) Plaintiffs lack standing to assert their claims; and (vi) Plaintiffs have failed to state a claim upon which relief may be granted.

## ARGUMENT

## I. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

Federal courts are courts of limited jurisdiction and the law presumes that a "cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of demonstrating that a statute authorizes the court to assert subject matter jurisdiction over the controversy. *Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 38 (D.D.C. 2004). In determining whether it has such authority, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

ROZ Trading alleges that 28 U.S.C. § 1332 authorizes the Court to exercise subject-matter jurisdiction over this case because "the parties are diverse in citizenship and more than $75,000 is at stake." Am. Compl. ¶ 8. No other basis for subject-matter jurisdiction exists or is alleged. ROZ Trading's joinder of Zeromax GmbH, a Swiss-registered company, in this action,

however, divests this Court of jurisdiction to hear the case. Am. Compl. ¶ 6. The District of Columbia Circuit has held that the diversity statute does "not confer jurisdiction over a lawsuit involving an alien on one side and an alien and citizen on the other side." *See Saadeh v. Farouki*, 107 F.3d 52, 54-55 (D.C. Cir. 1997); *see also Universal Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 580-81 (2d Cir. 2002) ("Diversity is lacking within the meaning of [the diversity statute] where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens."); *Edlow Int'l Co. v. Nuklearna Elektrarna Krsko*, 441 F. Supp. 827, 830-31 (D.D.C. 1977) (dismissing action for lack of diversity jurisdiction where proper plaintiff was not District of Columbia corporation but Bermuda-incorporated affiliate and action was against entity organized under the constitution and laws of the former Socialist Federal Republic of Yugoslavia).

The Amended Complaint alleges that ROZ (Uzbekistan) was organized under the laws of Uzbekistan with its principal place of business in Uzbekistan. Am. Compl. ¶ 2. ROZ (Uzbekistan) is therefore a citizen of Uzbekistan for the purposes of determining diversity. The Amended Complaint further alleges that ROZ is a limited liability company organized under the laws of the Cayman Islands with a purported principal place of business located in Morristown, New Jersey. *Id.* ¶ 1. The Cayman Islands is an Overseas Territory (formerly known as a "Dependent Territory") of the United Kingdom of Great Britain and Northern Island. *See* British Nationality Act 1981 (Schedule 6), 31 Halsbury's Statutes 172 (4th ed. 1987). A citizen of a British Overseas Territory is a "citizen of the United Kingdom and Colonies." British Nationality Act 1981 § 51(3)(a)(ii). The United States Supreme Court has held that entities formed under the laws of a U.K. Overseas Territory have U.K. citizenship for purposes of diversity. *See JP Morgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88,

97-98 (2002) (holding that the fact that the British Virgin Islands is an Overseas Territory of the United Kingdom rather than an independent state did not preclude BVI company's classification as a "citizen or subject of a foreign state" under the diversity statute).

ROZ's contention that it maintains its principal place of business in New Jersey is not supported by any factual allegation, as required by Rule 8(a) of the Federal Rules of Civil Procedure. For instance, the Amended Complaint lacks any allegation of meaningful business conduct in New Jersey or even that ROZ is registered to do business in New Jersey. The Amended Complaint alleges only a P.O. Box in the Cayman Islands. Am. Compl. ¶ 1. Moreover, it remains an open question in the District of Columbia Circuit whether an alien corporation is deemed to be a citizen of the place in which it maintains its principal place for purposes of diversity. *See Saadeh*, 107 F.3d at 56, n.5 (noting D.C. Circuit has yet to consider this question); *see also Universal Licensing Corp.*, 293 F.3d at 580-81 ("Even if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other side of the litigation.") (internal quotations omitted). Thus, it would appear that ROZ Trading is a U.K. citizen, and that it is a "citizen or subject of a foreign state" for purposes of diversity. *Id.* Because the Amended Complaint has alien parties on both sides, diversity jurisdiction is lacking and the Amended Complaint must be dismissed.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER ZEROMAX GMBH

In actions based on diversity of citizenship, the court's personal jurisdiction over nonresident defendants is governed by the law of the forum, "subject to the constraints of constitutional due process." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). Under District of Columbia law, Plaintiffs bear the burden of making a "*prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d

1375, 1378 (D.C. Cir. 1988).  Plaintiffs cannot satisfy this burden with "bare allegation[s]"; they must "allege specific acts connecting [Zeromax GmbH] with the forum."  *Id*. at 1378-79 (quotation omitted).  On the facts alleged, Plaintiffs fail to meet this burden as to Zeromax GmbH.

A.      **General Jurisdiction Is Lacking**

Under the laws of the District of Columbia, courts may "exercise 'general jurisdiction' over a foreign corporation . . . if the corporation is 'doing business' in the District."  *Gorman*, 293 F.3d at 509 (citing D.C. Code § 13-334(a)).  The reach of "doing business" jurisdiction under § 13-334(a) is "coextensive with the reach of constitutional due process."  *Id.* at 510.  The Due Process Clause permits general jurisdiction over foreign corporations for doing business "only . . . if the defendant's business contacts with the forum district are '***continuous and systematic***.'"  *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)) (emphasis added).  In particular, D.C. law requires a "continuing corporate presence in the forum . . . directed at advancing the corporation's objectives."  *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981); *accord Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407, 409 (D.D.C. 1978).  Thus, a defendant "must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here."  *Gonzalez v. Internacional de Elevadores*, 891 A.2d 227, 233 (D.C. 2006).

As Plaintiffs acknowledge, Zeromax GmbH is a Swiss-registered company.  Am. Compl. ¶ 6.  There is not a single factual allegation connecting Zeromax GmbH to the District of Columbia.  There is no allegation that it maintains an office or has any presence in the District of Columbia.  In fact, Plaintiffs themselves identify Uzbekistan, Russia, and Ukraine as the locations of Zeromax GmbH's representative offices.  *Id.* ¶ 40.  Zeromax GmbH is not subject to

the Court's general jurisdiction under § 13-334(a) because **it has no *"continuing corporate presence"*** or any presence whatsoever in the District of Columbia.  *AMAF Int'l Corp.*, 428 A.2d at 851.

Plaintiffs' sole theory of this Court's general jurisdiction over Zeromax GmbH hinges on the conclusory allegation that "[u]pon information and belief, Zeromax Group, Inc., is an agent or alter ego of the remaining Defendants in that the activities of Zeromax Group, Inc. were of such a character as to amount to doing the business of the other entities and in such a way as to disregard their separate structures."  Am. Compl. ¶ 10.  This theory must fail because, as Plaintiffs allege, Zeromax Group had been dissolved for over a year before this action was commenced against Zeromax GmbH on September 1, 2006 (Am. Compl. ¶ 3) and *in personam* jurisdiction is generally determined as of the commencement of the action.  *See In re Orshansky*, 804 A.2d 1077, 1091-92 (D.C. 2002).  Accordingly, at the time this action was brought against Zeromax GmbH, Zeromax Group had no "continuing corporate presence" anywhere, let alone in the District of Columbia, and hence no conduct that could be imputed to Zeromax GmbH for jurisdictional purposes.  *See* Del. Code Ann. tit. 8, § 278 (2006) (providing that, upon dissolution, a corporation no longer exists "for the purposes of continuing the business for which [it] was organized").

Even assuming Zeromax Group has a "continuing corporate presence," Plaintiffs fail to offer any factual allegations to warrant this Court's departure from the rule that a "corporation's contacts with a forum may not be attributed to affiliated corporations" for the purposes of establishing personal jurisdiction.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 48 (D.D.C. 2003) (dismissing case for lack of personal jurisdiction where complaint was devoid of any allegations tending to demonstrate that any of the non-resident defendants so dominated their

affiliate with purported D.C. contacts to warrant extending those contacts to the non-resident affiliates).

Plaintiffs offer only "bare allegation[s] . . . of agency," which are "insufficient to establish personal jurisdiction." *First Chicago Int'l*, 836 F.2d at 1378-79 (granting motion to dismiss where plaintiffs failed to allege any specific facts connecting Jordanian defendant with D.C. through a purported agency relationship with a D.C. bank). Plaintiffs allege only that Zeromax GmbH and Zeromax Group have the "same logo" (Am. Compl. ¶ 40a) and that each entity's website advertises the same accomplishment regarding a 2003 gas pipeline project (Am. Compl. ¶ 40c). These allegations are insufficient to warrant further consideration of an alter-ego theory of personal jurisdiction in this case. *See AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 91 (D.D.C. 2004) (holding that plaintiffs failed to show that Newmont Peru is the alter ego of Newmont USA where plaintiffs "only presented the conclusory statement that 'upon information and belief, Newmont Peru is simply a shell that acts for Newmont USA'" and that "'Newmont Peru has no physical assets separate and apart from Newmont USA, except a desk and chair located in Lima, Peru'").

Moreover, as alleged, Zeromax Group was dissolved on August 2, 2005, less than one month after Zeromax GmbH was formed in July 2005. Am. Compl. ¶¶ 3, 6. Attribution of Zeromax Group's purported contacts with the District of Columbia to Zeromax GmbH for purposes of general jurisdiction, based on less than a month of co-existence, would be extraordinary at best.

### B.    Specific Jurisdiction Is Lacking

To establish specific jurisdiction under the District of Columbia long-arm statute, Plaintiffs must allege facts to show that Zeromax GmbH: (1) "transact[s] business" in the District of Columbia, or (2) caused tortious injury in the District of Columbia "by an act or omission

outside the District of Columbia if [Zeromax GmbH] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code §§ 13-423(a)(1), (a)(4) (2001). Further, the claims must "aris[e] from" these alleged contacts with the District of Columbia. *Id.* § 13-423(b).

