**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| ROZ TRADING LTD., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | 1:06-CV-01040 CKK |
| ) | |
| ZEROMAX GROUP, INC., *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

---

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE ZEROMAX DEFENDANTS' CONSOLIDATED
MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY**

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005

*Attorneys for Zeromax Group, Inc.,
Zeromax Logistics, Inc.,
Zeromax LLC and Zeromax GmbH*

February 7, 2007

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................1

I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION .........................................2

       A.     ROZ Cannot Avail Itself Of New Jersey Citizenship ..............................................2

       B.     The Parties Are Not Diverse Pursuant to Section 1332(a)(3) ................................4

II.    THE COURT LACKS PERSONAL JURISDICTION OVER ZEROMAX GMBH ..........7

       A.     Plaintiffs Have Failed To Demonstrate That The Court Has General
              Personal Jurisdiction Over Zeromax GmbH ...........................................................7

              1.     Neither Zeromax GmbH Nor The U.S. Zeromax Defendants Had
                     Any Contacts With The District At The Time This Suit Was Filed ...........7

              2.     Zeromax GmbH Is Not The Alter Ego Of Any Of The U.S.
                     Zeromax Defendants ..................................................................................9

       B.     Plaintiffs Have Failed To Demonstrate That The Court Has Specific
              Personal Jurisdiction Over Zeromax GmbH .........................................................10

       C.     Plaintiffs Are Not Entitled To Pursue Jurisdictional Discovery ..........................12

              1.     Plaintiffs Have Failed To Show A Colorable Basis For Personal
                     Jurisdiction Over Zeromax GmbH ...........................................................12

              2.     In The Alternative, The Court Should Stay Discovery Pending The
                     Outcome Of The Vienna Arbitration ........................................................12

III.   PLAINTIFFS LACK STANDING ..................................................................................13

IV.    THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS ............................16

       A.     *All* Of Plaintiffs' Claims Require This Court To Adjudicate The Validity
              Of Uzbekistan's Official Sovereign Acts .............................................................16

       B.     There Is No Commercial Activity Exception To The Act Of State Doctrine ........19

       C.     The Second Hickenlooper Amendment Does Not Apply .....................................22

              1.     ROZ Trading Has Failed To Allege, Nor Can It, That The Property
                     In Question Is In The United States .........................................................23

2.  ROZ Trading's Former Interest In CCBU Does Not Fall Within The Protected Class Of Investments Contemplated By The Amendment ..................................................................................23

3.  The Second Hickenlooper Amendment Does Not Extend To Claims Of Title To Intangible Property ......................................................25

4.  ROZ Trading Fails To Make A Claim Based On A Violation Of Principles Of International Law ...............................................................26

V.  PLAINTIFFS FAIL TO STATE A CLAIM ....................................................................26

A.  Uzbek Law Applies To Plaintiffs' Claims Against The Zeromax Defendants ............................................................................................27

B.  Plaintiffs Fail To State A Claim For Which Relief Can Be Granted ...................30

C.  Plaintiffs' Claims Are Time-Barred .................................................................32

VI.  THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM ...........................................................................................34

CONCLUSION ............................................................................................................35

## **TABLE OF AUTHORITIES**

<u>FEDERAL CASES</u>

*ABB Daimler-Benz Transp. (North America), Inc. v. Nat'l R.R. Passenger Corp.*,
    14 F. Supp. 2d 75 (D.D.C. 1998) ............................................................30

*Abdullahi v. Pfizer, Inc.*, No. 01CV8818 (WHP), 2005 WL 1870811
    (S.D.N.Y. Aug. 9, 2005) ........................................................................35

*Acker v. Royal Merchant Bank & Fin. Co.*, No. Civ. A. 98-00392,
    1999 WL 1273476 (D.D.C. Feb. 10, 1999) ............................................12

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64 (D.D.C. 2004) ...................10, 11

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, No. 93-1725,
    1994 WL 225383 (D.D.C. May 9, 1994) ................................................29

*Alfred Dunhill of London Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) ....................................21

*Allen v. Wright*, 468 U.S. 737 (1984) ............................................................14

*Am. Postal Workers Union v. Frank*, 968 F.2d 1371 (1st Cir. 1992) ..........................................15

*Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir. 1980).............................21-22

*Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097 (2d Cir. 1986) ...................................3

*Banco Nacional de Cuba v. First Nat'l City Bank*, 431 F.2d 394 (2d Cir. 1970).........................24

*Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519 (1839).............................................24

*BCCI Holdings (Luxembourg), S.A. v. Khalil*, 184 F.R.D. 3 (D.D.C. 1999)................................27

*Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974 (2d Cir. 1993)....................................35

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .............................................31, 32

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*,
    148 F.3d 1080 (D.C. Cir. 1998).............................................................12

*Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71 (D.D.C. 2003) ........................................31

*Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148 (5th Cir. 1985)................................................6

*Chinnery v. Frank E. Basil, Inc. of Del.*, Civ. A. No. 86-2977 (JHP),
    1998 WL 4803 (D.D.C. Jan. 13, 1988)....................................................30

*Commc'ns Vending Corp. of Arizona v. Fed. Commc'ns Comm'n*,
    365 F.3d 1064 (D.C. Cir. 2004) ................................................................33

*Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*,
    686 F.2d 322 (5th Cir. 1982) ..................................................................24

*Corpman v. Prudential-Bache Securities, Inc.*, 907 F.2d 29 (3d Cir. 1990) .................13

*Corporacion Venezolana de Fomento v. Vintero Sales*,
    629 F.2d 786 (2d Cir. 1980) ....................................................................4

*Data-Stream AS/RS Techs., LLC v. Acequip Ltd.*, No. 02-Civ-2089,
    2002 WL 1683736 (S.D.N.Y. July 24, 2002) ...........................................9

*Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1 (D.D.C. 2003).....................10, 11

*Dresser Indus. Inc. v. Underwriters at Lloyd's of London*,
    106 F.3d 494 (3d Cir. 1997).....................................................................7

*Eisenberg v. Commercial Union Assurance Co.*, 189 F. Supp. 500 (S.D.N.Y. 1960) ...................4

*El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996).........................................9

*Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996) ...................28

*Esquivel v. GAC Express Inc.*, No. 05-CA-1025XR,
    2005 WL 3454114 (W.D. Tex. Nov. 28, 2005).........................................7

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325 (2d Cir. 2005)..........................29

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988) .........................7, 10, 12

*First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759 (1972).....................................14

*Franceskin v. Credit Suisse*, 214 F.3d 253 (2d Cir. 2000)...........................................6

*Godbey v. Frank E. Basil, Inc.*, 603 F. Supp. 775 (D.D.C. 1985) .................................30

*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) ...........................8

*Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*,
    316 F.3d 408 (3d Cir. 2003).....................................................................4

*GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .............. 3-4, 9

*Henthorn v. Dep't of Navy*, 29 F.3d 682 (D.C. Cir. 1994) ...........................................27

*Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192 (D.C. Cir. 1992) ...............................2

*Heritage Educ. Trust v. Katz*, 287 F. Supp. 2d 34 (D.D.C. 2003) ....................................3

*Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*,
129 F.3d 543 (11th Cir. 1997) ....................................................21

*Houlihan v. Anderson-Stokes, Inc.*, 434 F. Supp. 1324 (D.D.C. 1977) ........................39

*Hunter v. Shell Oil Co.*, 198 F.2d 485 (5th Cir. 1952)........................................................7

*In re Agent Orange Prod. Liability Litig.*, 373 F. Supp. 2d 7 (E.D.N.Y. 2005) ............27

*In re Bullmore*, 300 B.R. 719 (D. Neb. 2003) ...............................................................24

*Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72 (1991)...............15

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2d Cir. 1989) .............................4

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F.3d 70 (2d Cir. 2002).........................................................29

*Karazanos v. Madison Two Assocs.*, 147 F.3d 624 (7th Cir. 1998) .............................7

*Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*,
493 U.S. 400 (1990)........................................................18, 19

*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir. 1991)...................................8

*Menendez v. Saks and Co.*, 485 F.2d 1355 (2d Cir. 1973).........................................25

*Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*,
311 F.3d 488 (2d Cir. 2002).......................................................34, 35

*Occidental of UMM Al Qaywayn, Inc. v. Cities Service Oil Co.*,
396 F. Supp. 461 (W.D. La. 1975).......................................................23, 25

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No, 04-332 (EGS),
2006 WL 2711527 (D.D.C. Sept. 21, 2006) ........................................ 18-19, 21, 22

*Pain v. United Techs. Corp.*, 637 F.2d 775 (D.C. Cir. 1980) ......................................35

*Paley v. Ogus*, 20 F. Supp. 2d 83 (D.D.C. 1998).........................................................27

*The Paquete Habana*, 175 U.S. 677 (1900)................................................................15

*Peterson v. Gen. Org. of Soc. Ins.*, 332 F. Supp. 2d 189 (D.D.C. 2004) .....................20

*Philippine Nat'l Bank v. U.S. Dist. Ct. of Hawaii*, 397 F.3d 768 (9th Cir. 2005) ........20

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674 (2d Cir. 1990)..........2

*Riddell v. Riddell Washington Corp.*, 866 F.2d 1480 (D.C. Cir. 1989).........................................34

*Ripalda v. America Operations Corp.*, 977 F.2d 1464 (D.C. Cir. 1992).........................................3

*Rong v. Liaoning Province Gov't*, 362 F. Supp. 2d 83 (D.D.C. 2005)..........................23, 24, 26

*Rong v. Liaoning Province Gov't*, 452 F.3d 883 (D.C. Cir. 2006)..........................................20, 22

*Rouhi v. Harza Eng'g Co.*, 785 F. Supp. 1290 (N.D. Ill. 1992) .............................................5

*Saadeh v. Farouki*, 107 F.3d 52 (D.C. Cir. 1997).........................................................3

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)..........................................................22

*Savage v. Bioport, Inc.*, No. 1:06-CV-00081, 2006 WL 3044413
    (D.D.C. Oct. 27, 2006).......................................................... 12-13

*Schenker v. Assicurazioni Generali S.P.A.*, No. 98-Civ-9186,
    2002 WL 1560788 (S.D.N.Y. July 15, 2002) ...........................................9

*Selover, Bates & Co. v. Walsh*, 226 U.S. 112 (1912) ...................................................25

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty.*,
    647 F.2d 200 (D.C. Cir. 1981)......................................................11

*United States v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004) ............................27

*Valley Forge Coll. v. Am. United for Separation of Church & State*,
    454 U.S. 464 (1982).............................................................14

*Virtual Def. & Dev. Int'l, Inc.*, 133 F. Supp. 2d 9 (D.D.C. 2001) ......................................21

