## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ROZ TRADING LTD., et al.  )  | |
| )  | |
| Plaintiffs,  )  | Case No. 1:06-cv-01040 (CKK) |
| )  | |
| v.  )  | |
| )  | |
| ZEROMAX GROUP, INC., et al.  )  | |
| )  | |
| Defendants.  )  | |

## ROZ TRADING LTD.'S RESPONSE
## TO THIS COURT'S ORDER DATED SEPTEMBER 24, 2007

On September 24, 2007, the Court issued an Order instructing that Plaintiffs provide the

Court with factual evidence to support their assertion of diversity jurisdiction under 28 U.S.C.

§ 1332, and specifically, their allegation that, as of the 2006 filing of the initial Complaint,

Plaintiff ROZ Trading, Ltd. ("ROZ") had its principal place of business in New Jersey.  In

response to the Court's Order, ROZ herein submits the attached evidence and supplemental

testimony which makes clear that as of June 6, 2006 – the date it filed its Complaint – its

principal place of business was New Jersey.

In its Order, the Court recognizes that Plaintiffs' Amended Complaint alleges that ROZ's

principal place of business is in New Jersey (¶ 1), but notes that Defendants' have challenged

Plaintiffs' allegation by submitting a "No Records Certificate" from the New Jersey Department

of Treasury indicating that ROZ has not registered with the Department as a foreign limited

liability company under the New Jersey LLC Act, N.J. Stat. Ann. § 42:2B-53.  Of course,

because Defendants made this argument for the first time in their Reply brief, Plaintiffs did not have an opportunity to rebut Defendants' assertions.

Defendants' suggestion that ROZ's principal place of business cannot be in New Jersey because it has not registered under the New Jersey LLC Act is misplaced as a matter of law. It is well-established that a company's principal place of business for purposes of subject matter/diversity jurisdiction does not follow from such formal requirements as registration or tax filings, but rather is determined on a case-by-case basis depending on a wide variety of factors relating to the unique circumstances of the company's business. *See* 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3625, at 638–39 (2006) ("[A]lthough the Internal Revenue Service regulations require that corporate income tax returns be filed where a corporation has its principal place of business, this factor is not determinative for purposes of federal diversity jurisdiction."). *See, e.g., Harris v. Black Clawson Co.*, 961 F.2d 547 (5th Cir. 1992) (finding that filing of IRS return in particular jurisdiction was not determinative of principal place of jurisdiction for federal diversity requirements).

Critically, the entire basis of Zeromax's attack on diversity jurisdiction is based on a false premise. Zeromax pretends that ROZ and its Managing Director, Mansur Maqsudi, have no connection with New Jersey – an assertion which is patently untrue. Zeromax would have this Court create a "fiction" that, even though New Jersey is the physical location of record, somehow the lack of a certificate has some legal significance. It does not, as the authorities cited above have made clear.

This case centers on a basic set of facts – ROZ was illegally barred from participating in the operations of Coca-Cola Bottlers Uzbekistan in 2001, and its shares were unlawfully

transferred to the Zeromax entities. *See* December 7, 2006 Declaration of Mansur Maqsudi ¶¶ 17-24 (Attached as Exhibit 1 to ROZ's Opposition to Defendants' Motion to Dismiss); September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶ 4 (Attached as Exhibit 1 hereto). As a result of the very actions giving rise to this case, its primary business function has been the winding up of its affairs and its legal efforts to protect and recover what were substantial assets in Uzbekistan. *See* September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶ 4. These efforts ultimately culminated in the filing of (1) an international arbitration claim in the International Arbitral Centre of the Austrian Federal Economic Chamber, (2) a 28 U.S.C. Section 1782 Petition before the federal district court in Atlanta, Georgia, (3) a libel complaint by ROZ's key decision-makers (the Maqsudis) in this Court, and (4) the filing of the present claims against Zeromax before this Court. *See* September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶ 8. These wind-up functions have been and continue to be carried out in New Jersey under the direction and control of ROZ's Managing Director, Mansur Maqsudi. *See* September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶¶ 4-8; December 7, 2006 Declaration of Mansur Maqsudi ¶ 6.

