UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROZ TRADING LTD, *et al.*,

    Plaintiffs,

     v.

ZEROMAX GROUP, INC. *et al.*,

    Defendants.

Civil Action No. 06–1040 (CKK)

**MEMORANDUM OPINION**
(September 28, 2007)

      Currently pending before the Court is Defendants' Consolidated Motion to Dismiss the Amended Complaint in its Entirety.  Plaintiffs, Roz Trading Ltd. ("ROZ") and Roz Trading Ltd. (Uzbekistan) ("ROZ (U)") (collectively, "Plaintiffs"), brought this action against Defendants Zeromax Group, Inc., Zeromax Logistics, Inc., Zeromax LLC (collectively, the "U.S. Zeromax Defendants"), and Zeromax GmbH (with the U.S. Zeromax Defendants, "Defendants") alleging that Defendants and others "willfully and deliberately deprived" Plaintiffs of their ownership interest in a joint venture in the soft drink industry in Uzbekistan.  Plaintiffs' Amended Complaint includes eight claims: breach of contract (Count I), tortious interference (Count II), conspiracy to commit tortious interference (Count III), conversion (Count IV), conspiracy to commit conversion (Count V), action to quiet title (Count VI), unjust enrichment (Count VII), and fraudulent conveyance (Count VIII).

      Defendants have moved to dismiss Plaintiffs' Amended Complaint in its entirety on six grounds, arguing that (1) the Court lacks subject matter jurisdiction over Plaintiffs' claims; (2) the Court lacks personal jurisdiction over Defendant Zeromax GmbH; (3) the act of state doctrine

bars Plaintiffs' claims; (4) Plaintiffs lack standing to assert claims against Defendants; (5) Plaintiffs fail to state a claim upon which relief may be granted; and (6) the District of Columbia is an inconvenient and inadequate forum.

Upon a searching review of Defendants' Consolidated Motion to Dismiss the Amended Complaint in its Entirety, Plaintiffs' Opposition, Defendants' Reply, the exhibits attached thereto, and the relevant case law and statutes, the Court concludes that it lacks personal jurisdiction over Defendant Zeromax GmbH, and therefore must dismiss Defendant Zeromax GmbH from this action, as well as all claims brought against Zeromax GmbH. The U.S. Zeromax Defendants have specifically acknowledged that they have submitted to the personal jurisdiction of this Court and, as discussed below, the Court's dismissal of Zeromax GmbH moots Defendants' argument that the Court lacks subject matter jurisdiction over this action. Nevertheless, the Court shall hold in abeyance the remainder of Defendants' Motion to Dismiss, because the Court's dismissal of Zeromax GmbH may change the posture of the parties. As set forth below and in the accompanying Order, before addressing the merits of Defendants' other arguments for dismissal, the Court shall provide the remaining parties to this action–Plaintiffs and the U.S. Zeromax Defendants–the opportunity to consider how best to proceed with this litigation in light of the dismissal of Zeromax GmbH.

## I. BACKGROUND

The Court does not address herein the majority of the allegations included in the Amended Complaint, which form the basis for Plaintiffs' eight claims. Rather, the Court addresses below only those allegations that are relevant to the Court's jurisdictional inquiries, which must be resolved before turning to the merits of Plaintiffs' claims.

Plaintiff ROZ Trading Ltd. is a limited liability company located in the Cayman Islands. Am. Compl. ¶ 1. According to Plaintiffs, ROZ is organized under the laws of the Cayman Islands, British West Indies, and has its principal place of business in Morristown, New Jersey. *Id.* Plaintiff ROZ Trading Ltd. (Uzbekistan) was a wholly-owned subsidiary of ROZ, organized under the laws of Uzbekistan and with its principal place of business in Uzbekistan, before it was purportedly dissolved in connection with the events alleged in the Amended Complaint. *Id.* ¶ 2.

Defendant Zeromax Group, Inc. was incorporated in Delaware on September 4, 2002, and filed a certificate of dissolution with the State of Delaware on August 2, 2005. *Id.* ¶ 3. While in existence, Zeromax Group had its principal place of business at 1725 I Street, NW, Washington, DC 20006 (hereinafter "1725 I Street"). *Id.* Plaintiff alleges that, as of the time of the filing of the Amended Complaint, Zeromax Group held itself out as maintaining its principal place of business and United States headquarters at 1725 I Street, and also alleges that on February 2, 2006–following Zeromax Group's dissolution–the corporation established a business address in Davidsonville, Maryland, at the home of Harry Eustace, Sr. *Id.* Zeromax Group's last directors and officers in office were Harry Eustace, Sr. and Miradil Djalalov. *Id.* Defendant Zeromax Logistics, Inc. was incorporated in Delaware on December 6, 2002, and filed a certificate of dissolution on August 2, 2005. *Id.* ¶ 4. Plaintiffs allege that Zeromax Logistics was a wholly-owned subsidiary of one of the Zeromax entities, that its last directors and officers in office were Harry Eustace, Sr. and Miradil Djalalov and, on information and belief, that it operated out of 1725 I Street. *Id.*

