## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ROZ TRADING LTD., *et al.*,               )
                                          )
          *Plaintiffs*,                   )
                                          )
        v.                         )        1:06-CV-01040 CKK
                                          )
ZEROMAX GROUP, INC., *et al.*,            )
                                          )
          *Defendants*.                  )
_____)

## THE U.S. ZEROMAX DEFENDANTS' REVISED
## MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY

Pursuant to this Court's Order dated September 28, 2007 and Minute Order dated October 23, 2007, Zeromax Group, Inc., Zeromax Logistics, Inc. (both dissolved Delaware corporations) and Zeromax LLC (a dissolved Delaware limited liability company) (collectively the "U.S. Zeromax Defendants") hereby submit this Revised Motion To Dismiss The Amended Complaint In Its Entirety.

The U.S. Zeromax Defendants respectfully move this Court for an order dismissing with prejudice Plaintiffs' Amended Complaint in its entirety on the following grounds: (i) failure to join an indispensable party pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure; (ii) lack of personal jurisdiction pursuant to Rule 12(b)(2); (iii) lack of standing; (iv) the act of state doctrine; (v) failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6); and (vi) the doctrine of *forum non conveniens*.

In support of this revised motion, the U.S. Zeromax Defendants respectfully submit the accompanying memorandum of points and authorities, and exhibits thereto.

Dated: November 20, 2007
      Washington, D.C.

Respectfully submitted,

**WHITE & CASE** LLP

/ s / Carolyn B. Lamm
_____
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb  (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc., Zeromax
Logistics, Inc., and Zeromax LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           )

ROZ TRADING LTD., *et al.*,       )
                           )

        *Plaintiffs,*       )

                           )

      v.                 )      1:06-CV-01040 CKK

                           )

ZEROMAX GROUP, INC., *et al.*,  )

                           )

        *Defendants.*      )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE U.S. ZEROMAX DEFENDANTS' REVISED
## <u>MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY</u>

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005

*Attorneys for Zeromax Group, Inc.,*
*Zeromax Logistics, Inc., and*
*Zeromax LLC*

November 20, 2007

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

I.   PLAINTIFFS' CLAIMS IN THIS ACTION ARISE FROM THE SOVEREIGN
     ACTS OF UZBEKISTAN ......................................................................................2

     A.   Uzbekistan Removed ROZ's Interest In CCBU Through State-Initiated
          Regulatory Enforcement Proceedings Pursuant To Uzbek Law.............................2

     B.   Uzbekistan Transferred ROZ's CCBU Interest To The State By Official
          Decree Of The Uzbek Cabinet Of Ministers............................................................4

     C.   Uzbekistan Sold ROZ's Former CCBU Interest To Muzimpex — Not The
          U.S. Zeromax Defendants — Pursuant To Uzbek Law............................................4

II.  ROZ TRADING'S CLAIMS IN THE VIENNA ARBITRATION ARISE FROM
     THE SAME SOVEREIGN ACTS OF UZBEKISTAN........................................6

III. THE COURT HAS DISMISSED ZEROMAX GMBH, THE ONLY ZEROMAX
     ENTITY WITH ANY INTEREST (ALBEIT INDIRECT) IN CCBU .............7

ARGUMENT ..................................................................................................................8

I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(7)
     FOR FAILURE TO JOIN AN INDISPENSABLE PARTY .................................8

     A.   Zeromax GmbH Is A Necessary Party Under Rule 19(a)........................................9

     B.   Zeromax GmbH Is An Indispensable Party Under Rule 19(b).............................10

II.  THE COURT LACKS PERSONAL JURISDICTION OVER THE U.S.
     ZEROMAX DEFENDANTS....................................................................................15

     A.   The Court Lacks General Jurisdiction ..................................................................16

     B.   The Court Lacks Specific Jurisdiction ..................................................................19

III. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE U.S.
     ZEROMAX DEFENDANTS....................................................................................22

IV.  THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS ...............25

     A.   The Act of State Doctrine Precludes This Court's Inquiry Into The
          Validity Of A Foreign State's Acts Taken Within Its Own Territory ..................25

     B.   The Act of State Doctrine Precludes This Court From Reviewing
          Uzbekistan's Acts Resulting In The Removal Of ROZ's Interest In CCBU........27

C.     The Act Of State Doctrine Also Precludes This Court's Review Of Uzbekistan's Privatization Of Its State-Owned Interest In CCBU ....................... 30

D.     *All* Of Plaintiffs' Claims Require This Court To Adjudicate The Validity Of Uzbekistan's Official Sovereign Acts ............................................. 31

V.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ............................................................................................................... 32

A.     Plaintiffs' Allegations Fail To Satisfy The Minimum Pleading Standards .......... 33

B.     Plaintiffs' Allegations Fail To State Claims Under The Applicable Substantive Law ............................................................................................. 36

C.     Plaintiffs' Claims Are Time-Barred ....................................................... 40

VI.     THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM ............................................................................................ 41

A.     Adequate Alternative Fora Are Available For This Dispute ................................. 41

B.     Both Public And Private Interest Factors Weigh Against Hearing This Case In The District Of Columbia ......................................................... 43

CONCLUSION ............................................................................................................. 45

## TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>                                                                                                                      <u>Page(s)</u>

*ABB Daimler-Benz Transp. (N. Am.), Inc. v. Nat'l R.R. Passenger Corp.*,
    14 F. Supp. 2d 75 (D.D.C. 1998) ...............................................................................37

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64 (D.D.C 2004) ..........................34

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995)......................40

**Allen v. Wright*, 468 U.S. 737 (1984) ...............................................................................22, 25

*Atuahene v. City of Hartford*, 10 Fed. Appx. 33 (2d Cir. 2001)................................................ 35-36

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ................................................ *passim*

*BCCI Holdings (Lux.), S.A. v. Khalil*, 184 F.R.D. 3 (D.D.C. 1999)....................................... 32-33

*Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335 (9th Cir. 1976)................................................ 15-16

**Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323 (11th Cir. 2003) ...........................14, 24, 29

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................................................33

*Biscoe v. Arlington County*, 738 F.2d 1352 (D.C. Cir. 1984)......................................................37

*Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974 (2d Cir. 1993)..........................................42

**Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ....................................................... *passim*

**Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71 (D.D.C. 2003) .........................19, 34, 36

**City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20 (D.D.C. 2007)...............2, 18, 20

*Clackamas County, Or. v. McKay*, 219 F.2d 479 (D.C. Cir. 1954),
    *vacated as moot sub nom McKay v. Clackamas County, Or.*, 349 U.S. 909 (1955) ...............10

*Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446 (9th Cir. 1990).......................42

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*,
    212 F. Supp. 2d 30 (D.D.C. 2002) ..................................................................................43, 44

**Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203 (D.C. Cir. 1987) .............................29

**DM II, Ltd. v. Hosp. Corp. of Am.*, 130 F.R.D. 469 (N.D. Ga. 1989)...................................12, 13

**Doty v. St. Mary Parish Land Co.*, 598 F.2d 885 (5th Cir. 1979) .........................................12, 13

*Drexel Burnham Lambert Group v. Comm. of Receivers*, 12 F.3d 317 (2d Cir. 1993)................29

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997)...............................31

*\*El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996)............................................18, 21

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325 (2d Cir. 2005)...........................38

*\*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988) ......................... *passim*

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)..............................................30

*Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) ...................................................14

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) ......................................................36

*\*Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251 (11th Cir. 2006).......................................31, 32

*\*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) ................................16, 17

*Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947)...............................................................................44

*\*Heckler v. Mathews*, 465 U.S. 728 (1984).................................................................................23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ...................................17

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)........................................................42

*Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977)..................................................................26

*In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7 (E.D.N.Y. 2005) ................................23

*In re Smith*, No. 04-01581, 2007 WL 2071626 (Bankr. D.D.C. July 17, 2007)...........................12

*Indus. Credit Co. v. Berg*, 388 F.2d 835 (8th Cir. 1968) ..............................................................11

*\*Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29 (D.D.C. 2006) .....................................41

*\*Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116 (D. Del. 1989)................... *passim*

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
     313 F.3d 70 (2d Cir. 2002).....................................................................................................38

*Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995) .........................................10

*\*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ..........................................32, 34

*Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456 (D.C. Cir. 1989) ...........................40

*Local 670 v. Int'l Union*, 822 F.2d 613 (6th Cir. 1987)................................................................13

*MacNeil v. Whittemore*, 254 F.2d 820 (2d Cir. 1958) ...........................................................15-16

*Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine,
    311 F.3d 488 (2d Cir. 2002)........................................................41, 42, 43

Montanez Miranda v. Banco Progreso, S.A.C.A., 973 F. Supp. 89 (D.P.R. 1997) ......................29

Novak-Canzeri v. Al Saud, 864 F. Supp. 203 (D.D.C. 1994) .......................................20

Oetjen v. Cent. Leather Co., 246 U.S. 297 (1918).........................................................31

Pain v. United Techs. Corp., 637 F.2d 775 (D.C. Cir. 1980) ............................. 41, 43-44

Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007)....................................23

*Philippine Nat'l Bank v. U.S. Dist. Ct. of Hawaii, 397 F.3d 768 (9th Cir. 2005) ................27, 28

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).........................................................44

Provident Tradesmen's Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968)............................12

Republic of Austria v. Altmann, 541 U.S. 677 (2004) ...............................................26

Republic of the Philippines v. Westinghouse Elec. Corp.,
    782 F. Supp. 972 (D.N.J. 1992) .................................................................11

Ricaud v. Am. Metal Co., 246 U.S. 304 (1918) ........................................................31

Rong v. Liaoning Provincial Gov't, 362 F. Supp. 2d 83 (D.D.C. 2005) ......................................30

ROZ Trading, Ltd. v. Zeromax Group, Inc., No. 06 Civ. 1040,
    2007 WL 2812760 (D.D.C. Sept. 28, 2007) ..................................................... passim

*Saudi Arabia v. Nelson, 507 U.S. 349 (1993).........................................................14, 30

Scherk v. Alberto-Culiver Co., 417 U.S. 506 (1974) ..................................................42

Simpson v. Fed. Bureau of Prisons, 496 F. Supp. 2d 187 (D.D.C. 2007) ...................................22

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 127 S.Ct. 1184 (2007) ....................41

Sparrow v. United Airlines, Inc., 216 F.3d 1111 (D.C. Cir. 2000)................................34

Stromberg v. Marriott Int'l, Inc., 474 F. Supp. 2d 57 (D.D.C. 2007)..........................................37

*Taylor v. F.D.I.C., 132 F.3d 753 (D.C. Cir. 1997) ...................................................23

Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.,
    421 F. Supp. 2d 87 (D.D.C. 2006)...............................................................43

The Paquete Habana, 175 U.S. 677 (1900).................................................................26

*Thomas v. Dep't of Defense*, Civ. A. No. 03-2483 (RBW),
    2006 WL 1890009 (D.D.C. July 7, 2006)........................................................... 18-19

*United States v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251 (D.C. Cir. 2004) ............... 32-33

*United States v. Merit*, 962 F.2d 917 (9th Cir. 1992) .....................................................30

\*Valley Forge Christian Coll. v. Ams. United for Separation
    *of Church & State, Inc.*, 454 U.S. 464 (1982) .................................................. 22-23

*W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629 (D.C. Cir. 2000) ......................34

*Week v. Cayman Islands*, No. 91 Civ. 2965, 1992 WL 372241 (7th Cir. Dec. 16, 1992) .............29

*West v. Multibanco Comermex, S.A.*, 807 F.2d 820 (9th Cir. 1987).........................................24, 30

*Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581 (D.C. Cir. 1965) .......................................37

\*World Wide Minerals, Ltd. v. Republic of Kazakhstan,
    296 F.3d 1154 (D.C. Cir. 2002) ....................................................................... *passim*

*Wyatt v. Syrian Arab Republic*, 398 F. Supp. 2d 131 (D.D.C. 2005) ...........................................37

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ..............................................................................27

*Young Women's Christian Ass'n v. Allstate Ins. Co. of Canada*,
    275 F.3d 1145 (D.C. Cir. 2002) .............................................................................36

*Zschernig v. Miller*, 389 U.S. 429 (1968) .....................................................................42

## STATE CASES

*Beard v. Edmondson & Gallagher*, 790 A.2d 541 (D.C. 2002) ......................................................41

*Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984)......................................................40

*Forte v. Goldstein*, 461 A.2d 469 (D.C. 1983) ....................................................................... 40-41

*French v. Banco Nacional de Cuba*, 242 N.E.2d 704 (N.Y. 1968) ................................................24

*Gonzalez v. Internacional de Elevadores S.A.*, 891 A.2d 227 (D.C. 2006)...................................17

*In re Orshansky*, 804 A.2d 1077 (D.C. 2002)..........................................................................17

*Namerdy v. Generalcar*, 217 A.2d 109 (D.C. 1966).....................................................................40

*Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168 (D.C. 2006) .......................................... 37

*York Blouse Corp. v. Kaplowitz Bros., Inc.*, 97 A.2d 465 (D.C. 1953) ........................................ 11


FEDERAL STATUTES

9 U.S.C. §§ 3, 4 (2005) ......................................................................................................... 42

28 U.S.C. § 1604 (2002) ....................................................................................................... 14

