# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROZ TRADING, LTD., et al. ) | |
| ) | |
| Plaintiffs, ) | 1:06-CV-01040 CKK |
| ) | |
| v. ) | |
| ) | |
| ZEROMAX GROUP, INC., et al. ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF MANSUR MAQSUDI

Under penalty of perjury, Mansur Maqsudi states as follows:

1. My name is Mansur Maqsudi and I am over the age of 21 years, am of sound mind, and am competent to testify. The matters set forth herein are within my personal knowledge and are true and correct.

2. I was born in 1967 in Afghanistan.

3. I am a naturalized citizen of the United States of America, and I live in Mendham, New Jersey.

**ROZ Trading**

4. Currently, I am the Chairman and Chief Executive Officer of ROZ Trading, Ltd. ("ROZ").

5. My family created ROZ in 1992 for the purpose of distributing consumer goods throughout Central Asia.

6. The company is organized under the laws of the Cayman Islands, but the business is managed in New Jersey. All key business decisions are made at our office in New Jersey. Meetings of ROZ's Board occur in New Jersey, and many corporate records are kept in New Jersey.

1

7. Currently ROZ works with multinational companies such as Colgate and Gillette to distribute consumer goods throughout much of Central Asia and the Middle East. In addition, ROZ is involved in the reconstruction of Afghanistan as a contractor for USAID.

**My Relationship with Gulnora Karimova**

8. In November 1991, I married Gulnora Karimova, the daughter of Islam Karimov, the President of Uzbekistan. We set up a home in New Jersey and had two children, named Islam and Iman.

9. Beginning in 2001, our marriage took a turn for the worse. As a result, on July 28, 2001, I told Ms. Karimova that I wished to separate from her.

**Ms. Karimova's Behavior Toward my Family**

10. The night after I told her I wished to separate from her, Ms. Karimova kidnapped our children and fled to Uzbekistan.

11. In early August 2001, I received word that some of my relatives living in Uzbekistan had been threatened or detained by the National Security Service – the Uzbekistani equivalent of the KGB. To this day, I have not seen my children and several of my relatives remain missing.

12. Around the same time, I attempted to make contact with Ms. Karimova to make sure that our children were safe. She gave me no assurances about their safety and did not permit me to speak with them.

13. In one telephone conversation, Ms. Karimova told me that she would release my family members and allow me to see my children only if I paid her millions of dollars.

14. As part of the divorce proceedings, the Superior Court in New Jersey ordered Ms. Karimova to return the children to me and to arrange immediate telephone contact so that I could talk to them. She has refused to do so and continues to defy the court order to this

day. Because of her failure to comply with this court order, a warrant has been issued for her arrest.

**Hostility Toward CCBU and ROZ**

15. Several senior executives at Coca-Cola Bottlers Uzbekistan ("CCBU") have described to me what transpired in Uzbekistan soon after I told Ms. Karimova that I wished to separate from her. Several managers were taken into custody by the National Security Service and held for periods ranging from hours to days. Many of these managers were forced to leave Uzbekistan and were threatened with imprisonment or violence.

16. I was also told that agents of the National Security Service descended on CCBU's offices in Tashkent and carted off dozens of boxes of documents and many desktop computers. CCBU managers told me that these agents claimed that this ransacking was part of a routine tax audit. As the President of CCBU, I had been through tax audits before, and the activities that transpired in 2001 were nothing like a routine tax audit.

**Trying to Find out What Happened**

17. During this time period, I spent most of my time trying to locate and save my employees and relatives and to see my children.

18. Under normal circumstances, I could have called my colleagues at CCBU to get information immediately about what was happening, but they had all fled the country out of fear of imminent imprisonment or death. Because I was not in Uzbekistan, it was impossible for me to get any information about what was taking place.

19. I learned that Uzbekistan had initiated court proceedings against ROZ, but I could not participate in them. ROZ's lawyers were denied visas by the Uzbekistani government. ROZ had one lawyer helping it in Uzbekistan, but she was given very limited information,

some of which was in a language that the court knew she – like many lawyers and citizens of Uzbekistan – could not speak or read.

20. I suspected that my ex-wife, Gulnora Karimova, and Coca-Cola were involved in the hostility toward my family and ROZ.

21. I heard that meetings were called regarding the ownership and management of CCBU, but I could not attend, because the meetings were taking place in Tashkent, and I had strong reason to believe that I would be killed if I traveled there. I continue to believe that I will be killed if I travel to Uzbekistan, because my family and I frequently receive death threats.

22. I do know that ROZ was accused of failing to pay required charter funds and failing to comply with certain laws. As the Chief Executive Officer of ROZ, I personally made sure that the Company followed all laws, including payment of the required amount into the charter fund. Years later, having finally learned a bit about these cases against ROZ and its affiliates, I know that the allegations of wrongdoing are false.

23. Nonetheless, ROZ's interest in CCBU was stolen and it has never received any sort of compensation.

24. It was not until sometime in 2004 that I learned about what my ex-wife and Zeromax had done to steal ROZ's interest in CCBU.

I declare under penalty of perjury that the foregoing is true and correct.

12/7/06
Date

_____
Mansur Maqsudi

4