By Plaintiffs' own allegations, Plaintiffs' claims do not arise from any alleged contacts with the District of Columbia, but rather from events alleged to have taken place entirely in Uzbekistan. Am. Compl. ¶¶ 29-31, 45. Moreover, Plaintiffs' scant allegations relating to Zeromax GmbH's purported contacts with the District of Columbia are bare and conclusory and thus are insufficient to support an exercise of specific jurisdiction over Zeromax GmbH. Am. Compl. ¶ 11; *see First Chicago Int'l*, 836 F.2d at 1378-79 (bare allegations of personal jurisdiction are insufficient).

Plaintiffs' own allegations demonstrate that their claims do not arise from either (i) any transaction of business in the District of Columbia during this less-than-one-month time period, or at any other time, or (ii) any tortious injury in the District of Columbia. D.C. Code § 13-423(b). Indeed, the acts and injury about which Plaintiffs complain are all alleged to have occurred in Uzbekistan. Am. Compl. ¶¶ 29-31 (describing Uzbekistan's judicial proceedings in Uzbekistan that fully divested ROZ Trading of its interests in CCBU, an Uzbek entity). Likewise, Plaintiffs' allegations relating specifically to the Zeromax Defendants surround Uzbekistan's 2004 privatization sale whereby the Zeromax Defendants — allegedly through Muzimpex, an Uzbek-registered limited liability company — purportedly purchased the State-owned property at issue in Uzbekistan. Am. Compl. ¶ 45. Thus, none of Plaintiffs' claims arose from any transaction of business or tortious injury in the District of Columbia.

Moreover, for the same reasons as stated above, the Amended Complaint is devoid of any facts to support the assertion that Zeromax GmbH "transacted business" indirectly through Zeromax Group in the District of Columbia. *See* D.C. Code § 13-423(a)(1); *AGS Int'l Servs. S.A.*, 346 F. Supp. 2d at 91 (conclusory allegations that one defendant is a shell of another are insufficient for jurisdictional purposes); *Atlantigas Corp.*, 290 F. Supp. 2d at 48 (complaint devoid of allegations of sufficient domination to warrant imputing one defendant's D.C. contacts to corporate affiliates for personal jurisdiction). Even if Plaintiffs had adequately alleged an alter-ego relationship between Zeromax Group and Zeromax GmbH (which they have not), at best, only one month of purported contacts with the District of Columbia (July – August 2, 2005) could be attributed to Zeromax GmbH. Am. Compl. ¶¶ 3, 6.

In addition, specific jurisdiction still would be lacking because Plaintiffs' allegations are insufficient under Uzbek law to warrant an attribution of Muzimpex's alleged acts (Am. Compl. ¶ 45) to Zeromax GmbH or any other Zeromax Defendant.[2] Plaintiffs allege only "[u]pon information and belief" that the Zeromax Defendants "control the activities of Muzimpex" and "Muzimpex does not have independent management aside from that provided by Defendants." Am. Compl. ¶ 42. Such conclusory allegations are wholly insufficient to warrant this Court's disregard of Muzimpex's corporate form. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."); *W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C.

---

[2] Given that the property in question is located in Uzbekistan, that Muzimpex is organized under the laws of Uzbekistan, and that all of Muzimpex's acts as set forth in the Amended Complaint are alleged to have occurred solely in Uzbekistan, Uzbek law applies to determine attribution as between Muzimpex and Zeromax GmbH. Restatement (Second) of Conflict of Laws § 145 (1971); *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995) (noting that in a tort action a court considers, *inter alia*, the place where the injury and the conduct causing the injury occurred and the place where the parties' relationship is centered).

Cir. 2001) (deciding that the court need not accept legal conclusions in the form of factual allegations).

Moreover, such allegations are entirely without foundation. *See Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (explaining that "[i]n determining whether a factual basis for personal jurisdiction exists . . . [t]he court need not, however, treat all of the plaintiff's allegations as true"). Muzimpex is a separately incorporated Uzbek-registered limited liability company that was founded and operates in accordance with Uzbek law, including the Law "On Limited and Additional Liability Companies," No. 310-II dated December 6, 2001 ("Law On LLCs"). *See* Declaration of Uzbek Law by Azamat R. Fayzullaev ("Fayzullaev Decl.") dated November 6, 2006, ¶¶ 4-12.[3]  Pursuant to the Law on LLCs, the constitutive documents required for the establishment of a limited liability company include the foundation agreement and the company charter (collectively, "Foundation Documents"). *Id.* ¶ 5. The foundation agreement is a contract made among the shareholders of the limited liability company regulating *inter alia* their respective rights and obligations, whereas the charter is a document of the company itself that defines *inter alia* its shareholders, respective share ownership, and charter fund amount. *Id.*

The State registration of limited liability companies with foreign investment is carried out by the Ministry of Justice of the Republic of Uzbekistan ("MOJ"). *Id.* ¶¶ 4, 7. Upon review of the requisite application and supporting documents, the MOJ issues the limited liability company a Certificate on State Registration and returns the company's Foundation Documents certified by

---

[3] The Declaration of Uzbek Law by Azamat R. Fayzullaev is submitted pursuant to Rule 44.1 of the Federal Rules of Civil Procedure to assist in the Court's consideration of Uzbek legal issues. Certain exhibits attached to the Fayzullaev Declaration are unofficial English translations of Uzbek and Russian-language documents. The Zeromax Defendants are prepared to submit official translations of these documents upon the Court's request.

the seal of the MOJ. *Id.* ¶ 7. After such State registration, the limited liability company becomes a legal entity. *Id.*

In February 2003, Zeromax LLC, a now-defunct limited liability company organized and dissolved under the laws of the State of Delaware in the United States of America (*see* Am. Compl. ¶ 5), and RTPF-Tijorat ("Tijorat"), an Uzbek state-owned food distribution company, formed the Uzbek-American agro industrial joint venture Muzimpex JV ("Muzimpex") (*see* Fayzullaev Decl. Ex. C (attaching Muzimpex 2003 Charter)). On February 12, 2003, Zeromax LLC and Tijorat executed new Foundation Documents for Muzimpex. *See id.* On February 17, Muzimpex applied to the MOJ for registration and on February 28, the MOJ duly registered Muzimpex as an Uzbek-American limited liability company. Fayzullaev Decl. Ex. B (attaching Muzimpex 2003 Certificate of Registration, dated Feb. 28, 2003).

On October 11, 2005, Zeromax GmbH, which acquired Zeromax LLC's interest in Muzimpex (*see* Am. Compl. ¶ 6), and Tijorat executed new Foundation Documents for Muzimpex (*see* Fayzullaev Decl. Ex. D (attaching Muzimpex 2005 Charter)). On October 27, 2005, Muzimpex applied to the MOJ for registration and on November 7, 2005, the MOJ duly registered Muzimpex as an Uzbek-Swiss limited liability company. *See* Fayzullaev Decl. Ex. E (attaching Muzimpex 2005 Certificate of Registration, dated Nov. 9, 2005).

Both Muzimpex's initial charter and its 2005 charter expressly provide that Muzimpex was established pursuant to Uzbek law. *See id.* Exs. C (Muzimpex 2003 Charter, art. 1) & D (Muzimpex 2005 Charter, art. 1). The Muzimpex charters also set forth in detail the business activities of Muzimpex including, *inter alia*, the manufacturing, processing, storage and sales of agricultural products. *See id.* Exs. C (Muzimpex 2003 Charter, art. 3) & D (Muzimpex 2005 Charter, art. 3). Muzimpex maintained and still maintains its own offices and facilities at 11,

Loyihachi Street, Nazarbek, Zangiota District, Tashkent Region, Republic of Uzbekistan, 702043.  *See id.* Exs. C (Muzimpex 2003 Charter, art. 2.1.3) & D (Muzimpex 2005 Charter, art. 2.1.3).  Thus, Muzimpex's current status is that of an Uzbek-registered limited liability joint venture company between Zeromax GmbH and Tijorat established in accordance with Uzbek law and duly registered with the MOJ.

In short, Muzimpex and the Zeromax Entities were and are separate and distinct corporate entities.  The Amended Complaint fails to allege any basis from which to attribute Muzimpex's activities, including the acquisition of the CCBU shares, to Zeromax GmbH or any Zeromax Defendant.  Accordingly, the Amended Complaint must be dismissed against Zeromax GmbH for lack of personal jurisdiction.

## III. THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS

### A. The Act of State Doctrine Precludes This Court's Inquiry Into The Validity Of A Foreign State's Acts Taken Within Its Own Territory

"The act of state doctrine 'precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.'"  *World Wide Minerals, Ltd. v. Kazakhstan*, 296 F.3d 1154, 1164 (D.C. Cir. 2002) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)); *accord Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977) (holding that the examination of Libya's motives for property seizure as required to prove causal connection between defendant's alleged acts and plaintiffs' injury inevitably entailed consideration of the validity of the government's acts and was nonjusticiable under the act of state doctrine).  The act of state doctrine is not simply a doctrine of abstention, but serves as "a rule of decision for the courts of this country, which requires that in the process of deciding a case, the acts of foreign sovereigns taken within their

own jurisdictions shall be deemed valid." *World Wide Minerals*, 296 F.3d at 1165 (internal citations and quotations omitted).

The act of state doctrine is premised on principles of "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." *Id.* (quoting *Sabbatino*, 376 U.S. at 308) (internal quotations omitted).[4]    Parties, accordingly, must obtain redress of grievances arising from acts of state through diplomatic channels rather than the courts. *See Republic of Austria v. Altmann*, 541 U.S. 677, 700 n.20 (2004) ("[R]edress of grievances . . . must be obtained through diplomatic channels."); *Sabbatino*, 376 U.S. at 416 ("Redress of grievances . . . must be obtained through the means open to be availed of by sovereign powers as between themselves.").