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................15

*West v. Multibanco Comermex, S.A.*, 807 F.2d 820 (9th Cir. 1987).................................25, 26

*W. Assocs. Ltd. P'ship*, 235 F.3d 629 (D.C. Cir. 2001) ...............................................32

*Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581 (D.C. Cir. 1965) ................................28

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002)................................................16, 21

*World Wide Minerals Ltd. v. Republic of Kaz.*, No. 98-CV-1199 (RCL), slip op.
    (D.D.C. Jun. 26, 2003)...........................................................16

*Wyatt v. Syrian Arab Republic*, 398 F. Supp. 2d 131 (D.D.C. 2005) ...................................28

*Zenith Electrical Corp. v. Kimball International Mfg., Inc.*,
    114 F. Supp. 2d 764 (N.D. Ill. 2000) ........................................................................7

STATE CASES

*Beard v. Edmondson & Gallagher*, 790 A.2d 541 (D.C. 2002) ....................................33

*Egan v. McNamara*, 467 A.2d 733 (D.C. 1983) ........................................................30

*French v. Banco Nacional de Cuba*, 242 N.E.2d 704 (NY 1968) ........................25, 26

*Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31 (D.C. 1989) ..............................30

*Hunt v. Coastal States Gas Producing Co.*, 583 S.W.2d 322 (Tex. 1979)..................25

*In re Estate of Delaney*, 819 A.2d 968 (D.C. 2003) ...................................................28

*In re Orshansky*, 804 A.2d 1077 (D.C. 2002)..............................................................8

*William J. Davis, Inc. v. Young*, 412 A.2d 1187 (D.C. 1980).....................................34


FEDERAL STATUTES

9 U.S.C. § 3....................................................................................................................13

22 U.S.C. § 2370(e)(2), Second Hickenlooper Amendment ........................................23

28 U.S.C. § 1332(a) ...........................................................................................4, 5, 6, 7

28 U.S.C. § 1332(c) ................................................................................................4, 6

28 U.S.C. § 1332(e) ................................................................................................4

Fed. R. Civ. P. 12(b)(1)................................................................................................2

Fed. R. Civ. P. 12(b)(6)...................................................................................2, 27, 30

Fed. R. Civ. P. 44.1 ...................................................................................................27


STATE STATUTES

D.C. Code § 12-301 ....................................................................................................32

D.C. Code § 13-423 ....................................................................................................11

D.C. Code § 28-3109 ..........................................................................................................32

Del. Code Ann. tit. 6, § 18-803 (2006) .............................................................................8, 9

Del. Code Ann. tit. 8, § 278 (2006) .................................................................................8, 9

New Jersey Corporation Business Activities Reporting Act,
    N.J. Stat. Ann. §§ 14A:13-1 – 14A:13-23 (2006) ...................................................3

New Jersey Limited Liability Company Act,
    N.J. Stat. Ann. §§ 42:2B-1 – 42:2B-70 (2006) ......................................................3

## OTHER MATERIALS

110 Cong. Rec. 19555 (1964) ............................................................................................24

James Wm. Moore et al., Moore's Federal Practice ¶ 102.55[2] (3d ed. 1999) ...............5

Restatement (Third) of Foreign Relations § 213 ..............................................................24

Restatement (Third) of Foreign Relations § 444 ..............................................................26

Restatement (Third) of Foreign Relations § 713 ..............................................................15

S. Rep. No. 1830, 85th Cong., 2d Sess. (1958),
    *reprinted in* 1958 U.S.C.C.A.N. 3099 .................................................................5

S. Rep. No. 89-170, 89th Cong., 1st Sess. (1965),
    *reprinted in* 1965 U.S.C.C.A.N. 2993 ...............................................................25

## INTERNATIONAL AUTHORITIES

*Sporrong and Lönnroth v. Sweden*, Judgement of 23 Sept. 1982, Ser. A No. 52,
    *reprinted in* 5 E.H.R.R. 35 (1983).........................................................................26

Plaintiffs' Opposition confirms that this dispute is not a garden-variety dispute between two private U.S. parties. Instead, this case presents a unique set of facts all of which take place in Uzbekistan and in which Uzbekistan is alleged to have extinguished Plaintiffs' proprietary interest in CCBU, a joint venture located in Uzbekistan, in 2002 through regulatory judicial intervention. Am. Compl. ¶¶ 29-31. Uzbekistan is further alleged to have transferred Plaintiffs' former CCBU interest to a state-owned entity in 2002 (*id*. ¶¶ 29-31) and, over two years later, to have sold that state interest to Muzimpex (an Uzbek limited liability company in which Zeromax LLC allegedly held shares (*id*. ¶¶ 40f, 42)) in an official state privatization sale in 2004 (*id*. ¶¶ 42, 45-46). Although Plaintiffs' real claim, if any, is against Uzbekistan (Opp'n at 32) and ROZ has filed an arbitration in Vienna against Uzbekistan in connection with these acts of state, it has failed to do so here. Instead, ROZ masquerades as a "U.S. company" suing companies that, by Plaintiffs' own allegations, have significant operations in Uzbekistan (Am. Compl. ¶¶ 40-45) for events occurring only in Uzbekistan (*id*. ¶¶ 29-32, 45). The Amended Complaint simply dresses up classic international law claims as purported state law claims in an attempt to hold the Zeromax Defendants liable as purported third-party purchasers for Uzbekistan's inherently sovereign acts of state. This ROZ Trading cannot do.

## ARGUMENT

Notwithstanding Plaintiffs' Opposition, the Amended Complaint must be dismissed for a number of independent reasons. As a threshold matter, the Court lacks diversity jurisdiction because this Court cannot ignore ROZ's alien status. The Court also lacks personal jurisdiction over Zeromax GmbH, a Swiss-entity, because Plaintiffs have not alleged sufficient jurisdictional contacts with the District of Columbia. Further, Plaintiffs' Opposition underscores that ***all*** of their claims are barred by the act of state doctrine and no exception to that doctrine applies. It

addition, Plaintiffs' claims must be dismissed for lack of standing, failure to state a claim for which relief can be granted, and on the ground of *forum non conveniens*.

# I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION

## A.     ROZ Cannot Avail Itself Of New Jersey Citizenship

When reviewing a motion to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), a court should decide the jurisdictional question first.  *See, e.g.*, *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  Courts may consider evidence outside the pleadings on a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction.  *See Herbert*, 974 F.2d at 197 (when reviewing a Rule 12(b)(1) motion to dismiss it may be necessary to look beyond the complaint).

Contrary to ROZ Trading's conclusory allegation (devoid of temporal context) that it maintains its principal place of business in New Jersey (Am. Compl. ¶ 1), a search of the business records of the New Jersey Secretary of State strongly suggests that, at the time the original Complaint was filed on June 6, 2006, ROZ was neither conducting business nor authorized to conduct business in New Jersey.  Declaration of Nicole E. Erb dated February 7, 2007, ¶ 2 (detailing records search confirming that New Jersey Secretary of State has no record of any entity with "ROZ Trading" in its name) & Ex. A (attaching "No Records Certificate" for "ROZ Trading").[1]  Thus it would appear that ROZ was not in fact present in New Jersey at the time of the filing of the Complaint, much less when the alleged claims arose — or if it was, that

---

[1]  Indeed, the 1993 CCBU JVA represents and warrants that ROZ is a citizen of the Cayman Islands, United Kingdom (Pls.' Ex. 7, ¶ 9.3.1) and is devoid of any reference to the United States.  Contrary to the 1993 CCBU JVA (Pls.' Ex. 9.3.1), Plaintiffs attempt conflate the two ROZ entities, one an Uzbek national and the second a Cayman Islands national that held shares in the Uzbek national (Am. Compl. ¶¶ 1, 2).

it was transacting business there unlawfully.[2]  *See Saadeh*, 107 F.3d at 57 (holding diversity of citizenship is determined at the time the complaint is filed).

The D.C. Circuit has recognized implicitly that the absence of state authority to transact business in a state negates a corporation's argument that it maintains its principal place of business there for purposes of diversity.  *See Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1469 (D.C. Cir. 1992) ("With [the defendant's] authority to transact business in [Virginia] thus revoked, we presume — absent any indication in the record to the contrary — that if it still had any principal place of business it was not in Virginia.").  Additionally, the declaration of Mr. Maqsudi calls into question whether ROZ in fact maintains its principal place of business in New Jersey by stating that ROZ's operations extend to Central Asia and the Middle East, and by specifically identifying ROZ's involvement in the reconstruction of Afghanistan.  *See* Maqsudi Declaration (Pls.' Ex. 1) ¶¶ 5, 7; *Heritage Educ. Trust v. Katz*, 287 F. Supp. 2d 34, 36-37 (D.D.C. 2003) (applying "nerve center test" to determine principal place of business); *see also Bailey v. Grand Trunk Lines New Eng.*, 805 F.2d 1097, 1100-01 (2d Cir. 1986) (alien corporation's principal place of business is its *worldwide* principal place of business, not its principal office within the United States).  In short, ROZ has failed to make any allegation sufficient to support its conclusory principal place of business allegation.

In light of the foregoing, without more, ROZ should not be permitted to avail itself of the State of New Jersey as its principal place of business for purposes of diversity (or for any other purpose) because it appears that ROZ is not actively engaged in business there.  *See Grand*

---

[2] The New Jersey Corporation Business Activities Reporting Act provides that "[n]o foreign corporation shall have the right to transact business in [New Jersey] until it shall have procured a certificate of authority so to do from the Secretary of State."  N.J. Stat. Ann. § 14A:13-3(1) (2006); *see also* N.J. Stat. Ann. § 14A:13-15a (notice of business activities report must be filed if corporation maintains an office in New Jersey).  Similarly, the New Jersey LLC Act provides that "[b]efore doing business in [New Jersey], a foreign limited liability company shall register with the Secretary of State."  N.J. Stat. Ann. §§ 42:2B-53 (2006); *see also id.* (providing a foreign limited liability company shall file an annual report with the Secretary of State).

*Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408 (3d Cir. 2003)
(Virgin Islands not corporation's principal place of business even though it retained corporate
records and paid franchise taxes there but did not own assets, own or rent property, employ
workers, or maintain address in the Virgin Islands).