As Managing Director of ROZ, Mr. Maqsudi has coordinated the pursuit of these claims and the legal effort to recover ROZ's assets from an office in New Jersey. *See* September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶¶ 4-8. This is now the sole place where the company's management decisions are centered. *See id.* This is where the company communicates with its attorneys based, among other places, in New York and Washington, D.C. to pursue its claims. *See* September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶ 6.

While the pursuit of its legal claims has been ROZ's primary business function, the company continues to carry on certain limited treasury functions for the business group of

3

companies it heads.  Group members are involved in the rebuilding and reconstruction of

Afghanistan.  *See* September 26, 2007 Supplemental Declaration of Mansur Maqsudi ¶¶ 9-10.

The overall treasury function of the group is managed by Mr. Maqsudi, again working from New

Jersey.  *See id.*

Given that ROZ has been essentially "winding up" its legacy business that was carried on

outside the U.S. and has managed that function in New Jersey over the past five years, the fact

that is has not registered under the New Jersey LLC Act as a company "doing business" in New

Jersey is of no consequence to subject matter jurisdiction.  Indeed, while the D.C. Circuit has not

addressed such a case, the Fourth Circuit has held that a "corporation's winding up of its

business affairs may well constitute a significant activity and consume a considerable period of

time," and held that a court may, in applying a "nerve center test," conclude that the Plaintiffs'

principal place of business for diversity purposes is the location from where it was managing its

wind-up litigation.  *Athena Automotive Inc. v. DiGregorio*, 166 F.3d 288, 291–92 (4th Cir.

1999).

Because the "nerve center" of ROZ's business activities indisputably was in New Jersey

at the time this case was filed in 2006, ROZ's principal place of business for purposes of federal

diversity jurisdiction is New Jersey.  Given the record before this Court and the relevant case

authority, the parties in this case are clearly diverse for purposes of diversity jurisdiction and the

Court should deny Defendants' motion to dismiss.

Respectfully submitted,

Stuart H. Newberger, DC Bar #294793
Alan W.H. Gourley, DC Bar #358300
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

*Attorneys for ROZ Trading Ltd. and
ROZ Trading Ltd. (Uzbekistan)*

September 26, 2007

# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROZ TRADING LTD., et al. | ) |
|         Plaintiffs, | ) |
| v. | ) |
| ZEROMAX GROUP, INC., et al. | ) |
|         Defendants. | ) |

1:06-CV-01040 (CKK)

## SUPPLEMENTAL DECLARATION OF MANSUR MAQSUDI

Under penalty of perjury, Mansur Maqsudi states as follows:

1. My name is Mansur Maqsudi and I am over the age of 21 years, am of sound mind, and am competent to testify. The matters set forth herein are within my personal knowledge and are true and correct.

2. I am a citizen of the United States and I live in Mendham, New Jersey. I first moved to New Jersey in 1979 and have been living exclusively in New Jersey since 2001.

3. I am the Managing Director of ROZ Trading Ltd. ("ROZ") and have been at all times relevant to the acts at issue here. During my time at ROZ, I have also held other titles, including President, Officer, and Director.

4. Since 2001, when ROZ was illegally excluded from operating CCBU and its shares were ultimately transferred to the Zeromax entities, ROZ's primary business activities have focused on winding up its affairs and pursuing avenues to recover its assets in Uzbekistan. In addition, ROZ carries on a legacy function of providing treasury support for a group of foreign companies with which it is affiliated.

1

5. Both of these functions – recovery of stolen assets and treasury support – were directed from and carried out in New Jersey throughout 2006.