Defendant Zeromax LLC was formed in Delaware on September 20, 1999 and cancelled its certificate of formation on September 28, 2005. *Id.* ¶ 5. In 2003, Zeromax LLC and Tijorat,

an Uzbek state-owned food distribution company, formed a joint venture called Muzimpex.  *Id.*
Plaintiffs allege, on information and belief, that Zeromax LLC also operated out of 1725 I Street.
*Id.*  Defendant Zeromax GmbH is a Swiss-registered company that was incorporated in July
2005.  *Id.* ¶ 6.  Its partners are Miradil Djalalov and Fatima Makhmudovna Djalalova; however,
Plaintiffs allege on information and belief that its prior partners included Harry Eustace, Sr. and
an entity known as Zeromax Holdings AG.  *Id.*  Zeromax GmbH acquired Zeromax LLC's
interest in Muzimpex after Zeromax LLC was dissolved.  *Id.*  As of December 2005, Zeromax
GmbH held an 87.5% interest in Muzimpex, which in turn held a 57.1% interest in Coca-Cola
Bottlers of Uzbekistan ("CCBU").  *Id.*  Plaintiffs allege that Zeromax GmbH is the successor in
interest to the other Defendants and "party to a transfer of an interest in CCBU designed to
frustrate the ability of Plaintiffs and the courts of the United States to recover Plaintiffs' interest
or assets from other Defendants."  *Id.*

Plaintiffs allege that Defendants are "engaged in regular, systematic and continuous
business activities in D.C. through their agent or alter ego, Defendant Zeromax Group, Inc.,
which maintains, and for the relevant period maintained, its principal place of business in
Washington, D.C., as reflected on its website and signage at the office building."  *Id.* ¶ 9.
Plaintiffs further allege that "Zeromax Group, Inc. is an agent or alter ego of the remaining
Defendants in that the activities of Zeromax Group, Inc. were of such a character as to amount to
doing the business of the other entities and in such a way as to disregard their separate corporate
structures."  *Id.* ¶ 10.  Finally, Plaintiffs allege upon information and belief that "Zeromax
GmbH, Zeromax Logistics and Zeromax LLC engaged in a persistent course of conduct, or
derived substantial revenue from goods used or consumed, or services rendered in the District of

Columbia by and through their agent or alter ego, Zeromax Group, Inc." *Id.* ¶ 11.

Plaintiffs filed their initial Complaint in this action on June 6, 2006 against only Zeromax Group, and filed an Amended Complaint on September 1, 2006, which named as Defendants Zeromax Group, Zeromax Logistics, Zeromax LLC, and Zeromax GmbH. Defendants filed their Consolidated Motion to Dismiss the Complaint in its Entirety (hereinafter "Defs.' Mot.") on November 6, 2006; Plaintiffs filed their Opposition (hereinafter "Pls.' Opp'n) on December 11, 2007; and Defendants filed their Reply Memorandum of Points and Authorities (hereinafter "Defs.' Reply") on February 7, 2007.

Defendants' Reply raised for the first time an argument that ROZ could not avail itself of New Jersey citizenship because it was not, at the time that the original Complaint was filed, either conducting business or authorized to conduct business in New Jersey. Defs.' Reply at 2. As Plaintiffs had not had the opportunity to respond to that argument, on September 24, 2007, the Court issued an Order requiring Plaintiffs to "provide the Court with factual evidence in support of their allegation that, as of the filing of the initial Complaint in this matter, Plaintiff ROZ Trading Ltd. (the entity Plaintiffs allege held an ownership interest in Coca-Cola Bottlers of Uzbekistan Ltd.) had its principal place of business in New Jersey." *See* Order, *ROZ Trading Ltd. v. Zeromax Group, Inc.*, Civil Action No. 06-1040 (D.D.C. Sept. 24, 2007). Plaintiffs accordingly filed a Response to the Court's Order on September 26, 2007, asserting that ROZ's "primary business function has been the winding up of its affairs and its legal efforts to protect and recover what were substantial assets in Uzbekistan," and that these "wind-up functions have been and continue to be carried out in New Jersey." Pls.' Resp. at 3.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendant(s).  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  As such, the plaintiff must allege specific acts connecting the defendant(s) with the forum.  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  In contrast to its analysis under Rule 12(b)(6), the Court need not treat all of the plaintiff's allegations as true when determining whether personal jurisdiction exists over the defendant(s).  Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."  *United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (citation omitted).  However, the Court should resolve any factual discrepancies with regard to the existence of personal jurisdiction in favor of the plaintiff.  *See Crane*, 894 F.2d at 456.