Fed. R. Civ. P. 8 .................................................................................................................... 36

Fed. R. Civ. P. 12 ......................................................................................................... *passim*

Fed. R. Civ. P. 19 ......................................................................................................... *passim*

Fed. R. Civ. P. 44.1 ...................................................................................................... *passim*


STATE STATUTES

D.C. Code § 12-301 (2001) .................................................................................................. 40

D.C. Code § 13-334 (2001) ..................................................................................... 16, 17, 18

D.C. Code § 13-422 (2001) ............................................................................................ 16, 18

D.C. Code § 13-423 (2001) ........................................................................................ 19, 20, 21

D.C. Code § 28-3107 ............................................................................................................ 12

Del. Code Ann. tit. 6, § 1307 (2007) ................................................................................... 12

Del. Code Ann. tit. 6, § 18-804 (2007) ............................................................................... 17

Del. Code Ann. tit. 8, § 278 (2007) ..................................................................................... 17


OTHER U.S. AUTHORITIES

5A Charles A. Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1194 (2d ed. 1990) ................................................. 16

6A C.J.S. *Assignments* § 136 (2007) ................................................................................... 11

Restatement (Second) of Judgments § 43 (1982) .........................................................................11

Restatement (Second) of Judgments § 55 (1982) .........................................................................11

Restatement (Third) of Foreign Relations Law § 111 (1987)........................................................26

Restatement (Third) of Foreign Relations Law § 112 (1987)........................................................26

Restatement (Third) of Foreign Relations Law § 443 (1987)..........................................................2

Restatement (Third) of Foreign Relations Law § 713 (1987)........................................................24

INTERNATIONAL AUTHORITIES

*BP Exploration Co. (Libya) v. Gov't of the Libyan Arab Republic*, 53 I.L.R. 297 (1974)............24

*Libyan American Oil Co. v. Libya*, 20 I.L.M. 1 (1974) ................................................................24

*Occidental Petroleum Corp. v. Republic of Ecuador*, ICSID Case No. ARB/06/11,
    Decision on Provisional Measures (Aug. 17, 2007), *available at*
    http://www.investmentclaims.com/decisions/Occidental-Ecuador-Interim_Measures.pdf.....24

*Sporrong & Lönnroth v. Sweden*, Judgment of 23 Sept. 1982, Ser. A No. 52,
    *reprinted in* 5 E.H.R.R. 35 (1983)...............................................................................................24

1 Oppenheim's International Law (Robert Jennings & Arthur Watts eds., 9th ed. 1992).............25

August Reinisch, *Widening the US Embargo Against Cuba Extraterritorially:
    A Few Public International Law Comments on the 'Cuban Liberty and
    Democratic Solidarity (LIBERTAD) Act of 1996'*, 7 Eur. J. Int'l L. 545 (1996)............... 24-25

**INTRODUCTION**

Plaintiffs ROZ Trading Ltd. ("ROZ Trading"), a Cayman Islands limited liability company, and ROZ Trading Ltd. (Uzbekistan) ("ROZ(U)"), a company organized, located, and dissolved in Uzbekistan (collectively "ROZ"), seek $666 million in damages against Zeromax Group, Inc. ("Zeromax Group"), Zeromax Logistics, Inc. ("Zeromax Logistics"), both dissolved Delaware corporations, and Zeromax LLC, a dissolved Delaware limited liability company (collectively the "U.S. Zeromax Defendants").[1]    Plaintiffs claim that the U.S. Zeromax Defendants should be held liable for the Republic of Uzbekistan ("Uzbekistan")'s alleged expropriation of ROZ's ownership interest in Coca-Cola Bottlers Uzbekistan Ltd. ("CCBU"), an Uzbek joint venture between ROZ, the Uzbek State-owned entity Uzpishcheprom Association ("Uzpishcheprom"), and The Coca-Cola Export Corporation ("TCCEC").  Am. Compl. ¶¶ 29-31. Plaintiffs further allege that the U.S. Zeromax Defendants should be held liable for Uzbekistan's subsequent privatization and sale of that CCBU interest to Muzimpex, an Uzbek limited liability company in which Zeromax GmbH, a Swiss-registered company that was dismissed from this action, is presently a shareholder.  *Id.* ¶ 45.  At the same time, Plaintiff ROZ Trading continues to pursue claims arising from the same sovereign acts of Uzbekistan in a Vienna arbitration against Uzbekistan, Uzpishcheprom, and TCCEC.[2]

The Amended Complaint must be dismissed in its entirety for several independent reasons.  First, Zeromax GmbH, which the Court has ruled is not subject to personal jurisdiction here, is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.  Second, the Court lacks personal jurisdiction over the U.S. Zeromax Defendants.  Third, the act of state

---

[1]    For purposes of this motion, the term "U.S. Zeromax Defendants" is used only as a convenient term of reference, and is not in any way an acceptance of Plaintiffs' conclusory allegations of agency or alter ego as between the named Zeromax entities.  *See, e.g.*, Am. Compl. ¶¶ 9-11.

[2]    *See ROZ Trading Ltd. v. Coca-Cola Export Corp., Uzbekistan, Uzpishcheprom Assoc. & Zeromax Group, Inc.*, Case No. SCH-4986 (Int'l Arbitral Centre of the Austrian Fed. Econ. Chamber) ("Vienna Arbitration").

doctrine precludes this Court's inquiry into the legality of the alleged sovereign acts of Uzbekistan. Fourth, Plaintiffs lack standing to assert their claims. Fifth, Plaintiffs have failed to state a claim upon which relief may be granted. And sixth, the District of Columbia is an improper and inconvenient forum.

## BACKGROUND

### I.    PLAINTIFFS' CLAIMS IN THIS ACTION ARISE FROM THE SOVEREIGN ACTS OF UZBEKISTAN

ROZ's claims in this action are based wholly on the alleged sovereign acts of Uzbekistan: (i) Uzbekistan's judicial, regulatory and other official acts resulting in the removal of ROZ's interest in CCBU and the transfer of that interest to the State; and (ii) Uzbekistan's subsequent privatization of the State's interest in CCBU some *two years later* through the sale of Uzpishcheprom's CCBU shares to Muzimpex — *not* to any of the U.S. Zeromax Defendants themselves. Am. Compl. ¶¶ 29-31, 45. All of the sovereign acts of Uzbekistan central to this case are valid, binding and enforceable as a matter of Uzbek law. *See* Declaration of Uzbek Law by Azamat R. Fayzullaev ("Fayzullaev Decl.") dated November 6, 2006, ¶¶ 13-25 & Exs. F-I.[3]

#### A.    Uzbekistan Removed ROZ's Interest In CCBU Through State-Initiated Regulatory Enforcement Proceedings Pursuant To Uzbek Law

By Plaintiffs' own allegations, their interest in CCBU was removed through two separate judicial proceedings initiated by Uzbekistan pursuant to Uzbek law: the first to invalidate certain

---

[3]    The Declaration of Uzbek Law by Azamat R. Fayzullaev and the Supplemental Declaration of Azamat R. Fayzullaev dated Feb. 6, 2007 ("Supp. Fayzullaev Decl.") are submitted pursuant to Rule 44.1 of the Federal Rules of Civil Procedure to assist the Court in its consideration of Uzbek legal issues. Further, in making its act of state determination the Court may take judicial notice of the Uzbek documents attached as exhibits to the Fayzullaev Declarations because "[c]ourts in the United States may take judicial notice of a document evidencing an act of state . . . ." Restatement (Third) of Foreign Relations Law § 443 cmt. i (1987). Finally, the Court may also properly consider the Fayzullaev Declarations in support of the U.S. Zeromax Defendants' jurisdictional defenses. *See, e.g.*, *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 36 n.6 (D.D.C. 2007) ("[W]hen considering challenges to personal jurisdiction, the Court need not treat all of plaintiffs' allegations as true and may receive and weigh affidavits and any other relevant material to assist it in determining the jurisdictional facts.") (quotation omitted). Certain exhibits attached to the Fayzullaev Declarations are unofficial English translations of Uzbek and Russian-language documents. The U.S. Zeromax Defendants are prepared to submit official translations of these documents upon the Court's request.

ROZ transactions in CCBU made in violation of Uzbek anti-monopoly laws, and the second to satisfy ROZ(U)'s debts to the State treasury. *See* Am. Compl. ¶¶ 29-31; *see also* Fayzullaev Decl. ¶¶ 13-16 & Exs. F-G.

## 1. Uzbekistan's Anti-Monopoly Proceedings

The State Committee for the Demonopolization and Development of Competition of the Republic of Uzbekistan ("State Anti-Monopoly Committee") initiated the first judicial proceeding affecting Plaintiffs' interest in CCBU. *See* Fayzullaev Decl. ¶¶ 14-15 & Ex. F (attaching the February 5, 2002 decision of the Supreme Economic Court of the Republic of Uzbekistan affirming reduction of ROZ's interest in CCBU for anti-monopoly law violations).[4] The State Anti-Monopoly Committee's petition sought to invalidate certain capital contribution and share purchase transactions in CCBU by ROZ Trading and ROZ(U) that were made without prior approval of the Committee, in violation of Uzbek anti-monopoly laws. *Id.* ¶ 14 & Ex. F. In a February 5, 2002 ruling, the Supreme Economic Court invalidated the unapproved share transactions, thereby reducing ROZ Trading's interest (and eliminating ROZ(U)'s interest) in CCBU. *See id.* ¶ 14 & Ex. F. That decision is valid, final, binding and enforceable as a matter of Uzbek law. *Id.* ¶ 15.

## 2. Uzbekistan's Liquidation Proceedings

In a separate judicial decision dated September 11, 2002, the Supreme Economic Court removed ROZ Trading's remaining participatory interest in CCBU to pay ROZ(U)'s debts to the State budget. *See id.* ¶¶ 16-17 & Ex. G (attaching September 11, 2002 decision of the Supreme Economic Court). These judicial proceedings were initiated at the behest of Uzbekistan to enforce its laws, decrees, and regulations — specifically, to liquidate ROZ(U) for violating

---

[4]     Exhibit F to the Fayzullaev Declaration includes an English translation of the February 5, 2002 decision that ROZ Trading submitted as an exhibit in the Vienna Arbitration. The U.S. Zeromax Defendants reserve the right to submit a competing translation, should that become necessary in this case.

Uzbek charter capital requirements, and to recoup ROZ(U)'s debts to the State resulting from unlawful actions by ROZ management. *Id.* ¶ 16 & Ex. G; *see also* Am. Compl. ¶ 30 (noting proceedings "were deliberately initiated by Uzbekistan" by petition of the Ministry of Justice). That decision is valid, final, binding and enforceable as a matter of Uzbek law. Fayzullaev Decl. ¶ 17.

**B.     Uzbekistan Transferred ROZ's CCBU Interest To The State By Official Decree Of The Uzbek Cabinet Of Ministers**

Following the judicial removal of ROZ Trading's remaining CCBU shares, the State formally acquired possession of those CCBU shares pursuant to Decree No. 420 of the Cabinet of Ministers of the Republic of Uzbekistan, dated July 5, 2002 ("Decree No. 420"). *See id.* ¶¶ 18-20 & Ex. H (attaching Decree No. 420). Decree No. 420 endorsed the proposal of the State Committee on Management of State Property ("State Property Committee"), the Ministry of Finance, Uzpishcheprom, and ROZ(U)'s liquidation committee to transfer ROZ Trading's interest in CCBU to the State. *Id.* Ex. H. By operation of Decree No. 420, ROZ Trading's shares in CCBU were transferred to the State, through Uzpishcheprom. *Id.* ¶¶ 19-20 & Ex. H. Decree No. 420 is valid, binding and enforceable as a matter of Uzbek law. *Id.* ¶ 20.

**C.     Uzbekistan Sold ROZ's Former CCBU Interest To Muzimpex — Not The U.S. Zeromax Defendants — Pursuant To Uzbek Law**

Separate and apart from the above 2002 sovereign acts removing Plaintiffs' interest in CCBU pursuant to Uzbek law, Plaintiffs allege that Uzbekistan sold their former CCBU interest to the "Zeromax subsidiary" Muzimpex two years later in 2004 through a State-owned privatization authority. Am. Compl. ¶ 45.

**1.     Muzimpex Is An Uzbek-Registered Limited Liability Company**

In February 2003, Zeromax LLC, a now-defunct Delaware limited liability company (*see* Am. Compl. ¶ 5), and RTPF-Tijorat ("Tijorat"), an Uzbek state-owned food distribution

company, formed the Uzbek-American agro-industrial joint venture Muzimpex JV ("Muzimpex"). *See* Fayzullaev Decl. Ex. C (attaching Muzimpex 2003 Charter). Muzimpex is a separately incorporated Uzbek-registered limited liability company that was founded and operates in accordance with Uzbek law, including the Law "On Limited and Additional Liability Companies," dated December 6, 2001 ("Law On LLCs"). *Id.* ¶¶ 4-12. As Plaintiffs allege, in 2005 Zeromax GmbH acquired Zeromax LLC's shares in Muzimpex. *See* Am. Compl. ¶ 6; *see also* Fayzullaev Decl. ¶¶ 11-12 & Exs. D-E (attaching 2005 Muximpex Charter reflecting Zeromax GmbH and Tijorat as partners; 2005 Muzimpex Certificate of State Registration).