ROZ Trading's claims against the Zeromax Defendants are wholly based on the alleged sovereign acts of Uzbekistan: (1) Uzbekistan's judicial, regulatory and other official acts resulting in the removal of ROZ Trading's interest in CCBU and the transfer of that interest to the State, which are final and binding under Uzbek law (Fayzullaev Decl. ¶¶ 13-25); and (2) Uzbekistan's subsequent privatization of the State's interest in CCBU through the sale of Uzpishcheprom's shares in CCBU to Muzimpex.  To adjudicate ROZ Trading's claims against the Zeromax Defendants, therefore, this Court would be required to pass judgment on the validity of these sovereign acts of state, which it cannot do under the act of state doctrine.

---

[4] The principles of sovereignty and respect for a state's acts within its own sovereign territory are well-established principles of customary international law.  "[C]ustomary international law, while not mentioned explicitly in the supremacy clause, [is] also federal law and as such [is] supreme over state law . . . Customary international law is considered to be like common law in the United States but it is federal law.  A determination of international law by the Supreme Court is binding on the States and on State Courts."  Restatement (Third) of Foreign Relations § 111; § 111 cmt. d; § 112(2).  "Customary international law, like other federal law, is part of the 'laws . . . of the United States.'"  *Id.* § 111 cmt. e.

**B.**    **The Act of State Doctrine Precludes This Court From Reviewing Uzbekistan's Acts Resulting In The Removal Of ROZ Trading's Interest in CCBU**

**1.**    **Uzbekistan's Judicial Actions Resulting In The Removal Of ROZ Trading's Interest In CCBU Are Not Reviewable By This Court**

Plaintiffs allege that their interests in CCBU were removed by judicial action initiated by Uzbekistan pursuant to Uzbek law.  Am. Compl. ¶¶ 29-31.  To adjudicate Plaintiffs' claims, therefore, this Court would be required to invalidate a series of final and binding judicial decisions of the Uzbek courts (including two from the Supreme Economic Court of the Republic of Uzbekistan, a court of last resort) resulting from actions initiated by Uzbekistan to enforce its laws, decrees, and regulations pertaining to companies operating within its territories.  The act of state doctrine bars this Court from sitting in judgment of those sovereign acts.  *See Philippine National Bank v. U.S. Dist. Ct. of Hawaii*, 397 F.3d 768, 772-73 (9th Cir. 2005) (foreign judgment constituted act of state); *see also Sabbatino*, 376 U.S. at 415, n.17 ("An inquiry by United States courts into the validity of an act of an official of a foreign state under the law of that state would not only be exceedingly difficult but, if wrongly made, would be likely to be highly offensive to the state in question."); *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1226-28 (9th Cir. 2006) (holding that district court did not have authority to second-guess French court orders and should have deferred to the Executive Branch to assess the consequences of France's broad policy against hate speech).

**a.**    **Uzbekistan's Anti-Monopoly Proceedings**

The first judicial proceeding affecting ROZ Trading's interest in CCBU was brought against CCBU by the State Committee for the Demonopolization and Development of Competition of the Republic of Uzbekistan (the "State Anti-Monopoly Committee").    *See* Fayzullaev Decl. ¶¶ 14-15 & Ex. F (attaching the February 5, 2002 decision of the Supreme

Economic Court of the Republic of Uzbekistan affirming reduction of ROZ Trading's interest in CCBU for anti-monopoly law violations).[5]    The State Anti-Monopoly Committee's petition sought to invalidate certain ROZ Trading capital contribution and share purchase transactions in CCBU that were made without prior approval of the Committee, in violation of Uzbek anti-monopoly laws.  Fayzullaev Decl. ¶ 14 & Ex. F.  In a February 5, 2002 ruling, the Supreme Economic Court, affirming the lower court's decision, invalidated ROZ Trading's unapproved share transactions, thereby reducing ROZ Trading's interest in CCBU.  *See* Fayzullaev Decl. ¶ 14 & Ex. F.  That decision is final and binding.  Fayzullaev Decl. ¶ 15.

### b.    Uzbekistan's Liquidation Proceedings

In a separate judicial decision dated September 11, 2002, the Supreme Economic Court upheld a lower court decision removing ROZ's remaining participatory interest in CCBU to pay ROZ (Uzbekistan)'s debts to the State budget.  *See* Fayzullaev Decl. ¶ 16-17 & Ex. G (attaching September 11, 2002 decision of the Supreme Economic Court of the Republic of Uzbekistan). These proceedings were initiated at the behest of Uzbekistan to enforce its laws, decrees, and regulations, specifically to liquidate ROZ (Uzbekistan) for violating Uzbek charter capital requirements, and to recoup ROZ (Uzbekistan)'s debts to the State resulting from unlawful actions by ROZ management.  Fayzullaev Decl. ¶ 16 & Ex. G; *see also* Am. Compl. ¶ 30 (noting that the proceedings "were deliberately initiated by Uzbekistan" by petition of the Ministry of Justice).  That decision is final and binding.  Fayzullaev Decl. ¶ 17.

*    *    *

Both the February 5, 2002 and the September 11, 2002 Supreme Economic Court's decisions are final, legally binding, valid, and enforceable under Uzbek law.  Fayzullaev Decl.

---

[5] Exhibit F to the Fayzullaev Declaration includes an English translation of the February 5, 2002 decision that ROZ submitted as an exhibit in the Vienna arbitration.  The Zeromax Defendants reserve the right to submit a competing translation, should that become necessary in this case.

¶¶ 15, 17.   As in *Philippine National Bank*, these judicial decisions constitute official acts of state beyond the review of this Court.   397 F.3d at 773-74.   In *Philippine National Bank*, the Ninth Circuit held that the district court violated the act of state doctrine by effectively deeming a Philippine forfeiture order invalid when the district court entered a contempt order against the Bank for complying with the foreign order.   *Id.* at 775.   The Ninth Circuit held that the Philippine judgment was an act of state and that there was no question "that the judgment of the Philippine Supreme Court gave effect to the public interest of the Philippine government" and that "the [forfeiture] action [was] initiated by the Philippine government pursuant to its 'statutory mandate to recover property allegedly stolen from the treasury.'"   *Id.* at 773.   The Ninth Circuit further held that the "Republic's 'interest in the [enforcement of its law does not] end at its borders . . . .'"   *Id.*

Similarly, the February 5, 2002 and the September 11, 2002 Uzbek judicial decisions were initiated at the behest of the State in accordance with Uzbek law to give effect to the public interest of the Uzbek government, namely to enforce Uzbekistan's laws and to recover debts due to the Uzbek National Treasury.

### 2.   Uzbekistan's Official Decree Transferring ROZ's CCBU Interest To The State Is Not Reviewable By This Court

This Court's adjudication of ROZ Trading's claims would also require that the Court determine the validity of an official sovereign decree of Uzbekistan stemming from the State-initiated Uzbek judicial proceedings.   Following the judicial removal of ROZ's CCBU shares to pay ROZ (Uzbekistan)'s debts to the State, the State formally acquired possession of those CCBU shares pursuant to Decree No. 420 of the Cabinet of Ministers of the Republic of Uzbekistan, dated July 5, 2002 ("Decree No. 420").   *See* Fayzullaev Decl. ¶ 18-20 & Ex. H (attaching Decree No. 420).   Decree No. 420 endorsed the proposal of the State Committee of

the Republic of Uzbekistan on Management of State Property ("SPC"), the Ministry of Finance, Uzpishcheprom, and ROZ (Uzbekistan)'s liquidation committee to transfer ROZ's interest in CCBU to the State. Fayzullaev Decl. Ex. H. By operation of Decree No. 420, ROZ Trading's shares in CCBU were transferred to the State, through the State-owned entity Uzpischcheprom. Fayzullaev Decl. ¶¶ 19-20 & Ex. H.

As a valid, binding, and enforceable decree of the Cabinet of Ministers under Uzbek law (Fayzullaev Decl. ¶¶ 18-20), Decree No. 420 constitutes an act of state that cannot be scrutinized by this Court. *See World Wide Minerals*, 296 F.3d at 1167 (Kazakhstan's transfer of plaintiff's shares to state-owned entity pursuant to an official decree constituted a classic act of state).

### 3. Uzbekistan's Regulatory Acts (Or Alleged Expropriation) Are Not Reviewable By This Court

Courts have repeatedly held that regulatory acts of states, like the judicial proceedings brought by Uzbekistan against ROZ Trading and the subsequent Cabinet of Ministers Decree, constitute sovereign acts that may not be judged by the courts of this country. *See Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1326 (11th Cir. 2003) (holding that a government's regulation of the market, use of police power, or other activities requiring state authority are public acts); *Drexel Burnham Lambert Group v. Comm. of Receivers*, 12 F.3d 317, 330, n. 4 (2d Cir. 1993) (decisions made by government agency through its essentially judicial role of managing and liquidating assets of insolvent bank were inherently sovereign acts); *Week v. Cayman Islands*, No. 91-2965, 1992 WL 372241, at *3 (7th Cir. Dec. 16, 1992) ("The chartering, oversight and regulation of companies are core governmental functions. No private person can engage in such inherently governmental functions."); *Montanez Miranda v. Banco Progreso, S.A.C.A.*, 973 F. Supp. 89, 93-94 (D.P.R. 1997) (holding Venezuelan government

agency's acts of management of defendant companies' assets under Emergency Financials Law of Venezuela were "quintessential governmental acts").

Moreover, even assuming Uzbekistan's sovereign acts of reducing and later acquiring ROZ Trading's interests in CCBU could be characterized as an expropriation (as opposed to regulatory action), it is well-established that an alleged expropriation presents "the classic act of state addressed in the case law." *World Wide Minerals*, 296 F.3d at 1165-66 (holding that act of state doctrine barred court from second-guessing Kazakhstan's sovereign decision to expropriate and transfer assets to Kazatomprom, a state-owned entity); *see also Sabbatino*, 376 U.S. at 428 ("[T]he (Judicial Branch) will not examine the validity of a taking of property within its own territory by a foreign sovereign government."); *accord Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203, 206 (D.C. Cir. 1987) (holding that claims for compensation arising from the nationalization of factories in Czechoslovakia presented a "prime case" for the application of the act of state doctrine).[6]  It was Uzbekistan's sovereign act in 2002 that deprived Plaintiffs of their shares, long before any alleged transfer to Muzimpex in 2004.