Moreover, Plaintiffs do not contest (Opp'n at 10) that it is an open question in the District
of Columbia Circuit whether an *alien* corporation may even invoke a principal place of business
in a state of the United States under 28 U.S.C. § 1332(c)(1), which provides: "[A] corporation
shall be deemed to be a citizen of any State by which it has been incorporated and of the State
where it has its principal place of business . . . ."  Although the Circuits diverge as to whether
Section 1332(c) applies to aliens, the interpretation that courts in the Second Circuit have
adopted is most compatible with the plain language of the statute.  *See Eisenberg v. Commercial
Union Assurance Co., Ltd.*, 189 F. Supp. 500, 502 (S.D.N.Y. 1960) (Congress intended to limit
§ 1332(c)(1) to corporations incorporated in a State of the United States where it differentiates
between States of the United States and foreign states by the use of the capital "S" for the word
when applied to a State of the United States and by using a lower case "s" when referring to
"citizens or subjects of a foreign state"); 28 U.S.C. § 1332(e) (defining "States" as a State of the
United States).[3]

## B.    The Parties Are Not Diverse Pursuant to Section 1332(a)(3)

In the alternative, contrary to Plaintiffs' protestations (Opp'n at 8-11), diversity does not
exist under Section 1332(a)(3) because the Court cannot ignore ROZ's alien citizenship *even if* it
is also afforded New Jersey citizenship through its purported principal place of business under
Section 1332(c).  *See Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir.

---

[3] *See also Corporacion Venezolana de Fomento v. Vintero Sales*, 629 F.2d 786, 790 (2d Cir. 1980) (holding that the
Second Circuit has previously noted that Section 1332(c) is likely inapplicable to alien corporations).

1989) ("[A] corporation organized under the laws of a foreign nation remains an **alien** corporation under § 1332, even if its principal place of business is in one of the States.") (emphasis in original).  Thus, this dispute is not one between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a)(3).  This is a dispute between **two aliens** on one side and an alien and three entities formed or incorporated under the laws of Delaware entities on the other.[4]  Such an alignment of parties does not fit within any of the possibly applicable jurisdictional pigeonholes of the diversity statute.  *See* 28 U.S.C. § 1332(a)(1)-(4).

This result is supported by the purpose of Section 1332(c) which is to **reduce** diversity jurisdiction — not to expand it.  *See Rouhi v. Harza Eng'g Co.*, 785 F. Supp. 1290, 1293 (N.D. Ill. 1992) ("[L]ike a domestic corporation, an alien may *add* an additional place of citizenship for diversity purposes if its principal place of business is within one of the states of the United States, but it does not lose its foreign citizenship."); *see also* S. Rep. No. 1830, 85th Cong., 2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3101 ("In adopting this legislation, the committee feels . . . that it will ease the workload of our Federal courts by **reducing** the number of cases involving corporations which come into Federal district courts on the fictional premise that a diversity of citizenship exists.") (emphasis added); *see also* 15 James Wm. Moore et al., Moore's Federal Practice ¶ 102.55[2] (3d ed. 1999).

Not surprisingly, therefore, courts have declined to ignore the alien status of foreign corporations claiming to have a principal place of business in a U.S. State.  *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) (holding that **even if** Credit Suisse did maintain a New

---

[4] Indeed, even if Plaintiffs' interpretation was correct, which it is not, then under the factual allegations of the Complaint (Am. Compl. ¶¶ 40-46) the Zeromax Defendants' principal place of business is Uzbekistan and they should be accorded alien status there by defeating diversity.  Plaintiffs' legal conclusions (*id.* ¶¶ 3-5) cannot overcome their factual allegations as to the Zeromax Defendants' principal place of business in paragraphs 40-51 of the Complaint.

York principal place of business, diversity still was defeated because aliens (Swiss defendant and Argentine plaintiff) were present on both sides of the dispute); *see also Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1151 (5th Cir. 1985) (holding diversity lacking under Section 1332(a)(2) where Singaporean plaintiffs sued Liberian corporation with principal place of business in New Jersey). Thus, in *Franceskin* and *Chick Kam Choo*, the Second and Fifth Circuits did not ignore the alien status of the Swiss and Liberian entities, but instead credited that status over the entities' respective alleged New York and New Jersey statuses for purposes of diversity, and held diversity jurisdiction was lacking. *See* Addendum A, Figure 1.

Likewise, here, the Court should not ignore ROZ's alien status, but instead, the Court should credit ROZ's alien status, consistent with Section 1332(c)'s aim to **reduce** — not expand — diversity jurisdiction.[5] *See* Addendum A, Figure 2. Thus, diversity jurisdiction is lacking in this case because both Plaintiffs are aliens, as is one Defendant. In other words, there are aliens on both sides of the dispute that are not merely "additional parties" within the meaning of Section 1332(a)(3). *See id*.

More fundamentally, ROZ Trading has **failed to cite a single case** involving an alien party claiming a principal place of business in a State of the United States to establish diversity with an opposing party from a different State of the United States under the first prong of Section 1332(a)(3). *See* Opp'n at 8-9 (citing cases).[6] Indeed, two cases cited by Plaintiffs demonstrate that the first prong of 1332(a)(3) — a dispute between "citizens of different States" — excludes

---

[5] This is particularly true when ROZ's principal place of business allegation is devoid of any factual support as to any business activities, is not supported by representations and warranties in the 1993 JVA, and is not supported by available records from the New Jersey Secretary of State.

[6] *See Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 627-28 (7th Cir. 1998) (§ 1332(a)(3) jurisdiction established between Illinois plaintiffs and citizens of Ohio in which "foreign citizen" was an additional party); *Hunter v. Shell Oil Co.*, 198 F.2d 485, 488 (5th Cir. 1952) (diversity jurisdiction established in dispute between Virginia plaintiffs and citizens of States other than Virginia and in which Canadian citizen was an "additional party"); *Esquivel v. GAC Express Inc.*, No. 05-CA-1025XR, 2005 WL 3454114, at*2 (W.D. Tex. Nov. 28, 2005) (diversity lacking in suit brought by Mexican citizen against Texan and Mexican defendants).

alien corporations and applies only to purely "American corporations," i.e., corporations incorporated in a State of the United States and which may also maintain a principal place of business in a State of the United States. *See Dresser Indus. Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 500 (3d Cir. 1997) ("For diversity purposes, an alien is an alien is an alien."); *Zenith Elec. Corp. v. Kimball Int'l Mfg., Inc.*, 114 F. Supp. 2d 764, 767-8 (N.D. Ill. 2000) (under 1332(a)(3) there must be a dispute among "diverse domestic citizens"); *see also* Addendum A, Figure 3 (depicting "diverse domestic citizens" required under § 1332(a)(3)).

For the foregoing reasons, the alignment of the parties in this case defeats and the Court lacks subject-matter jurisdiction over this dispute.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER ZEROMAX GMBH

Plaintiffs' Opposition lacks any factual assertion to support a "doing business" or "transacting business" theory of personal jurisdiction over Zeromax GmbH.  Opp'n at 11-14. Apparently conceding their inability to make any allegations connecting the Swiss-registered Defendant to the District of Columbia, Plaintiffs instead ask that the Court attribute jurisdictional contacts from the three dissolved U.S. Defendants to Zeromax GmbH under an alter-ego theory. *Id.* at 12-14.  Plaintiffs' alter-ego claims, however, merely revisit the "bare allegation[s]" and "[c]onclusory statements" of the Amended Complaint, *First Chicago International*, 836 F.2d at 1378-79, and conspicuously fail to address the separate general and specific jurisdictional defenses raised by Zeromax GmbH.  *See* Mot. at 5-13.

### A.    Plaintiffs Have Failed To Demonstrate That The Court Has General Personal Jurisdiction Over Zeromax GmbH

#### 1.    Neither Zeromax GmbH Nor The U.S. Zeromax Defendants Had Any Contacts With The District At The Time This Suit Was Filed

Notwithstanding a single, conclusory reference to "doing business" (Opp'n at 14), Plaintiffs fail to demonstrate that Zeromax GmbH has the requisite "***continuous and systematic***"

business contacts with the District of Columbia to permit a finding of general jurisdiction. *See Gorman*, 293 F.3d at 510 (internal citations omitted) (emphasis added). Plaintiffs cannot point to a single factual allegation demonstrating that Zeromax GmbH ever had a direct presence in the District of Columbia. Significantly, Plaintiffs also do not contest that general jurisdictional contacts are measured at the time an action is commenced. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) ("[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed . . . ."); *In re Orshansky*, 804 A.2d at 1091-92 (same). This is fatal to Plaintiffs' alter-ego argument, as their own allegations indicate that the U.S. Defendants had ceased "doing business" in the District, by virtue of dissolution, prior to the commencement of this action. Am. Compl. ¶¶ 3-5.

Contrary to Plaintiffs' suggestion (Opp'n at 12), the U.S. Zeromax Defendants' decision to submit to the personal jurisdiction of the Court does not in any way constitute a "concession" that they are "doing business" here. Plaintiffs' assertion that the U.S. Defendants have continued "life" after dissolution (*id.* at 12 n.4) also is erroneous. While Delaware law does establish a "winding up" period for dissolved Delaware corporate entities (*see* Del. Code Ann. tit. 8, § 278 (2006) (corporations); *id.* tit. 6, § 18-803 (limited liability companies)), the same law expressly provides that such post-dissolution continuation of the corporate form is "***not for the purpose of continuing the business for which the corporation was organized***." *Id.* tit. 8, § 278 (emphasis added).[7] By comparison, general jurisdiction under D.C. law requires a "***continuing corporate***

---

[7] Plaintiffs' argument that Zeromax LLC "continued to act" by transferring its interest in Muzimpex to Zeromax GmbH "*after* Zeromax LLC had already been dissolved" (Opp'n at 12 n.4) also suffers from an incorrect reading of Delaware law. The "winding up" statute specifically provides that a dissolved limited liability company may "gradually settle and close the limited liability company's business, [and] dispose of and convey the limited liability company's property." Del. Code Ann. tit. 6, § 18-803.

*presence* in the forum . . . *directed at advancing the corporation's objectives*." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (quotation omitted) (emphasis added).[8]

Because the U.S. Defendants were dissolved as a matter of law at the time that jurisdictional contacts are to be measured, they had no "continuing corporate presence" in the District that could be attributed to Zeromax GmbH. *See Data-Stream AS/RS Techs., LLC v. Acequip Ltd.*, No. 02-Civ-2089, 2002 WL 1683736, at *6 (S.D.N.Y. July 24, 2002) (holding activities of corporation's alleged agent "irrelevant" for jurisdiction where activities ceased almost a year before suit commenced); *Schenker v. Assicurazioni Generali S.P.A.*, No. 98-Civ-9186, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002) (alleged alter-ego's contacts did not give rise to jurisdiction because defendants did not own the entity when complaint was filed). Accordingly, Plaintiffs' allegations of general jurisdiction, including their alter-ego claim, fail.