6. As part of ROZ's effort to recover its valuable stolen property, ROZ engaged counsel and consultants, including Gibson, Dunn & Crutcher LLP and Crowell & Moring LLP. ROZ's communications with counsel were directed to and from its office in New Jersey. Some of the many examples of the communications between the attorneys and ROZ are attached to this Declaration:

   a. Attached as Exhibit A is a true and accurate copy of a bill I received from Crowell & Moring LLP in or about May, 2006 (redacted).

   b. Attached as Exhibit B is a true and accurate copy of a letter I received from Gibson, Dunn & Crutcher LLP in or about April, 2005.

   c. Attached as Exhibit C is a true and accurate copy of a letter I received from Crowell & Moring LLP in or about August, 2005.

7. Working in my capacity as ROZ's Managing Director, I sent and received numerous communications to further ROZ's objective of enlisting assistance to protect our assets. I sent these letters from New Jersey, and I received such letters in New Jersey. Examples of these communications are attached to this Declaration:

   a. Attached as Exhibit D is a true and accurate copy of a letter I received from The Coca-Cola Export Corporation in or about March, 2002.

   b. Attached as Exhibit E is a true and accurate copy of a letter I sent to Senator Durbin in or about December, 2001.

   c. Attached as Exhibit F is a true and accurate copy of a letter I sent to Congressman Burton in or about June, 2002.

8.  From New Jersey, I direct and coordinate the various litigations brought by ROZ's

attorneys and consultants and I make all key legal and strategic decisions in that regard

from New Jersey. I received documents relating to the lawsuits in New Jersey and

virtually all of my decisions about litigation strategy took place in New Jersey. In sum,

all significant decisions and actions taken by ROZ with regards to the pursuit of its stolen

interest in CCBU – one of the main business activities of ROZ since its exclusion from

CCBU – were conducted in New Jersey throughout 2006. These recovery efforts

include cases in numerous jurisdictions, including (in addition to this case):

a.  International arbitration claims in the International Arbitral Centre of the Austrian

Federal Economic Chamber (*Roz Trading Ltd. v. The Coca-Cola Export

Corporation, et al.,* Case Number SCH-4986);

b.  Discovery proceedings before the U.S. District Court for the Northern District of

Georgia (*In re Application of ROZ Trading Ltd.*, Case Number 1:06-cv-2305-

WSD); and

c.  Defamation claims before the U.S. District Court for the District of Columbia

(*Maqsudi et al., v. GlobalOptions, Inc. et al.*, Case Number 1:07-cv-1252-RJL).

9.  In addition to pursuing and managing these claims, ROZ provided treasury functions for

its group of affiliated companies outside of the United States. These functions were also

directed by me from New Jersey since ROZ was effectively ousted from Uzbekistan in

2001. As Managing Director of ROZ, I was responsible for managing the funding needs

of the various members of the group and typically reviewed business plans, operating

budgets, and cash flow projections for these companies from our office in New Jersey. I

did all of those things in New Jersey throughout 2006.

10. I also wish to make one point of clarification from my prior declaration. In paragraph 7 of my December 7, 2006, Declaration, I testified that "Currently ROZ works with multinational companies such as Colgate and Gillette to distribute consumer goods throughout much of Central Asia and the Middle East. In addition, ROZ is involved in the reconstruction of Afghanistan as a contractor for USAID." To be more precise, I should note that the distribution of consumer goods and other operational work was carried on by companies with which ROZ is affiliated. For these operations, ROZ carried on the centralized treasury function from New Jersey at my direction.

I declare under penalty of perjury and that the foregoing is true and correct.