## III.  DISCUSSION

*A.     The Court Lacks Personal Jurisdiction Over Defendant Zeromax GmbH*

Defendants' Motion to Dismiss argues, *inter alia*, that the Court lacks personal jurisdiction over Zeromax GmbH.  For reasons unclear to the Court, the U.S. Zeromax Defendants have decided to submit to the personal jurisdiction of this Court; however, the Court notes that Defendants specifically assert that this "decision . . . does not in any way constitute a 'concession' that they are 'doing business' [in the District of Columbia]."  Defs.' Reply at 8 (quoting Pls.' Opp'n at 12).  As such, in considering whether the Court has personal jurisdiction over Zeromax GmbH, the Court analyzes the allegations contained in Plaintiffs' Amended Complaint and the arguments made in Plaintiffs' Opposition regarding personal jurisdiction.  The

Court further notes that Defendants' argument that the Court lacks personal jurisdiction over Zeromax GmbH is highly significant because Zeromax GmbH represents the connection between Defendants and Plaintiffs' alleged former interest in CCBU–specifically, the Amended Complaint alleges that Zeromax GmbH currently holds an 87.5% interest in Muzimpex, which in turn allegedly holds at 57.1% interest in CCBU.  Am. Compl. ¶¶ 6, 45, 53.

While Defendants also argue that the Court lacks subject matter jurisdiction over this action, "[a]pplying the principal that 'there is no unyielding jurisdictional hierarchy,'" the Court first considers Defendants' argument concerning personal jurisdiction.  *Second Amendment Found.*, 274 F.2d at 523 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)).  As discussed below, the Court's conclusion that it lacks personal jurisdiction over Zeromax GmbH moots Defendants' argument regarding subject matter jurisdiction, such that it is prudent for the Court to initially address the issue of personal jurisdiction.  *See Ruhrgas AG*, 526 U.S. at 578 ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry.").

"In a diversity case, the court's personal jurisdiction over nonresident defendants depends upon state law, here the law of the District of Columbia, the application of which is subject to the constraints of constitutional due process."  *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (citations omitted).  The Amended Complaint asserts that the Court has general jurisdiction over Defendants pursuant to D.C. Code §§ 13-334 and 13-422, and has specific jurisdiction over Defendants pursuant to the District of Columbia's long-arm statute, D.C. Code § 13-423.  Defendants contest both assertions, and the Court addresses each in turn.

1.    *The Court Lacks General Jurisdiction Over Zeromax GmbH Pursuant To D.C. Code § 13-334(a)*

Under the laws of the District of Columbia, courts may "exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is 'doing business' in the District." *Gorman*, 293 F.3d 506, 509 (D.C. Cir. 2002) (citing D.C. Code § 13-334(a)[1]).  The Due Process Clause permits such general jurisdiction over foreign corporations "only . . . if the defendant's business contacts with the forum district are 'continuous and systematic.'" *Id*. at 509-10 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)).  "The District of Columbia Court of Appeals has indicated that the reach of 'doing business' jurisdiction under § 13-334(a) is coextensive with the reach of constitutional due process." *Id*. at 510 (citing *Hughes v. A.H. Robbins Co.*, 490 A.2d 1140, 1148 (D.C. 1985)).

The Amended Complaint includes the following allegations, which are relevant to the Court's exercise of personal jurisdiction over Zeromax GmbH:

•    Defendants are "engaged in regular, systematic and continuous business activities in D.C. through their agent or alter ego, Defendant Zeromax Group, Inc., which maintains, and for the relevant period maintained, its principal place of business in Washington, D.C., as reflected on its website and signage at the office

---

[1] D.C. Code § 13-334(a) provides:

In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court."

D.C. Code § 13-334(a).  This Circuit has noted that "although on its face § 13-334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District." *Gorman*, 293 F.3d at 510 n.1.

building."  Am. Compl. ¶ 9.

- "Upon information and belief, Zeromax Group, Inc. is the agent or alter ego of the remaining Defendants in that the activities of Zeromax Group, Inc. were of such a character as to amount to doing the business of the other entities and in such a way as to disregard their separate corporate structures."  *Id.* ¶ 10.