Both Muzimpex's initial charter and its 2005 charter expressly provide that Muzimpex was established pursuant to Uzbek law. *See* Fayzullaev Decl. Exs. C (Muzimpex 2003 Charter, art. 1) & D (Muzimpex 2005 Charter, art. 1). The Muzimpex charters also set forth in detail the business activities of Muzimpex including, *inter alia*, the manufacturing, processing, storage and sales of agricultural products. *See id.* Exs. C (Muzimpex 2003 Charter, art. 3) & D (Muzimpex 2005 Charter, art. 3). Muzimpex has its own offices and facilities at 11, Loyihachi Street, Nazarbek, Zangiota District, Tashkent Region, Republic of Uzbekistan, 702043. *See id.* Exs. C (Muzimpex 2003 Charter, art. 2.1.3) & D (Muzimpex 2005 Charter, art. 2.1.3).

Thus, as alleged, Muzimpex's current status is that of an Uzbek-registered limited liability joint venture company, doing business in Uzbekistan, between Zeromax GmbH and Tijorat. *See* Am. Compl. ¶¶ 5-6.

### 2. Uzbekistan Sold ROZ's Former CCBU Interest To Muzimpex Pursuant To Uzbek Privatization Law

Pursuant to its inherent authority to privatize State-owned property, Uzbekistan, through the State Property Committee, sold Uzbekistan's interest in CCBU to Muzimpex pursuant to Uzbek law. *See* Fayzullaev Decl. ¶¶ 21-25 (describing Uzbek denationalization and privatization

laws);[5] *see also* Am. Compl. ¶ 45. Pursuant to its sovereign authority, Uzbekistan, through the State Property Committee, issued an order dated September 13, 2004 ("State Property Committee Order"), approving the sale of the State-owned participatory interest in CCBU to Muzimpex. Fayzullaev Decl. ¶¶ 24-25 & Ex. I (attaching State Property Committee Order evidencing sale of State-owned interest in CCBU to Muzimpex pursuant to Uzbek law). The State Property Committee Order is valid, binding and enforceable as a matter of Uzbek law. *Id.* ¶ 25. Thus, as a matter of Uzbek law, the U.S. Zeromax Defendants do not hold — and are not alleged to hold — any direct or indirect interest in the CCBU shares that are the subject of this litigation.

## II. ROZ TRADING'S CLAIMS IN THE VIENNA ARBITRATION ARISE FROM THE SAME SOVEREIGN ACTS OF UZBEKISTAN

ROZ Trading's claims in the Vienna Arbitration are largely duplicative of those in this action, and thus also arise from the alleged sovereign acts of Uzbekistan.[6] Significantly, unlike here, ROZ Trading has pursued its claims in arbitration against the sovereign defendants Uzbekistan and Uzpishcheprom (as well as against TCCEC), including claims against Uzbekistan and Uzpishcheprom for, *inter alia*: (i) US$ 52.85 million for "intentionally and wrongfully exclud[ing] ROZ permanently from any further participation in CCBU" and "unlawfully acquir[ing] ROZ's interest in CCBU"; and (ii) US$ 63.64 million for "destroy[ing]" ROZ(U) "by illegally acquiring its shares, excluding it from CCBU, and dissolving it through

---

[5]    The State Property Committee is an Uzbek governmental body responsible for implementing Uzbekistan's denationalization and privatization laws. Fayzullaev Decl. ¶¶ 22-23. It is accountable to the Cabinet of Ministers, and derives its authority from the Constitution and the laws of Uzbekistan, decrees and orders of the President, and decrees and resolutions of the Cabinet of Ministers. *Id.* ¶ 22. The State Property Committee's decisions are binding on ministries, departments, concerns, associations, organizations, institutions, and local government authorities. *Id.* ¶ 23.

[6]    *See* ROZ Trading's Statement of Claims dated June 6, 2006 ¶¶ 1.0-3.63 (submitted as Exhibit 4 to Plaintiffs' Opposition to Defendants' Motion to Dismiss dated December 11, 2006) (Docket Entry No. 16-5).

bankruptcy proceedings that falsely valued ROZ(U)'s assets."[7]  Further, ROZ Trading limited its arbitration claims against Zeromax Group to $15 million,[8] while pursuing claims against the U.S. Zeromax Defendants in this proceeding for $666 million.

On or about April 11, 2007, several months after Zeromax Group had filed a Memorandum in Reply to the Statement of Claims raising multiple defenses on jurisdiction and the merits, ROZ Trading voluntarily withdrew its claims against Zeromax Group with prejudice to further arbitration proceedings in Vienna, but insisted on an order from the Tribunal that the withdrawal was without prejudice to further proceedings elsewhere.  On June 24, 2007, the Tribunal issued a partial award terminating the proceedings as to Zeromax Group with prejudice to further arbitration proceedings in Vienna, and awarding costs in favor of Zeromax Group in the amount of €155,000 plus US$ 285,000.  The award called for ROZ Trading to make payment within one month.  To date, ROZ Trading has defied and failed to fulfill its obligations under this award.

Upon information and belief, ROZ Trading continues to pursue its claims in arbitration against Uzbekistan, Uzpishcheprom and TCCEC for the same acts of state at issue here.

## III.    THE COURT HAS DISMISSED ZEROMAX GMBH, THE ONLY ZEROMAX ENTITY WITH ANY INTEREST (ALBEIT INDIRECT) IN CCBU

Plaintiffs filed their original complaint against Zeromax Group on June 6, 2006, the same day ROZ Trading filed its Statement of Claims in the Vienna Arbitration.  Zeromax Group filed a motion to dismiss on August 23, 2006.  (Docket Entry No. 7.)  Plaintiffs filed the Amended Complaint on September 1, 2006, adding Zeromax GmbH, Zeromax LLC and Zeromax Logistics as new defendants.  (Docket Entry No. 8.)  The four Zeromax Defendants filed a

---

[7]    *Id.* ¶¶ 5.1, 5.5.

[8]    *Id.* ¶ 6.0.

consolidated motion to dismiss on November 6, 2006.  (Docket Entry No. 15.)  On September 28, 2007, the Court dismissed Zeromax GmbH — the only defendant with any alleged interest (albeit indirect) in CCBU — for lack of personal jurisdiction.  *See ROZ Trading Ltd. v. Zeromax Group, Inc.*, Civ. A. No. 06-1040 (CKK), 2007 WL 2812760 (D.D.C. Sept. 28, 2007).  Finding Zeromax GmbH's jurisdictional objections "highly significant because Zeromax GmbH represents the connection between Defendants and [ROZ's] alleged former interest in CCBU," *id.* at *4, the Court held in abeyance the remainder of the motion to dismiss and ordered the parties to file status reports indicating how they wished to proceed.

Plaintiffs advised the Court that they planned to continue the litigation against the remaining U.S. Zeromax Defendants; the U.S. Zeromax Defendants, in turn, requested leave to revise and supplement their motion papers.  By Minute Order dated October 23, 2007, the Court set a briefing schedule for the U.S. Zeromax Defendants' revised motion to dismiss.  Pursuant to that Order, the U.S. Zeromax Defendants hereby submit their Revised Motion To Dismiss The Amended Complaint In Its Entirety.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(7) FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

The Court's dismissal of Zeromax GmbH for lack of personal jurisdiction has changed the posture of the remaining parties.  *See ROZ Trading*, 2007 WL 2812760, at *11 ("[T]he Court is aware that the dismissal of Zeromax GmbH may change the posture of the parties."); *id.* at *1 ("[T]he Court shall hold in abeyance the remainder of Defendant's Motion to Dismiss, because the dismissal of Zeromax GmbH may change the posture of the parties.").  Indeed, Plaintiffs' claims against the U.S. Zeromax Defendants must be dismissed because Zeromax GmbH is an indispensable party to this litigation under Rule 19 of the Federal Rules of Civil Procedure.

Under Rule 19, the Court must undertake a two-step inquiry to determine whether to dismiss Plaintiffs' claims under Rule 12(b)(7).  First, the Court must ascertain whether Zeromax GmbH is a necessary party under Rule 19(a).  If the Court determines that it is, then because joinder is not feasible for lack of personal jurisdiction, the Court must determine under Rule 19(b) whether "in equity and good conscience the action should proceed among the parties before it," or whether the case should be dismissed, "the absent person being thus regarded as indispensable."  Fed. R. Civ. P. 19(b).

### A.    Zeromax GmbH Is A Necessary Party Under Rule 19(a)

Rule 19(a) of the Federal Rules of Civil Procedure provides in part that  "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . ."  *See* Fed. R. Civ. P. 19(a).

From the face of the Amended Complaint, Zeromax GmbH is a necessary party to this litigation.  Indeed, Plaintiffs apparently recognized as much when they amended their original complaint specifically to add Zeromax GmbH as a defendant.  In their Amended Complaint, Plaintiffs allege that Zeromax GmbH is the "successor-in-interest" to Zeromax LLC's (albeit indirect) ownership stake in CCBU through Muzimpex.[9]  *See* Am. Compl. ¶¶ 6, 40(f), 42.  The Court also has recognized that "Zeromax GmbH represents the connection between Defendants and Plaintiffs' alleged former interest in CCBU."  *See ROZ Trading Ltd.*, 2007 WL 2812760, at

---

[9]    As alleged, Muzimpex acquired the direct ownership stake in CCBU, not any of the U.S. Zeromax Defendants or Zeromax GmbH.  Am. Compl. ¶ 45.

*4. Therefore, should this case proceed under Plaintiffs' theory of the case, the Court would be adjudicating the property interest of a non-party. *See, e.g.*, *Clackamas County, Or. v. McKay*, 219 F.2d 479, 491 (D.C. Cir. 1954) (concluding that it is "a general rule of law that, when a plaintiff directly attacks the title to a piece of property, the owner is an indispensable party"), *vacated as moot sub nom McKay v. Clackamas County, Or.*, 349 U.S. 909 (1955). Accordingly, Zeromax GmbH is a necessary party to this litigation under Rule 19(a)(2)(i).

### B.    Zeromax GmbH Is An Indispensable Party Under Rule 19(b)

As the Court has held that it lacks personal jurisdiction over Zeromax GmbH, joinder of a necessary party is not feasible. Therefore, the Court must analyze whether this case should proceed among the remaining parties, or whether it should be dismissed, "the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Rule 19(b) provides the following factors for the Court to consider in making its determination: "(i) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (ii) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder." *Id.*; *see also Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995) (noting that a determination under Rule 19 "calls for a pragmatic decision based on practical considerations in the context of particular litigation").

The allegations here counsel for dismissal under Rule 19(b) because the U.S. Zeromax Defendants are all dissolved, and Zeromax GmbH is the only Zeromax entity that holds any interest in Muzimpex — which in turn holds the relevant interest in CCBU. *See* Am. Compl. ¶¶ 6, 40(e), 40(f), 42. Thus, of all the Zeromax entities, Zeromax GmbH — the alleged

"successor-in-interest" of Zeromax LLC — is the only one that theoretically could provide Plaintiffs with the relief they seek.  Further, because the claims here were filed in June 2006, *after* Zeromax LLC is alleged to have assigned its interests to Zeromax GmbH, a judgment by this Court would not have preclusive effect on Zeromax GmbH and proceeding in the latter's absence would result in an inadequate judgment.  *See  Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1124 (D. Del. 1989) ("[A]n assignee is regarded as in privity with its assignor for preclusion purposes *only* if the assignment occurred *after* the initial lawsuit was brought.") (emphasis added); *York Blouse Corp. v. Kaplowitz Bros., Inc.*, 97 A.2d 465, 468 (D.C. 1953) ("When the rights of an assignee will be affected by an action, the assignee is an indispensable party."); 6A C.J.S. *Assignments* § 136 (2007) (noting same).[10]  This is particularly true when, as here, the Court lacks jurisdiction over the party that Plaintiffs intend to bind.  *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 782 F. Supp. 972, 984 (D.N.J. 1992) ("Since . . . the court lacked jurisdiction . . . it would be contrary to all concepts of justice to hold that [the absent party] is bound by the [previous] judgment . . . .") (quoting *Indus. Credit Co. v. Berg*, 388 F.2d 835, 842 (8th Cir. 1968)).[11]

Accordingly, for Plaintiffs to obtain the relief they seek, they ultimately would have to relitigate this case in another forum.  Such relitigation is precisely what Rule 19(b) was meant to prevent.  Both the courts and the public have an interest in the "complete, consistent and efficient

---

[10]    *See also Industrial Credit Co. v. Berg*, 388 F.2d 835, 841 (8th Cir. 1968) ("[A] person in privity with a party to a lawsuit, in the sense that he will be bound by a judgment for or against that party under principles of *res judicata* or collateral estoppel, must acquire his interest in the transaction *after* commencement of the action or rendition of the judgment.") (emphasis added); Restatement (Second) of Judgments § 55(2) ("The determination of issues in an action by or against either assignee or assignor is not preclusive against the other of them in a subsequent action . . . ."); *id.* § 43 cmt. e (noting that there is no preclusive effect of an action for or against predecessor).