The act of state doctrine precludes this Court's review of Uzbekistan's regulatory (or expropriatory) acts, regardless of whether they were lawful or unlawful.  *See United States v. Merit*, 962 F.2d 917, 921 (9th Cir. 1992) (holding act of state doctrine precluded examination of South Africa's failure to issue a warrant under its extradition statute, because "[e]ven if the Republic did disregard its own laws in failing to issue a warrant of extradition, this court cannot question the validity of South Africa's domestic actions"); *West v. Multibanco Comermex, S.A.*,

---

[6] Most fundamentally, ROZ, an Uzbek subject, has no right under international law to assert these claims against its own State.  *Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 101 (D.D.C. 2005) (affirming that "expropriation by a sovereign state of the property of its own nationals does not implicate settled principles of international law") (quotations omitted).  Moreover, ROZ, the Cayman entity, cannot and does not cite to any FCN Treaty or BIT that permits it to make a claim for expropriation in the U.S. Courts.  Further, a claim for expropriation is not one made against the investor in the third-party purchaser but, rather, against the State.

807 F.2d 820, 828 (9th Cir. 1987) (deciding that "[the trial court] may not examine the actual operations of the regulatory system to the extent that such inquiry would directly implicate the failure (whether willful or negligent) of officers of the foreign state to enforce their own laws"); *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 362 (1993) ("Such acts as legislation, or the expulsion of an alien, or a denial of justice, cannot be performed by an individual acting in his own name. They can be performed only by the state acting as such.") (quoting Hersch Lauterpacht, *The Problem of Jurisdictional Immunities of Foreign States*, 28 Brit. Y. B. Int'l L. 220, 225 (1952)); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 24 (D.D.C. 1998) (holding "[a]n act which is acknowledged to be within a state's discretion, although it violates federal and international law, can still be a valid act for the purposes of the Act of State doctrine").

Because Plaintiffs' claims against the Zeromax Defendants are predicated entirely on nonjusticiable acts of state, the Amended Complaint should be dismissed outright under the act of state of doctrine.

### C.    The Act Of State Doctrine Also Precludes This Court's Review Of Uzbekistan's Privatization Of Its State-Owned Interest In CCBU

Separate and apart from the above 2002 sovereign acts removing ROZ Trading's interests in CCBU in accordance with Uzbek law, Plaintiffs allege that in 2004 Uzbekistan sold their former interest in CCBU through a State-owned privatization authority.   Am. Compl. ¶ 45. Pursuant to its inherent authority to privatize State-owned property, Uzbekistan, through the SPC, sold Uzbekistan's interest in CCBU to Muzimpex in accordance with Uzbek privatization law.  *See* Fayzullaev Decl. ¶¶ 21-25 (describing Uzbek denationalization and privatization laws). The SPC is an Uzbek governmental body responsible for implementing Uzbekistan's denationalization and privatization procedures.  *Id.* ¶¶ 22-23.  It is accountable to the Cabinet of Ministers of the Republic of Uzbekistan, and derives its authority from the Constitution and the

laws of Uzbekistan, decrees and orders of the President of Uzbekistan, and decrees and resolutions of the Cabinet of Ministers. *Id.* ¶ 22. The SPC's decisions are binding on ministries, departments, concerns, associations, organizations, institutions, and local government authorities. *Id.* ¶ 23.

Pursuant to its sovereign authority, Uzbekistan, through the SPC, issued an order dated September 13, 2004 (the "SPC Order"), approving the sale of the State-owned participatory interest in CCBU to Muzimpex. *Id.* ¶¶ 24-25 & Ex. I (attaching official SPC Order evidencing sale of State-owned interest in CCBU to Muzimpex in accordance with Uzbek law). That Order, like Decree No. 420, constitutes an official state act of Uzbekistan, the validity of which is not subject to challenge in U.S. courts. *World Wide Minerals*, 296 F.3d at 1165 ("[T]he acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.") (internal citations and quotations omitted). Accordingly, the act of state doctrine bars this Court from questioning the validity of the alleged privatization, separate and apart from any alleged expropriation.

Moreover, when a third party purchases expropriated property from a foreign sovereign, the prior owner of that property cannot sue the third-party purchaser because the third party's title is derived from an act of state. *See Oetjen v. Cent. Leather Co.*, 246 U.S. 297 (1918) (holding that former owners of private property expropriated during the Mexican revolution could not sue the new owners of the property, because the new owners' titles derived from an act of state); *Ricaud v. Am. Metal Co.*, 246 U.S. 304 (1918) (same); *see also Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006). In *Glen*, the Cuban government expropriated plaintiffs' beachfront property in conjunction with the Cuban revolution in 1959. *Id.* at 1252. Defendant Club Mediterranee subsequently executed a joint venture with the Cuban

government to construct and operate a luxury hotel on the property that the plaintiffs had owned. *Id.* The plaintiffs brought claims against Club Mediterranee for unjust enrichment and trespass to land. *Id.* at 1253. In affirming the district court's dismissal of their claims, the Eleventh Circuit held that plaintiffs' claims were predicated on the Cuban government's confiscation and were barred by the act of state doctrine. *Id.*

In sum, because the Amended Complaint would require this Court to examine the validity of Uzbekistan's official acts undertaken pursuant to Uzbek law — i.e., Uzbek judicial decisions, Decree No. 420, and the SPC Order — the Amended Complaint must be dismissed in its entirety under the act of state doctrine.

## IV.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE ZEROMAX DEFENDANTS

Article III of the Constitution restricts federal courts to adjudicating actual "cases" and "controversies," a restriction that requires litigants to have standing to invoke the power of a federal court. *Allen v. Wright*, 468 U.S. 737, 750 (1984). The standing doctrine bars litigants from asserting the legal rights of others, and it mandates that federal courts adjudicate only claims falling within the zone of interests protected by the law invoked. *Id.* at 750-51. Standing is an absolute prerequisite: "Those who do not possess Article III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982).

Standing requires Plaintiffs to show that they suffered injury to their interests in CCBU through the alleged misconduct of the Zeromax Defendants. *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984) ("[A] plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.") (internal quotations omitted). Plaintiffs cannot do so. As alleged, Plaintiffs' interest in CCBU was

extinguished by Uzbekistan's alleged expropriation of that interest in 2002, some **two years**

**before** Muzimpex — the company in which certain of the Zeromax Defendants are alleged to

own (or to have owned) some shares — is even alleged to have acquired an interest in CCBU

from the State.  *See* Am. Compl. ¶ 31 (alleging that on September 11, 2002, the "Supreme

Economic Court of Uzbekistan approved both the liquidation of ROZ (Uzbekistan) and the

seizure of ROZ's remaining interest in CCBU"); *Id.* ¶ 45 (alleging that Defendants, through

Muzimpex, only became associated with the shares in "late 2004").  Thus, any injury to Plaintiffs

was caused by Uzbekistan — **not** the Zeromax Defendants — and the Amended Complaint is

devoid of any allegation that the Zeromax Defendants participated in the alleged expropriation in

the first instance.

Moreover, as stated above, under D.C. choice-of-law principles, Uzbek law would apply

to Plaintiffs' claims.  *Long v. Sears Roebuck and Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995) (noting

that in a tort action a court considers, *inter alia*, the place where the injury and the conduct

causing the injury occurred, and the place where the parties' relationship is centered).  Under

Uzbek law, title to expropriated property passes to the State, along with all of the rights attendant

to ownership, and former owners have no interest in the property itself after expropriation.

Fayzullaev Decl. ¶ 20.  Without any ownership interest in CCBU, Plaintiffs could not be injured

as a result of the privatization sale.  Accordingly, Plaintiffs' claims against the Zeromax

Defendants must be dismissed for lack of standing.

This result also accords with principles of international law, which form part of U.S. law.

*See* Restatement (Third) of Foreign Relations Law § 111 (providing that international law and

agreements are law of the United States).[7]  Plaintiffs' claims against the Zeromax Defendants

---

[7] International law is to be determined and interpreted by U.S. courts with reference to the sources and evidence of international law cited in §§ 102 and 103 with a particular emphasis on the decisions of international tribunals.

stem from Uzbekistan's alleged expropriation of their property without compensation.  Am. Compl. ¶¶ 29-31.  Assuming that Uzbekistan's sovereign acts constituted an expropriation — as opposed to non-compensable regulatory action — ROZ Trading has no standing to assert its claims against the Zeromax Defendants.  This conclusion is mandated by the principle of territorial sovereignty and the *lex situs* rule.  The principle of territorial sovereignty (which is a founding principle upon which the act of state doctrine is based) is founded on mutual respect by courts of each nation for the sovereignty of other nations, other nations' ability to act within their sovereign territory, and the desirability of reciprocity in this regard.  *See* 1 Oppenheim's International Law 365-71 (9th ed. 1992).  Under this principle, Uzbekistan's alleged expropriation of a property interest located within Uzbekistan is entitled to recognition by the courts of other nations as a valid act of state.[8]

Further, under the private international law choice of law rule, the *lex situs* rule, any dispute as to the ownership rights in CCBU, an Uzbek entity, is governed by Uzbek law — the

---

Restatement (Third) of Foreign Relations Law §§ 111 cmt. e, 112 (1987).  Sources of international law are customary international law, international agreements and general principles common to the major legal systems of the world.  *Id.* § 102.  Evidence as to whether a rule has become a part of international law may be found in judgments and opinions of international judicial and arbitral tribunals; national judicial tribunals; the writings of scholars; and pronouncements by states that undertake to state a rule of international law, when such pronouncements are not seriously challenged by other states.  *Id.* § 103.