## 2. Zeromax GmbH Is Not The Alter Ego Of Any Of The U.S. Zeromax Defendants

Even if the U.S. Zeromax Defendants were currently in existence and "doing business" in the District, any jurisdictional contacts they might have still could not be imputed to Zeromax GmbH under an alter-ego theory. Plaintiffs' conclusory legal argument that "there was no respect for corporate form among the Defendants, nor were there any meaningful distinctions, except minor variations in name" (Opp'n at 13) is insufficient to establish the existence of an alter-ego relationship. *AGS Int'l Servs.*, 346 F. Supp. 2d at 91 (plaintiffs failed to demonstrate alter-ego relationship by offering only "conclusory statement[s]" of alter ego). Moreover, the few facts that Plaintiffs do allege fail to overcome this deficiency — as made clear by the

---

[8] Separately, the mere existence of a Zeromax website (*see* Opp'n at 12 n.4) does not present the type of "continuous and systematic" contact needed to establish general jurisdiction — even for non-dissolved entities. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District.").

principal case on which Plaintiffs' alter-ego argument relies. *See* Opp'n at 12 (citing *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7-9 (D.D.C. 2003) (finding no alter ego where plaintiff alleged (i) joint use of trademarks and marketing image, including logos; (ii) joint online promotion of undertakings, including linked websites under heading "Our activities"; and (iii) sharing of key executives)).

Plaintiffs' allegations that the Zeromax Defendants claim credit for identical undertakings and post the same logo on their websites, and shared management (Opp'n at 13; Am. Compl. ¶¶ 3-6, 40) simply mirror the insufficient allegations made in *Diamond Chemical*. *See* 268 F. Supp. at 7-9. Moreover, Plaintiffs' wholly speculative assertion that "Zeromax LLC's interest in Muzimpex was simply transferred to Zeromax GmbH without consideration" (Opp'n at 13), which is not in the Amended Complaint, derives from an extraordinarily liberal and disingenuous reading of the purported "available documentation" (*id.*).[9] Plaintiffs cannot rely on such "bare allegation[s]" to satisfy their jurisdictional burden. *First Chicago Int'l*, 836 F.2d at 1378-79.

Finally, absent any showing of "unity of interest and ownership" between the Zeromax Defendants, the Court need not address Plaintiffs' claims that the alleged alter-ego relationship has been used to perpetrate fraud or injustice. *See, e.g.*, *AGS Int'l Servs.*, 346 F. Supp. at 89-92 (finding no alter-ego relationship and declining to engage in fraud or injustice analysis).

## B. Plaintiffs Have Failed To Demonstrate That The Court Has Specific Personal Jurisdiction Over Zeromax GmbH

As an alternative to their alter-ego argument, Plaintiffs offer an equally unavailing "intermediary" theory of personal jurisdiction over Zeromax GmbH. Opp'n at 14. While

---

[9] The passage Plaintiffs cite — from Zeromax Group's Memorandum in Reply in the Vienna arbitration — states in relevant part: "Following the dissolution of Zeromax LLC on September 28, 2005, Zeromax GmbH, a Swiss limited liability company ('*Gesellschaft mit beschränkter Haftung*'), acquired Zeromax LLC's interest in Muzimpex. On October 11, 2005, Zeromax GmbH and Tijorat executed new Foundation Documents for Muzimpex. On October 27, 2005, Muzimpex applied to the MOJ for registration and on November 7, 2005, the MOJ duly registered Muzimpex as an Uzbek-Swiss limited liability company." Pls.' Ex. 5 ¶ 27.

Plaintiffs again fail to specify which jurisdictional basis they are asserting, the "transacting business" language they use and one case they cite suggest that this particular argument relates to specific jurisdiction. *See id.* (citing *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty.*, 647 F.2d 200, 205 (D.C. Cir. 1981) (holding that "transacting any business" for specific jurisdiction applies "where a nonresident defendant ships goods to an intermediary with the expectation that the intermediary will distribute the goods in a region that includes the District of Columbia")).  The facts and holding in *Kaiser Stuhl Wine* are of no relevance to this dispute, where Plaintiffs have not alleged that Zeromax GmbH ever shipped goods, or otherwise targeted business opportunities in the District, through the U.S. Zeromax Defendants.

Moreover, Plaintiffs make no effort to connect Zeromax GmbH's alleged "transacting business" through the U.S. Defendants to any of their claims. *See* D.C. Code § 13-423; *Diamond Chem.*, 268 F. Supp. 2d at 14 ("Plaintiff's failure to allege with any particularity actions committed by TFE's subsidiaries related to its claim that occurred in the District of Columbia dooms its assertion of specific jurisdiction over TFE.").  Further, Plaintiffs conspicuously fail to contest, let alone address, Defendants' assertion that the acts and injury complained of are all alleged to have occurred in Uzbekistan — before Zeromax GmbH came into existence.  Mot. to Dismiss at 9.

Because Plaintiffs have failed to make a *prima facie* showing that Zeromax GmbH was "doing business" or "transacting business" in the District of Columbia — either directly or by virtue of its alleged relationship with the U.S. Defendants — or demonstrate that their claims arise out of any alleged contacts with the District, the Amended Complaint must be dismissed as to Zeromax GmbH for lack of personal jurisdiction. *See First Chicago Int'l*, 836 F.2d at 1378.

### C.    Plaintiffs Are Not Entitled To Pursue Jurisdictional Discovery

#### 1.    Plaintiffs Have Failed To Show A Colorable Basis For Personal Jurisdiction Over Zeromax GmbH

Given the insufficiency of their jurisdictional allegations, Plaintiffs have failed to demonstrate "a *colorable basis* for jurisdiction" that would warrant subjecting the Zeromax Defendants to "intrusive and burdensome discovery," as Plaintiffs request (Opp'n at 14-16) *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (quotation omitted) (emphasis added); *see also Acker v. Royal Merchant Bank & Fin. Co.*, No. Civ. A. 98-00392, 1999 WL 1273476, at *5 (D.D.C. Feb. 10, 1999) ("Although discovery should be granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction."). Plaintiffs have made absolutely no allegations that Zeromax GmbH has any contacts of its own with the District of Columbia. *See Caribbean Broad. Sys.*, 148 F.3d at 1089 (denying discovery where plaintiff had "alleged absolutely nothing, upon either information or belief, to indicate that a court in the District of Columbia might constitutionally assert jurisdiction over [the defendant]"). Their alter-ego arguments are precluded by the fact that the U.S. Zeromax Defendants were dissolved at the time the Amended Complaint was filed. See Data-Stream, 2002 WL 1683736, at *6. Finally, Plaintiffs have not alleged that their claims arise out of any of the purported jurisdictional contacts. *See Savage v. Bioport, Inc.*, No. 1:06-CV-00081, 2006 WL 3044413, at *6 (D.D.C. Oct. 27, 2006). Accordingly, Plaintiffs' request for jurisdictional discovery should be denied.

#### 2.    In The Alternative, The Court Should Stay Discovery Pending The Outcome Of The Vienna Arbitration

If the Court is inclined to order discovery before dismissing this action, Defendants submit in the alternative that the Court should stay these proceedings, including discovery proceedings, pending the outcome of the related arbitration in Vienna. *See* 9 U.S.C. § 3

(providing that a court may stay litigation pending arbitration of "any issue referable to arbitration . . . on application of one of the parties"); *see also Corpman v. Prudential-Bache Sec., Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) ("Where an action has been stayed pending arbitration, a district court may not permit the parties to conduct discovery under the Federal Rules of Civil Procedure."). Indeed, Plaintiffs concede that a stay pending arbitration in this case would be appropriate if Zeromax had sought to compel arbitration. Opp'n at 1.

Defendant Zeromax Group is presently an active participant in the Vienna proceedings, contrary to Plaintiffs' misleading assertion that "Zeromax has expressly declined to submit to the arbitration." Opp'n at 1. Zeromax Group has, *inter alia*, filed a Memorandum in Reply to the Statement of Claims (Pls.' Ex. 5), paid its EUR100,000 share of the advance costs, jointly nominated the respondents' arbitrator, participated in the Tribunal Chairman selection process, and was actively involved in the scheduling of the first procedural conference. Zeromax Group's assertion of jurisdictional objections in Vienna does not preclude a stay of this action pending the arbitration. *See* 9 U.S.C. § 3 (providing that a court may stay litigation pending arbitration so long as "the applicant for the stay is not in default in proceeding with such arbitration"). Zeromax is not in default in the Vienna arbitration proceedings but instead is an active participant, notwithstanding its jurisdictional objections. Accordingly, Defendants submit that the Court should stay this action, at least until the jurisdictional issues have been resolved in Vienna.

## III.    PLAINTIFFS LACK STANDING

Plaintiffs do not contest (Opp'n at 19-20) that in order to have standing, "[a] plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751; *see also Valley Forge Coll.*, 454 U.S. at 472 (at an "irreducible minimum," a party seeking adjudication in an

Article III court must establish "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant").  By Plaintiffs' own allegations, ROZ Trading's entire proprietary interest in CCBU was extinguished by Uzbekistan through a series of state-initiated judicial acts ending in 2002.  Am. Compl. ¶¶ 29-31; Opp'n at 31-32.  The Amended Complaint therefore fails to allege any injury "traceable" to the allegedly unlawful conduct of the Zeromax Defendants because Plaintiff's injury (i.e., Uzbekistan's removal of their CCBU interest in 2002 (Am. Compl. ¶ 31; Opp'n at 31)) was complete *before* the Zeromax Defendants are alleged to have had any role in this case (i.e., through Muzimpex's acquisition of its CCBU interest from Uzbekistan in 2004).  Am. Compl. ¶ 45.  Thus the Amended Complaint admits that ROZ Trading's purported injury was caused by Uzbekistan's alleged unlawful conduct — not that of the Zeromax Defendants (Opp'n at 22).

The question whether Uzbekistan acted unlawfully by removing ROZ Trading's proprietary interest in CCBU is a question of state responsibility governed by public international law.  *See* Declaration of Barry E. Carter ("Carter Decl.") dated February 7, 2007, ¶ 35; *see also First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763 (1972) ("[A] court of the United States . . . will decide cases before it by choosing the rules appropriate for decision from among the various sources of law *including international law*.") (citing *The Paquete Habana*, 175 U.S. 677 (1900)) (emphasis added); *see also* Carter Decl. ¶¶ 18-22 (discussing role of international law in U.S. law).  Under international law, state responsibility for loss of property or other economic harm does not attach when a state's acts constitute a valid regulatory act in the exercise of its police powers.  *See* Carter Decl. ¶¶ 35-36 (citing cases).  As

alleged, Uzbekistan's actions constituted regulatory acts that would not constitute a violation of international law. *See* Am. Compl. ¶¶ 29-31; Carter Decl. ¶ 36 (discussing same).[10]

ROZ has failed to identify any self-executing bilateral investment treaty or other legal authority that would provide a basis for its claims. *See id.* ¶¶ 35, 37 (stating that claim for expropriation not likely to be recognized as an established international law violation for which an independent right of action would not be necessary). Perhaps acknowledging its inability to obtain relief from the proper party in interest — Uzbekistan — ROZ Trading attempts to couch its classic international claims as state law claims against a private party.