_9/26/07_
Date

Mansur Maqsudi

4

# EXHIBIT A



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595
p202 624-2500 ■ f202 628-5116

May 15, 2006

Invoice Number: 1191768
Proforma Number: 274714
Matter: 101579.0000001

Re: Vienna Arbitration

*Billing Instructions:*

**For Services Rendered Through April 30, 2006:**

Total Professional Services
Total Other Services and Expenses

    TOTAL



Less: Unallocated Amount Applied
Less: Retainer/Trust Amount Applied

TOTAL BALANCE DUE



**Write-Down Amounts:**
Professional Services
Other Services and Expenses

    TOTAL WRITE-DOWN





P.O. Box 75509
Baltimore, MD 21275-5509
Taxpayer ID # 52-1150358

May 15, 2006

ROZ Trading Ltd
ROZ Group, Inc
P.O. Box 9068
Morristown, NJ 07963

Matter: 101579      0001
Invoice: 1191768

Statement of Account

RE: Vienna Arbitration

Professional Services Rendered Through April 30, 2006
Other Services and Expenses Incurred for your Account

Total Services Expenses

Total Due This Invoice

| | | |
|---|---|---|
| Wire/ACH payments to: | Bank Address is: | |
| Bank Name: Wachovia Bank, N.A. | Wachovia Bank, N.A. | Please reference Our Ref. |
| Swift Code: PNBPUS33 | 1525 West WT Harris Blvd. | Number and Debit Number |
| Account No. 2000026603531 | Charlotte, NC 28288 | in the REMARK section. |
| ABA Number: 054001220 | | |

REMITTANCE COPY



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595
p202 624-2500 ▪ f202 628-5116

May 15, 2006

ROZ Trading Ltd
ROZ Group, Inc
P.O. Box 9068
Morristown, NJ 07963

Matter: 101579.0000001
Invoice: 1191768

Statement of Account

RE: Vienna Arbitration

**Professional Services:**

**Total Professional Services** 

**Other Services & Expenses:**

| Description | Amount |
|---|---|
| Express Delivery | |
| Comp. Library Research | |
| Inhouse Duplicating |  |
| Inhouse Color Copying | |
| Telephone | |
| **Total Other Services & Expenses** | |

Statement Number: 1191768
Page #: 2

**Total Due this Invoice**



Crowell & Moring LLP ■ www.crowell.com ■ Washington ■ Irvine ■ London ■ Brussels

# EXHIBIT B

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

2029 Century Park East  Los Angeles, California 90067-3026
(310) 552-8500
www.gibsondunn.com

mlevine@gibsondunn.com

April 11, 2005

Direct Dial
(310) 557-8098
Fax No.
(310) 552-7098

Client No.
C 79558-00001

Mr. Mansur Maqsudi
6 Queens Court
Morristown, New Jersey 07960

Dear Mansur:

Enclosed you will find our statement dated April 4, 2005, for legal services and disbursements rendered for the period ending March 31, 2005.

If you have any questions, please give me a call.

Warmest best wishes.

Sincerely,

Mel Levine
of Gibson, Dunn & Crutcher LLP

ML/ris
20155318_1.DOC

LOS ANGELES   NEW YORK   WASHINGTON, D.C.   SAN FRANCISCO   PALO ALTO
LONDON   PARIS   MUNICH   BRUSSELS   ORANGE COUNTY   CENTURY CITY   DALLAS   DENVER

# EXHIBIT C



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Stuart H. Newberger
202-624-2649
snewberger@crowell.com

August 5, 2005

101579.0000001

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Zeromax Group, Inc.
1725 I Street, NW
Suite 300
Washington, DC 20006

Re:     Coca-Cola Bottlers Uzbekistan, Ltd.

Ladies and Gentlemen:

Our firm represents ROZ Trading Ltd., a limited liability company organized under the laws of the Cayman Islands, United Kingdom and its wholly owned subsidiary, ROZ Trading Ltd. (Uzbekistan), an Uzbek limited liability company (hereinafter together "ROZ"). In or about 1993, our client entered into a Joint Venture Agreement with Coca-Cola and the Republic of Uzbekistan (through its agency, Pishprom Association ("Pishprom")) under which the parties formed and operated the Coca-Cola Bottlers Uzbekistan, Ltd. ("CCBU"). Our clients continued to operate CCBU profitably until actions by Uzbekistan and Coca-Cola, beginning in 2001 and continuing today, precluded our clients from further participation and management in the joint venture and its operations.