Plaintiffs do not argue that these allegations are sufficient to establish general jurisdiction over Zeromax GmbH under D.C. Code § 13-334(a).  Instead, Plaintiffs argue that they have "alleged sufficiently that the U.S. Zeromax Defendants are the alter ego [sic] of Zeromax GmbH, which was created, in large measure, to try to thwart this Court's jurisdiction over this dispute." Pls.' Opp'n at 12.[2]  "Ordinarily, a defendant corporation's contacts with a forum may not be attributed to . . . affiliated corporations.  An exception exists, however, where affiliated parties are 'alter egos' of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." *Diamond Chems. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003) (quoting *Shapiro, Lifschitz & Schram v. Hazard*, 24 F. Supp. 2d 66, 70 (D.D.C. 1998) and citing *Material Supply Int'l. Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 19 (D.D.C. 1999)).  Therefore, if Plaintiffs could show that the U.S. Zeromax Defendants are mere "alter egos" of Zeromax GmbH and have sufficient contacts with the District of Columbia to permit general jurisdiction over them, the Court could also exercise such jurisdiction over Zeromax GmbH.

The Court need not address the sufficiency of Plaintiffs' alter ego allegations, however, because those allegations are of no consequence in the absence of specific factual allegations

---

[2] The Amended Complaint includes a number of allegations of connections between the various Zeromax entities, to which Plaintiffs point in support of their alter ego assertion.  *See* Am. Compl. ¶¶ 40a-f, 42, 51-52,

connecting the U.S. Zeromax Defendants with the District of Columbia.  *See Second Amendment Found.*, 274 F.3d at 524.  Here, Plaintiffs' theory of personal jurisdiction hits a roadblock.  Under District of Columbia law, personal jurisdiction is determined as of the commencement of an action.  *See In re Orshansky*, 804 A.2d 1077, 1091-92 (D.C. 2002).  According to the Amended Complaint, Zeromax Group and Zeromax Logistics had been dissolved for more than a year–and Zeromax LLC had been dissolved for almost a year–when the Amended Complaint was filed on September 1, 2006.  Am. Compl. ¶¶ 3-5, 40e (alleging that Zeromax Group and Zeromax Logistics filed their certificates of dissolution on August 2, 2005 and that Zeromax LLC cancelled its certificate of formation on September 28, 2005).

While Plaintiffs attempt to obscure this fundamental obstacle by claiming in their Opposition that, under Delaware law, "corporations and LLCs maintain 'life' for three years after dissolution," Pls.' Opp'n at 12 n.4 (citing Am. Compl. ¶¶ 54-55), this assertion is misleading.  As the Amended Complaint accurately notes, under the Delaware General Corporation Law:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution . . . bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business . . . *but not for the purpose of continuing the business for which the corporation was organized*.

8 Del. C. § 278 (emphasis added); *see also* Am. Compl. ¶ 54.  Further, the Delaware Limited Liability Company Act requires dissolved LLCs to make provisions "sufficient to provide compensation for claims that have not been made known to the [LLC] or that have not arisen but that, based on facts known to the [LLC], are likely to arise or to become known to the [LLC] within 10 years after the date of dissolution."  6 Del. C. § 18-804(b)(3); Am. Compl. ¶ 55.

On its face, the Delaware Limited Liability Company Act provides no support for Plaintiffs' claim that LLCs "maintain life" after dissolution, rather the Act simply requires dissolving LLCs to set aside funds to pay claims brought against the LLCs after their dissolution. *See* 6 Del. C. §18-804(b)(3). Plaintiffs' reliance on Delaware's General Corporation Law is similarly misplaced. Section 278 states that dissolved corporations continue as corporate entities "for the purpose of prosecuting and defending suits . . . and of enabling them gradually to settle and close their business." 8 Del. C. § 278. Thus, Zeromax Group and Zeromax Logistics were, despite their dissolution, properly named as Defendants in this action. However, section 278 also explicitly states that dissolved corporations do not continue as corporate entities "for the purpose of continuing the business for which the corporation was organized." *Id.* As such, the fact that Zeromax Group and Zeromax Logistics were amenable to suit when this action was commenced does not suffice to demonstrate that they were "doing business" in the District of Columbia at that point in time. Nor does Zeromax Group and Zeromax Logistics' hypothetical ability "gradually to settle and close their business" necessarily amount to a "continuing corporate presence in the [District of Columbia] directed at advancing the corporation's objectives." *AMAF Int'l Corp. v . Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981) (corporation was "doing business" in D.C. for purposes of D.C. Code § 13-334(a) where it had been qualified to do business in D.C. for twenty-five years, maintained a registered agent in D.C., sold its products in local supermarkets, and advertised its products in D.C.).