[11]    Indeed, as discussed below, even if a judgment by this Court against Zeromax LLC were preclusive as to Zeromax GmbH, such an adverse judgment would be so highly prejudicial to Zeromax GmbH in its absence as to warrant dismissal of this case. *See, e.g., Johnson & Johnson*, 720 F. Supp. at 1125 ("[I]f, on the other hand, Iolab ultimately is held bound by claim or issue preclusion, then the prejudice to Iolab of allowing this action to proceed is even more clear-cut.").

settlement of controversies."  *See Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968) (analyzing Rule 19(b) factors and noting importance of "settling disputes by wholes"); *Johnson & Johnson*, 720 F. Supp. at 1126 (holding under Rule 19(b) that "judicial economy and the desire to settle disputes in a single forum whenever possible are considerations under this factor") (citation omitted).  The likelihood of "piecemeal litigation" here renders any judgment in the absence of Zeromax GmbH inadequate.  *See, e.g.*, *DM II, Ltd. v. Hosp. Corp. of Am.*, 130 F.R.D. 469, 474-75 (N.D. Ga. 1989) (dismissing action under Rule 19 because judgment "would have no legally preclusive effect," court could not "fashion complete relief in the absence of all partners," and the "possibility of re-litigation render[ed] any judgment entered in [the] action inadequate").[12]

In addition, whatever precedential value a judgment in this case would have, whether preclusive or simply persuasive, any adverse judgment by this Court against Zeromax LLC in Zeromax GmbH's absence would be highly prejudicial to Zeromax GmbH.  *See Johnson & Johnson*, 720 F. Supp. at 1125 (citations omitted) (holding that even though an absent party is not legally bound by an adverse ruling, such a ruling would be "persuasive precedent in a subsequent proceeding").[13]  Any such adverse judgment would cast doubt as to the validity of Zeromax GmbH's indirect ownership interest in CCBU through Muzimpex, and would generate

---

[12]    Zeromax GmbH is an indispensable party even if, as Plaintiffs allege (*see* Am. Compl. ¶¶ 40(f), 53, 83), Zeromax LLC's conveyance to Zeromax GmbH was fraudulent (which it was not).  *See, e.g.*, *In re Smith*, No. 04-01581, 2007 WL 2071626, at *2 (Bankr. D.D.C. July 17, 2007) ("If the debtor engaged in a transfer that is fraudulent as to an unsecured creditor, the remedy under *non*bankrutpcy law is to set aside the fraudulent conveyance and then to proceed against the property, or to proceed against the transferee for the value of the transfer if the property has been transferred to a bona fide purchaser.") (emphasis added); *see also* D.C. Code § 28-3107(a)(2) ("In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain . . . an attachment or other provisional remedy against the asset transferred or other property of the transferee . . . ."); Del. Code Ann. tit. 6, § 1307(a)(2) (same).

[13]    *See also DM II*, 130 F.R.D. at 472 ("While any judgment in defendants' favor would not be binding on the absent partners, it would create doubt as to the validity of their claims and would constitute adverse precedent."); *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887 (5th Cir. 1979) ("[T]he fact that a party may not be bound by a judgment does not mean that an action may proceed without him.").

uncertainty with respect to Zeromax GmbH's rights and obligations vis-à-vis that interest.  *See*

*Doty*, 598 F.2d at 887 (holding same).

Further, Zeromax GmbH would be prejudiced by having to rely on the dissolved U.S.

Zeromax Defendants to defend its interests in this lawsuit as these remaining defendants do not

bear the same risks as Zeromax GmbH.  *See Johnson & Johnson*, 720 F. Supp. at 1125 (finding

that non-party's status as wholly-owned subsidiary of party did not mean that non-party's

"interests [we]re adequately protected by its parent corporation so as to negate [its]

indispensability").  Moreover, the Court cannot force a party beyond its jurisdiction to defend a

lawsuit as a means of mitigating prejudice.  *See Local 670 v. Int'l Union*, 822 F.2d 613, 618 (6th

Cir. 1987) ("[I]n the absence of personal jurisdiction . . . the party cannot properly be brought

before the court.").

These concerns all could be resolved through proceedings in other fora available to

Plaintiffs, including Uzbekistan, where CCBU and Muzimpex are located and where the alleged

events took place.  *See* Am. Compl. ¶¶ 2, 13-24, 27-32.  Indeed, Plaintiffs have already availed

themselves of an alternative forum in Vienna, where they have asserted claims based on virtually

the same set of alleged facts.  Although Plaintiffs voluntarily withdrew their claims against

Zeromax Group in that proceeding, this withdrawal expressly preserved ROZ's rights in other

venues.  The availability of alternative fora assures Plaintiffs an adequate remedy if this case is

dismissed.  *See Johnson & Johnson*, 720 F. Supp. at 1127 (holding availability of alternative

forum "compelling by itself"); *see also DM II*, 130 F.R.D. at 474 ("While the plaintiff has a

recognized interest in his chosen forum, the strength of this interest depends upon whether a

satisfactory alternative forum exists and must be balanced against the defendants' right to be safe

against needless multiple litigation.").

Accordingly, all of the Rule 19(b) factors demonstrate that Zeromax GmbH is an indispensable party in whose absence this case cannot proceed. Indeed, Muzimpex and Uzbekistan also are necessary and indispensable parties. Plaintiffs allege that Zeromax LLC transferred its interest in Muzimpex to Zeromax GmbH as of December 2005. Am. Compl. ¶ 6. As alleged, none of the U.S. Zeromax Defendants (or even Zeromax GmbH) has ever had a direct interest in CCBU. Moreover, Plaintiffs' Amended Complaint admits that it was Muzimpex that purchased the CCBU shares from Uzbekistan, not from ROZ. *Id.* ¶ 45. Further, Plaintiffs allege that their interest in CCBU was removed by judicial action initiated by Uzbekistan pursuant to Uzbek law, not by any action taken by the U.S. Zeromax Defendants. *Id.* ¶¶ 28-31.

Plaintiffs, for good reason, failed to name Muzimpex and Uzbekistan as defendants here because both are well beyond the jurisdiction of this Court. Muzimpex is beyond both this Court's subject-matter and *in personam* jurisdiction. *See, e.g.*, *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) (holding diversity destroyed with presence of alien parties on both sides); *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375 (D.C. Cir. 1988) (granting motion to dismiss where plaintiffs failed to allege any specific facts connecting Jordanian defendant with District of Columbia through a purported agency relationship with D.C. bank). Moreover, Uzbekistan's exercise of its police powers and regulatory authority is protected by foreign sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604, and is outside this Court's adjudicative authority under the act of state doctrine. *See, e.g.*, *Saudi Arabia v. Nelson*, 507 U.S. 349, 359-360 (1993) (holding exercise of police power to be "sovereign or public acts" under FSIA); *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1326 (11th Cir. 2003) (holding government's regulation of market, use of police power, and

other activities requiring state authority to be public acts); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1167 (D.C. Cir. 2002) (holding Kazakhstan's transfer of plaintiff's shares to state-owned entity pursuant to official decree constituted classic act of state).

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER THE U.S. ZEROMAX DEFENDANTS

The Court's dismissal of Zeromax GmbH for lack of personal jurisdiction effectively places the parties in the posture in which they found themselves before Plaintiffs amended their Complaint: Zeromax GmbH, the only Zeromax entity with any interest in this case (if only indirect), is absent from the proceedings, and Plaintiffs allege personal jurisdiction solely on the basis of Zeromax Group's purported contacts with the District of Columbia. *See* Am. Compl. ¶¶ 9-10. Zeromax Group raised the defense of personal jurisdiction in its original Motion to Dismiss the Complaint. (Docket Entry No. 7.) Further, as this Court acknowledged, the U.S. Zeromax Defendants have "specifically assert[ed]" that the decision not to raise personal jurisdiction with Zeromax GmbH in the Consolidated Motion to Dismiss the Amended Complaint "does not in any way constitute a 'concession' that they are 'doing business' in the District of Columbia." *ROZ Trading*, 2007 WL 2812760, at *4 (internal quotation omitted).

In its Order dated September 28, 2007, the Court invited the parties to "supplement the current briefing with additional grounds for dismissal" or to "revise their current arguments in any way." (Docket Entry No. 23.) Given the Court's discretionary authority to permit such amendment to the motion papers, the U.S. Zeromax Defendants hereby submit revised and supplemented personal jurisdiction defenses on behalf of all remaining Defendants. *See, e.g.*, *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1341 n.8 (9th Cir. 1976) (holding Rule 12(h) of the Federal Rules "does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing") (quoting *MacNeil v. Whittemore*,

254 F.2d 820, 821 (2d Cir. 1958)); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1194 (noting that "use of judicial discretion" to allow motion amendment "seems especially appropriate . . . if it will help resolve the litigation at an early date").

*    *    *

In actions based on diversity of citizenship, a court's personal jurisdiction over nonresident defendants is governed by the law of the forum, "subject to the constraints of constitutional due process." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (citations omitted). Under District of Columbia law, Plaintiffs bear the burden of making a "*prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l*, 836 F.2d at 1378. Plaintiffs cannot satisfy this burden with "[c]onclusory statements" or "bare allegation[s]," but rather must "allege specific acts connecting [the U.S. Zeromax Defendants] with the forum." *Id.* at 1378-79 (quotations omitted).

### A.    The Court Lacks General Jurisdiction

Plaintiffs allege that all three U.S. Zeromax Defendants are subject to general personal jurisdiction under D.C. Code § 13-334(a) and § 13-422 on the basis of Zeromax Group's purported contacts with the District of Columbia, which Plaintiffs claim may be attributed to the other Defendants on the basis of an "agent or alter ego" relationship. Am. Compl. ¶¶ 9-10. Fatal to this theory — or any allegation of general jurisdiction — is Plaintiffs' allegation that the U.S. Zeromax Defendants, including Zeromax Group, are all former Delaware corporate entities that were dissolved almost a year before this action was commenced on June 6, 2006. *See id.* ¶¶ 3-5, 40(e) (alleging that Zeromax Group and Zeromax Logistics filed certificates of dissolution on August 2, 2005, and Zeromax LLC cancelled its certificate of formation on September 28, 2005).

1.     **By Plaintiffs' Own Allegations, The U.S. Zeromax Defendants Are Not "Doing Business" In The District Of Columbia**

As this Court held, under District of Columbia law personal jurisdiction is determined as of the commencement of the action. *ROZ Trading*, 2007 WL 2812760, at *5; *accord In re Orshansky*, 804 A.2d 1077, 1091-92 (D.C. 2002). Courts may exercise general jurisdiction over a foreign corporation pursuant to § 13-334(a) "if the corporation is 'doing business' in the District." *Gorman*, 294 F.3d at 509 (citing D.C. Code § 13-334(a)). The reach of "doing business" jurisdiction is "coextensive with the reach of constitutional due process," permitting jurisdiction over foreign corporations "only . . . if the defendant's business contacts with the forum district are '***continuous and systematic***.'" *Id.* at 510 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)) (emphasis added). Thus, a defendant "must purposely avail itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here." *Gonzalez v. Internacional de Elevadores*, 891 A.2d 227, 233 (D.C. 2006).

The U.S. Zeromax Defendants have no "continuing corporate presence" anywhere, let alone in the District of Columbia, and had no such presence when Plaintiffs filed this lawsuit. Rather, as Plaintiffs acknowledge, since 2005 the U.S. Zeromax Defendants have been within a statutory post-dissolution "winding-up" period under Delaware law, pursuant to which they may defend suits, convey property, and otherwise act to settle their respective businesses. *See* Am. Compl. ¶¶ 54-55 (citing Del. Code Ann. tit. 8, § 278; *id.* tit. 6, § 18-804). Delaware law specifically provides that such post-dissolution continuance of the corporate form is "***not for the purpose of continuing the business for which the corporation was organized***." Del. Code Ann. tit. 8, § 278 (emphasis added). Accordingly, at the time this action was commenced, all of the U.S. Zeromax Defendants were in dissolution, and thus, by definition, not capable of carrying on

any business activities in the District of Columbia.  By comparison, general jurisdiction under § 13-334(a) requires a "***continuing corporate presence*** in the forum . . . ***directed at advancing the corporation's objectives***."  *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (quotation omitted) (emphasis added).

Even if the U.S. Zeromax Defendants were not dissolved as a matter of law (as Plaintiffs concede they were), Plaintiffs have failed to make any specific factual allegations that the U.S. Zeromax Defendants are "doing business" in the District.  Instead, as this Court observed, Plaintiffs "simply parrot[] the language of the case law applying D.C. Code § 13-334(a)," *ROZ Trading*, 2007 WL 2812760, at *7, and, further, allege in conclusory fashion that Zeromax Group maintains its principal place of business in the District.  Am. Compl. ¶ 9.  Because the mere allegation of a Zeromax Group office in the District of Columbia is insufficient to establish that any (let alone all) of the U.S. Zeromax Defendants are "doing business" here, Plaintiffs have failed to allege any basis for general jurisdiction under § 13-334(a).  *See City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 33-34 (D.D.C. 2007) (dismissing action for lack of personal jurisdiction where plaintiffs "failed to provide any information showing what if any business [defendant] conducts in its office in the District of Columbia"); *see also First Chicago Int'l*, 836 F.2d at 1378 (holding plaintiffs must "allege specific acts connecting [defendants] with the forum").