[8] *See Oetjen v. Central Leather Co.*, 246 U.S. 297, 303[5] (1918) (to permit the validity of the acts of one sovereign state to be reexamined and condemned by the courts of another would very certainly "imperil the amicable relations between governments and vex the peace of nations."); *see also Williams & Humberts Ltd. v. W & H Trade Marks (Jersey)* [1986] A.C. 368, 431, 433 (holding under English and international law that "an English court will recognise the compulsory acquisition law of a foreign state and will recognise the change of title to property which has come under the control of the foreign state and will recognise the consequences of that change of title.  The English court will decline to consider the merits of compulsory acquisition."); *Luther v. Sagor* [1921] 3 K.B. 532, 544 (court of appeal refused to declare that the original owners of goods expropriated by the Soviet government and later sold by that government to third-party purchasers in England had title to the goods, citing to the "law of nations," including the principles of "absolute independence of every sovereign authority" and "international comity"); *N. V. Verenigde v. Deutsch-Indonesische Tabak-Hadelsge-Sellschaft*, 28 I.L.R. 16, 27-28, 30-31 (1967) (Court of Appeals of Bremen) (affirming the international law principle of territorial sovereignty that most states recognize title arising from confiscations if the object of the confiscation is situated within the confiscating state).

law of the place where the property is situated.[9]  As stated above, under Uzbek law, title to expropriated property passes to the State, along with all of the rights attendant to ownership, and former owners have no interest in the property itself after expropriation.  Fayzullaev Decl. ¶ 20. Accordingly, by virtue of Uzbekistan's alleged expropriation, Plaintiffs' interest in CCBU was extinguished thereby precluding any claim of injury as a result of the privatization sale or any purported acts of the Zeromax Defendants under Uzbek or international law.

In short, Plaintiffs fail both the "injury" and "causation" prongs of the standing doctrine, and their asserted interest simply does not "fall within the zone of interests protected by the law invoked."  *Allen*, 468 U.S. at 751.  The Amended Complaint therefore must be dismissed for lack of standing.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As stated above, international law applies to Plaintiffs' claims.  The claims against the Zeromax Defendants are predicated on allegations that Uzbekistan confiscated and disposed of the ownership interest of a foreign national within its territory without compensation.  Am. Compl. ¶¶ 29-31.  Such claims are governed by international law.  Restatement (Third) of Foreign Relations Law § 712 (1987) ("A state is responsible under international law for injury resulting from (1) a taking by the state of property of a national of another state that (a) is not for a public purpose, (b) is discriminatory, or (c) is not accompanied by just compensation.").

International law is part of U.S. law.  *The Paquete Habana*, 175 U.S. 677, 700 (1900) (holding that the "customs and usages of civilized nations," i.e., customary international law, are "part of our law, and must be ascertained and administered by the courts of justice of appropriate

---

[9] *See* Christopher Staker, *Public International Law And The Lex Situs Rule In Property Conflicts And Foreign Expropriations*, 58 BRIT. Y.B. INT'L LAW 151, 163 (1988) (stating that "the creation, modification, and termination of rights in individual tangible physical things are determined by the law of the place where the thing is physically situated").

jurisdiction"). Indeed, under the Supremacy Clause of the U.S. Constitution, international law takes priority over the law of the States — in this case the District of Columbia. *See* U.S. Const. art. VI, cl. 2; Restatement (Third) of Foreign Relations Law § 111(1) (stating that international law and international agreements of the United States are the law of the United States and supreme over the law of the several States), § 111 cmt. d ("International agreements of the United States . . . and customary international law, while not mentioned explicitly in the Supremacy Clause, are also federal law and as such are supreme over State law."); *see also United States v. Belmont*, 301 U.S. 324, 330-31 (1937) (refusing to consider New York state policy in a case applying international law, because under the supremacy clause "State Constitutions, state laws, and state policies are irrelevant to the inquiry and decision").

Under the international law principle of territorial sovereignty, Plaintiffs fail to state a claim for relief. Under this principle, Uzbekistan's sovereign acts of state regarding property within its own territory are deemed valid and are not subject to the judgment of this Court. This principle thus precludes claims against third-party purchasers of alleged expropriated property in Uzbekistan, because such claims are predicated on nonjusticiable acts of state. Indeed, under international law, ROZ Trading's remedy, if any, is against Uzbekistan and for compensation only. Restatement (Third) of Foreign Relations Law § 713 cmt. k (stating that the reparation for any taking in violation of § 712(1) is generally monetary compensation; restoration of ownership to the original owner is virtually unknown in expropriation cases).

Moreover, under the *lex situs* rule in international law, which points to Uzbek law, title vested in Uzbekistan at the time of the alleged expropriation and good title transferred to Muzimpex, the alleged third-party purchaser. Fayzullaev Decl. ¶ 20; *see also* Restatement (Second) of Conflict of Laws, Introductory Note to Ch. 7, Topic 1 (1971) ("[T]he rights and

liabilities of the parties in tort are said to be governed by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties."). Thus Plaintiffs' claims also fail under Uzbek law.

Even if District of Columbia substantive law applied for the limited purposes of this motion, Plaintiffs still have failed to state claims. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when, as here, the applicable statute of limitations has expired and Plaintiffs cannot prove any set of facts in support of their claims entitling them to relief. *United States v. Martin-Banker Aircraft Co.*, 389 F.3d 1251, 1260 (D.C. Cir. 2004) (citing *Conley v. Gibson* 355 U.S. 41, 45-46 (1957)). In considering whether Plaintiffs have failed to state a claim, this Court should not accept inferences that "are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *W. Assocs. Ltd. P'ship*, 235 F.3d at 634 (quoting *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Further, Plaintiffs ask this Court to infer allegations against Zeromax GmbH, Zeromax Group, Zeromax LLC, and Zeromax Logistics based on general allegations against all of the Zeromax Defendants collectively. *See, e.g.*, Am. Compl. ¶¶ 9-11, 39, 42-48, 50, 58-59, 62, 65-66, 69-70, 73-74, 78, 80-81, 83 (making allegations as to "Defendants" generally). Such "grouping" or "lumping" allegations are insufficient. *See Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy th[e] minimum standard [under Fed. R. Civ. P. 8]."); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing claim where "all defendants [were] lumped together in a single, broad allegation" and holding that the "[p]laintiff must allege the basis of his claim

against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them."); *see also Browning v. Clinton*, 292 F.3d 235, 243-45 (D.C. Cir. 2002) (analyzing specific allegations against multiple defendants and affirming dismissal as to some but not as to others according to the sufficiency of the specific allegations against each individual defendant).

Plaintiffs' Amended Complaint fails to provide sufficient factual allegations to support the general, sweeping, and conclusory allegations made against the Zeromax Defendants. Indeed, rather than supporting Plaintiffs' claims against the Zeromax Defendants, in several instances Plaintiffs' factual allegations preclude them. *E.g., compare* Am. Compl. ¶ 31 (admitting Plaintiffs' ownership interest in CCBU was fully divested by September 2002) *with* Am. Compl. ¶ 77 (alleging Plaintiffs' "present ownership in the CCBU property"). Plaintiffs' claims against the Zeromax Defendants are thus doomed by their own allegations. *See Browning*, 292 F.3d at 242 (acknowledging that Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claims asserted) (citing 5A Charles A. Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1357 at 347-48 (2d ed. 1990)); *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("In some cases, it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible."); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 79 (D.D.C. 2003) (dismissing complaint because no "reasonable inferences" supporting claims could be drawn from factual allegations and where plaintiff's own factual allegations "render[ed] success on the merits impossible").

### A.    Plaintiffs' Claims Are Time-Barred

Plaintiffs admit that they were fully divested of their ownership interest in CCBU in September 2002. Am. Compl. ¶ 31 (alleging that on September 11, 2002, the "Supreme Economic Court of Uzbekistan approved both the liquidation of ROZ (Uzbekistan) and the

seizure of ROZ's remaining interest in CCBU").  Plaintiffs' injury with respect to their interest in CCBU thus was complete by September 2002.  Under the District of Columbia three-year statute of limitations, D.C. Code § 12-301(2), (3), (7), & (8) (2001), Plaintiffs' claims arose, if at all, in September 2002, and Plaintiffs should have asserted those claims no later than September 2005.  *See Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989) (applying three-year statute of limitations to bar conversion claim); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (applying three-year statute of limitations to tort and contract claims); *Forte v. Goldstein*, 461 A.2d 469, 472 (D.C. 1983) (holding that three-year statute of limitations had run for conversion claims); *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546-47 (D.C. 2002) (tortious interference claim barred under the three-year statute of limitations).  Plaintiffs cannot now be permitted to breathe new life into claims they should have brought prior to September 2005.

    **B.**    **The Amended Complaint's Allegations Against The Zeromax Defendants Do Not Support Any Valid Claim**

        **1.**    **Count I Fails To State A Claim For Breach Of Contract**

To state a claim for breach of contract, ROZ Trading must allege that: (1) a contract existed between ROZ Trading and the Zeromax Defendants; (2) ROZ Trading performed its obligations under the alleged contract; (3) the Zeromax Defendants breached that contract; and (4) ROZ Trading suffered damages due to that breach.  *See In re Belmar v. Garza*, 319 B.R. 748, 759-60 (Bankr. D.D.C. 2004).  ROZ Trading's claim for breach of contract fails because, by the Amended Complaint's own allegations, there was never any contract between ROZ Trading and any of the Zeromax Defendants.  *See* Am. Compl. ¶ 13 (admitting that the parties to the 1993 JVA did not include any of the Zeromax Defendants); *Kissentaner v. General Motors Corp.*, No. 93-7008, 1993 WL 483946, at *1 (D.C. Cir. Nov. 9, 1993) (per curiam) (holding contract claim

failed where complaint did not allege existence of contractual relationship between parties); *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (for an enforceable contract to exist under D.C. law, there must be both (1) agreement on all material terms and (2) an intention of the parties to be bound).