Contrary to Plaintiffs' attempt to artificially limit the doctrine of standing (Opp'n at 19), standing is "a threshold question in ***every federal case***, requiring the court to determine 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Am. Postal Workers Union v. Frank*, 968 F.2d. 1373, 1374 (1st Cir. 1992) (emphasis added) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). "[S]tanding is gauged by the specific ***common-law***, statutory or constitutional claims that a party presents." *Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) (emphasis added).

Because ROZ Trading complains of an injury caused by Uzbekistan's purported violations of international law in 2002, ROZ Trading's state law claims against the Zeromax Defendants for conduct alleged to have occurred two years ***after*** ROZ Trading's injury are not redressable. Am. Compl. ¶¶ 40-50. *See Allen*, 468 U.S. at 753 n.19 (explaining that the second,

---

[10] Even assuming *arguendo* that Uzbekistan's acts constituted an unlawful expropriation under international law, ROZ Trading's sole remedy still would be against Uzbekistan, and then, for compensation only. *See* Rest. (Third) § 713 (a private person's remedies for a state's violation of international law are against the offending state); § 713 cmt. k ("Restoration of ownership to the original owner is virtually unknown in expropriation cases.").

"traceability," element of standing "examines the causal connection between the assertedly unlawful conduct and the alleged injury"); *c.f. World Wide Minerals Ltd. v. Republic of Kaz.*, No. 98-CV-1199 (RCL), slip op. at 7 (D.D.C. Jun. 26, 2003) (noting insufficiency of jurisdictional allegations due to lack of temporal proximity to alleged injury) (Addendum B).

## IV.    THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS

### A.    *All* Of Plaintiffs' Claims Require This Court To Adjudicate The Validity Of Uzbekistan's Official Sovereign Acts

Plaintiffs' assertion that their "case against Zeromax does not turn upon undoing an action by a foreign sovereign" (Opp'n at 22) is disingenuous and false. Plaintiffs' entire Amended Complaint is predicated on the alleged unlawful acts of Uzbekistan. In particular, Plaintiffs allege that their participatory interest in CCBU was "eliminate[d]" and "completely purge[d]" through a series of alleged "sham proceedings" initiated by Uzbekistan and culminating in a decision of the Supreme Economic Court of Uzbekistan on September 11, 2002, approving "the seizure of ROZ's *remaining* interest in CCBU." Am. Compl. ¶¶ 28, 30, 31 (emphasis added). Critically, the Amended Complaint is devoid of any factual allegation that the Zeromax Defendants were in any way involved in Uzbekistan's elimination of ROZ Trading's participatory interest in CCBU in 2002, alleging instead that the Zeromax Defendants acquired ROZ Trading's "*former* interest" in CCBU from Uzbekistan two years later in "late 2004." *Id.* ¶¶ 41, 45. For Plaintiffs now to parse their various contract and tort claims to avoid application of the act of state doctrine is particularly egregious given that, by their own admission, Plaintiffs' participatory interest in CCBU was completely extinguished in 2002 by alleged acts of state, thereby depriving them of any right or interest from which to assert such claims against Zeromax in 2006.

Specifically, in order for Plaintiffs to assert claims for tortious interference or fraudulent conveyance, they must be able to assert a valid contract or interest with which the Zeromax Defendants allegedly interfered or that the Zeromax Defendants allegedly conveyed. *See* Mot. at 32, 40-41 (citing cases). Here, Plaintiffs have alleged that ROZ Trading's interest was completely extinguished through Uzbekistan's judicial intervention in 2002. Am. Compl. ¶¶ 27-31; Opp'n at 32. Therefore, Plaintiffs' assertion that "[e]ven if the [Uzbek judicial] decisions are untouchable, Zeromax tortiously interfered with ROZ's interest" in 2004 (Opp'n at 23-24) directly contradicts Plaintiffs' own allegations that ROZ Trading's interest already had been completely extinguished two years prior. Plaintiffs' assertion that the Zeromax Defendants fraudulently "convey[ed] ROZ's interest in CCBU from Zeromax LLC to other entities" (Opp'n at 24) is likewise incompatible with the Amended Complaint. It is not unlawful for a Zeromax entity to transfer its interest in a subsidiary — here ***Muzimpex*** — to another entity as it deems appropriate in its business judgment.

In short, in order for the Court to adjudicate Plaintiffs' tortious interference and fraudulent conveyance claims against the Zeromax Defendants, the Court first would need to adjudicate the legality of Uzbekistan's official sovereign acts and the validity of the state's title to the CCBU shares, in order to conclude that ROZ Trading somehow retained an interest in CCBU that the Zeromax Defendants allegedly could have conveyed or with which the Zeromax Defendants allegedly could have interfered. This is precisely what the Court cannot do.

Similarly, adjudication of ROZ Trading's breach of contract claim first requires a determination as to the validity of Uzbekistan's acts of state and its title to the CCBU shares. Plaintiffs contend that the breach of contract claim is predicated on the Zeromax Defendants' alleged failure to call a Parties' Assembly after ROZ Trading purportedly terminated the joint

venture, as allegedly required under the JVA. Opp'n at 24. Putting aside for purposes of this discussion that none of the Zeromax Defendants nor Muzimpex is a signatory to the JVA, and that none of the Zeromax Defendants ever acquired an interest in CCBU, even if any of the Zeromax Defendants had manifested assent to be bound by the JVA — which they did not — ROZ Trading's purported notice of termination had no legal effect in 2004 because, as alleged in the Amended Complaint, ROZ Trading's interest in the joint venture and therefore its rights under the JVA, had been fully extinguished by Uzbekistan's sovereign acts in 2002.[11]

Indeed, under Uzbek law, the 1993 JVA was rendered "null and void" upon the registration of new CCBU foundation documents with the Ministry of Justice in 2003 pursuant to Cabinet of Ministers Decree No. 420-ф. *See* Fayzullaev Decl. ¶ 8 & Ex. H, ¶ 3; Supplemental Declaration of Azamat R. Fayzullaev dated Feb. 6, 2007 ("Supp. Fayzullaev Decl.") ¶¶ 7-8, 10-12 & Exs. A-B, E. Thus, for the Court to determine whether the Zeromax Defendants had somehow breached the terms of the JVA, the Court first would need to conclude that Uzbekistan's sovereign acts extinguishing ROZ Trading's interests in the joint venture and its rights under the JVA were invalid and that the 1993 JVA still had force and effect in 2004.

Finally, Plaintiffs' reliance on *Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., International*, 493 U.S. 400, 404 (1990) and *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332 (EGS), 2006 WL 2711527, at *1 (D.D.C. Sept. 21, 2006) (Opp'n at 22-23) is unavailing. In both *Kirkpatrick* and *Oceanic Exploration*, the plaintiffs alleged wrongful conduct (bribes) by the defendants that caused plaintiffs to lose their bids on foreign government contracts. *Id.* This alleged conduct was carried out **prior to** the sovereign acts in question, i.e.,

---

[11] Moreover, ROZ Trading's claim that it could not participate in the January 2002 general meeting of CCBU participants in Uzbekistan (Am. Compl. ¶ 35; Opp'n at 27) is unavailing. The terms of the 1993 CCBU JVA to which ROZ was a party **mandated** that the "Parties' Assembly **shall** be held at Beshaghash Plant or other unanimously agreed place." Pls.' Ex. 7, ¶ 6.1.3 (emphasis added).

the award of government contracts, and indeed had motivated those acts of state. *Id.* Accordingly, the courts could adjudicate plaintiffs' claims without having to address the validity of the government's acts. *Id.*; *see also* Carter Decl. ¶¶ 51-55 (discussing *Kirkpatrick*). In contrast, the Amended Complaint does not allege that Uzbekistan's sovereign acts were ***motivated by*** any alleged wrongful conduct of any of the Zeromax Defendants. Indeed, the Amended Complaint does not contain a single allegation to support an argument that, ***but for*** any alleged wrongful conduct of the Zeromax Defendants, Uzbekistan would not have taken its state acts against ROZ Trading. Instead, the Amended Complaint alleges that the Zeromax Defendants indirectly acquired, through Muzimpex, ROZ Trading's former interest in CCBU two years after that interest had been completely extinguished by the state. Such attenuated and conclusory pleading does not bring ROZ Trading's claims within *Kirkpatrick* or *Oceanic Exploration.*

> **B.    There Is No Commercial Activity Exception To The Act Of State Doctrine**

Contrary to Plaintiffs' assertions (Opp'n at 25-28), this case does not turn on the Court's adjudication of any commercial acts of Uzbekistan. Even if it did, there is no so-called "commercial activity exception" to the act of state doctrine. Plaintiffs' contention that their claims "***arise from*** a commercial joint venture involving the production, bottling, and sale of Coca-Cola products in Uzbekistan" (Opp'n at 25 (emphasis added)) grossly misstates the nature of this case. The gravamen of Plaintiffs' Amended Complaint is Uzbekistan's removal of their interest in CCBU through a series of state-initiated judicial proceedings and official decrees. Am. Compl. ¶¶ 29-31. Plaintiffs all but concede these acts were sovereign in nature. Opp'n at 28 ("Plaintiffs do not dispute the official nature of some of Uzbekistan's acts."). Plaintiffs' attempt to recast their claims in terms of purported breaches of the JVA by Uzbekistan and Zeromax (Opp'n at 27) must fail.

As Plaintiffs acknowledge (Opp'n at 2), and as is apparent from the face of the JVA (Pls.' Ex. 7), Uzpishcheprom (as the successor to Beshaghash) was a party to the JVA — *not* Uzbekistan.  Am. Compl. ¶ 13.  Plaintiffs fail to allege any fact sufficient to overcome the well-established presumption that foreign state-owned agencies and instrumentalities are separate legal entities from their respective foreign sovereigns.  *See Peterson v. Gen. Org. of Soc. Ins.*, 332 F. Supp. 2d 189, 198 (D.D.C. 2004) (holding that agency or instrumentality of Saudi Arabia was an independent entity) (internal citation omitted).   Instead, ROZ Trading ignores Uzpishcheprom's participation in CCBU and alleges in conclusory fashion that "the government of Uzbekistan" was a party to the JVA.  Am. Compl. ¶ 13.  Similarly, Plaintiffs expound for over a page about how *Uzbekistan* (as opposed to Uzpischeprom) allegedly breached its purported obligations under the JVA (Opp'n at 27-28) but fail to articulate any theory as to why the *Zeromax Defendants* should be held liable for either that alleged breach or for events allegedly "stemming from" that alleged breach even before the purported claim of breach has been adjudicated.