Accordingly, on April 11, 2005, ROZ provided the known parties to the joint venture with a copy of the enclosed Notice of Termination. We have just received Pishprom's response in which it alleges that it no longer holds shares in the joint venture, but does not identify the present owner. We have reason to believe that Zeromax now owns and/or controls the shares in the joint venture that formerly belonged to Uzbekistan (most of which were unlawfully taken from ROZ). Consequently, at a minimum, Zeromax now shares in Uzbekistan's obligations and liabilities under the joint venture agreement.

While we believe that the Notice of Termination has already effectively terminated the joint venture, as a courtesy, we are providing you a copy directly and

Zeromax Group, Inc.
August 5, 2005
Page 2

this opportunity to ensure ROZ is fully compensated for its significant interest in the joint venture, the value of which was largely created by ROZ's efforts, as well as for other damages sustained by ROZ as a result of the other wrongful acts related to the joint venture agreement.

      Please call me if you wish to discuss this matter.

          Very Truly Yours,

for   Stuart H. Newberger

Enclosures

cc:     The Coca-Cola Company (w/o encl.)
      c/o L. Joseph Loveland, Esq.
        King & Spaulding LLP

      B. Kholmukhamedov, Chairman (w/o encl.)
      OzigOvkatSanoat

      Managing Director (w/encl.)
      Coca-Cola Bottlers Uzbekistan, Ltd.

bcc:   Mansur Maqsudi

      Allan Gerson, Co-Director
      Institute for Peacebuilding and Development

      Alyssa Gsell, Esq.
      Sobia Haque, Esq
      Alan W.H. Gourley, Esq.

# EXHIBIT D

13/03 02  WED 19 06 FAX                                                ☒001

## The Coca-Cola Export Corporation

COCA-COLA PLAZA
ATLANTA, GEORGIA

ADDRESS REPLY TO
P C DRAWER 1734
ATLANTA GA  3030
404 676 2 21

Mr  Mansur Maqsudi
3 Manchester Drive
Denville, NJ 07834
U.S.A.

By fax (+1 973 335 5504) and by e-mail

March 13, 2002

Re.  a) Your letter dated February 20, 2002
     b) Your letter dated March 12. 2002

Dear Mansur,

With reference to (a) above, I would like to emphasize once more that the insinuations and accusations you continue to direct to us are totally untrue and unjustified, as repeatedly answered in our earlier correspondence with you and other Roz representatives and consultants. We hereby reserve our rights with respect to the contents of your letter  Your insistence on using such a tone of correspondence is worsening our relationship as joint venture partners instead of improving it  We do not see any point in continuing this line of negative correspondence which is not at all conducive to better our relationship or to negotiate a mutually acceptable position in these difficult circumstances. I am as always open to meeting with you to try to agree on pending matters related to the operation of the business but with respect to any further written correspondence I would request at this stage that it should be directed to our legal department, to Ms .Banu Pektas, Eurasia and Middle East Division Legal Counsel.

Regarding your requests contained in both of your above referenced letters, I have asked CCAR Legal Counsel to provide you with the documents you requested if they have not already been sent to you

Yours sincerely,

*Ahmet E. Bozer*

Ahmet C  Bozer

CC:   Mr. Cem Kozlu
      Mr  Farid Maqsudi (please copy)
      Mr. Selcuk Erden
      Ms. Banu Pektas

# EXHIBIT E

# MANSUR  MAQSUDI

The Honorable Richard Durbin
United States Senate
332 Dirksen Senate Office Building
Washington, DC 20510

December 28, 2001

Dear Senator Durbin,

I would respectfully like to draw your attention to my plight as a parent denied access to his children. As a defender of children's rights, you will certainly sympathize with my situation.