Significantly, the Amended Complaint does not include–and Plaintiffs' Opposition does not point to–specific factual allegations that the U.S. Zeromax Defendants were "doing business" in the District at the time this action was commenced. Rather, the Amended Complaint simply

11

parrots the language of the case law applying D.C. Code §13-334(a), offering the legal

conclusion that Defendants are "engaged in regular, systemic and continuous business activities

in D.C." *See* Am. Compl. ¶ 9. In addition, the Amended Complaint alleges that Zeromax Group

"maintains, and for the relevant period maintained, its principal place of business in Washington,

D.C., as reflected on its website and signage at the office building." *Id.* ¶ 10. The factual support

for this assertion appears to be that, as of the time this action was commenced, Zeromax Group's

website continued to list the 1725 I Street office. *See* Pls.' Opp'n at 12 n.4 (citing Am. Compl. ¶

10); Pls.' Opp'n, Ex. 17 (hard copy of Zeromax Group website apparently accessed on October 5,

2006).[3] However, the mere fact that Zeromax Group may have listed an office at 1725 I Street on

its website does not demonstrate that Zeromax Group had a "continuing corporate presence in the

[District of Columbia] directed at advancing the corporation's objectives." *AMAF Int'l Corp.*,

428 A.2d at 851.[4] Nor does the possibility that District residents may have accessed Zeromax

_____

[3] While the Amended Complaint alleges that signage reflected a Zeromax Group office in the District of Columbia as of the time of the filing of this action, Plaintiffs do not reiterate this assertion in their Opposition, and thus appear to abandon the allegation. *See* Pls.' Opp'n at 12 n.4. In addition, the Court notes that Zeromax Group no longer appears to maintain an active website at the domain name www.zeromaxgroup.com.

[4] In their Opposition, Plaintiffs also claim that "the U.S. Zeromax Defendants have continued to act after their dissolution," asserting that "Zeromax LLC transferred the interest in CCBU/Muzimpex to Zeromax GmbH *after* Zeromax LLC had already been dissolved." Pls.' Opp'n at 12 n.4 (emphasis in original) (citing Pls.' Opp'n, Ex. 18 (9/28/05 certificate of cancellation of Zeromax LLC)); Ex. 19 (Muzimpex joint venture agreement, registered on 11/7/05)). This allegation is not included in the Amended Complaint and, even if it were true, would not indicate that Zeromax LLC continued to "do business" after its dissolution because the Delaware Limited Liability Company Act specifically provides that, between the time of an LLC's dissolution and the filing of its certificate of cancellation, "the persons winding up the [LLC's] affairs may . . . .gradually settle and close the [LLC's] business, [and] dispose of and convey the [LLC's] property. . . ." 6 Del. Code §18-803(b). Moreover, Plaintiffs' allegation is irrelevant because it does not indicate that the U.S. Zeromax Defendants continued to act *in the District of Columbia* after Zeromax LLC was dissolved.

Group's website suffice, because "this does not by itself show any persistent course of conduct

by the defendants in the District."  *GTE New Media Servs. Inc. v. Bellsouth Corp.*, 199 F.3d

1343, 1349 (D.C. Cir. 2000).  Moreover, Plaintiffs' allegation that Zeromax Group maintained an

office at 1725 I Street as of June 2006 is undercut by their acknowledgment elsewhere in the

Amended Complaint that Zeromax Group dissolved in August 2005, and their allegation that

Zeromax Group established a business address in Maryland in February 2006.  Am. Compl. ¶ 3.[5]

Even more significantly, Plaintiffs proffer no factual allegations as to what, if any,

business Zeromax Group conducted at 1725 I Street at the relevant point in time.  This failing is

crucial because courts in this Circuit have concluded that allegations of corporate offices in the

District of Columbia do not conclusively establish that corporations are "doing business" in the

District.  *See Fandel v. Arabian Am. Oil Co.,* 345 F.2d 87 (D.C.Cir.1965) (court lacked general

jurisdiction over a corporation that maintained a six-room office staffed by five people in the

District because the office was engaged in federal government liaison activities, rather than the

corporation's business of producing, refining, and selling oil and gas in the Middle East); *see

also AGS Int'l Servs. S.A., v Newmont USA Limited*, 346 F. Supp. 2d 64, 75-76 (D.D.C. 2004)

(court lacked general jurisdiction over corporation despite two-room office in D.C. staffed by one

person).  Because Plaintiffs fail to allege specific facts regarding the nature of Zeromax Group's

business activity at 1725 I Street at the time this action was commenced, the Amended

Complaint's allegations are insufficient to demonstrate that any U.S. Zeromax Defendant had a

---

[5] Significantly, service of process on Zeromax Group was effected at Zeromax Group's alleged "business address" in Maryland, and not at 1725 I Street.  *See* Affidavit of Service, *ROZ Trading Ltd. v. Zeromax Group, Inc.*, Civil Action No. 06-1040 (D.D.C. Jun. 19, 2006) (Docket # 4).

"continuing corporate presence in the [District of Columbia] directed at advancing the corporation's objectives." *AMAF Int'l Corp.*, 428 A.2d at 851; *see also City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 33-34 (D.D.C. 2007) (plaintiffs' allegation that defendant maintained an office in the District, at which a Vice President was permanently assigned, was insufficient to establish general jurisdiction in the absence of specific factual allegations regarding defendants' business activities in that office). As such, the Court cannot conclude that Zeromax GmbH is subject to general personal jurisdiction in this Court based on Plaintiffs' alter ego theory.