### 2.    By Plaintiffs' Own Allegations, The U.S. Zeromax Defendants Do Not Maintain A Principal Place Of Business In The District Of Columbia

Plaintiffs' concession that all three U.S. Zeromax Defendants are dissolved Delaware corporate entities directly contradicts their allegation that Zeromax Group "maintains, and for the relevant period maintained, its principal place of business in Washington, D.C."  Am. Compl. ¶ 10 (alleging general jurisdiction under D.C. Code § 13-422).  *See Thomas v. Dep't of Defense*,

Civ. A. No. 03-2483(RBW), 2006 WL 1890009, at *3 (D.D.C. July 7, 2006) (noting plaintiff's jurisdictional allegations are "presumed to be true unless directly contradicted by affidavit or other evidence") (quotation omitted); *see also Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 79 (D.D.C. 2003) (dismissing claim under Rule 12(b)(6) because of plaintiff's own "contradictory factual allegations").  This allegation is further undermined by Plaintiffs' own allegation that Zeromax Group purportedly "relocated" to Davidsonville, Maryland (*see* Notice dated June 26, 2006 (Docket Entry No. 5)), as well as their service of process on Zeromax Group at that Maryland address.  *See* Affidavit of Service dated June 19, 2006 (Docket Entry No. 4).

Finally, disregarding the inherent contradictions in Plaintiffs' jurisdictional allegations, the purely conclusory allegation that Zeromax Group maintains a "principal place of business" in the District of Columbia is alone insufficient to establish personal jurisdiction over Zeromax Group or any other U.S. Zeromax Defendant (notwithstanding Plaintiffs' allegations of an agency or alter ego relationship).  As this Court found, Plaintiffs fail to make "any specific factual allegations from which the Court could conclude that Zeromax Group *actually* maintained its principal place of business" in the District.  *ROZ Trading*, 2007 WL 2812760, at *8; *see also First Chicago Int'l*, 836 F.2d at 1378-79 (holding that plaintiffs cannot satisfy their jurisdictional burden with "[c]onclusory statements" or "bare allegation[s]").

**B.    The Court Lacks Specific Jurisdiction**

Plaintiffs' allegations that the U.S. Zeromax Defendants are subject to specific jurisdiction under D.C. Code § 13-423(a)(1) and § 13-423(a)(4) likewise are insufficient.  To establish specific jurisdiction under these provisions, Plaintiffs must allege facts showing that the U.S. Zeromax Defendants (i) "transact[ed] any business in the District of Columbia"; or (ii) "caus[ed] tortious injury in the District of Columbia by an act or omission outside the District of Columbia."  D.C. Code §§ 13-423(a)(1), (a)(4).  Further, Plaintiffs' claims must "aris[e] from"

these alleged contacts with the District of Columbia.  *Id.* § 13-423(b).  Plaintiffs have failed to plead any such contacts with the District of Columbia.

> **1.      Plaintiffs Fail To Allege That The U.S. Zeromax Defendants "Transacted Business" In The District Of Columbia**

Plaintiffs' sole allegation that the U.S. Zeromax Defendants "transacted business" in the District of Columbia appears in paragraph 11 of the Amended Complaint, which contains the bare and unsupported legal conclusion that the U.S. Zeromax Defendants "transacted business in the District of Columbia, either directly or by an agent, and the claims for relief arise from this transaction of business."  Am. Compl. ¶ 11.  The Amended Complaint thus again "literally parrots the relevant statutory language, proffering no factual allegations whatsoever to demonstrate that Plaintiffs' claims for relief arise out of business transacted in the District of Columbia."  *ROZ Trading*, 2007 WL 2812760, at *9.  Indeed, by Plaintiffs' own allegations, their claims arise from the sovereign acts of Uzbekistan alleged to have taken place entirely in Uzbekistan.  *See* Am. Compl. ¶¶ 29-31, 45 (describing Uzbekistan's judicial proceedings in Uzbekistan that fully divested ROZ of its interest in CCBU, an Uzbek entity, and subsequent transfer of that interest through an Uzbek State privatization sale); *see also ROZ Trading*, 2007 WL 2812760, at *9 ("The Amended Complaint simply fails to allege that *any* of the transfers or transactions relevant to Plaintiffs' claims for relief occurred in the District of Columbia.").  Accordingly, Plaintiffs have failed to allege that the U.S. Zeromax Defendants are subject to specific personal jurisdiction for "transacting business" under § 13-423(a)(1).  *See City of Moundridge*, 471 F. Supp. 2d at 34 (dismissing action for lack of personal jurisdiction where, *inter alia*, "transacting business" allegation was "merely a conclusory assertion that lack[ed] factual particularity"); *Novak-Canzeri v. Al Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) (holding

specific jurisdiction allegations insufficient where "conclusory statements [we]re followed by boiler-plate allegations regarding Defendants' purported business contacts with the District").

> ### 2.    Plaintiffs Fail To Allege That They Have Been Injured In The District Of Columbia By The U.S. Zeromax Defendants

In similar fashion, Plaintiffs make the conclusory and unsupported allegation that the U.S. Zeromax Defendants "caused tortious injury in the District of Columbia by an act or omission outside of the District of Columbia" for purposes of jurisdiction under § 13-423(a)(4). Am. Compl. ¶ 11; *see also First Chicago Int'l*, 836 F.2d at 1378-79.  Plaintiffs do not otherwise allege any injury in the District and, in fact, claim injuries that are all alleged to have occurred in Uzbekistan as a result of Uzbekistan's sovereign acts.  Am. Compl. ¶¶ 29-31, 45.

Moreover, Plaintiffs do not allege any connection with, or presence in, the District of Columbia that might support an allegation of injury in the District.  Rather, Plaintiffs allege that ROZ Trading is a limited liability company organized under the laws of the Cayman Islands, with its principal place of business in New Jersey; and that ROZ(U) is a dissolved subsidiary of ROZ Trading formerly organized under the laws of Uzbekistan, with a principal place of business in Uzbekistan.  *Id.* ¶¶ 1-2.  Further, Plaintiffs recently submitted that ROZ Trading's "primary business activities" since 2001 are its "winding up" efforts through this lawsuit and the Vienna Arbitration — all "directed from and carried out in New Jersey."  *See* Supplemental Declaration of Mansur Maqsudi ("Supp. Maqsudi Decl.") dated September 26, 2007, ¶¶ 4-5 (submitted as Exhibit 1 to Plaintiffs' Response to this Court's Order dated September 24, 2007) (Docket Entry No. 22).  Accordingly, it is, at best, "difficult to understand how either Plaintiff could have been injured in the District of Columbia (and the Amended Complaint [does] not include a specific allegation to that effect)."  *ROZ Trading*, 2007 WL 2812760, at *9; *see also El-Fadl*, 75 F.3d at 672 (noting that "it appears unlikely that one living and working in Jordan

would be injured in the District of Columbia"); *Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187, 192 (D.D.C. 2007) (holding that "plaintiff suffered no injury here" in the District of Columbia in case arising from Pennsylvania disciplinary proceeding).

Finally, Plaintiffs fail to allege that any of their purported injuries were caused by an act or omission *of the U.S. Zeromax Defendants*. Rather, all of Plaintiffs' claims are predicated on the alleged sovereign acts of Uzbekistan taken within its own territory. Am. Comp. ¶¶ 29-31, 45. Moreover, Plaintiffs' allegations relating specifically to the U.S. Zeromax Defendants surround Uzbekistan's 2004 privatization sale of ROZ's former CCBU interest to *Muzimpex*, a separate and distinct Uzbek-registered limited liability company in which Zeromax GmbH holds an interest. Am. Compl. ¶ 45; *see also* Fayzullaev Decl. ¶¶ 4-12 & Exs. B-E (detailing (i) the formal process by which Muzimpex was registered as an Uzbek limited liability company pursuant to Uzbek law; (ii) the maintenance of separate legal identities by Uzbek limited liability companies and shareholders under Uzbek law; and (iii) Muzimpex's separate business activities, offices and facilities in Uzbekistan).

Because Plaintiffs have failed to allege that the U.S. Zeromax Defendants are "doing business" in the District of Columbia; that the U.S. Zeromax Defendants "transacted business" in the District giving rise to Plaintiffs' claims; or that Plaintiffs have suffered injury in the District caused by an act or omission of the U.S. Zeromax Defendants outside the District, the Amended Complaint must be dismissed for lack of personal jurisdiction.

## III.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE U.S. ZEROMAX DEFENDANTS

Article III of the Constitution restricts federal courts to adjudicating actual "cases" and "controversies," a restriction that requires litigants to have standing to invoke the power of a federal court. *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Valley Forge Christian Coll. v. Ams.*

*United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-76 (1982) ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States."). Article III standing requires that a plaintiff show that "he personally has suffered some actual or threatened injury ***as a result of the putatively illegal conduct of the defendant***." *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (emphasis added; quotations omitted). Plaintiffs cannot satisfy this requirement.

As alleged, Plaintiffs' interest in CCBU was extinguished by Uzbekistan's alleged expropriation of that interest in 2002. Am. Compl. ¶ 31. Plaintiffs further allege, however, that the U.S. Zeromax Defendants, through Muzimpex, only became associated with the interest in "late 2004." *Id*. ¶ 45. Thus, as alleged, any injury to Plaintiffs was caused by Uzbekistan and not by any conduct of the U.S. Zeromax Defendants. *See Parker v. District of Columbia*, 478 F.3d 370, 379 n.2 (D.C. Cir. 2007) (acknowledging that "the causation requirement of standing could coincide with the causal element in a cause of action" and in such case, the court has "discretion to decide the case on the merits or on standing grounds"); *Taylor v. F.D.I.C.*, 132 F.3d 753, 767 (D.C. Cir. 1997) (dismissing reinstatement-discrimination claim for lack of Article III standing where alleged injury was self-inflicted through plaintiffs' voluntary resignations and not by any conduct fairly traceable to defendants).

By glossing over the lack of nexus between their alleged injury and any wrongful acts of the U.S. Zeromax Defendants, Plaintiffs are attempting to hold private entities liable for the acts of a foreign sovereign. *See* Declaration of Barry Carter ("Carter Decl.") dated February 7, 2007, ¶ 24 ("Plaintiffs are disguising their claims against the government of Uzbekistan as claims against the Zeromax Defendants.").[14] Plaintiffs have only alleged compensable injury, if at all,

---

[14] The Carter Declaration is submitted pursuant to Fed. R. Civ. P. 44.1 to assist the Court in its consideration of public and private international law principles. *See In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 18

as a result of Uzbekistan's acts.   Such injury can only be remedied by Uzbekistan in the Vienna Arbitration or elsewhere.[15]

Moreover, Plaintiffs' only potential remedy against Uzbekistan is for compensation, not restitution.  *See* Restatement (Third) of Foreign Relations § 713 cmt. k ("The reparation for any taking in violation of § 712(1) is generally monetary compensation . . . .   Restoration of ownership to the original owner is virtually unknown in expropriation cases.").[16]   The unavailability of restitution as a remedy for an alleged taking is recognition of the fact that a sovereign's confiscatory act effects a transfer of title to the disputed property to the State under its municipal property laws.[17]  This conclusion is mandated by the *lex situs* rule (a conflict of

---

(E.D.N.Y. 2005) (noting that courts have wide discretion pursuant to Rule 44.1 to rely on experts in deciding the scope and nature of substantive rules of international law).

[15]    In any event, Uzbekistan's state-initiated judicial actions to recoup debts owed to the State constitute regulatory acts of state — not a "taking."  *See West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 832-33 (9th Cir. 1987) (stating that Mexico's institution of exchange controls was an exercise of its basic authority to regulate its economic affairs); *French v. Banco Nacional de Cuba*, 242 N.E.2d 704, 710 (N.Y. 1968) ("A currency regulation . . . is not a 'confiscation' or 'taking.'").   The Supreme Economic Court decisions are based on ROZ Trading and ROZ(U)'s apparent violations of Uzbek anti-monopoly laws and ROZ(U)'s debts owed to the Uzbek Treasury.  This is a classic case of regulatory action pursuant to a State's exercise of its sovereign police powers.  *See Beg*, 353 F.3d at 1326 (holding government's regulation of market, use of police power, or other activities requiring state authority to be public acts).  Moreover, it is well established under international law that such regulation is lawful and does ***not*** give rise to a claim of compensation.  *See Sporrong & Lönnroth v. Sweden*, Judgment of 23 Sept. 1982, Ser. A No. 52, *reprinted in* 5 E.H.R.R. 35, 50 (1983) ("The third rule [of Article 1, Protocol No. 1 of the European Convention on Human Rights] recognizes that the States are entitled, amongst other things, to control the use of property in accordance with the general interest, by enforcing such laws as they deem necessary for the purpose."); *see also* Carter Decl. ¶¶ 35-36 (citing cases).