Plaintiffs' contention that all of the Zeromax Defendants, as purported third-party purchasers, "are required to agree to be bound by the [1993] JVA" (Am. Compl. ¶ 47) fails because the Amended Complaint admits that ***Muzimpex*** — not any of the Zeromax Defendants — purchased the CCBU shares ***from Uzbekistan*** — not ROZ Trading.  Am. Compl. ¶ 45 (alleging ***Muzimpex***'s acquisition of the CCBU shares from ***Uzbekistan***).  Therefore, as alleged, none of the Zeromax Defendants could be a purported "successor in interest" or "assignee" of ROZ Trading's interest in CCBU.  Am. Compl. ¶ 47.  Moreover, the Complaint fails to allege that any of the Zeromax Defendants in fact ever agreed to be bound by the terms of the 1993 JVA — only that they purportedly "[we]re required" to do so under Article 5.5 of the 1993 JVA. *Id.*; *see Jack Baker, Inc.*, 664 A.2d at 1238 (in order to form a binding agreement, "both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract").

As already established, the Amended Complaint does not allege a sufficient basis under Uzbek law, or even U.S. law, from which to attribute Muzimpex's alleged acquisition of the State's shares in CCBU to any of the Zeromax Defendants, let alone all of them.  *See AGS Int'l Servs. S.A.*, 346 F. Supp. 2d at 91 (plaintiffs failed to demonstrate alter ego relationship between affiliates by presenting only conclusory allegations); *see also* Fayzullaev Decl. ¶ 6.  Therefore, Plaintiffs' allegations do not support any theory upon which any of the Zeromax Defendants

could be deemed to have consented to be bound by the terms of the 1993 JVA by virtue of Muzimpex's alleged acquisition of shares in CCBU from the State.

Furthermore, as a matter of Uzbek law, Zeromax GmbH and Zeromax LLC, as alleged current and former shareholders in Muzimpex (Am. Compl. ¶¶ 5-6), cannot be held liable for Muzimpex's acts unless they caused the insolvency of Muzimpex through their own illegal conduct. *See* Fayzullaev Decl. ¶ 6. Neither the Uzbek Civil Code nor the Law on LLCs provides any other basis for liability of shareholders for acts of the company itself. *See id.*

Separately, under Uzbek law, the Zeromax Defendants could not have consented to be bound by the terms of the 1993 JVA because that agreement would have become null and void upon Muzimpex's acquisition of the CCBU shares from the State and the conclusion and registration of new CCBU foundation documents. *See* Am. Compl. ¶ 45 (describing Muzimpex's acquisition of the shares); Fayzullaev Decl. ¶ 8 (explaining that a company's original foundation documents become null and void upon the conclusion and registration of new foundation documents).

As admitted, ROZ Trading's rights under, and privity to, the 1993 JVA were extinguished by Uzbekistan *in September 2002*. Am. Compl. ¶ 31. Indeed, as a result of the 2002 Uzbek judicial proceedings, ROZ Trading had no standing under the 1993 JVA to deliver a legally enforceable "notice of termination" as it purported to do in 2005. According to Plaintiffs, Muzimpex acquired an interest in CCBU from Uzbekistan "*in or about late 2004*." *Id.* ¶ 45. Moreover, at no time does ROZ allege — and indeed it cannot — that any one of the Zeromax Defendants ever executed or directly became a party to the 1993 JVA.

In sum, at the time ROZ Trading purported to deliver its "notice of termination" in April 2005, the 1993 JVA was null and void, ROZ Trading had no standing under the 1993 JVA, and

the only CCBU participants in any contractual privity were Muzimpex, TCCEC, and Uzpishcheprom.  Am. Compl. ¶ 47; *see Erie Islands Resort & Marina v. Fed. Deposit Ins. Corp.*, No. Civ. A. 93-2180-LFO, 1994 WL 228982, at *1 (D.D.C. Apr. 23, 1994) (dismissing contract claim pursuant to Rule 12(b)(6) against defendant in its individual capacity where plaintiff offered no theory, nor could it, "that would allow it to sustain a claim for breach of contract against an entity with which it never was in privity of contract").  Therefore, the "notice of termination" did not trigger any obligation that the Zeromax Defendants were required to perform.

### 2.    Count II Fails To State A Claim For Tortious Interference

Under the law of the District of Columbia, to state a claim for tortious interference with business relations, a plaintiff must allege: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship on the part of the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage.  *Bowhead Info. Tech. Servs., LLC v. Catapult Tech.*, 377 F. Supp. 2d 166, 174 (D.D.C. 2005); *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 (D.D.C. 2004).

Plaintiffs' admission that their ownership interest in CCBU was fully divested by September 2002 is fatal to their claim for tortious interference with business relations.  Am. Compl. ¶ 31.  Thus, Plaintiffs' own allegations foreclose any claim that any Zeromax entity interfered with a valid relationship and that Defendants' interference terminated the relationship.  As the Amended Complaint admits, Defendants could not have interfered with ROZ Trading's purported business relationship because that business relationship was extinguished publicly by a sovereign judicial action some two years prior.  Am. Compl. ¶ 31.  Accordingly, Plaintiffs' claim for tortious interference must be dismissed.

### 3. Count IV Fails To State A Claim For Conversion

"Conversion is the unlawful exercise of ownership and dominion and control over the personal property of another in denial or repudiation of that person's right thereto." *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 106 (D.D.C. 2004); *Shulman*, 251 F. Supp. 2d at 170. Plaintiffs' conversion claim fails because: (i) even assuming Defendants possessed Plaintiffs' property (which they do not), such possession would not be "unlawful" as a result of the act of state doctrine; (ii) a claim for conversion cannot be sustained against a third-party purchaser of expropriated property; (iii) according to Plaintiffs' own allegations ***Defendants do not (nor have they ever) possessed*** any property belonging to Plaintiffs; and (iv) Claimant fails to allege any facts to prove Defendants proximately caused the alleged intentional deprivation of Plaintiffs' property.

### a. Plaintiffs Cannot Demonstrate That Any "Unlawful" Action Of The Zeromax Defendants Divested Them Of Their Property

A defendant cannot be liable for conversion unless it unlawfully possesses the plaintiff's assets. *See First Am. Bank, N.A. v. District of Columbia*, 583 A.2d 993, 998 (D.C. 1990) (dismissing alleged conversion claim against District of Columbia when city seized property in accordance with statutory grant of authority). By Plaintiffs' own admissions, Muzimpex purportedly acquired ROZ Trading's ownership interest in CCBU from the Uzbek state-owned privatization authority. Am. Compl. ¶ 45. Plaintiffs further allege that the purported unlawfulness of this acquisition stems from Uzbekistan's prior (and allegedly unlawful) court-approved seizure and foreclosure of ROZ Trading's shares. Am. Compl. ¶¶ 29-31.

Under Plaintiffs' theory of conversion, this Court would first need to pass judgment on the lawfulness of Uzbekistan's expropriation and subsequent privatization of ROZ Trading's shares before it could determine the legality of Defendants' alleged acquisition of the shares. *See*

*Glen*, 450 F.3d at 1255 (affirming dismissal of claims against third-party purchaser under act of state doctrine where resolution of claims wholly depended on questioning validity of Cuba's expropriation of plaintiffs' land). As stated above, the act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Sabbatino*, 376 U.S. at 401. Moreover, when the doctrine applies, as here, it serves as a "rule of decision" for this Court, which, in deciding this case, must deem Uzbekistan's sovereign acts lawful. *See Soc'y of Lloyd's v. Siemon-Netto*, 2006 WL 2252864, at *10, n.3 (D.C. Cir. Aug. 8, 2006) (citing *World Wide Minerals*, 296 F.3d at 1165); *see also Merit*, 962 F.2d at 921 (holding that international law precludes application of a state law to the contrary). Because the Court cannot adjudicate the central element of the lawfulness of possession, Plaintiffs' conversion claim must fail.

> **b.    A Claim For Conversion Cannot Be Sustained Against The Zeromax Defendants As Purported Purchasers Of Expropriated Property**

Plaintiffs' claims against the Zeromax Defendants stem from Uzbekistan's alleged expropriation of their property interest in the Uzbek joint venture, CCBU in violation of international law.[10] International law provides that ROZ Trading's remedy, if any, is against Uzbekistan and for compensation only. *See* Restatement (Third) of Foreign Relations Law § 712 (1987) (A *state* is responsible under international law for injury resulting from a taking by the state of property of a national of another state that is not for a public purpose or is discriminatory or is not accompanied by just compensation);[11] *id.* § 713 cmt. k (The reparation for any taking in

---

[10] The Fifth Circuit has refused to permit a litigant to re-characterize an unjust taking of property by a foreign sovereign as a state law conversion claim. *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985) (rejecting plaintiff's attempt to rephrase unjust taking claim as conversion in order to satisfy the tortious activity exception under the Foreign Sovereign Immunities Act).

[11] *See* Draft Articles on Responsibility of States for Internationally Wrongful Acts with Commentaries, Art. 31, *in* Report of the International Law Commission on the Work of Its Fifty-third Session, UN GAOR, 56th Sess., Supp.

violation of § 712(1) is generally monetary compensation; restoration of ownership to the original owner is virtually unknown in expropriation cases); *id.* Reporter's Note 8 (noting that contemporary cases for unlawful expropriation generally involve disputes about just compensation rather than restitution, and that governments generally accept and arbitrators generally award monetary compensation against the expropriating state).[12]

Moreover, because the Zeromax Defendants — as purported indirect third-party purchasers through Muzimpex — would have obtained good title from Uzbekistan to property located in Uzbekistan under Uzbek law (based on the principle of territorial sovereignty and the *lex situs* rule discussed above), no claims based on alleged unlawful possession can be sustained against them.[13]

        **c.**       **Plaintiffs Admit That The Zeromax Defendants Do Not Possess Their Interest In CCBU**

A valid claim for conversion requires that Defendants possess Plaintiffs' property, i.e., that they exercise "ownership and dominion and control" over such property. *See Calvetti*, 346 F. Supp. 2d at 106 (quoting Restatement (Second) of Torts § 222A cmt. d (1965) ("In each

---

[12] *See also Libyan American Oil Co. v. Libya*, 20 I.L.M. 1, 62-64 (1974) (rejecting claimant's request that its title to oil extracted under its concessions pursuant to the Libyan nationalization decree be restored, holding that the remedy is inconsistent with "respect due for sovereignty of the nationalizing state."); *BP Exploration Co. (Libya) v. Gov't of the Libyan Arab Rep.*, 53 I.L.R. 297, 337 (1974) (denying claimant's request for restitution holding that the remedy should only be used "as a vehicle for establishing the amount of damages" based on Libya's discriminatory repudiation of BP's concession contract).