Moreover, by ROZ Trading's own admission (Am. Compl. ¶¶ 29-31), this dispute is based on Uzbekistan's judicial decisions depriving ROZ Trading of its interest in CCBU, which decisions ROZ Trading essentially concedes are sovereign in nature (Opp'n at 28).   *See Philippine Nat'l Bank*, 397 F.3d at 772-73 (judicial decisions rendered in state-initiated actions are acts of state).   Unable to classify Uzbekistan's judicial intervention as "commercial," ROZ Trading argues that the judicial decisions are sovereign acts that ***affected*** an interest in a commercial venture.  Opp'n at 28.  This is insufficient.  *See Rong v. Liaoning Province Gov't*, 452 F.3d 883, 890 (D.C. Cir. 2006) (holding Chinese political subdivision's seizure of plaintiff's

equity interest in commercial venture was not "commercial activity" within the meaning of the FSIA).

Even if the events of this case could be deemed commercial, which they cannot, Plaintiffs' reliance on Justice White's plurality opinion in *Alfred Dunhill of London Inc. v. Republic of Cuba*, 425 U.S. 682, 706 (1976) (Opp'n at 25-26) is tenuous at best. *See* Carter Decl. ¶¶ 55-59 (discussing same). As such, this Court should not adopt any "commercial activity exception" to the act of state doctrine. *See World Wide Minerals*, 296 F.3d at 1166 ("The existence of such an exception is an unsettled question that this court has never addressed. Nor need we do so today."); *see also Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 550 (11th Cir. 1997) (flatly rejecting commercial activity exception).

Indeed, this Court in *Virtual Defense and Development International, Inc.* — a case upon which Plaintiffs rely (Opp'n at 26) — acknowledged that even commercial acts could trigger act-of-state considerations. 133 F. Supp. 2d at 7 ("[U]nder the act of state doctrine, a United States court would be ***discouraged from hearing even cases premised on commercial activities*** if hearing such cases would require the court to pass judgment on an underlying sovereign act.") (emphasis added); *see also Oceanic Exploration Co.*, 2006 WL 2711527, at *9-10 (holding foreign state's decision as to who to partner with to exploit natural resources was act of state, notwithstanding fact that foreign state engaged in some commercial activity). Additionally, in both *Dunhill* and *Virtual Defense*, the defendants failed to introduce evidence of the relevant acts of state. *See Dunhill*, 425 U.S. at 694-95; *Virtual Def. & Dev. Int'l, Inc.*, 133 F. Supp. 2d at 8.[12]

---

[12] Further, ROZ Trading's reliance on *Arango* is misplaced. Opp'n at 28 (citing *Arango*, 621 F.2d at 1380-81). In *Arango*, the Fifth Circuit held that it was not required to adjudicate the legitimacy of the acts of state to determine which party bore the loss under insurance contracts triggered by the acts of state. *Arango*, 621 F.2d at 1380-81. Here, in order to determine ROZ Trading's claims, this Court first would need to adjudicate the validity of Uzbekistan's acts of state and its title to the CCBU shares.

In stark contrast, here, the Zeromax Defendants have identified numerous acts of state including two valid and binding final decisions of the Supreme Economic Court of the Republic of Uzbekistan, a decree of the Cabinet of Ministers of the Republic of Uzbekistan and an order of the State Property Committee.  *See* Fayzullaev Decl. Exs. F-I.  Plaintiffs do not dispute the sovereign character of these acts.  Opp'n at 28.  It is difficult to envisage a more classic case warranting application of the act of state doctrine.  *See Rong*, 452 F.3d at 890 (declaration by political subdivision of the Chinese government that plaintiff's equity interests in a Chinese NGO were now "state assets" and the demand that those interests be transferred to the Province were quintessentially sovereign acts and not a corporate takeover).

Finally, Plaintiffs' attempt to discredit these acts (Opp'n at 35) is of no moment, because accusations of corruption cannot negate the sovereign character of the acts and reaching such a conclusion would require the court to consider the validity of the state acts — the very decision the act of state doctrine is designed to avoid.  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 362 (1993) (stating that acts amounting to "denial of justice" can only be performed by a sovereign acting as such); *Oceanic Exploration Co.*, 2006 WL 2711527, at *8 (rejecting a "corruption exception" to the act of state doctrine); *see also* Carter Decl. ¶¶ 53-54.[13]

### C.    The Second Hickenlooper Amendment Does Not Apply

Plaintiffs have failed to satisfy any of the prerequisites necessary for the "Second Hickenlooper Amendment," 22 U.S.C. § 2370(e)(2) (the "Amendment"), to override the act of state doctrine.  Plaintiffs have failed to demonstrate that: (1) a claim of title or other right to

---

[13] Plaintiffs make the convoluted argument without citation that Section 16.10 of the 1993 CCBU JVA constitutes some kind of waiver by Uzbekistan that the act of state doctrine does not apply.  Opp'n 28-29.  This argument fails because Plaintiffs continue to gloss over the fact that Uzbekistan is not a party to the 1993 JVA and, additionally, fail to explain how this provision could possibly preserve ROZ's purported termination rights under Section 12.2.3 in the event that ROZ's actual contract rights were extinguished pursuant to regulatory acts of state.  Moreover, under Uzbek law the 1993 CCBU JVA was rendered null and void upon the registration with the Ministry of Justice of new foundation documents in 2003.  Fayzullaev Supp. Decl. ¶¶ 8, 10-12.

property is asserted, (2) based upon (or traced through) a confiscation or other taking by an act of state, (3) in violation of international law. *See Occidental of UMM Al Qaywayn, Inc. v. Cities Service Oil Co.*, 396 F. Supp. 461, 471 (W.D. La. 1975). Additionally, the Amendment is inapplicable because Plaintiffs have failed to establish that the property in question is in the United States or that such property falls within the scope of the Amendment's protections.

> **1.    ROZ Trading Has Failed To Allege, Nor Can It, That The Property In Question Is In The United States**

Fatal to ROZ Trading's invocation of the Second Hickenlooper Amendment is the fact that, as alleged, ROZ Trading's former interest in CCBU was acquired and is held by Muzimpex *in Uzbekistan*. Am. Compl. ¶¶ 45, 47. Indeed, contrary to Plaintiffs' suggestion (Opp'n at 32), the overwhelming majority of courts have held that the Amendment does not apply where the property in question is not located in the United States at the time the action was filed. *See, e.g.*, *Rong*, 362 F. Supp. 2d at 99 (citing 2d Circuit, 5th Circuit, and Restatement authorities) (holding the Amendment was inapplicable, *inter alia*, because the property at issue (stock), even if covered by the Amendment, was located in China). Attempting to avoid the weight of this authority, ROZ Trading argues that the location of entities it claims had a beneficial interest in the CCBU interest should determine the location of the property in question. Opp'n at 31. Yet ROZ Trading fails to cite any authority for this proposition, and likewise fails to provide any reason why this Court should ignore the wealth of decisions holding to the contrary.

> **2.    ROZ Trading's Former Interest In CCBU Does Not Fall Within The Protected Class Of Investments Contemplated By The Amendment**

Acknowledging that the Amendment protects only "U.S. investments," ROZ, a Cayman Islands' entity, attempts to pass its former investment in CCBU off as a U.S. investment on the basis of ROZ's questionable presence in New Jersey. Opp'n at 31. *See Banco Nacional de Cuba v. First Nat'l City Bank of New York*, 431 F.2d 394, 402 (2d Cir. 1970) (extensive review

of legislative history clearly demonstrated that Amendment was "designed to be invoked by American firms"); 110 Cong. Rec. 19555, 19559 (1964) ("One of the principal reasons for the proposed amendment is that it will serve notice that foreign states taking action ***against U.S. investment*** in violation of international law cannot market the product of their expropriation in the United States free from the risk of litigation.") (emphasis added).  Any investment that ROZ, as a self-admitted Cayman Islands entity (as evidenced by its representations in the 1993 CCBU JVA, (Pls.' Ex. 7, ¶ 9.3.1)), made in Uzbekistan was a U.K. and not a U.S. investment.  *Rong*, 362 F. Supp. 2d at 99 n.11 (alleged expropriation of Chinese investment was outside scope of the Amendment where "the purposes of the amendment include the promotion and protection of United States investment in foreign countries"); *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982).

Simply by alleging that it maintains its principal place of business in New Jersey does not transform ROZ's former investment in CCBU into a "U.S. investment."  *See, e.g.*, *In re Bullmore*, 300 B.R. 719, 730 (D. Neb. 2003) (holding that Cayman Islands debtor could avail itself of Bankruptcy Code provision applicable to foreign entities even though creditor argued debtor was "all-American company" by virtue of its Nebraska principal place of business) (quoting *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519 (1839)); *see also* Restatement (Third) of Foreign Relations § 213, Rep. Note 5 ("A corporation has the nationality of the state under the laws of which the corporation is organized.").  Moreover, the Supreme Court has made clear that citizenship for diversity purposes is a distinct analysis that cannot be used to determine citizenship for any other purpose.  *See, e.g.*, *Selover, Bates & Co. v. Walsh*, 226 U.S. 112, 126 (1912) (holding that citizenship for diversity purposes is not citizenship for purposes of the Privileges and Immunities Clause of the Fourteenth Amendment).  At any rate, evidence

demonstrates that ROZ is not even authorized to do business in New Jersey, which in turn tends

to support the conclusion that ROZ does not have any presence in New Jersey at all.  *See* supra.

> ### 3. The Second Hickenlooper Amendment Does Not Extend To Claims Of Title To Intangible Property

The Amendment also does not apply because a majority of courts have limited its

application to rights in tangible property.  *See Menendez v. Saks & Co.*, 485 F.2d 1355, 1372 (2d

Cir. 1973), *rev'd on other grounds sub nom.*; *Occidental*, 396 F. Supp. at 472; *Hunt v. Coastal

States Gas Producing Co.,* 583 S.W.2d 322, 326 (Tex. 1979); *French v. Banco Nacional de

Cuba*, 242 N.E.2d 704, 713-15 (N.Y. 1968).  ROZ Trading's interests in CCBU were created by

the 1993 CCBU JVA.  ROZ Trading's claim of title to property is as to those interests, which

were forfeited by sovereign regulatory acts.  Thus a claim of ownership of an interest in CCBU is

an intangible interest not covered by the Amendment.  *Occidental*, 396 F. Supp. at 472 (rights

under nationalized concession contract constituted intangible property outside scope of the

Amendment).  Plaintiffs' reliance on the Ninth Circuit's decision in *West v. Multibanco

Comermex, S.A.*, 807 F.2d 820, 830 (9th Cir. 1987) (Opp'n at 30) for the contrary proposition is

unavailing as that is an isolated case that is unsupported by the Amendment's legislative history.