My name is Mansur Maqsudi, an American Citizen. I was married to Gulnora Karimova, the daughter of the President of Uzbekistan. We have two lovely children, Islam and Iman, ages 9 and 3 respectively. Both of my children were born in the United States, thus citizens of this great nation. I am very close to my children and love them dearly. I was, in my humble opinion, an excellent parent, deeply involved in their lives at least until July 29 of this year.

On that date, I separated from my wife, Gulnora Karimova. Out of spite for my decision, she left for Uzbekistan, taking both children without my consent. Since then, I have desperately tried to communicate with my children although without success. My wife refuses to let me have any contact with them.

As a parent, you can imagine my emotional state. All I can think of is what is going on in my children's mind. Do they think I have abandoned them? I have no idea what lies they have been told regarding me. I miss having dinners with my daughter and my son, just the three of us, as we often did in the past. I miss tucking my children into bed and hearing their tired voices saying goodnight to me.

No children should be punished so severely. This will only leave a deep lasting emotional scar, which will be beyond repair. Each child deserves the security a parent can provide, whether in one or separate homes.

I have exhausted all my options to reach my kids. I tried reasoning with my wife. I personally appealed to her parents, President Karimov and Mrs. Karimov. I reached out to the Uzbek Ambassador in Washington, D.C. and the Uzbek Ambassador to the United Nations in New York City, as well as the Deputy Prime Minister, Mr. Azimov and Deputy Foreign Minister, Mr. Safaev on their recent visit to the United States. All my efforts to communicate with my kids are met with rejections.

All I want is the right to see and be with my children. I have been rewarded temporary custody of my children by the Morris County Court in New Jersey, where we have a home. Her reaction to the court's decision has been to take greater revenge in Uzbekistan towards me, my extended family and my business interests.

Just two days ago, she sent her KGB people to my families' homes from 11:45pm to 2:30am, rounded them up, loaded them into a bus, in their pajamas and without their coats, and sent them to the border of Afghanistan. I would like to add of the 25 family members, 22 are women and children. My grandmother, in her eighties, was thrown into the bus as well. She wasn't even allowed to take her diabetic medications with her. Gulnora has abused their human rights, just to get back at me for my decision to divorce her.

Furthermore, 32% of my families' shares in Coca-Cola Bottlers Uzbekistan have been nationalized. Our trading company, ROZ Trading LTD, has been liquidated. All these illegal actions taken by the Uzbek government are carried out as per Gulnora's instructions.

As United States is developing a new relationship with Uzbekistan, my plight must be heard. Gulnora Karimova, should not be allowed to abduct my children, abuse my family members, and liquidate my businesses, just because she is the daughter of the President of Uzbekistan.

In addition, President Karimov has decreed this year as the Year of the Family in Uzbekistan. Therefore, shouldn't President Karimov ask his own daughter to do the right thing for the best interest of Islam and Iman? Simply like any other child, they need access to their father. Just six days ago I called Islam for his ninth birthday but unfortunately I was not allowed to speak to him nor wish him a Happy Birthday.

I am personally appealing to you, Senator Durbin, as you are preparing to go to Uzbekistan in January, to assist me in resolving this matter. My interests, as an American Citizen, must be protected. Gulnora should not be allowed to take advantage of her father's position for carrying on her personal vendetta aimed at me, my family and my businesses.

I thank you in advance for taking time to hear my circumstance.

Sincerely,

Mansur Maqsudi

---

# EXHIBIT F

# Mansur Maqsudi

The Honorable Dan Burton
2185 Rayburn HOB
Washington, DC 20515

June 18, 2002

Dear Congressman Burton:

I just learned that on June 12 the House Government Reform Committee held a hearing entitled "Should the United States Do More to Help US Citizens Held Against Their Will in Saudi Arabia?" I was horrified to learn about Patricia Roush's loss of her daughters.