> 2.    *The Court Lacks General Jurisdiction Over Zeromax GmbH Pursuant To D.C. Code § 13-422*

Plaintiffs also allege that Defendants are subject to personal jurisdiction in this Court pursuant to D.C. Code § 13-422 because Zeromax Group "maintains, and for the relevant period maintained, its principal place of business in Washington D.C., as reflected on its website and signage at the office building." Am. Compl. ¶ 10. Pursuant to D.C. Code § 13-422, "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Neither party addresses this allegation in connection with Defendants' motion to dismiss; however, the Court's discussion above is sufficient to demonstrate the allegation's shortcomings. The Amended Complaint contains only a conclusory allegation that Zeromax Group maintained a principal place of business in the District as of the time this action was commenced, which is not supported by any specific factual allegations from which the Court could conclude that Zeromax Group *actually*

maintained its principal place of business at 1725 I Street.  *See* Am. Compl. ¶ 10.  Moreover,

Plaintiffs' conclusory allegation is undercut by Plaintiffs' allegations that Zeromax Group

dissolved in August 2005 and established a business address in Maryland in February 2006.  *See*

*id.* ¶¶ 3, 10.  As such, Plaintiffs' "bare allegation" does not suffice to establish that this Court has

personal jurisdiction over Zeromax GmbH pursuant to D.C. Code § 13-422, based on an alter ego

theory.  *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).

> 3.    *The Court Lacks Specific Jurisdiction Over Zeromax GmbH Pursuant To
>        D.C. Code § 13-423*

When examining its jurisdiction over a non-resident, "a court must engage in a two-part

inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm

statute and then determine whether a finding of jurisdiction satisfies the constitutional

requirements of due process."  *GTE Media Servs.*, 199 F.3d at 1347.  The District of Columbia's

long-arm statute provides, in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a claim for relief arising from the person's --
> (1) transacting any business in the District of Columbia; . . .
> (3) causing tortious injury in the District of Columbia by an act or omission in the
> District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside
> the District of Columbia if he regularly does or solicits business, engages in any other
> persistent course of conduct, or derives substantial revenue from goods used or
> consumed, or services rendered, in the District of Columbia; . . .

D.C. Code. § 13-423.  Personal jurisdiction under the "transacting business" prong of the long-

arm statute "'is limited to claims arising from the particular transaction of business' in the

District [of Columbia]."  *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154,

1168 (D.C. Cir. 2002) (quoting *AMAF Int'l Corp.*, 428 A.2d at 850).

Here, the Court's analysis begins and ends with the District of Columbia's long-arm statute; because specific jurisdiction over Zeromax GmbH is not appropriate under the long-arm statute, the Court need not consider the constitutional requirements of due process. The Amended Complaint literally parrots the relevant statutory language, proffering no factual allegations whatsoever to demonstrate that Plaintiffs' claims for relief arise out of business transacted in the District of Columbia or from tortious injury in the District of Columbia. *See* Am. Compl. ¶ 11. To the contrary, all of the allegations contained in the Amended Complaint relate to events alleged to have taken place in Uzbekistan. *See generally* Am. Compl. (alleging that Plaintiffs' interest in CCBU was confiscated by the government of Uzbekistan and eventually transferred to Muzimpex, a joint venture majority-owned by Zeromax LLC and then Zeromax GmbH). The Amended Complaint simply fails to allege that *any* of the transfers or transactions relevant to Plaintiffs' claims for relief occurred in the District of Columbia. As a result, Plaintiffs' assertion in their Opposition that a "nonresident defendant can be 'transacting business' for jurisdictional purposes through an intermediary that is transacting business in the forum," is unavailing. Pls.' Opp'n at 14 (citing *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty.*, 647 F.2d 200 (D.C. Cir. 1981)). Because the Amended Complaint does not allege that a U.S. Zeromax Defendant transacted the business out of which Plaintiffs' claims arose in the District, the Court cannot determine that Zeromax GmbH transacted business in the District via an intermediary for purposes of D.C. Code § 13-423.

Furthermore, the Amended Complaint alleges that ROZ was organized under the laws of the Cayman Islands and has its principal place of business in New Jersey, and that ROZ (U) was organized under the laws of, and had its principal place of business in, Uzbekistan. *See id.* ¶¶ 1-

16

2.  As such, it is difficult to understand how either Plaintiff could have been injured in the

District of Columbia (and the Amended Complaint not include a specific allegation to that

effect).  *See El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 672 (D.C. Cir. 1996) (plaintiff living

and working in Jordan unlikely to be injured in the District of Columbia).  As the Amended

Complaint does not proffer specific factual allegations that Plaintiffs' claims arise out of business

transacted in or out of tortious injury in the District of Columbia, the Court concludes that

Zeromax GmbH is not subject to specific personal jurisdiction under D.C. Code § 13-423.