[16]    *See also Occidental Petroleum Corp. v. Republic of Ecuador*, ICSID Case No. ARB/06/11, Decision on Provisional Measures of Aug. 17, 2007, ¶¶ 79-86, *available at* http://www.investmentclaims.com/ decisions/Occidental-Ecuador-Interim_Measures.pdf (stating that the remedy for alleged illegal acts under international law involving a natural resources concession contract was compensation and not specific performance as a form of restitution); *Libyan Am. Oil Co. v. Libya*, 20 I.L.M. 1, 62-64 (1974) (holding that "it is impossible to compel a State to make restitution, this would constitute in fact an intolerable interference in the internal sovereignty of States") (internal quotation omitted); *BP Exploration Co. (Libya) v. Gov't of the Libyan Arab Republic*, 53 I.L.R. 297, 337 (1974) (same).

[17]    *See* August Reinisch, Widening the US Embargo Against Cuba Extraterritorially: A Few Public International Law Comments on the 'Cuban Liberty and Democratic Solidarity Act (LIBERTAD) Act of 1996,' 7 Eur. J. Int'l L. 545, 558 (1996) (stating that "[a]n expropriation, even if unlawful under international standards, cannot be equated with 'stealing'" and no claim for conversion can be pled against a third-party purchaser because "a State's confiscatory act will effect a transfer of title to the property involved"); *see also* Restatement (Third) of Foreign Relations § 713 cmt. k (commenting that restitution for a taking is virtually unheard of).   Plaintiffs attempt to circumvent this principle by requesting that the Court "quiet title" to the disputed property in their favor and by

laws doctrine linked to the international law rule of territorial sovereignty), which provides that contested property rights in cases involving a foreign law element are determined by the law of the state where the property is situated. *See* Carter Decl. ¶¶ 42-43. Application of this rule provides third-party purchasers of State-owned property with certainty as to title by allowing them to rely on the laws of the State that created or altered title to property located in its jurisdiction. *See id.* ¶ 43. As a result, such purchasers are shielded from claims by former owners who precede the State in the chain of title.[18] This transfer of title to the State must be accorded respect by other jurisdictions pursuant to the principle of territorial sovereignty.[19]

A third-party purchaser of allegedly expropriated property thus cannot as a matter of law *injure* an aggrieved investor who precedes the State in the chain of title. Therefore, for purposes of standing, the U.S. Zeromax Defendants could not have injured ROZ through Muzimpex's subsequent acquisition of that interest from the State. In any event, none of the U.S. Zeromax Defendants is even alleged to hold an interest in Muzimpex. In sum, Plaintiffs fail both the "injury" and "causation" prongs of the standing doctrine and the Amended Complaint therefore must be dismissed. *See Allen*, 468 U.S. at 751.

## IV.    THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS

### A.    The Act of State Doctrine Precludes This Court's Inquiry Into The Validity Of A Foreign State's Acts Taken Within Its Own Territory

"The act of state doctrine 'precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own

---

further requesting in their Prayer for Relief that the U.S. Zeromax Defendants "immediately return full possession and control of the CCBU property to Plaintiffs." Am. Compl. Prayer for Relief ¶¶ (b), (f).

[18]    *See* Reinisch, 7 Eur. J. Int'l L. at 558.

[19]    The principle of territorial sovereignty (a principle upon which the act of state doctrine is based) is founded on mutual respect by courts of each nation for the sovereignty of other nations, other nations' right to act within their sovereign territory, and the desirability of reciprocity in this regard. *See* 1 Oppenheim's International Law 365-71 (Robert Jennings & Arthur Watts eds., 9th ed. 1992).

territory.'"  *World Wide Minerals*, 296 F.3d at 1164 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)); *accord Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 73 (2d Cir. 1977) (holding examination of Libya's motives for property seizure as required to prove causal connection between defendant's alleged acts and plaintiffs' injury inevitably entailed consideration of the validity of the government's acts and was nonjusticiable under the act of state doctrine).  The act of state doctrine is not simply a doctrine of abstention, but serves as "a rule of decision for the courts of this country, which requires that in the process of deciding a case, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *World Wide Minerals*, 296 F.3d at 1165 (internal citations and quotations omitted).

The act of state doctrine is premised on principles of "international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." *Id.* (quoting *Sabbatino*, 376 U.S. at 408) (internal quotations omitted).[20]  Parties, accordingly, must obtain redress of grievances arising from acts of state through diplomatic channels rather than the courts.  *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 n.20 (2004) ("[R]edress of grievances . . . must be obtained through diplomatic channels."); *Sabbatino*, 376 U.S. at 416 ("Redress of grievances . . . must be obtained through the means open to be availed of by sovereign powers as between themselves.").

---

[20]    The principles of sovereignty and respect for a state's acts within its own sovereign territory are well-established principles of customary international law.  "[C]ustomary international law, while not mentioned explicitly in the Supremacy Clause, [is] also federal law and as such [is] supreme over State law . . . . Customary international law is considered to be like common law in the United States but it is federal law.  A determination of international law by the Supreme Court is binding on the States and on State courts."  Restatement (Third) of Foreign Relations § 111; § 111 cmt. d; § 112(2).  "Customary international law, like other federal law, is part of the 'laws . . . of the United States.'"  *Id.* § 111 cmt. e.  *See The Paquete Habana*, 175 U.S. 677 (1900); *see also* Carter Decl. ¶¶ 18-22 (discussing role of international law in U.S. law).

ROZ's claims against the U.S. Zeromax Defendants are wholly based on the alleged sovereign acts of Uzbekistan. *See* Am. Compl. ¶¶ 29-31, 45; *see also* Fayzullaev Decl. ¶¶ 13-25 & Exs. F-I. Therefore, to adjudicate ROZ's claims against the U.S. Zeromax Defendants, this Court would be required to pass judgment on the validity of these sovereign acts of state, which it cannot do under the act of state doctrine.

**B.    The Act of State Doctrine Precludes This Court From Reviewing Uzbekistan's Acts Resulting In The Removal Of ROZ's Interest In CCBU**

**1.    Uzbekistan's Judicial Actions Resulting In The Removal Of ROZ's Interest In CCBU Are Not Reviewable By This Court**

Plaintiffs allege that their interests in CCBU were removed by judicial action initiated by Uzbekistan pursuant to Uzbek law. Am. Compl. ¶¶ 29-31; *see also* Fayzullaev Decl. ¶¶ 13-25 & Exs. F-I. To adjudicate Plaintiffs' claims, therefore, this Court would be required to invalidate a series of final and binding judicial decisions of the Uzbek courts (including two from the Supreme Economic Court, a court of last resort) resulting from actions initiated by Uzbekistan to enforce its laws, decrees, and regulations pertaining to companies operating within its territories. *See Philippine Nat'l Bank v. U.S. Dist. Ct. of Hawaii*, 397 F.3d 768, 772-73 (9th Cir. 2005) (holding that foreign forfeiture order constituted act of state); *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1226-28 (9th Cir. 2006) (holding that district court did not have authority to second-guess French court orders and should have deferred to the Executive Branch to assess the consequences of France's broad policy against hate speech). The act of state doctrine bars this Court from sitting in judgment of those sovereign acts. *See Sabbatino*, 376 U.S. at 415, n.17 ("An inquiry by United States courts into the validity of an act of an official of a foreign state under the law of that state would not only be exceedingly difficult but, if wrongly made, would be likely to be highly offensive to the state in question.").

Both the February 5, 2002 (anti-monopoly proceedings) and the September 11, 2002 (liquidation proceedings) decisions by the Supreme Economic Court are valid, final, binding, and enforceable under Uzbek law. *See* Fayzullaev Decl. ¶¶ 15, 17. As in *Philippine National Bank*, these judicial proceedings and the resulting decisions constitute official acts of state beyond the review of this Court. 397 F.3d at 773-74. They were initiated at the behest of the State in accordance with Uzbek law to give effect to the public interest of the Uzbek government, namely to enforce Uzbekistan's laws and to recover debts due to the Uzbek national treasury. *See id.* at 773 (holding state-initiated forfeiture action "qualifies for treatment as an act of state").[21]

### 2. Uzbekistan's Official Decree Transferring ROZ's CCBU Interest To The State Is Not Reviewable By This Court

This Court's adjudication of ROZ's claims also would require the Court to adjudicate the validity of an official sovereign decree of Uzbekistan transferring ROZ's CCBU interest to the State. *See* Fayzullaev Decl. ¶¶ 18-20 & Ex. H. As a valid, binding, and enforceable decree of the Cabinet of Ministers under Uzbek law (*see id.* ¶¶ 18-20), Decree No. 420 constitutes an official act of state that cannot be scrutinized by this Court. *See World Wide Minerals*, 296 F.3d at 1167 (holding Kazakhstan's transfer of plaintiff's shares to state-owned entity pursuant to official decree constituted classic act of state).

### 3. Uzbekistan's Regulatory Acts (Or Alleged Expropriation) Are Not Reviewable By This Court

Courts have repeatedly held that regulatory acts of state, like Uzbekistan's removal and acquisition of ROZ's interest in CCBU to enforce its own laws and recover debts owed to the

---

[21] In *Philippine National Bank*, the court held that the district court violated the act of state doctrine by effectively deeming a Philippine forfeiture order invalid when the district court entered a contempt order against the Bank for complying with that order. 397 F.3d at 775. The Ninth Circuit held that the Philippine judgment was an act of state and that there was "no question that the judgment of the Philippine Supreme Court gave effect to the public interest of the Philippine government" and that "the [forfeiture] action [was] initiated by the Philippine government pursuant to its 'statutory mandate to recover property allegedly stolen from the treasury.'" *Id.* at 773 (quotations omitted). The Ninth Circuit further held that the "Republic's 'interest in the enforcement of its law does not end at its borders . . . .'" *Id.*

State, constitute sovereign acts that may not be judged by the courts of this country. *See Beg*, 353 F.3d at 1326; *Drexel Burnham Lambert Group v. Comm. of Receivers*, 12 F.3d 317, 330 n.4 (2d Cir. 1993) (decisions made by government agency through its essentially judicial role of managing and liquidating assets of insolvent bank were inherently sovereign acts); *Week v. Cayman Islands*, No. 91-2965, 1992 WL 372241, at *3 (7th Cir. Dec. 16, 1992) ("The chartering, oversight and regulation of companies are core governmental functions. No private person can engage in such inherently governmental functions."); *Montanez Miranda v. Banco Progreso, S.A.C.A.*, 973 F. Supp. 89, 93-94 (D.P.R. 1997) (holding Venezuelan government agency's acts of management of defendant companies' assets under Emergency Financials Law of Venezuela were "quintessential governmental acts").

Even assuming Uzbekistan's sovereign acts of removing and later acquiring ROZ's interests in CCBU could be characterized as an expropriation (as opposed to regulatory action), it is well-established that an alleged expropriation presents "the classic act of state addressed in the case law." *World Wide Minerals*, 296 F.3d at 1165-66 (holding act of state doctrine barred court from second-guessing Kazakhstan's sovereign decision to expropriate and transfer assets to state-owned entity); *see also Sabbatino*, 376 U.S. at 428 ("[T]he (Judicial Branch) will not examine the validity of a taking of property within its own territory by a foreign sovereign government . . . ."); *accord Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203, 206 (D.C. Cir. 1987) (holding claims for compensation arising from nationalization of factories in Czechoslovakia presented "prime case" for application of act of state doctrine).[22] As alleged, it

---

[22] Further, ROZ(U), an Uzbek subject, has no right under international law to assert purported expropriation claims against its own State. *See Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 101 (D.D.C. 2005) (affirming that "expropriation by a sovereign state of the property of its own nationals does not implicate settled principles of international law") (quotations omitted). Moreover, ROZ Trading, the Cayman entity, cannot and does not cite to any Friendship, Commerce and Navigation Treaty or Bilateral Investment Treaty that would permit it to make a claim for expropriation in the U.S. courts. Further, a claim for expropriation is not one made against the

was Uzbekistan's sovereign acts in 2001 and 2002 that deprived Plaintiffs of their shares, long before any alleged transfer to Muzimpex in 2004. Am. Compl. ¶¶ 29-31. Because Plaintiffs' claims against the U.S. Zeromax Defendants are predicated entirely on nonjusticiable acts of state, the Amended Complaint should be dismissed outright under the act of state doctrine.[23]

### C.    The Act Of State Doctrine Also Precludes This Court's Review Of Uzbekistan's Privatization Of Its State-Owned Interest In CCBU

Like Decree No. 420, the September 13, 2004 State Property Committee Order (*see* Fayzullaev Decl. ¶¶ 24-25 & Ex. I) approving the sale of the State-owned participatory interest in CCBU to Muzimpex constitutes an official state act of Uzbekistan, the validity of which is not subject to challenge in U.S. courts. *See World Wide Minerals*, 296 F.3d at 1165. Accordingly, the act of state doctrine bars this Court from questioning the validity of the alleged privatization, separate and apart from any alleged expropriation.

Moreover, when a third party purchases expropriated property from a foreign sovereign, the prior owner of that property cannot sue the third-party purchaser because the third party's title is derived from an act of state. *See Oetjen v. Cent. Leather Co.*, 246 U.S. 297 (1918) (holding that former owners of private property expropriated during the Mexican revolution could not sue the new owners of the property, because the new owners' titles derived from an act

---

third-party purchaser (or its alleged shareholders) but, rather, against the State. Here, Plaintiffs have failed to sue either the alleged third-party purchaser (Muzimpex) or the State.