[13] *See, e.g.*, Opinion of the Inter-American Juridical Committee in Response to Resolution AG/DOC .3375/96 of the General Assembly of the Organization, Entitled "Freedom of Trade and Investment in the Hemisphere," OAS Doc. CJI/SO/II/doc.67/96 rev. 5, 35 I.L.M. 1329 (1996) (Under international law, a "State does not have the right to attribute liability to nationals of third States for use of expropriated property located in the territory of the expropriating State where such use conforms to the laws of this latter State."); *see also* August Reinisch, *Widening the US Embargo Against Cuba Extraterritorially: A Few Public International Law Comments on the 'Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996'*, 7 Euro. J. Int'l L. 545, 558 (1996) (stating that "an expropriation, even if unlawful under international standards cannot be equated with 'stealing'" and no claim for conversion can be pled against a third party purchaser because "a State's confiscatory act will effect a transfer of title to the property involved.").

case the question to be asked is whether the actor has exercised such dominion and control over the chattel, and has so seriously interfered with the other's right to control it, that in justice he should be required to buy the chattel.")).  According to Plaintiffs' own allegations, Defendants do not possess ROZ Trading's ownership interest in CCBU.  Plaintiffs allege that a purported Zeromax subsidiary, Muzimpex, was the purchaser of the shares from Uzbekistan.  Am. Compl. ¶ 45, 47 ("Defendants, reportedly through their joint venture, Muzimpex, — now run CCBU"); *see also* Fayzullaev Decl. ¶¶ 21-25 (describing Uzbek denationalization and privatization laws) & Ex. I (attaching official SPC Order).

As discussed above, however, Plaintiffs' bare and conclusory allegations fail to provide any basis from which this Court could attribute Muzimpex's alleged activities to Defendants. *See Browning*, 292 F.3d at 242 (holding that a court reviewing a complaint under Rule 12(b)(6) may not accept either "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations") (quoting *Kowal*, 16 F.3d at 1275); *AGS Int'l Servs. S.A.*, 346 F. Supp. 2d at 91 (plaintiffs failed to demonstrate alter ego relationship between affiliates by presenting only conclusory allegations).  Thus, Plaintiffs' conversion claim fails because, as alleged, the Zeromax Defendants do not now — nor have they ever — possessed ROZ Trading's former interest in CCBU.

### d.    The Zeromax Defendants Did Not Proximately Cause Plaintiffs' Injury

Plaintiffs' allegations demonstrate that the Zeromax Defendants did not proximately cause their injury.  Am. Compl. ¶¶ 29-31.  Plaintiffs allege that ROZ Trading was fully divested of its ownership interests in CCBU "on September 11, 2002."  *Id.* ¶ 31.  Plaintiffs further allege that the Zeromax Defendants, through Muzimpex, only became associated with the shares in

"late 2004" — long **after** the alleged expropriation. *Id.* ¶ 45. The Amended Complaint is devoid of any allegation that the Zeromax Defendants participated in the alleged expropriation in the first instance. *See Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 8 (D.D.C. 1995) ("'[B]are conclusions of law, or sweeping and unwarranted averments of fact' will not be deemed admissible in the context of a motion to dismiss . . . [t]he court will not be persuaded by conclusory allegations devoid of factual support.") (internal citations omitted).

### 4. Counts III And V Fail To State A Claim For Conspiracy To Commit Conversion And Tortious Interference

A civil conspiracy is not an independent cause of action but rather a means for establishing vicarious liability for some underlying tortious act. *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002); *Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005). To survive a motion to dismiss, Plaintiffs must allege: (1) "an agreement to take part in an unlawful action or a lawful action in an unlawful manner"; and (2) "an overt tortious act in furtherance of the agreement that causes injury." *Hall*, 285 F.3d at 82-83 (quotation omitted).

In the Amended Complaint, Plaintiffs assert that Defendants purportedly "reached and executed an agreement to formalize ROZ and ROZ (Uzbekistan)'s exclusion from the ownership and management of CCBU."[14] Am. Compl. ¶¶ 65, 73. This conclusory allegation is contradicted by Plaintiffs' express allegations that Uzbekistan acting alone, through its courts, excluded ROZ Trading from CCBU (Am. Compl. ¶¶ 29-31), and that Muzimpex — not the Zeromax Defendants — acquired an interest in CCBU from the State (Am. Compl. at ¶ 45). *Browning*, 292 F.3d at 242 (Rule 12(b)(6) dismissal is appropriate where the allegations

---

[14] In their original complaint, Plaintiffs failed to identify (or allege) any facts to support an actual agreement between the original defendant, Zeromax Group, and Uzbekistan (or any other party) to perform an unlawful act or a lawful act in an unlawful manner. Rather, Plaintiffs' sole theory of a conspiracy to commit the torts of conversion and tortious interference was premised on the bare — and insufficient — allegation that Zeromax Group "conspired" to purchase the CCBU shares. Compl. ¶¶ 37, 44.

contradict the claims asserted); *see W. Assocs Ltd. P'ship*, 235 F.3d at 634 ("The court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." quoting *Kowal*, 16 F.3d at 1276)); *see Bynum v. Equitable Mortg. Group*, No. Civ. 99-2266-SBC-JMF, 2005 WL 818619, at *16 (D.D.C. Apr. 7, 2005) (dismissing conspiracy to convert property claim in the absence of agreement among defendants); *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997).

Again, at most, Plaintiffs' allegation amounts to a contention that the State acted not in the public interest in confiscating the shares.  Even to the extent that Plaintiffs allege Muzimpex's involvement, this simply is not a claim against the Zeromax Defendants.  Most fundamentally, Muzimpex is a corporation organized under the laws of Uzbekistan, all of the alleged acts occurred in Uzbekistan, and all of the allegations of intercorporate relations occurred in Uzbekistan.  Therefore Uzbek, not U.S., law applies to determine any corporate attribution between Muzimpex and its shareholders.  Under Uzbek law, the allegations are not sufficient to support an attribution of Muzimpex's acts to either its current or former shareholders.  *See* Fayzullaev Decl. ¶ 6 (noting that, under Uzbek law, companies and shareholders maintain separate juridical identities, and shareholders generally cannot be held liable for the acts of the company).  Moreover, under Uzbek law, Muzimpex's acquisition of the CCBU shares from the State was lawful because title to the shares had passed to the State under Decree No. 420.  Fayzullaev Decl. ¶ 20 & Ex. H.  Accordingly, the claim must fail.

### 5.    Count VI Fails To State A Claim To Quiet Title

Plaintiffs seek to have this Court declare that they are the rightful owners of the CCBU stock and that the Zeromax Defendants "have no right or lawful interest to such property."  Am. Compl. ¶ 78.  Again, Plaintiffs' claim to quiet title hinges on a ruling that Uzbekistan unlawfully

expropriated their interest in CCBU and that the subsequent sale of those shares to Zeromax was *a fortiori* unlawful. *Id.* ¶¶ 29-31. The act of state doctrine precludes this relief.

Even assuming *arguendo* that the act of state doctrine does not bar Plaintiffs' claims, the claim cannot proceed as a matter of District of Columbia law. Specifically, no action has been found to exist within the District of Columbia to quiet title to ***personal*** property. The District of Columbia has only recognized the power of its courts to quiet title ***to land***. *In re Tyree*, 493 A.2d 314, 317 (D.C. 1985) (citing *Sharon v. Tucker*, 144 U.S. 533, 544 (1892)). The sole provision in the D.C. Code addressing quieting title concerns only "real property." D.C. Code § 16-3301 (2001). Shares of stock are not real property. *See Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69, 81 (1926); *Shafer v. Children's Hosp. Soc'y. of Los Angeles, Cal.*, 265 F.2d 107, 109 (D.C. Cir. 1957). Plaintiffs even fail to allege that the property was ever in D.C. or the Plaintiffs would have any means whatsoever of enforcing such an order of a D.C. court in Uzbekistan — the alleged location of the shares and the holder of the shares: Muzimpex. Moreover, there is no title to quiet, because under Uzbek law, Plaintiffs' ownership interests in CCBU were extinguished by virtue of Uzbekistan's expropriation, and under the *lex situs* rule, title transferred to the Republic of Uzbekistan. Fayzullaev Decl. ¶ 20 & Ex. H. Accordingly, Plaintiffs' request to quiet title must be dismissed.

### 6.    Count VII Fails To State A Claim For Unjust Enrichment

Count VII for unjust enrichment must be dismissed because Plaintiffs have failed to plead that they "conferred a legally cognizable benefit" upon the Zeromax Defendants. To establish a claim for unjust enrichment, ROZ Trading must establish that: (1) it conferred a legally cognizable benefit upon the Zeromax Defendants; (2) the Zeromax Defendants possessed an appreciation or knowledge of the benefit; and (3) the Zeromax Defendants accepted or retained the benefit under inequitable circumstances. *See Int'l Broth. of Teamsters, Chauffeurs,*

*Warehousemen & Helpers of Am. (Airline Div.) v. Ass'n of Flight Attendants, AFL-CIO*, 864 F.2d 173, 177 (D.C. Cir. 1988) (unjust enrichment claim failed where plaintiff had not conferred any benefit on defendant). Any benefit was conferred by Uzbekistan — **not** by Plaintiffs — through an official sovereign act. Am. Compl. ¶¶ 45, 47. Moreover, by Plaintiffs' own allegations, any benefit conferred by Uzbekistan was conferred on Muzimpex — **not** on any of the Zeromax Defendants. *Id.* Further, Plaintiffs come to the Court with unclean hands, as is evident from the Uzbek court decisions, and therefore cannot prevail on equitable claims. *See* Fayzullaev Decl. ¶¶ 14, 16, Exs. F & G. Accordingly, Count VII fails to state a claim for unjust enrichment.