*See* S. Rep. No. 89-170, at 19 (1965) (Conf. Rep.), *as reprinted in* 1965 U.S.C.C.A.N. 2993,

3002;[14] *French*, 242 N.E.2d at 714 (discussing legislative history); Restatement (Third) of

Foreign Relations § 444, Rep. Note 5 (same).

---

[14] The legislative history explains that the words "to property" were inserted after the words "other right" to make "clear the law does not prevent banks, insurance companies, and other financial institutions from using the act of state doctrine as a defense to multiple liability upon any contract or deposit or insurance policy in any case where such liability has been taken over or expropriated by a foreign state." *Id.*

### 4. ROZ Trading Fails To Make A Claim Based On A Violation Of Principles Of International Law

Finally, the Amendment does not apply because Uzbekistan's state-initiated judicial actions to recoup debts owed to the State constituted regulatory acts — not a "taking."[15]  *See West*, 807 F.2d at 832-33 (Amendment inapplicable because Mexico's institution of exchange controls was an exercise of its basic authority to regulate its economic affairs); *French*, 242 N.E.2d at 710 ("A currency regulation . . . is not a 'confiscation' or 'taking.'").  The Supreme Economic Court decisions are based on ROZ Trading's violation of Uzbek anti-monopoly laws and ROZ (Uzbekistan)'s debts owed to the Uzbek Treasury.  This is a classic case of regulatory action pursuant to a sovereign's exercise of its police powers.[16]  *See* Carter Decl. ¶ 36.  Indeed, Plaintiffs expressly contend that they do not make any international law claims (Opp'n at 34) (stating that "there is no such claim . . . in this case at all")) and, in fact, fail to state a claim based on a violation of international law.  *See* Carter Decl. ¶¶ 32-33, 35-39.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM

For the exclusive purpose of this Rule 12(b)(6) motion to dismiss, the Zeromax Defendants rely solely on the allegations in the Amended Complaint, documents incorporated therein by reference, and declarations of Uzbek and international law.  It is well-established that courts can properly consider all of these materials when ruling on a 12(b)(6) motion.[17]

---

[15] In any event, Plaintiffs concede that ROZ (Uzbekistan), as a citizen of Uzbekistan, cannot maintain a claim against Uzbekistan for a violation of international law.  Opp'n at 32, n.8; *see also Rong*, 362 F. Supp. 2d at 101 (expropriation by a sovereign state of the property of its own nationals does not implicate settled principles of international law).

[16] It is also well established under international law that such regulation does not give rise to a claim of compensation.  *Sporrong and Lönnroth v. Sweden*, Judgement of 23 Sept. 1982, Ser. A No. 52, *reprinted in* 5 E.H.R.R. 35, 50 (1983) ("The third rule [of Article 1, Protocol No. 1 of the European Convention on Human Rights] recognizes that the States are entitled, amongst other things, to control the use of property in accordance with the general interest, by enforcing such laws as they deem necessary for the purpose."); *see also* Carter Decl. ¶¶ 35-36 (citing cases).

[17] *See Martin-Baker Aircraft*, 389 F.3d at 1257 ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and

In opposing this Rule 12(b)(6) motion to dismiss, Plaintiffs submit voluminous exhibits and raise numerous (albeit conclusory) allegations not pled in the Amended Complaint. *See, e.g.*, Opp'n at 37, 39 (relying on witness declaration to add allegations not contained in the Amended Complaint). The Court should not, and need not, consider these materials to decide the Zeromax Defendants' Rule 12(b)(6) motion to dismiss. *Martin-Baker Aircraft*, 389 F.3d at 1257. In any event, Plaintiffs' extraneous submissions do not cure their pleading deficiencies. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[F]actual allegations in briefs or memoranda of law . . . may never be considered when deciding a 12(b)(6) motion . . . ."); *accord Paley v. Ogus*, 20 F. Supp. 2d 83, 89 (D.D.C. 1998) (holding court cannot rely on "any written or oral evidence" that "does not merely restate what is said in the pleadings") (quotation omitted). Because Plaintiffs' Amended Complaint, and any documents incorporated therein by reference, fail to prove any set of facts entitling Plaintiffs to relief, the Amended Complaint must be dismissed. *Martin-Baker Aircraft*, 389 F.3d at 1260.

## A.    Uzbek Law Applies To Plaintiffs' Claims Against The Zeromax Defendants

As stated above, ROZ Trading's claims against the Zeromax Defendants are thinly veiled claims for purported violations of customary international law that could only be brought, if at all, against Uzbekistan. Carter Decl. ¶¶ 23-24, 31, 33. Under international law, shareholders in a third-party purchaser of allegedly expropriated property cannot be held liable for acts of the allegedly expropriating state under the guise of garden-variety domestic claims. *Id.* ¶ 39. Notwithstanding, a third-party purchaser of alleged expropriated property is protected from such

---

matters of which we may take judicial notice.") (internal quotation omitted); Fed. R. Civ. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source . . . . [Its] determination shall be treated as a ruling on a question of law."); *BCCI Holdings (Lux.), S.A. v. Khalil*, 184 F.R.D. 3, 9 (D.D.C. 1999) (ruling on a 12(b)(6) motion and holding that Rule 44.1 permitted submission of declaration from English barrister on issues of English law); *In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 18 (E.D.N.Y. 2005) ("In deciding the scope and nature of applicable substantive rules of international law, this court has followed Rule 44.1 . . . .").

liability under the *lex situs* rule. *Id.* ¶¶ 40-43. This principle, which ROZ Trading ignores, mandates that the transfer of property is governed by the municipal law of the state in which the property is located at the time of the alleged transfer. *Id.* ¶ 40. In this case the property in question is located in Uzbekistan and Uzbek law would apply.

Similarly, District of Columbia conflicts rules also point to Uzbekistan. Under these rules, the Court is not required to engage in a conflict of laws analysis if the laws of the potentially interested states present a "false conflict." *Wyatt v. Syrian Arab Republic*, 398 F. Supp. 2d 131, 138 (D.D.C. 2005); *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 847-48 (D.D.C. 1996) (federal courts in diversity actions will not engage in a choice of law analysis when the laws of the potentially interested states present a "false conflict") (internal citations omitted). A false conflict exists when, among other instances, the policy of one state would be advanced by application of its law and that of another state would not be advanced by application of its law. *In re Estate of Delaney*, 819 A.2d 968, 988 (D.C. 2003) (citations omitted); *Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581, 586 (D.C. Cir. 1965) (holding that a "false conflict" existed where New York was the only jurisdiction with an interest in the application of its law). In such event, the law of the interested state prevails.

This case presents a classic "false conflict." Without question, Uzbekistan is the only state whose policies are even implicated and would be advanced by application of its laws on the merits. Plaintiffs claims turn on scrutiny of Uzbekistan's removal — through state-initiated judicial intervention and official decree — of ROZ's proprietary interest in CCBU, an Uzbek limited liability company operating in Uzbekistan. Moreover, as alleged, Muzimpex (also an Uzbek limited liability company operating in Uzbekistan), purchased ROZ's former interest pursuant to an official state-privatization order. *See Fin. One Pub. Co. v. Lehman Bros. Special*

-28-

*Fin.*, 414 F.3d 325, 338-39 (2d Cir. 2005) (applying Thai law because it advanced Thailand's strong interest in "enforcing the orders of its Ministry of Finance" and "in having the effect of its government's orders determined in accordance with Thai law"); *accord Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 87 (2d Cir. 2002); *see also* Opp'n at 34 n.11 (conceding 1993 CCBU JVA's choice of law provision points to Uzbek law). Additionally, none of the allegedly wrongful acts took place in the District of Columbia but, as ROZ Trading admits, they all took place in Uzbekistan. Am. Compl. ¶¶ 29-31, 37, 44-45, 47. Indeed, ROZ Trading has failed to identify any District of Columbia policy that would be advanced if its laws were to be applied, stating only "when it becomes time truly to determine choice of law, those factors will point to U.S. law." Opp'n at 34 n.11.[18]

In contrast, the District of Columbia is a disinterested forum with no relationship to the litigation and ROZ Trading fails to argue otherwise.[19] *See ABB Daimler-Benz Transp. (N. Am.), Inc. v. Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 89 (D.D.C. 1998) (applying New Jersey law where no injury occurred in the District, the relationship of the parties was not centered in the District, the project was not in the District and neither the District nor its citizens would "derive any benefits nor suffer any consequences as a result of the outcome of this case or of the Project."). District of Columbia courts have not hesitated to apply foreign law where its

---

[18] Plaintiffs erroneously argue without support (Opp'n at 34 n.11) that Uzbekistan has no interest in having its law applied to the question of whether this Court should pierce Muzimpex's corporate veil. Whether the separate legal status of an Uzbek entity can be disregarded is a question of Uzbek law in which the District has no interest. *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, No. 93-1725, 1994 WL 225383, at *2 (D.D.C. May 9, 1994) (holding that the state of incorporation has paramount interest in regulating the standards which control piercing the veil of its corporations) (citation omitted); *see also* Fayzullaev Decl. ¶ 6.

[19] Plaintiffs assert that "the domicile of the parties and the place where the injury was felt . . . *will point* to U.S. law." Opp'n at 34 n. 11 (emphasis added). Putting aside Plaintiffs' peculiar invocation of "U.S. law" (as opposed to District of Columbia law), they fail to explain how any "injury was felt" in the District of Columbia. Even if the District of Columbia had a potential interest in this case, Uzbekistan has the "more substantial interest" in having its laws applied. *See, e.g.*, *Egan v. McNamara*, 467 A.2d 733, 741 (D.C. 1983) (law of the corporation's domicile controls for purposes of determining who owns corporate stock) (citing REST. (SECOND) OF CONFLICT OF LAWS § 303); *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41-42 (D.C. 1989) (holding Virginia law governed where tortious conduct and injury occurred in Virginia and parties' relationship was centered on a Virginia project).

application would further the interests of the foreign forum and District of Columbia policies are neither implicated nor advanced by application of District of Columbia law. *See Chinnery v. Frank E. Basil, Inc. of Del.*, Civ. A. No. 86-2977 (JHP), 1988 WL 4803, at * 1 (D.D.C. Jan. 13, 1988) (applying Saudi law); *accord Godbey v. Frank E. Basil, Inc.*, 603 F. Supp. 775, 777 (D.D.C. 1985). Because the outcome of this litigation threatens to abrogate Uzbekistan's state-initiated judicial acts, official decrees, and its disposition of state-owned property in Uzbekistan, and to compel one of its corporate citizens to disgorge the property it acquired from the State in a privatization sale, Uzbek substantive law applies.