Regrettably, I am going through a similar situation that I hope you can help to resolve.

On July 29 of last year, my children were abducted by their mother, Gulnora Karimova, the daughter of the President of Uzbekistan, Islam Karimov. I had announced my intention to divorce her on July 28. Rather than follow legal procedures, Gulnora decided to take it upon herself to leave for Uzbekistan with our children from our home in New Jersey without my consent.

I am a citizen of the United States, as are both of my children.

Congressman Burton, not only has Gulnora taken my children's Constitutional rights away from them, she has used her father's power to abuse, harass and torture my parents, extended family and employees and destroy my business interests in Uzbekistan.

I was married to Gulnora Karimova in November 1991 in ceremonies in both Uzbekistan and the United States. Our two children, Islam and Iman, ages 9 and 4 respectively, were both born in New Jersey. All their lives they have held and traveled with US passports.

To this date, I have been unable to communicate with them. I am continuously forced to miss out on important events in their lives – birthdays, holidays, special events at school and extracurricular events. My daughter, Iman, turned 4 years old yesterday and I was unable to wish my own child a happy birthday, nor was I able to talk to my son on his ninth birthday.

On August 1 in Uzbekistan, Gulnora threatened my father, also an American citizen, that if he and my family did not meet her demands within seven days, she would destroy the Maqsudi family and their businesses. In the last eleven

6 Queens Court * Morristown, NJ 07960 * 973.979.1653

months, I have watched this woman carry out every threat of hers against my parents, my extended family and my business interests.

Due to Guinora's threats, my parents were forced to leave Uzbekistan. After their departure, Guinora focused all her attention on my extended family, who are not American citizens. Since September 12, she has imprisoned three of my family members for eight to ten years for fabricated economic crimes and "causing harm to the state". All three of these relatives have serious health conditions requiring medical attention.

On December 26, Guinora sent KGB officers to my family's homes from 11:45pm to 2:30am, rounded them up at gunpoint, loaded them into a bus, in their pajamas and without their coats, and dropped them off at the border of Afghanistan. Of the 25 family members who were subjected to this treatment, 22 are women and children. My grandmother, an Uzbek national and in her eighties, was thrown into the bus as well. She wasn't even allowed to take her diabetic medications with her. What explanations does Guinora have for that inhuman act?

She is also on a crusade to destroy my businesses. Thirty-two percent of my family's shares in Coca-Cola Bottlers Uzbekistan have been illegally nationalized. Our trading company, ROZ Trading Ltd, has been liquidated. She has harassed, threatened and driven out of Uzbekistan my expatriate and local employees.

I am appealing to you to personally assist me in resolving this matter amicably and diplomatically. I have sought the assistance of several governmental agencies; but it seems that their hands are tied due to the new-found relationship between the United States and Uzbekistan. Everyone I have spoken to in the US government acknowledges Guinora's wrongdoing and sympathizes with me; however, it seems to me that they are unwilling to act for fear of insulting her father, the President of Uzbekistan.

I have repeatedly been instructed to seek action in the Uzbek courts, even though our own State Department has documented that the Uzbek judicial system is under the direct influence of the Executive Branch, in other words, President Karimov and his family. I would never have due process in Uzbekistan.

I can not stand by and just watch my children's rights as United States citizens be taken away from them – not by Guinora, nor the Uzbek Government, and certainly not by Department of State.

Guinora should not have the ability to abuse her father's power. Nor should she be immune to internationally accepted laws, as a diplomat or the daughter of a president. She should be treated like any other human being who has broken the law.

6 Queens Court * Morristown, NJ 07960 * 973.979.1653

Most important, I need to be with my children in accordance with the temporary custody order I have been granted by the New Jersey courts. I don't want to miss any more special milestones in their lives. As innocent American children, their Constitutional rights should be preserved.

I would welcome an opportunity to discuss these issues with you personally. Thank you for your time.

Sincerely,

Mansur Maqsudi