### C.    Plaintiffs Are Not Entitled To Jurisdictional Discovery Because They Have Not Presented Facts That Could Establish Jurisdiction

_____In their Opposition, Plaintiffs request a 120-day period of limited jurisdictional discovery

in order to "test the jurisdictional assertions raised by Zeromax."  Pls.' Opp'n at 14.  A district

court has discretion over whether to defer a decision on jurisdiction until after discovery.  *See*

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983); *COMSAT Corp. v.*

*Finshipyards S.A.M.*, 900 F. Supp. 2d 515, 524 n.4 (D.D.C. 1995).  The D.C. Circuit has held

that a plaintiff "faced with a motion to dismiss for lack of personal jurisdiction is entitled to

reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding

information on its contacts with the forum."  *El-Fadl*, 75 F.3d at 676; *see also Crane v. Carr*,

814 F.2d 758, 764 (D.C. Cir. 1987) (plaintiff was entitled to a fair opportunity to discovery

concerning the defendant's contacts with the forum).

Although discovery should be granted freely, it can be denied when the plaintiff has failed

to present facts that could establish jurisdiction.  *See Carribean Broad. Sys. Ltd. v. Cable &*

*Wireless, PLC*, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998) (affirming district court's denial of

17

discovery when plaintiffs did not present sufficient evidence of jurisdiction); *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62-63 (D.D.C. 2006) (denying jurisdictional discovery where plaintiff did not allege contacts with the District sufficient to establish general or specific jurisdiction). In cases that allowed discovery, the plaintiff alleged more than "conclusory" jurisdictional facts. *See El-Fadl*, 75 F.3d at 675 (allowing discovery where plaintiff alleged "specific transactions"). As the D.C. Circuit has made clear, "in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Carribean Broad. Sys.*, 148 F.3d at 1090 (citing cases including *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D.Ind. 1997) ("it is reasonable for a court . . . to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the defendant to intrusive and burdensome discovery.")).

Furthermore, "[w]hen requesting jurisdictional discovery . . . a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.'" *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (quoting *United States v. Philip Morris Inc.*, 116 F. Supp. 2d at 130). Here, although Plaintiffs broadly request jurisdictional discovery, in identifying the actual discovery they wish to conduct (as required by the case law), they focus only on their alter ego theory. Specifically, Plaintiffs assert that they "would seek to obtain additional evidence demonstrating that the Zeromax entities based in the United States were and are mere alter egos of Zeromax GmbH. Plaintiffs will seek such documents and testimony from Defendants and third parties that are likely to have information concerning Zeromax GmbH." Pls.' Opp'n at 15.

It is therefore clear that the discovery Plaintiffs seek would not affect the jurisdictional

outcome in this case.  Plaintiffs do not suggest that the jurisdictional discovery they seek would

demonstrate that any U.S. Zeromax Defendant was "doing business" in or maintaining a

principal place of business in the District of Columbia at the time that this action was

commenced, nor do they suggest that the discovery they seek would establish that their claims

arise out of business transacted in or out of tortious injury in the District.  Rather, they seek

discovery aimed at strengthening their allegation that the U.S. Zeromax Defendants are alter egos

of Zeromax GmbH.  However, as discussed above, Plaintiffs' alter ego claims are of no

consequence in the absence of factual allegations or evidence that the U.S. Zeromax Defendants

were "doing business" in, or had a principal place of business in, the District of Columbia at the

time that this action was commenced, or that Plaintiffs' claims for relief arise out of business

transacted in or out of tortious injury in the District of Columbia.  The Court shall therefore deny

Plaintiffs' request for jurisdictional discovery. *Savage*, 460 F. Supp. at 62.

> B.    *The Court's Dismissal of Zeromax GmbH Moots Defendants' Argument That The Court Lacks Subject Matter Jurisdiction Over This Action*

Having concluded that the Court lacks either general or specific personal jurisdiction over

Zeromax GmbH, the Court must dismiss Defendant Zeromax GmbH from this action, as well as

all claims asserted against Zeromax GmbH.  As such, the remaining parties to this action are

ROZ, ROZ (U), and the U.S. Zeromax Defendants.  Plaintiffs' Amended Complaint asserts that

the Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332

because the parties are diverse in citizenship and more than $75,000 is at stake.  Defendants do

not dispute that more than $75,000 is at stake in this action and, indeed, Plaintiff's Amended

Complaint seeks total damages of $666,000,000.00.  Am. Compl. ¶¶ 60, 63, 67, 71, 75, 81, and

83. While Defendants do argue that this Court lacks subject matter jurisdiction because the parties to this action are not actually diverse in citizenship as required by 28 U.S.C. § 1332, as discussed below, this argument turns on the inclusion of Zeromax GmbH as a Defendant to this action, and is therefore mooted by the Court's dismissal of Zeromax GmbH.