[23]    Indeed, the act of state doctrine precludes this Court's review of Uzbekistan's regulatory (or expropriatory) acts, regardless of whether they were lawful or unlawful. *See United States v. Merit*, 962 F.2d 917, 921 (9th Cir. 1992) (holding act of state doctrine precluded examination of South Africa's failure to issue warrant under its extradition statute, because "[e]ven if the Republic did disregard its own laws in failing to issue a warrant of extradition, this court cannot question the validity of South Africa's domestic actions"); *West*, 807 F.2d at 828 (deciding that "[the trial court] may not examine the actual operations of the regulatory system to the extent that such inquiry would directly implicate the failure (whether willful or negligent) of officers of the foreign state to enforce their own laws"); *see also Nelson*, 507 U.S. 349 at 362 ("Such acts as legislation, or the expulsion of an alien, or a denial of justice, cannot be performed by an individual acting in his own name. They can be performed only by the state acting as such.") (quotation omitted); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 24 (D.D.C. 1998) (holding "[a]n act which is acknowledged to be within a state's discretion, although it violates federal and international law, can still be a valid act for the purposes of the Act of State doctrine").

of state); *Ricaud v. Am. Metal Co.*, 246 U.S. 304 (1918) (same); *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (affirming dismissal of claims against third-party purchaser under act of state doctrine where resolution of claims wholly depended on questioning validity of Cuba's expropriation of plaintiffs' land).

>    **D.    *All* Of Plaintiffs' Claims Require This Court To Adjudicate The Validity Of Uzbekistan's Official Sovereign Acts**

Plaintiffs' entire Amended Complaint is predicated on the alleged unlawful acts of Uzbekistan. Therefore, Plaintiffs would require this Court to invalidate Uzbekistan's sovereign acts of state in order to prevail on their claims. Specifically, adjudication of Plaintiffs' breach of contract claim would require a determination as to the validity of Uzbekistan's acts of state and its title to the CCBU interest because, as alleged (Am. Compl. ¶¶ 30-31), ROZ's interest in the joint venture, and therefore its rights under the 1993 CCBU Joint Venture Agreement ("1993 CCBU JVA"), had been fully extinguished by Uzbekistan's sovereign acts in 2002.[24] Thus, putting aside for purposes of this discussion that none of the U.S. Zeromax Defendants nor Muzimpex is a signatory to the 1993 CCBU JVA (as is evident from its face), in order for the Court to determine whether the U.S. Zeromax Defendants somehow breached the terms of the 1993 CCBU JVA, the Court first would need to conclude that Uzbekistan's sovereign acts extinguishing ROZ's interests in the joint venture, and its rights under the 1993 CCBU JVA, were invalid and that the 1993 CCBU JVA still had force and effect in 2004. *See* Supp. Fayzullaev Decl. Ex. E (attaching February 2, 2007 Ministry of Justice letter stating that 1993

---

[24]    *See* 1993 CCBU JVA (submitted as Exhibit 7 to Plaintiffs' Opposition to Defendants' Motion to Dismiss) (Docket Entry No. 16-8). The Court may properly consider the 1993 CCBU JVA because, in ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint [and] any document either attached to or incorporated in the complaint . . . ." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also* Am. Compl. ¶ 13 (referencing 1993 CCBU JVA and parties thereto).

CCBU Charter and JVA were rendered invalid by registration of superseding 2003 foundation documents).

Similarly, with respect to Plaintiffs' unjust enrichment claim, as alleged, any benefit was conferred by Uzbekistan through a nonjusticiable sovereign act of state. Am. Compl. ¶¶ 45, 47. Further, under Plaintiffs' theory of conversion, this Court would need to adjudicate the validity of Uzbekistan's regulatory actions removing ROZ's CCBU interest, and its subsequent privatization of the State's interest in CCBU, to determine the legality of the U.S. Zeromax Defendants' alleged indirect acquisition of the shares. *See Glen*, 450 F.3d at 1255. As stated above, the act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Sabbatino*, 376 U.S. at 401. Because the Court cannot adjudicate the central element of the lawfulness of possession under Uzbek law, Plaintiffs' conversion claim must fail.

In sum, because all of Plaintiffs' claims would require this Court to examine the validity of Uzbekistan's official acts undertaken within its own territory pursuant to Uzbek law — i.e., the Uzbek judicial decisions, Decree No. 420, and the State Property Committee Order — the Amended Complaint must be dismissed in its entirety under the act of state doctrine.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate when, as here, the complaint fails to state any claim for which relief may be granted.[25]  *See Kowal v. MCI Commc'ns Corp.*,

---

[25]    For purposes of this Rule 12(b)(6) motion, the U.S. Zeromax Defendants rely solely on the allegations in the Amended Complaint, documents incorporated therein by reference, and declarations of Uzbek and international law. *See United States v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which we may take judicial notice.") (quotation omitted); *see also* Fed. R. Civ. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source . . . . [Its] determination shall be treated as a ruling on a question of law."); *BCCI Holdings (Lux.), S.A. v.*

16 F.3d 1271, 1276 (D.C. Cir. 1994).  In deciding this Motion, the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'") (citations omitted).

### A.    Plaintiffs' Allegations Fail To Satisfy The Minimum Pleading Standards

Plaintiffs' own allegations demonstrate that the U.S. Zeromax Defendants did not proximately (or otherwise) cause Plaintiffs' injury.  *See* Am. Compl. ¶¶ 29-31.  As alleged, ROZ's participatory interest in CCBU was extinguished ***prior to*** the U.S. Zeromax Defendants' purported indirect acquisition of an interest in CCBU.  Plaintiffs allege that Uzbekistan, acting alone through its courts, fully divested ROZ of ROZ's ownership interest in CCBU "on September 11, 2002."  *Id.* ¶ 31.  Indeed, Plaintiffs allege that ROZ's interest in CCBU was "eliminate[d]," and "completely purge[d]" by Uzbekistan in 2002.  *Id.* ¶¶ 28, 30, 31.  Plaintiffs further allege that the U.S. Zeromax Defendants, through Muzimpex, only became associated with CCBU in "late 2004" — ***long after*** the alleged expropriation — when Muzimpex purportedly acquired ROZ's "former interest" in CCBU from the Uzbek state-owned privatization authority.  *Id.* ¶¶ 37, 41, 42, 45.

Thus, all of Plaintiffs' claims are precluded by their own allegation that a two-year hiatus existed between Plaintiffs' purported injury (the elimination of ROZ's participatory interest in CCBU in 2002), allegedly caused by Uzbekistan, and any alleged act of the U.S. Zeromax

---

*Khalil*, 184 F.R.D. 3, 9 (D.D.C. 1999) (holding in 12(b)(6) case that Rule 44.1 permitted submission of declaration from English barrister on issues of English law).

Defendants in 2004. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (acknowledging that Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claims asserted); *see also Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("In some cases, it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible."); *Chandamuri*, 274 F. Supp. 2d at 79 (dismissing complaint because no "reasonable inferences" supporting claims could be drawn from factual allegations and where plaintiff's own factual allegations "render[ed] success on the merits impossible").

Moreover, Plaintiffs' bare and conclusory allegations (*e.g.*, Am. Compl. ¶¶ 42, 45, 47) fail to provide any basis from which this Court could attribute Muzimpex's alleged activities to any of the U.S. Zeromax Defendants. *See Browning*, 292 F.3d at 242 (holding that court reviewing complaint under Rule 12(b)(6) may not accept either "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations") (quoting *Kowal*, 16 F.3d at 1275); *accord W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001). Conclusory allegations of direction or control are insufficient. *See, e.g.*, *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 91 (D.D.C. 2004) (holding plaintiffs failed to demonstrate alter-ego relationship between affiliates by presenting only conclusory allegations).

Further, with regard to Plaintiffs' claim for breach of contract in particular, as alleged, there was never any contract between ROZ and any of the U.S. Zeromax Defendants. *See* Am. Compl. ¶ 13 (admitting that the parties to the 1993 CCBU JVA did not include any of the U.S. Zeromax Defendants). Plaintiffs' allegation that the U.S. Zeromax Defendants, as purported third-party purchasers, were "required to agree to be bound by the [1993 CCBU] JVA" (*id.* ¶ 47)

fails because the Amended Complaint admits that ***Muzimpex*** — not any of the U.S. Zeromax Defendants — purchased the CCBU shares from Uzbekistan — not ROZ.  *See id.* ¶ 45 (alleging ***Muzimpex***'s acquisition of the CCBU shares from Uzbekistan).  Therefore, as alleged, none of the U.S. Zeromax Defendants could be a purported "successor in interest" or "assignee" of ROZ's interest in CCBU.  *See id.* ¶ 47.  Moreover, the Complaint fails to allege that any of the U.S. Zeromax Defendants in fact ever agreed to be bound by the terms of the 1993 CCBU JVA — only that they purportedly "[we]re required" to do so under Article 5.5 of the 1993 CCBU JVA.  *Id.*  Therefore, Plaintiffs' own allegations foreclose any theory upon which any of the U.S. Zeromax Defendants could be deemed to have consented to be bound by the terms of the 1993 CCBU JVA by virtue of Muzimpex's alleged acquisition of shares in CCBU from the State.

Likewise, Plaintiffs' fraudulent conveyance claim is equally flawed and disjointed.  Plaintiffs' sole conclusory allegation of fraudulent conveyance is:  "Upon information and belief, Defendants, acting alone or in concert, have sold or transferred their property interest in CCBU to their joint venture, Muzimpex, with actual intent to hinder, delay, or defraud creditor Plaintiffs."  *Id.* ¶ 83.  Yet, Plaintiffs themselves allege that ***Muzimpex*** — ***not*** any of the U.S. Zeromax Defendants — purchased ROZ's former CCBU interest directly from Uzbekistan in the first instance.  *Id.* ¶¶ 45, 47.

Finally, Plaintiffs ask this Court to infer allegations against either Zeromax Group, Zeromax LLC, or Zeromax Logistics based on general allegations against all of the U.S. Zeromax Defendants (and Zeromax GmbH) collectively.  *See, e.g.*, *id.* ¶¶ 9-11, 39, 42-48, 50, 58-59, 62, 65-66, 69-70, 73-74, 78, 80-81, 83 (making allegations as to "Defendants" generally).  Such "grouping" or "lumping" allegations are insufficient to state a claim.  *See Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in

each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy th[e] minimum standard [under Fed. R. Civ. P. 8] . . . ."); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (same); *see also Browning*, 292 F.3d at 243-45 (affirming dismissal as to some defendants but not as to others according to the sufficiency of the specific allegations against each individual defendant).

In sum, Plaintiffs' Amended Complaint is riddled with general, sweeping and conclusory allegations unsupported by fact, and should be dismissed on this basis. *See, e.g.*, *Browning*, 292 F.3d at 242 ("We accept neither inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations.") (internal quotations and citations omitted); *Chandamuri*, 274 F. Supp. 2d at 85 ("Even under the generous standard of pleading set forth, conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.").

**B.      Plaintiffs' Allegations Fail To State Claims Under The Applicable Substantive Law**

**1.      Uzbek Law Applies To Plaintiffs' Claims**

Where subject-matter jurisdiction is predicated solely on the diversity of the parties as is the case here (Am. Compl. ¶ 8), the Court must determine the proper law applicable to Plaintiffs' claims. *See Young Women's Christian Ass'n v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002) (holding that in a diversity action "the law of the forum state supplies the choice of law standards"). To determine the applicable law, the Court looks to the choice-of-law rules prevailing in the District of Columbia. *Id.* The District of Columbia applies a "modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57, 61-62 (D.D.C. 2007) (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)).

Federal courts will not, however, engage in a choice-of-law analysis when the laws of the potentially interested states present a "false conflict." *Wyatt v. Syrian Arab Republic*, 398 F. Supp. 2d 131, 138 (D.D.C. 2005).[26]

This case presents a classic false conflict where the policies of only one state, namely Uzbekistan, would be advanced by application of its laws. *See Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581, 586 (D.C. Cir. 1965) (holding that a "false conflict" existed where New York was the only jurisdiction with an interest in the application of its law). The policies of the District of Columbia are neither implicated nor advanced by application of its law because the District of Columbia has no connection to or interest in this dispute. *See Stromberg*, 474 F. Supp. 2d at 62 (holding that nothing in the "scant record" favored application of D.C. law over Mexican law). None of the parties is a D.C. resident or even has a presence here. *See ABB Daimler-Benz Transp. (N. Am.), Inc. v. Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 89 (D.D.C. 1998) (applying New Jersey law where no injury occurred in the District, the relationship of the parties was not centered in the District, the project was not in the District and neither the District nor its citizens would "derive any benefits []or suffer any consequences as a result of the outcome of this case or of the Project"). The U.S. Zeromax Defendants are all dissolved Delaware entities that ceased doing business in 2005 (at the latest) — well before ROZ filed this lawsuit. Am. Compl. ¶¶ 3-5. ROZ Trading is a Cayman Islands company, formerly doing business in Uzbekistan (and now winding up in New Jersey), with no presence in the District of Columbia, and ROZ(U) is a dissolved Uzbek company having a former principal place of business in Uzbekistan. *Id.* ¶¶ 1-2; Supp. Maqsudi Decl. ¶¶ 4, 8.

---

[26] A "false conflict" exists in three possible scenarios: "when either (1) the laws of the interested states are the same; (2) when those laws, though different, produce the same result when applied to the facts at issue; or (3) when the policies of one state would be advanced by the application of its laws and the policies of the states whose laws are claimed to be in conflict would not be advanced by application of their law." *Wyatt*, 398 F. Supp. 2d at 138 (internal quotation omitted); *accord Biscoe v. Arlington County*, 738 F.2d 1352, 1360 (D.C. Cir. 1984).

Moreover, none of the alleged wrongful acts is alleged to be connected to the District of Columbia in any way whatsoever. Rather, *all* of the alleged wrongful acts are alleged to have occurred in Uzbekistan pursuant to Uzbek law. *See* Am. Compl. ¶¶ 29-31; *see also* Fayzullaev Decl. ¶¶ 13-25 & Exs. F-I. Thus, Uzbekistan has an overriding interest in having its laws applied in this case, which involves Uzbekistan's regulation of conduct and property within its own territory. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 338-39 (2d Cir. 2005) (applying Thai law because it advanced Thailand's strong interest in "enforcing the orders of its Ministry of Finance" and "in having the effect of its government's orders determined in accordance with Thai law"); *accord Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 87 (2d Cir. 2002).

Finally, application of the *lex situs* rule also points to Uzbek law. *See* Carter Decl. ¶¶ 40-43. In its purest form, the *lex situs* rule is a conflict of laws doctrine most often applied in actions involving questions of title to property that has been affected by regulation or an alleged expropriation. *See* Carter Decl. ¶¶ 40, 43. In such circumstances, courts will apply the law of the state in which the property is situated. *Id*. ¶ 41 (citing cases). In this case, all of Plaintiffs' claims pivot on the nature of their claimed title to their former interest in CCBU, an Uzbek entity located and operating in Uzbekistan.

### 2.    Plaintiffs' Claims Fail As A Matter Of Uzbek Law

As a matter of Uzbek law, all of Plaintiffs' claims against the U.S. Zeromax Defendants are precluded because ROZ's participatory interest in CCBU was removed by Uzbekistan and transferred to the State free and clear of any claims by ROZ or any other third party. *See* Fayzullaev Decl. ¶¶ 16-17 & Ex. G (confirming decision of the Supreme Economic Court removing ROZ's participatory interest as final, binding, valid, and enforceable under Uzbek law), ¶¶ 18-20 & Ex. H (confirming Decree 420 of the Cabinet of Ministers transferring CCBU

interest to the State free and clear of any claims by ROZ or any other third party as binding, valid, and enforceable under Uzbek law).  Indeed, Plaintiffs have alleged that Uzbekistan (not the U.S. Zeromax Defendants) extinguished ROZ's participatory interest in CCBU, and Muzimpex (not the U.S. Zeromax Defendants) acquired an interest in CCBU from the State.  *See* Am. Compl. ¶¶ 29-31, 45.

Plaintiffs' breach of contract, conversion, unjust enrichment, and fraudulent conveyance claims fail under Uzbek law for the additional reason that Plaintiffs improperly rely on Muzimpex's actions in an effort to link the U.S. Zeromax Defendants to the disputed property. Am Compl. ¶¶ 42, 45.  Under Uzbek law, even if the U.S. Zeromax Defendants were shareholders of Muzimpex (which, as alleged (*id.* ¶ 6), they are not), they could not be held liable for the acts of Muzimpex.  *See* Fayzullaev Decl. ¶ 6 (stating shareholders generally cannot be held liable for acts of LLC under Uzbek law).  Neither the Uzbek Civil Code nor the Law on LLCs provides any other basis for liability of shareholders for acts of the company itself.  *See id.*

Moreover, with regard to Plaintiffs' breach of contract claim in particular, under Uzbek law, the 1993 CCBU JVA was rendered "null and void" upon the registration of new CCBU foundation documents with the Ministry of Justice in 2003 pursuant to Cabinet of Ministers Decree No. 420.  *See* Fayzullaev Decl. ¶ 8 & Ex. H, ¶ 3; *see also* Supp. Fayzullaev Decl. ¶¶ 7-8, 10-12 & Exs. A-B, E (attaching (i) cover and signature pages to 2003 Amended and Restated CCBU Charter and JVA; and (ii) February 2, 2007 Ministry of Justice letter stating that 1993 CCBU Charter and JVA were rendered invalid by registration of 2003 foundation documents). On this basis, none of the U.S. Zeromax Defendants could be deemed parties to that agreement, thus negating any possible contract claim under Uzbek law.  *Id.*

Further, with regard to Plaintiffs' confused claim of fraudulent conveyance, the State Property Committee Order, which is legal and binding as a matter of Uzbek law, demonstrates that Uzbekistan sold ROZ's interest directly to Muzimpex, not any of the U.S. Zeromax Defendants. *See* Fayzullaev Decl. ¶¶ 24-25.

Finally, Plaintiffs' conspiracy, tortious interference with business relations, and quiet title claims are not recognized under Uzbek law. *See* Supp. Fayzullaev Decl. ¶¶ 14, 16, 17. Even if Uzbek law recognized a claim for quiet title, there is no title to quiet because, under Uzbek law, Plaintiffs' ownership interests in CCBU were extinguished by virtue of Uzbekistan's alleged expropriation, and title transferred to Uzbekistan. Fayzullaev Decl. ¶ 20 & Ex. H.

## C. Plaintiffs' Claims Are Time-Barred

District of Columbia choice-of-law rules treat statute of limitations as procedural. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995). Therefore, even if another state or country's law applies to the substantive claims, D.C. choice-of-law principles mandate application of the District's own statute of limitations. *Id.*; *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. 1966).

As pleaded, Plaintiffs' injury with respect to their interest in CCBU was complete by September 2002. Am. Compl. ¶ 31. Under the District of Columbia three-year statute of limitations, D.C. Code § 12-301(2), (3), (7), & (8) (2001), Plaintiffs' claims accrued, if at all, in September 2002, and should have been asserted no later than September 2005. *See Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989) (applying three-year statute of limitations to bar conversion claim); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (applying three-year statute of limitations to tort and contract claims); *Forte v. Goldstein*, 461 A.2d 469, 472 (D.C. 1983) (holding three-year statute of limitations had run for conversion claims); *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546-47 (D.C. 2002)

(holding tortious interference claim barred under the three-year statute of limitations). Plaintiffs cannot now be permitted to breathe new life into claims they should have brought prior to September 2005.

## VI. THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM

This Court should dismiss the Amended Complaint because the District of Columbia is an inconvenient and inadequate forum. Dismissal for forum non conveniens reflects a court's assessment of a "range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1186 (2007) (internal quotation omitted). In determining whether to dismiss a case in favor of a different forum, courts consider the availability of an adequate alternate forum, as well as public and private interest factors. *See Pain v. United Techs. Corp.*, 637 F.2d 775, 782 (D.C. Cir. 1980). Further, a plaintiff's choice of forum is entitled to less deference where the plaintiff is a citizen and resident of a foreign state, as is the case here. *See Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 33 (D.D.C. 2006) (dismissing Belgian and British citizens' action in favor of Gabon forum); *Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) (according "little deference" to foreign plaintiff's choice of forum in New York).

### A. Adequate Alternative Fora Are Available For This Dispute

Other adequate alternate fora exist for this dispute. First, ROZ Trading is currently pursuing claims similar to those asserted here (and based on the same facts) against Uzbekistan and Uzpishcheprom, as well as TCCEC, in the Vienna Arbitration. In Vienna, ROZ Trading potentially could obtain full relief (i.e., compensation) against the proper party — Uzbekistan, which apparently has submitted a Memorandum in Reply to ROZ Trading's Statement of

Claims.[27]  Although Zeromax Group is no longer a party to the Vienna Arbitration, any decision by the arbitral Tribunal as to Uzbekistan's alleged conduct could impact this Court's adjudication of the claims asserted here.  *See Contact Lumber Co. v. P.T. Moges Shipping, Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990) ("There are significant advantages in having all the parties . . . assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits.").[28]

Second, the courts of Uzbekistan are better suited to resolve this case because Uzbekistan is the center of gravity for every aspect of this case.  All factors point to Uzbekistan's interest in having this dispute resolved by its own courts.  *See Monegasque de Reassurances*, 311 F.3d at 493 ("Ukraine has a great interest in applying its own laws, especially with respect to establishing the ownership interest of Naftogaz.").  Moreover, this Court may not reject Uzbekistan as an adequate forum based merely on Plaintiffs' allegations of corruption or bias there.  *See* Am. Compl. ¶ 31 (asserting general allegations of corruption within the Uzbek government); *see also Zschernig v. Miller*, 389 U.S. 429, 440 (1968) (holding courts may not disregard the operation of a foreign sovereign's laws or legal system on the basis of alleged corruption or authoritarian rule); *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 981-82 (2d Cir. 1993) (finding Venezuela to be an adequate alternate forum despite claims of systemic corruption and bias); *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F.

---

[27]    Moreover, through the forum-selection clause in the 1993 CCBU JVA (Article 15.2), ROZ itself agreed with the other parties to that Agreement that arbitration in Vienna would be an adequate and convenient forum for any disputes arising out of the JVA.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (enforcing arbitration agreement and noting that "[a]n agreement to arbitrate before a specialized tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute").

[28]    At a minimum, this action should be stayed pending the outcome in that alternate forum.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (upholding liberal federal policy favoring arbitration); 9 U.S.C. §§ 3, 4 (2005) (requiring federal courts to dismiss or stay actions brought in federal court pending the outcome of arbitration).  ROZ should not be permitted to pursue similar claims in two parallel actions arising from virtually the same set of facts.  *See Contact Lumber Co.*, 918 F.2d at 1452.

Supp. 2d 87, 103 (D.D.C. 2006) (holding that a foreign forum will not be deemed "inadequate

because of different adjudicative procedures or general allegations of corruption in the judicial

system"); *accord Monegasque de Reassurances*, 311 F.3d at 499 (same).  Indeed, ROZ chose to

invest in Uzbekistan knowing full well its legal system and courts.  *See Monegasque de*

*Reassurances*, 311 F.3d at 499 (finding adequate alternative forum in Ukraine where plaintiff's

affiliate "voluntarily conducted business with Ukragazprom, a Ukrainian company, and must

have anticipated the possibility of litigation in Ukraine").[29]

### B.    Both Public And Private Interest Factors Weigh Against Hearing This Case In The District Of Columbia

Public and private interest factors weigh in favor of dismissal.  Public interest factors

include "whether the case has a general nexus with the forum sufficient to justify the forum's

commitment of judicial time and resources to it," *Pain*, 637 F.2d at 791, the "burden on the

community in light of the connection between the event in dispute and the chosen forum, the

local public interest in the dispute, and the court's familiarity with the applicable law."  *Croesus*

*EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 39 (D.D.C. 2002).

This dispute lacks any connection to the District of Columbia or even the United States.  *Id.* at 40

(holding that the District of Columbia has no interest in litigation where "[n]one of the events in

question occurred in the District of Columbia and none of the parties claims to have any

connection to the District").  Plaintiffs' claims involve entities located in Uzbekistan, events that

took place there, and analysis of Uzbek law relative to Uzbekistan's contested acts of state.  Am.

Compl. ¶¶ 2, 13-24, 27-32.  There simply is no "general nexus" to the District of Columbia, nor

---

[29]    Moreover, ROZ cannot now be heard to complain about the Uzbek legal system where the original regulatory action taken against them by the State apparently resulted from ROZ's own illegal activities, namely the anti-monopoly violations and charter fund fraud as documented by the Uzbek judicial decisions and decrees.

is there any local public interest in this dispute, to justify proceeding with this case here. *See Pain*, 637 F.2d at 791; *Croesus*, 212 F. Supp. 2d at 39.

Private interest factors relate to the convenience of the litigants and include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Pain*, 637 F.2d at 782 (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)); *accord Croesus*, 212 F. Supp. 2d at 37-38. Given that all of the events in question are alleged to have occurred in Uzbekistan, all of the witnesses and documentary evidence that would be central to this dispute presumably must also be located in Uzbekistan — and certainly not in the District of Columbia. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257-58 (1981) (favoring dismissal when a "large proportion of the relevant evidence is located [overseas]").

Application of Uzbek law, as well as the need to translate evidence and testimony from Uzbek and Russian to English, present additional burdens and expense militating against litigation in this forum. *See Piper Aircraft*, 454 U.S. at 260; *Gulf Oil*, 330 U.S. at 515 (holding that the need to apply foreign law favors dismissal); s*ee Croesus*, 212 F. Supp. 2d at 39 (dismissing case because litigation would require translation of numerous foreign-language documents that would be "expensive, cumbersome and time-consuming"). For all these reasons, dismissal on forum non conveniens grounds is appropriate.

## <u>CONCLUSION</u>

For all the foregoing reasons, this Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: November 20, 2007                    Respectfully submitted,

**WHITE & CASE**LLP

/ s / Carolyn B. Lamm
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc., Zeromax Logistics, Inc., and Zeromax LLC*