### 7.    Count VIII Fails To State A Claim For Fraudulent Conveyance

Count VIII is pled as a purported fraudulent conveyance claim. ROZ Trading's sole conclusory allegation of fraudulent conveyance is:

> Upon information and belief, Defendants, acting alone or in concert, have sold or transferred their property interest in CCBU to their joint venture, Muzimpex, with actual intent to hinder, delay, or defraud creditor Plaintiffs.

Am. Compl. ¶ 83. The District of Columbia does not recognize a common law claim for fraudulent conveyance; it is a statutory claim and Plaintiffs have failed to identify the claim as such or plead in accordance with the statute. *See* D.C. Code §§ 28-3101 – 28-3111 (2001). Indeed, this allegation fails to meet even the minimum pleading standard for fraudulent conveyance claims. *See* Fed. R. Civ. P. 84, Appendix of Forms, Form 13 (setting forth a minimally acceptable claim for fraudulent conveyance). Notably, Plaintiffs fail to identify the creditor-debtor relationship or how it arose, the existence of a claim (defined as a "right to payment"), the nature of the fraudulent transfer, or facts demonstrating "actual intent to hinder, delay or defraud" Plaintiffs as purported creditors. D.C. Code § 28-3104 (2001). Factors

demonstrating "actual intent" include whether Defendants transferred "substantially all [its] assets"; "absconded"; "removed or concealed assets"; failed to receive consideration of "reasonably equivalent to the value of the asset transferred"; or became "insolvent shortly after the transfer was made." Plaintiffs fail to plead any of these factors.

Moreover, before a transfer can be fraudulent within the meaning of the Fraudulent Transfer Act, "there must be a 'transfer,'" and before Defendants can make a transfer, they must have "acquired rights in the asset transferred," D.C. Code § 28-3106(4), and then divested themselves of an interest in the asset, 37 Am. Jur. 2d *Fraudulent Conveyances* § 40 (2001). Yet, Plaintiffs allege that Muzimpex purchased ROZ Trading's former CCBU interest directly ***from Uzbekistan*** — not any of the Zeromax Defendants. Am. Compl. ¶¶ 45, 47. These earlier allegations plainly contradict the conclusory allegation contained in paragraph 83, which therefore must be disregarded. *See Browning*, 292 F.3d at 242 (acknowledging that Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claims asserted). Indeed, the SPC Order — an order that this Court must deem valid under the act of state doctrine — evidences that Uzbekistan sold ROZ Trading's interest directly to Muzimpex. Fayzullaev Decl. ¶¶ 24-25.

To the extent that Plaintiffs intended to plead a common law fraud claim, ROZ Trading failed to plead any factual allegation — let alone one with particularly — of fraudulent conduct by the Zeromax Defendants. Fed. R. Civ. P. 9(b); *see United States v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256-57 (D.C. Cir. 2004) (stating fraud with particularity requires that the pleader state the time, place and content of false representations, the fact misrepresented, and what was retained or given up as a result of the fraud). ROZ Trading has failed to satisfy this requirement. *Martin-Baker Aircraft*, 389 F.3d at 1256-57 (Rule 9(b) discourages "the initiation

of suits brought solely for nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude" and provides defendants with sufficient information to prepare their response).   Indeed, Plaintiffs admit that the Zeromax Defendants openly advertised Muzimpex's acquisition of the CCBU shares from the State on "two of Defendants' websites" (Am. Compl. ¶ 45) thereby negating any inference of fraud.

## VI.    THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM

This Court should dismiss ROZ Trading's Complaint because the District of Columbia is an inconvenient and inadequate forum.  "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized . . . ."  *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 507 (1947).  In determining whether to dismiss a case in favor of a different forum, courts consider the availability of an adequate alternate forum, as well as public and private interest factors.  *See Pain v. United Techs. Corp.*, 637 F.2d 775, 782 (D.C. Cir. 1980).

### A.    Both Public And Private Interest Factors Weigh Against Hearing This Case In The District Of Columbia

Public interest factors weigh in favor of dismissal.   Public interest factors include "whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it," *Pain*, 637 F.2d at 791, the "burden on the community in light of the connection between the event in dispute and the chosen forum, the local public interest in the dispute, and the court's familiarity with the applicable law."  *Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 39 (D.D.C. 2002).

The Amended Complaint lacks any allegation that Defendants acted unlawfully in the District of Columbia.  The sole allegation purportedly connecting this case to the District of Columbia is an office address of dissolved Defendant, Zeromax Group.  This sole allegation is

insufficient to justify expending this Court's judicial resources by proceeding with the case. *Croesus*, 212 F. Supp. 2d at 40 (holding that the citizens of the District of Columbia have no interest in litigation when "[n]one of the events in question occurred in the District of Columbia and none of the parties claims to have any connection to the District").  In fact, the majority of the allegations concern Uzbekistan, entities located in Uzbekistan, Uzbek law, Uzbek state acts, and events that took place in Uzbekistan.  Am. Compl. ¶¶ 2, 13-24, 27-32.

Private interest factors also strongly support an Uzbek forum.  Private interest factors relate to the convenience of the litigants and include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Pain*, 637 F.2d at 782 (citing *Gulf Oil*, 330 U.S. at 508); *accord Croesus*, 212 F. Supp. 2d at 37-38.

Virtually all of the documentary evidence and witnesses are located in Uzbekistan.  And most, if not all, third-party witnesses and evidence necessary to prosecute and defend this case are in Uzbekistan and would be difficult or impossible to obtain.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257-58 (1981) (favoring dismissal when "a large proportion of the relevant evidence is located [overseas]").  An additional burden of litigating in the District of Columbia would be the expense of translating the Uzbek and Russian-language documentary evidence into English.  *See Croesus*, 212 F. Supp. 2d at 39 (dismissing case because litigation would require numerous foreign-language documents that would be "expensive, cumbersome and time-consuming").

Applying Uzbek law in this case also weighs against proceeding in the District of Columbia.  *See Piper Aircraft*, 454 U.S. at 260; *Gulf Oil*, 330 U.S. at 515 (holding that the need

to apply foreign law favors dismissal).  If the Court determines it has subject-matter jurisdiction and that the act of state doctrine does not apply, not only would the Court need to examine Uzbek law to determine the legality of Uzbekistan's alleged expropriation of ROZ Trading's shares in CCBU, it also would need to apply Uzbek law to ROZ Trading's claims against Defendants.  *See Nielsen v. Sec'y of Treasury*, 424 F.2d 833, 842 (D.C. Cir. 1970) ("[T]he rights of those investing in a venture organized in corporate form are defined by the law of the place of incorporation . . . ."); *Tramontana v. SA Empresa De Viacao Aerea Rio*, 350 F.2d 468, 471, 476 (D.C. Cir. 1964) (holding that the law of the jurisdiction with the strongest connection to the dispute and the parties, and the greatest interest in the resolution of the issue, applies); Restatement (Second) of Conflict of Laws, Introductory Note to Ch. 7, Topic 1 (1971) ("[T]he rights and liabilities of the parties in tort are said to be governed by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties.").

Given this case has nothing to do with the District of Columbia — or, for that matter, with the United States — dismissal on grounds of forum non conveniens is warranted.

**B.    Adequate Alternative Fora Are Available For This Dispute**

On June 1, 2006 — just days before filing its original complaint — ROZ Trading initiated an arbitration proceeding in Vienna, Austria against TCCEC, Uzbekistan, Uzpishcheprom, and Zeromax Group, asserting similar claims to the present claims and based on the same set of facts alleged here.

United States courts have long recognized and upheld a liberal federal policy favoring arbitration.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  The Federal Arbitration Act requires federal courts to dismiss or stay actions brought in federal court pending the outcome of arbitration.  9 U.S.C. §§ 3, 4 (2005).  This Court should not permit ROZ Trading

to hedge its bets by allowing it to bring two separate actions against Zeromax on the same facts.

*See Contact Lumber Co. v. P.T. Moges Shipping, Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990)

("There are significant advantages in having all the parties . . . assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits.").  At a minimum, if the Court declines to dismiss this case, it should stay these proceedings pending the outcome of the arbitration against Zeromax Group.

Moreover, the courts of Uzbekistan are better suited to resolve this case.  As stated, Uzbekistan has the most significant relationship to this dispute because (i) Plaintiff ROZ (Uzbekistan) and CCBU (the shares of which form the subject of the Amended Complaint) are both Uzbek-registered entities; (ii) virtually all of the events set forth in the Amended Complaint are alleged to have taken place in Uzbekistan; and (iii) Uzbek law applies to Plaintiffs' claims.  Accordingly, the Amended Complaint can and should be dismissed outright on the ground of forum non conveniens.

### CONCLUSION

For all the foregoing reasons, this Court should dismiss the Complaint in its entirety with prejudice.

Dated: November 6, 2006                    Respectfully submitted,

                                           **WHITE & CASE**LLP

                                           / s / Carolyn B. Lamm
                                           Carolyn B. Lamm (D.C. Bar No. 221325)
                                           Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
                                           Nicole E. Erb  (D.C. Bar No. 466620)
                                           701 Thirteenth Street, N.W.
                                           Washington, D.C. 20005
                                           Telephone: (202) 626-3600
                                           Facsimile: (202) 639-9355

                                           *Attorneys for Zeromax Group, Inc., Zeromax*
                                           *Logistics, Inc., Zeromax LLC, and*
                                           *Zeromax GmbH*