### B.    Plaintiffs Fail To State A Claim For Which Relief Can Be Granted

In their effort to survive Rule 12(b)(6), Plaintiffs understate their pleading obligations and overstate what they have actually pleaded. *See* Opp'n at 33. Rather than supporting Plaintiffs' claims against the Zeromax Defendants, Plaintiffs' factual allegations preclude them. Plaintiffs' own allegations admit that ROZ Trading's interest in CCBU was extinguished, "eliminate[d]," and "completely purge[d]" by the September 11, 2002 decision of the Supreme Economic Court of Uzbekistan. Am. Compl. ¶¶ 28, 30, 31. Plaintiffs do not allege any causal connection between ROZ Trading's interest in CCBU and the Zeromax Defendants until two years later in late 2004 when Plaintiffs allege that the Zeromax Defendants, through Muzimpex, acquired ROZ Trading's "former interest" in CCBU from Uzbekistan. Am. Compl. ¶¶ 41, 45; Opp'n 21-22.

All of Plaintiffs' claims are thus precluded by Plaintiffs' own allegations that a two-year gap exists between Plaintiffs' purported injury (the elimination of ROZ Trading's participatory interest in CCBU) allegedly caused by Uzbekistan and any alleged action of the Zeromax Defendants. *See Browning*, 292 F.3d at 242 (acknowledging that Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claims asserted); *Chandamuri*, 274 F. Supp. 2d

at 79 (dismissing complaint where plaintiff's own factual allegations precluded claims).

Moreover, Uzbek law confirms that ROZ Trading's participatory interest was extinguished ***prior***

***to*** the Zeromax Defendants' purported acquisition of an interest in CCBU.  *See* Fayzullaev Decl.

¶¶ 16-17 (decision of the Supreme Economic Court removing ROZ Trading's participatory

interest is final and legally binding), ¶¶ 18-20 (final, binding, and enforceable decree of the

Cabinet of Ministers transferring CCBU shares to the State free and clear of any claims by ROZ

Trading or any other third party).    Therefore, all of Plaintiffs' claims against the Zeromax

Defendants must be dismissed.

Plaintiffs' breach of contract, conversion, unjust enrichment, and fraudulent conveyance

claims must fail for the additional reason that Plaintiffs rely on Muzimpex's actions in an effort

to hold the Zeromax Defendants liable.  *See* Opp'n at 36, 38, 40, 40-41.  Plaintiffs' assertion that

Muzimpex is controlled by or is an alter ego of the Zeromax Defendants (Am. Compl. ¶¶ 42, 47)

is a legal conclusion that need not be credited by the court.  *See Browning*, 292 F.3d at 242

(holding that unsupported inferences and legal conclusions are not taken as true under Rule

12(b)(6)).  Conclusory allegations of direction or control are insufficient.  *W. Assocs. Ltd. P'ship*,

235 F.3d at 634.  Further, under Uzbek law the Zeromax Defendants, as purported shareholders

of Muzimpex, cannot be held liable for the acts of Muzimpex.  *See* Fayzullaev Decl. ¶ 6 (stating

shareholders cannot generally be held liable for acts of LLC under Uzbek law).  In addition,

Plaintiffs' conspiracy, tortious interference with business relations, and quiet title claims are not

recognized under Uzbek law.  *See* Supp. Fayzullaev Decl. ¶¶ 14, 16, 17.[20]

Finally, Plaintiffs' failure to allege any contract to which the Zeromax Defendants were

parties eliminates the breach of contract claim.  Indeed, Plaintiffs admit that the 1993 CCBU

---

[20]    Notably, Plaintiffs fail to identify any provision of D.C. law that establishes a claim to quiet title to personal property.  Opp'n at 39 (citing only South Carolina, Florida, and North Carolina cases).

JVA — the contract upon which Plaintiffs attempt to base their claims — was entered into by ROZ, TCCEC, and "the government of Uzbekistan." Am. Compl. ¶ 13. Moreover, even if the Zeromax Defendants somehow could be deemed parties to that contract, the contract is null and void and without legal force and effect as a matter of Uzbek law. *See* Supp. Fayzullaev Decl. ¶¶ 10, 12; *see also* Fayzullaev Decl. ¶ 8.

### C.    Plaintiffs' Claims Are Time-Barred

Contrary to Plaintiffs' contention (Opp'n at 41), all of their claims are time-barred under the District of Columbia statute of limitations. *See* D.C. Code § 12-301 (providing three-year limitations period); *id.* § 28-3109 (four-year period for fraudulent conveyance claims). Even under the discovery rule tolling standard that Plaintiffs ask the Court to apply (Opp'n at 43-44), for statute of limitations purposes a cause of action accrues "[a]t the latest" when a plaintiff "knows or reasonably should know that the cause of action exists." *Beard*, 790 A.2d at 546. All of Plaintiffs' claims arise from the removal of their participatory and proprietary interest in CCBU, which Plaintiffs acknowledge was "eliminate[d]" by virtue of the "sham" Uzbek court proceedings ending in September 2002. Am. Compl. ¶ 28.

Further, Plaintiffs' allegations indicate that they knew, or reasonably should have known, as early as 2001 that their rights and interests under the 1993 CCBU JVA had been violated. *See Beard*, 790 A.2d at 546 ("[A]ll damages [need not] be sustained, or even identified, for the cause of action to accrue; any appreciable and actual harm . . . is sufficient") (citation omitted). The Amended Complaint alleges, *inter alia*, that "attacks" on Plaintiffs' CCBU interests were "immediately initiated" after Mansur Maqsudi separated from Gulnora Karimova in July 2001 (Am. Compl. ¶ 21); that Uzbek officials seized Plaintiffs' documents and personnel in August 2001 as part of the "intimidation and harassment of . . . Plaintiffs' interest in CCBU" (*id.* ¶ 27); and that Plaintiffs were denied "counsel or an opportunity to participate in" certain 2001 Uzbek

court proceedings as part of the effort to "completely purge Plaintiffs from any further participation and management of the joint venture" (*id.* ¶ 30; Opp'n at 32).

Given the "appreciable and actual harm" to their CCBU interests that Plaintiffs allege to have known in 2001, their cause of action accrued at that time. *See Beard*, 790 A.2d at 546. Likewise, Plaintiffs' knowledge of harm five years before commencement of this action bars application of the equitable tolling doctrine which, as Plaintiffs acknowledge (Opp'n at 43), requires that they pursue their rights diligently. *See Commc'ns Vending Corp. of Arizona v. Fed. Commc'ns Comm'n*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (holding equitable tolling "unwarranted" where litigant "failed to exercise due diligence in preserving his legal rights").

Further, Plaintiffs' suggestion that facts necessary to bring this action were "fraudulently concealed" as a result of "what was happening in Uzbekistan" (Opp'n at 42-43) also does not warrant tolling of the statute of limitations. Even if Uzbekistan's alleged acts worked to conceal facts giving rise to the cause of action, such concealment cannot be attributed to the Zeromax Defendants. *See Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1495 (D.C. Cir. 1989) (holding that defendant could not be held "vicariously responsible for misrepresentations" of others to toll the statute of limitations); *Houlihan v. Anderson-Stokes, Inc.*, 434 F. Supp. 1324, 1327 (D.D.C. 1977) ("[C]oncealment by a third-party simply will not suffice."). Finally, Plaintiffs' argument that the Zeromax Defendants "added to Plaintiffs' difficulties" by "re-registering" and "changing ownership" is irrelevant. Plaintiffs' own allegations place such purported Zeromax activities in 2005 (Am. Compl. ¶¶ 40(e)-(f)) — a year *after* Plaintiffs claim to have discovered their injury in 2004. *See Riddell*, 866 F.2d at 1491 (holding that tolling for fraudulent concealment requires that Defendants "have done something of an affirmative nature designed to prevent discovery of

the cause of action") (citing *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191-92 (D.C. 1980)).

## VI.    THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM

As foreign plaintiffs, ROZ (Uzbekistan) and ROZ are not entitled to the "standard deference" accorded to a petitioner's choice of forum (Opp'n at 16).    *Monegasque de Reassurances*, 311 F.3d at 499 (according "little deference" to foreign plaintiff's New York choice of forum in favor of the Ukraine).  ROZ Trading fails to articulate any legitimate interest of the District of Columbia in this dispute sufficient to "justify the forum's commitment of judicial time and resources."  *Pain*, 637 F.2d at 791.  The U.S. Zeromax entities have been dissolved or defunct since at least September 2005, and ROZ is a Cayman Islands entity with no presence in the District.

In contrast, the property in dispute is in Uzbekistan, the entity allegedly holding this property is an Uzbek limited liability company operating in Uzbekistan, the alleged conduct all took place in Uzbekistan (Am. Compl. ¶¶ 29-31), many witnesses and documents are located in Uzbekistan, and Uzbek law governs the resolution of the dispute.    All factors point to Uzbekistan's interest in having this dispute resolved by the Uzbek courts.  *Monegasque de Reassurances*, 311 F.3d at 493 ("Ukraine has a great interest in applying its own laws, especially with respect to establishing ownership interest in Naftogaz.").

Finally, ROZ Trading's plea that this Court condemn the Uzbek legal system out of hand as corrupt should be rejected.  *See Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 981-82 (2d Cir. 1993) (finding Venezuela to be an adequate alternate forum despite claims of systemic corruption and bias).  Indeed, ROZ Trading chose to invest in Uzbekistan knowing full well its legal system and courts.  In any event, U.S. courts may not reject a foreign forum as inadequate

merely because of general or conclusory allegations of corruption in the judicial system. *See Monegasque de Reassurances*, 311 F.3d at 499.  Indeed, courts have rejected reports such as those relied on by ROZ Trading's expert, Scott Horton, as not constituting credible evidence of corruption or bias.  *See* Pls.' Ex. 3 (Horton Report) ¶¶ 13, 15-17; Pls.' Ex. 23 (United Nations Report); *see also Abdullahi v. Pfizer, Inc.*, No. 01CV8818 (WHP), 2005 WL 1870811 (S.D.N.Y. Aug. 9, 2005) (observing Second Circuit in *Monegasque* "reject[ed] State Department Reports as 'a basis for any conclusion that the courts of Ukraine constitute an inadequate forum'").

## CONCLUSION

For all the foregoing reasons, this Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: February 7, 2007

Respectfully submitted,

**WHITE & CASE** LLP

/ s / Carolyn B. Lamm
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb  (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc., Zeromax Logistics, Inc., Zeromax LLC and Zeromax GmbH*