Plaintiffs' Amended Complaint does not specify the provision of 28 U.S.C. § 1332 under which they believe jurisdiction is proper; however, Congress has authorized federal courts to exercise jurisdiction over suits between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), as well as suits between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3). The primary issue raised by the parties' briefing is whether ROZ's alleged principal place of business in New Jersey suffices to make it a citizen of New Jersey, or whether ROZ must instead be considered an alien.[6] The Court need not determine, however, whether ROZ is properly deemed a citizen or an alien, because the Court's dismissal of Zeromax GmbH removes the alien from the other side of this lawsuit. As such, if ROZ is considered an alien, diversity jurisdiction is proper under 28 U.S.C. § 1332(a)(2) because this suit is between citizens or subjects of a foreign state (ROZ and ROZ (U)) and citizens of a State (the U.S. Zeromax Defendants). If, in the alternative, ROZ is a

---

[6] This distinction is significant because "under long-held precedent, diversity must be 'complete.'" *Eze v. Yellow Cab Co.*, 782 F.2d 1064, 1065 (D.C. Cir. 1986) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). Accordingly, in cases arising under 28 U.S.C. § 1332(a)(2), the D.C. Circuit and other circuits have held that 28 U.S.C. § 1332 does "not confer jurisdiction over a lawsuit involving an alien on one side, and an alien and a citizen on the other side." *Saadeh v. Farouki*, 107 F.3d 52, 55 (D.C. Cir. 1997) (compiling cases). In contrast, courts in other circuits have held that "§ 1332(a)(3) unequivocally vests federal courts with jurisdiction over disputes in which aliens appear on both sides of the action." *Zenith Elecs. Corp. v. Kimball Int'l Mfg., Inc.*, 114 F. Supp. 2d 764, 769 (N.D. Ill. 2000) (citing *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 497-98 (3d Cir. 1997)) (emphasis added)); *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993).

citizen, diversity jurisdiction is proper under 28 U.S.C. § 1332(a)(3), because this suit is between citizens of different States (ROZ of New Jersey and the U.S. Zeromax Defendants of Delaware) and a citizen or subject of a foreign state (ROZ (U)) is an additional party.  The Court therefore concludes that Defendants' argument that the Court lacks subject matter jurisdiction over this action is mooted by the dismissal of Zeromax GmbH.

C.    *The Court Must Shall Hold The Remainder Of Defendants' Motion To Dismiss In Abeyance*

As discussed above, the Court lacks personal jurisdiction over Defendant Zeromax GmbH and therefore must dismiss Zeromax GmbH from this action, as well as all claims against Zeromax GmbH.  In turn, the dismissal of Zeromax GmbH moots Defendants' argument that the Court lacks subject matter jurisdiction over this action.  The U.S. Zeromax Defendants have specifically acknowledged that they submit to the personal jurisdiction of this Court, *see* Defs.' Reply at 8; however, the Court is aware that the dismissal of Zeromax GmbH may change the posture of the parties.  The Court shall therefore hold in abeyance the remainder of Defendants' Motion to Dismiss in order to allow the remaining parties to this action–Plaintiffs and the U.S. Zeromax Defendants–the opportunity to consider how they wish to proceed in this litigation in light of the dismissal of Zeromax GmbH.  As set forth in greater detail in the accompanying Order, the parties shall file Status Reports with the Court on or before October 15, 2007, notifying the Court as to how they wish to proceed.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall deny Plaintiffs' request for jurisdictional discovery, and shall grant-in-part and deny-in-part Defendants' Motion to Dismiss the Amended

Complaint in its Entirety.  Specifically, the Court shall grant Defendants' Motion to Dismiss

insofar as it argues that the Court lacks personal jurisdiction over Defendant Zeromax GmbH,

and shall therefore dismiss Zeromax GmbH from this action, as well as all claims against

Zeromax GmbH.  In addition, because the Court's dismissal of Zeromax GmbH moots

Defendants' argument that the Court lacks subject matter jurisdiction over this action, the Court

shall deny that aspect of Defendants' Motion to Dismiss.  The Court shall hold in abeyance the

remainder of Defendants' Motion to Dismiss in order to allow Plaintiffs and the U.S. Zeromax

Defendants to consider how they wish to proceed with this litigation in light of the dismissal of

Defendant Zeromax GmbH, and to advise the Court of their preferences, as set forth in the

accompanying Order.

Date:   September 28, 2007

                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge