**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————
                                                )
ROZ TRADING LTD., *et al.*,                     )
                                                )
            *Plaintiffs*,                       )
                                                )
      v.                                        )        1:06-CV-01040 CKK
                                                )
ZEROMAX GROUP, INC., *et al.*,                  )
                                                )
            *Defendants*.                       )
———————————————————)


**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE U.S. ZEROMAX DEFENDANTS' REVISED**
**MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY**


**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005

*Attorneys for Zeromax Group, Inc.,*
*Zeromax Logistics, Inc., and*
*Zeromax LLC*

January 25, 2008

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(7) FOR FAILURE TO JOIN AN INDISPENSABLE PARTY ..............................................2

    A.    Delaware Law Does Not Negate Zeromax GmbH's Indispensability Under Rule 19(b) .......................................................................................................2

    B.    Plaintiffs' Alter-Ego Argument Fails......................................................................3

    C.    The Interests Of Zeromax GmbH Are Not Adequately Represented By The Remaining U.S. Zeromax Defendants ..............................................................4

    D.    Plaintiffs Will Have An Adequate Remedy If This Action Is Dismissed...............6

    E.    Muzimpex And Uzbekistan Are Also Indispensable Parties ..................................7

II.    THE COURT LACKS PERSONAL JURISDICTION OVER THE U.S. ZEROMAX DEFENDANTS ................................................................................................8

    A.    The U.S. Zeromax Defendants May Raise Personal Jurisdiction Defenses At The Discretion Of The Court ...........................................................................8

    B.    Plaintiffs Are Not Entitled To Jurisdictional Discovery.......................................10

III.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE U.S. ZEROMAX DEFENDANTS ......................................................................................11

IV.    THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS ...........................12

    A.    The Act Of State Doctrine Bars Adjudication Of *All* Plaintiffs' Claims...............12

    B.    Plaintiffs Have Not Alleged Any Act Of The U.S. Zeromax Defendants That Can Be Adjudicated Apart From Uzbekistan's Underlying Acts Of State....................................................................................................................14

    C.    Plaintiffs' Claims Do Not Depend On Adjudication Of Any Commercial Activity Of Uzbekistan .........................................................................................18

    D.    The Second Hickenlooper Amendment Does Not Apply......................................20

        1.    Plaintiffs Have Failed To Allege, Nor Can They, That The Property In Question Is In The United States .............................................20

2.    ROZ Trading's Former Interest In CCBU Does Not Fall Within The Protected Class Of Investments Contemplated By The Amendment ..................................................................................21

3.    ROZ Trading Fails To Make A Claim Based On A Violation Of Principles Of International Law ................................................................22

V.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ........................................................................................................23

A.    Plaintiffs' Allegations Fail To Satisfy The Minimum Pleading Standards ..........23

B.    Plaintiffs Fail To State A Claim Under The Applicable Substantive Law ............24

1.    Plaintiffs Fail To State A Claim Under Uzbek Law ..................................24

2.    Even If D.C. Law Applies, Plaintiffs Fail To State Any Claim Upon Which Relief May Be Granted ........................................................26

C.    Plaintiffs' Claims Are Time-Barred ........................................................................31

VI.    THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM ......................................................................................33

CONCLUSION ......................................................................................................................35

# TABLE OF AUTHORITIES

FEDERAL CASES                                                              Page(s)

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*,
    No. 93-1725, 1994 WL 225383 (D.D.C. May 9, 1994).................................25

*Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) .................................19

*Allen v. Russian Fed'n*,
    Civ. A. No. 05-2077 (CKK), 2007 WL 4145596 (D.D.C. Nov. 26, 2007) .................18, 19

*Amore v. Accor North Am.*,
    Civ. No. 06-0198, 2008 WL 101708 (D.D.C. Jan. 10, 2008)....................................7

*Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir. 1980).................................19

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
    297 F. Supp. 2d 165 (D.D.C. 2003) ...................................................15

*Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34 (D.D.C. 2003).........................................11

*Banco Nacional de Cuba v. First Nat'l City Bank of New York*,
    431 F.2d 394 (2d Cir. 1970)...........................................................22

*Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519 (1839)................................................22

*Beals v. Sicpa Securink Corp.*, Civ. A. Nos. 92-1512, 92-2588, & 93-0190
    1994 WL 236018 (D.D.C. May 17, 1994).......................................24, 25

*Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335 (9th Cir. 1976)....................................8, 9

*Bell v. Domino's Pizza Inc.*,
    No. Civ. A. 99-2376 (PLF/JMF), 2000 WL 1780266 (D.D.C. Nov. 21, 2000) .................16

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ............................................23

*Bowhead Info. Tech. Servs., LLC v. Catapult Tech., Ltd.*,
    377 F. Supp. 2d 166 (D.D.C. 2005) ..............................................13, 14, 28

*BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73 (D.D.C. 2003)....................................33

*Braka v. Bancomer, S.N.C.*, 762 F.2d 222 (2d Cir. 1985) .........................................12, 13

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ................................................31

*Calvetti v. Antcliff*, 346 F. Supp. 2d 92 (D.D.C. 2004)...............................................28

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,
148 F.3d 1080 (D.C. Cir. 1998) ...........................................................................11

Commc'ns Vending Corp. of Arizona, Inc. v. Fed. Commc'ns Comm'n,
365 F.3d 1064 (D.C. Cir. 2004) ...........................................................................32

Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.,
686 F.2d 322 (5th Cir. 1982) ...............................................................................22

Conley v. Gibson, 355 U.S. 41 (1957) ..........................................................................23

Dainippon Screen Mfg. Co. v. CFMT, Inc.,
142 F.3d 1266 (Fed. Cir. 1998)..........................................................................5, 6

Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61 (D.D.C. 2005)...................................29

Denkmann Assoc. v. Int'l Paper Co., 132 F.R.D. 168 (M.D. La. 1990).........................5

Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1 (D.D.C. 2003)..............3

Doty v. St. Mary Parish Land Co., 598 F.2d 885 (5th Cir 1979) ...............................6, 7

Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841 (D.D.C. 1996) ..................25

*Ethiopian Spice Extraction Share Co. v. Kalamazoo Spice Extraction Co.,
543 F. Supp. 1224 (W.D. Mich. 1982) ............................................................20, 21

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
462 U.S. 611 (1983)............................................................................................18

Foretich v. Glamour, 741 F. Supp. 247 (D.D.C. 1990) .................................................25

Furash & Co. v. Mc-Clave, 130 F. Supp. 2d 48 (D.D.C. 2001) ....................................14

*Glen v. Club Mediterranee, S.A., 450 F.3d 1251 (11th Cir. 2006).........................14, 19

Glenny v. Am. Metal Climax, Inc., 494 F.2d 651 (10th Cir. 1974)..................................7

*Guccione v. Flynt, 617 F. Supp. 917 (S.D.N.Y. 1985).........................................8, 9, 10

Hall v. Clinton, 285 F.3d 74 (D.C. Cir. 2002) .............................................................29

*Henthorn v. Dep't of Navy, 29 F.3d 682 (D.C. Cir. 1994) ..........................................31

Hilsenrath v. Swiss Confederation,
No. C. 07-02782, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007)............................23

Honduras Aircraft Registry, Ltd. v. Gov't of Honduras,
129 F.3d 543 (11th Cir. 1997) ............................................................................19

*Houlihan v. Anderson-Stokes, Inc.*, 434 F. Supp. 1324 (D.D.C. 1977) ...........................................32

*Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co.*,
   129 F.3d 143 (D.C. Cir. 1997)......................................................................................26

*Indus. Credit Co. v. Berg*, 388 F.2d 835 (8th Cir. 1968) ...............................................................3

*Indus. Inv. Dev. Corp. v. Mitsui & Co.*, 594 F.2d 48 (5th Cir. 1979)......................................16, 17

*In re Belmar v. Garza*, 319 B.R. 748 (Bankr. D.D.C. 2004) ......................................................27

*In re Bullmore*, 300 B.R. 719 (Bankr. D. Neb. 2003).................................................................22

*Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (Airline Div.) v.
   Ass'n of Flight Attendants, AFL-CIO*, 864 F.2d 173 (D.C. Cir. 1988).................................30

*Jellenik v. Huron Copper Mining Co.*, 177 U.S. 1 (1900)............................................................21

*\*Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116 (D. Del. 1989).....................3, 6, 7

*Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1 (D.D.C. 1995) ...................................................29

*Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*,
   729 F.2d 422 (6th Cir. 1984) ...............................................................................................20

*Kissentaner v. General Motors Corp.*,
   No. 93-7008, 1993 WL 483946, (D.C. Cir. Nov. 9, 1993)......................................................27

*Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024 (6th Cir. 1990) ......................................................15

*Long v. Sears Roebuck & Co.*, 877 F. Supp. 8 (D.D.C. 1995)......................................................26

*\*MacNeil v. Whittemore*, 254 F.2d 820 (2d Cir. 1958) ............................................................8, 9

*Minute Man Anchors, Inc. v. Oliver Tech(s)., Inc.*,
   No. 1:04 CV 27, 2005 WL 1871164 (W.D.N.C. Aug. 5, 2005) ...............................................5

*\*Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*,
   311 F.3d 488 (2d Cir. 2002)..............................................................................................33, 34

*Montana Bank of Circle, N.A.  v. United States*, 7 Cl. Ct. 601 (1985) .............................................3

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
   No. 04-332 (EGS), 2006 WL 2711527 (D.D.C. Sept. 21, 2006)......................................16, 17

*Pain v. United Tech. Corp.*, 637 F.2d 775 (D.C. Cir. 1980).........................................................34

*\*Paley v. Ogus*, 20 F. Supp. 2d 83 (D.D.C. 1998)........................................................................31

*Peterson v. Royal Kingdom of Saudi Arabia.*, 332 F. Supp. 2d 189 (D.D.C. 2004)......................18

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)...........................2, 3

*Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132 (1st Cir. 1989) .......................................5

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) .....................................................19

*Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69 (1926) .................................................30

*Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480 (D.C. Cir. 1989) ...........................................32, 33

*Rong v. Liaoning Province Gov't*, 452 F.3d 883 (D.C. Cir. 2006)................................................18

*Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83 (D.D.C. 2005) ...........................20, 21, 22

*Rosario Veiga v. World Meteorological Org.*,
    486 F. Supp. 2d 297 (S.D.N.Y. 2007)........................................................................34

*ROZ Trading Ltd. v. Zeromax Group, Inc.*,
    Civ. A. No. 06-1040 (CKK), 2007 WL 2812760 (D.D.C. Sept. 28, 2007) ..........................2, 9

*Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55 (D.D.C. 2006) ........................................................11

*Seal v. Riverside Fed. Sav. Bank*, 825 F. Supp. 686 (E.D. Pa. 1993) ...........................................10

*Selover, Bates & Co. v. Walsh*, 226 U.S. 112 (1912) ....................................................................22

*Shafer v. Children's Hosp. Soc'y of Los Angeles, Cal.*,
    265 F.2d 107 (D.C. Cir. 1959)....................................................................................30

*Sharon v. Tucker*, 144 U.S. 533 (1892) .......................................................................................29

*Shulman v. Voyou, LLC.*, 251 F. Supp. 2d 166 (D.D.C. 2003).....................................................28

*Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57 (D.D.C. 2007)...........................................24

*Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519 (S.D.N.Y. 1972) ................................10

*Termorio S.A. E.S.P.  v.  Electrificadora Del Atlantico S.A. E.S.P.*,
    421 F. Supp. 2d 87 (D.D.C. 2006) ...............................................................................7

*Timberlane Lumber Co. v. Bank of America, N.T. & S.A.*,
    549 F.2d 597 (9th Cir. 1976) ................................................................................16, 17

*United States ex rel. Siewick v. Jamieson Sci. and Eng'g, Inc.*,
    322 F.3d 738 (D.C. Cir. 2003)......................................................................................4

*United States, ex rel. Williams v. Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004) ...........................................................................15

*Virtual Def. and Dev. Int'l, Inc. v. Republic of Moldova*,
   133 F. Supp. 2d 1 (D.D.C. 1999) .........................................................................19

*Walton v. Arabian Am. Oil Co.*, 233 F. 2d 541 (2d Cir. 1956) ......................................25

*West v. Multibanco Comermex, S.A.*, 807 F.2d 820 (9th Cir. 1987)........................22, 23

*Wheaton v. Diversified Energy, LLC*, 215 F.R.D. 487 (E.D. Pa. 2003) ...........................5

*Whetstone Candy Co. v. Nat'l Consumers League*,
   360 F. Supp. 2d 77 (D.D.C. 2004) ......................................................................28

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
   296 F.3d 1154 (D.C. Cir. 2002) .....................................................................18, 19

*W.S. Kirkpatrick & Co., Inc. v. Envt'l Tectonics Corp., Int'l*,
   493 U.S. 400 (1990).................................................................................16, 17, 19

*Zschernig v. Miller*, 389 U.S. 429 (1968) .......................................................................7


STATE CASES

*Beard v. Edmondson and Gallagher*, 790 A.2d 541 (D.C. 2002)............................31, 32

*French v. Banco Nacional de Cuba*, 242 N.E.2d 704 (N.Y. 1968) ...............................23

*Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31 (D.C. 1989) .........................25

*In re Tyree*, 493 A.2d 314 (D.C. 1985).........................................................................29

*Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236 (D.C. 1995)....................27

*William J. Davis, Inc. v. Young*, 412 A.2d 1187 (D.C. 1980).........................................33


FEDERAL STATUTES

22 U.S.C. § 2370 (1998) ...........................................................................................1, 20

Fed. R. Civ. P. 12, Advisory Committee Notes (1966) ..................................................10

Fed. R. Civ. P. 12 .................................................................................................. *passim*

Fed. R. Civ. P. 19 .................................................................................................2, 3, 5, 7

Fed. R. Civ. P. 44.1 ............................................................................................................15

Fed. R. Civ. P. 84, Appendix of Forms, Form 13 ........................................................31


## STATE STATUTES

D.C. Code § 12-301 (2001)................................................................................................31

D.C. Code § 16-3301 (2001)..............................................................................................30

D.C. Code § 28-3104 (2001)..............................................................................................14

D.C. Code § 28-3109 (2001)..............................................................................................31

Del. Code Ann. tit. 8, § 278 (2007) ............................................................................10, 11

Del. Code Ann. tit. 6, § 18-803 (2007) .............................................................................4

Del. Code Ann. tit. 6, § 18-804 (2007) ......................................................................10, 11


## OTHER U.S. AUTHORITIES

5A Charles A. Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1194 (2d ed. 1990)............................................8, 10

110 Cong. Rec. 19555, 19559 (1964) ..............................................................................22

Restatement (Second) of Conflict of Laws § 145 (1971) ...............................................26

Restatement (Second) of Conflict of Laws § 188 (1971) ...............................................26

Restatement (Third) of Foreign Relations Law § 213 (1987)........................................22

Restatement (Third) of Foreign Relations Law § 443 (1987)........................................15

Restatement (Third) of Foreign Relations Law § 444 (1987)........................................21


## INTERNATIONAL AUTHORITIES

Austrian Code of Civil Procedure (Zivilprozeßordnung), 4th Chapter, Art. 596(2) .....................7

## <u>INTRODUCTION</u>

Plaintiffs' Opposition underscores the extent to which this dispute and Plaintiffs' claims turn on the alleged sovereign acts of Uzbekistan taken within the territory of Uzbekistan — and not on the acts of the dissolved U.S. Zeromax Defendants, in the District of Columbia or elsewhere.  Plaintiffs plainly acknowledge that they have alleged "Uzbekistan expropriated, through sham proceedings, ROZ's interest in CCBU."  Opp'n at 27; *see also* Am. Compl. ¶¶ 28-31.  Uzbekistan is further alleged to have sold that interest over two years later in an official state privatization sale to Muzimpex (Am. Compl. ¶ 45), an Uzbek limited liability company in which none of the U.S. Zeromax Defendants presently holds any interest.  Indeed, Plaintiffs themselves argue that their claims are "based upon" a "confiscation or other taking . . . by an act of that state in violation of the principles of international law . . . . "  Opp'n at 26 (quoting 22 U.S.C. § 2370(e)(2)).

Notwithstanding Plaintiffs' recognition of the acts of state at issue, they infuse their Opposition with entirely new conclusory assertions, not included in the Amended Complaint, as to the U.S. Zeromax Defendants' purported "orchestration" of Uzbekistan's sovereign acts.  *See, e.g.*, Opp'n at 3, 17-18, 20.  Yet the only specific conduct that Plaintiffs attribute to the U.S. Zeromax Defendants — in the Amended Complaint or Opposition — occurred well after Plaintiffs' interest in CCBU had been fully extinguished.  Although Plaintiffs' real claim, if any, is against Uzbekistan, they ask the Court to disregard the acts of state at issue and instead, based upon purely conclusory allegations, collapse Muzimpex, Zeromax GmbH and the U.S. Zeromax Defendants into a single entity that somehow may be held liable for Uzbekistan's inherently sovereign acts.  This Plaintiffs cannot do.

## ARGUMENT

I.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(7) FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

   A.    **Delaware Law Does Not Negate Zeromax GmbH's Indispensability Under Rule 19(b)**

Plaintiffs' reliance on Delaware law for the proposition that they "can still continue their suit against the U.S. Zeromax Defendants, obtain a judgment and attempt to recover damages from them" (Opp'n at 10) is misplaced.  Whether the U.S. Zeromax Defendants are amenable to suit under Delaware law is irrelevant to whether Zeromax GmbH is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.  Contrary to Plaintiffs' assertion, "complete relief" cannot be accorded among "those already parties" to this action because none of the U.S. Zeromax Defendants holds the property interest at issue.  *Id.*  As Plaintiffs readily acknowledge, Zeromax GmbH is the only Zeromax entity alleged to hold any interest in Muzimpex — which in turn holds the relevant interest in CCBU.  *See* Am. Compl. ¶¶ 6, 40(e), 40(f), 42.  This Court also has recognized that "Zeromax GmbH represents the connection between Defendants and Plaintiffs' alleged former interest in CCBU."  *See ROZ Trading Ltd.*, 2007 WL 2812760, at *4.

Because complete relief is unavailable to Plaintiffs, the likelihood of "piecemeal litigation" and the accompanying prejudice to the absent party is great.  *See Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 111 (explaining that the "public stake" in "settling disputes by wholes" is embodied in the third factor of Rule 19(b) which requires that a judgment issued in the absence of the nonparty be "adequate").  Piecemeal litigation would be inevitable here because any judgment by this Court would not be binding on Zeromax GmbH because Zeromax LLC assigned its interest in Muzimpex to Zeromax GmbH ***before*** Plaintiffs' claims

were filed in June 2006.  *See* Am. Compl. ¶¶ 40(e)-(f).[1]  Therefore, Zeromax GmbH would be free to re-litigate in another forum, any claims or issues decided against its interest in this action.[2]  Rule 19(b) seeks to prevent precisely this type of "piecemeal litigation."  *See Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 111 (concluding both courts and public have an interest in the "complete, consistent and efficient settlement of controversies").

### B.    Plaintiffs' Alter-Ego Argument Fails

Plaintiffs try to circumvent the fact that a judgment by this Court would not have a preclusive effect on Zeromax GmbH by making conclusory and blanket allegations that Zeromax GmbH and the remaining U.S. Zeromax Defendants "are essentially one and the same as alter egos."  Opp'n at 10 (alleging that "[o]n their websites, Zeromax GmbH and Zeromax Group, Inc. claim credit for identical interests and undertakings" and that "[t]he U.S. Zeromax Defendants and Zeromax GmbH share the same management").  However, Plaintiffs' conclusory allegations fall short of the legal standard.  *See, e.g.*, *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 8-9 (D.D.C. 2003) (finding no alter-ego relationship where plaintiff alleged (i) joint use of trademarks and marketing image, including logos; (ii) joint online promotion of undertaking, including linked websites under heading "Our activities"; and (iii) sharing of key executives).

Moreover, Plaintiffs' allegation that "as part of the unlawful acts designed to deprive

---

[1]    *See also Indus. Credit Co.*, 388 F.2d at 841 ("[A] person in privity with a party to a lawsuit, in the sense that he will be bound by a judgment for or against that party under principles of res judicata or collateral estoppel, must acquire his interest in the transaction after commencement of the action or rendition of the judgment."); *Johnson & Johnson*, 720 F. Supp. at 1124 (D. Del. 1989) ("[A]n assignee is regarded as in privity with its assignor for preclusion purposes only if the assignment occurred after the initial lawsuit was brought.").

[2]    *See, e.g.*, *Johnson & Johnson*, 720 F. Supp. at 1123 (holding that Rule 19 favors a finding of indispensability when the absent party would be "free to litigate anew, in another forum"); *id.* at 1125 (citations omitted) (holding that even though an absent party is not legally bound by an adverse ruling, such a ruling would be "persuasive precedent in a subsequent proceeding"); *Montana Bank of Circle v. United States*, 7 Cl. Ct. 601, 614 (1985) (concluding that an assignee is not barred "from relitigating certain issues, because he was not in privity to the prior judgment against the assignor").

Plaintiffs of their interest in CCBU, Zeromax GmbH acquired the interest formerly held by Zeromax LLC in Muzimpex once Zeromax LLC was dissolved" (Am. Compl. ¶ 40(f)), does not constitute an alter-ego allegation.  *See United States ex rel. Siewick*, 322 F.3d 738, 741 (D.C. Cir. 2003) ("[A]n allegation of fraud . . . does not amount to an allegation that the corporate form was a fraud.").  In any event, Plaintiffs have no basis to assert that Zeromax LLC's disposal of assets during its statutory winding-up period under Delaware law was in any way fraudulent.[3]  Indeed, Plaintiffs' further allegation that Zeromax LLC's dissolution and transfer of assets to Zeromax GmbH was done "in order to deprive Plaintiffs of their interest in CCBU while also avoiding the rule of law" (Am. Compl. ¶ 40) is belied by the fact that Zeromax GmbH became the successor-in-interest to Zeromax LLC in September 2005, long after ROZ "was ***completely excluded*** from its management interest in CCBU" (Opp'n at 8) (emphasis added) and well before Plaintiffs filed their claims in June 2006.

C.    **The Interests Of Zeromax GmbH Are Not Adequately Represented By The Remaining U.S. Zeromax Defendants**

Plaintiffs are mistaken that Zeromax GmbH will not be prejudiced by its absence from this case because it is "nothing more than a reincarnated version of the U.S. Zeromax Defendants," which can adequately represent Zeromax GmbH's interests here.  Opp'n at 13.

---

[3]    Plaintiffs also suggest that the fact "Zeromax LLC transferred the interest in CCBU/Muzimpex to Zeromax GmbH *after* Zeromax LLC had already been dissolved" (Opp'n at 8 n.9 (emphasis in original)) in some way supports their allegations of impropriety on the part of the Zeromax entities.  In fact, the Delaware "winding up" statute for limited liability companies plainly provides that a dissolved limited liability company may "gradually settle and close [its] business, [and] dispose of and convey [its] property."  Del. Code Ann. tit. 6, § 18-803.

Further, Plaintiffs' assertion that "[d]ocumentation suggests that Zeromax LLC's interest in Muzimpex was simply transferred to Zeromax GmbH without consideration" (Opp'n at 11), is disingenuous and wholly speculative. The "documentation" in question is Zeromax Group's Memorandum in Reply in the Vienna arbitration, which states in relevant part:  "Following the dissolution of Zeromax LLC on September 28, 2005, Zeromax GmbH, a Swiss limited liability company . . . acquired Zeromax LLC's interest in Muzimpex.  On October 11, 2005, Zeromax GmbH and Tijorat executed new Foundation Documents for Muzimpex.  On October 27, 2005, Muzimpex applied to the MOJ for registration and on November 7, 2005, the MOJ duly registered Muzimpex as an Uzbek-Swiss limited liability company."  Pls.' Ex. 7 ¶ 27.

Plaintiffs' authorities in support of this argument are wholly inapposite to the facts of this case. *Wheaton v. Diversified Energy, LLC* and *Pujol v. Shearson/American Express, Inc.*, stand for the proposition that under certain circumstances, ***a parent company*** can adequately represent its ***subsidiary***. *See, e.g.*, *Wheaton*, 215 F.R.D. 487, 490 n.2 (E.D. Pa. 2003) (finding that a subsidiary is adequately represented by the parent when its shareholder interests may be impacted); *Pujol*, 877 F.2d 132, 135 (1st Cir. 1989) (holding that a subsidiary was "adequately represented" by its parent when the parent owns all of the subsidiary's stock).

In contrast, this case does not involve a parent company and its subsidiary. Instead, Zeromax GmbH's only relation to the U.S. Zeromax Defendants is as the alleged successor-in-interest to Zeromax LLC's interest in Muzimpex. Indeed, none of the remaining U.S. Zeromax Defendants has had any interest (direct or indirect) in the CCBU property at issue since 2005 (Am. Compl. ¶¶ 40(e)-(f)), and it is erroneous to presume that these dissolved entities would or could adequately represent Zeromax GmbH simply because they are its purported predecessors-in-interest.

Moreover, Plaintiffs' assertion that the U.S. Zeromax Defendants could adequately represent Zeromax GmbH because they share the same counsel is also unavailing. *See, e.g.*, *Denkmann Assoc. v. Int'l Paper Co.*, 132 F.R.D. 168, 175 (M.D. La. 1990) (dismissing case under Rule 19(b) and finding that whether the absent party and the defendant shared the same counsel is "not determinative" as to whether the absent party's "interests will be protected"). Plaintiffs' reliance on *Dainippon Screen Manufacturing Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998) and *Minute Man Anchors, Inc. v. Oliver Technologies, Inc.*, No. 1:04 CV 27, 2005 WL 1871164 (W.D.N.C. Aug. 5, 2005) on this point is also misplaced. Both cases are expressly limited to patent-infringement cases involving licensees. *See Dainippon*, 142 F.3d at 1272

(describing relationship between licensees and patent-holders); *Minute Man*, 2005 WL 1871164 at *12 (same, quoting *Dainippon*). Unlike the licensee and patent-holders in *Dainippon* and *Minute Man*, the remaining U.S. Zeromax Defendants have all been dissolved, do not have any ongoing relationship with Zeromax GmbH, and thus have no "obvious concern over the maintenance of" any of Zeromax GmbH's legal interests. *See, e.g.*, *Dainippon*, 142 F.3d at 1272 (holding that in a patent-infringement case, the licensee has "total control" over the patent owner and can adequately represent its interests).

Finally, Plaintiffs do not contest that an adverse judgment by this Court would be highly prejudicial to Zeromax GmbH because it would cast doubt on the validity of Muzimpex's ownership interest in CCBU, and thus would generate uncertainty with respect to Zeromax GmbH's indirect ownership interest in CCBU. Rev. Mot. at 12-13.[4]

In sum, because Zeromax GmbH will not be adequately represented by the remaining U.S. Zeromax Defendants, the "prudent solution" would be for this dispute to proceed in a forum where Zeromax GmbH is "present and capable of safeguarding its own interests." *See Johnson & Johnson*, 720 F. Supp. at 1126 (concluding that a parent company's subsidiary was an indispensable party even though the parent company owned 100% of the subsidiary's stock and could conceivably "vicariously protect" the subsidiary's stake in the dispute).

### D.    Plaintiffs Will Have An Adequate Remedy If This Action Is Dismissed

Plaintiffs' argument that they will be left without an adequate remedy if this case is dismissed (Opp'n at 14) is without merit. Plaintiffs assert that "Zeromax Group has already been dismissed from the Vienna arbitration," (*id.*) but fail to highlight for the Court that in voluntarily

---

[4]    *See Doty*, 598 F.2d at 886 (concluding that although the resulting judgment would not be binding on the lessee, it would "certainly create doubt as to the validity of its title and . . . confusion about its obligations and rights with respect to the land"); *Johnson & Johnson*, 720 F. Supp. at 1125 (concluding that even though an absent party is not legally bound by an adverse ruling, such a ruling would be "persuasive precedent in a subsequent proceeding") (citations omitted).

withdrawing their claims against Zeromax Group in that proceeding, ROZ Trading reserved its rights in other venues, not limited to the District of Columbia.[5]  *See, e.g.*, *Doty*, 598 F.2d at 888 (holding Rule 19(b)'s "final factor is one which, in the end, we find to be most persuasive, the presence of an adequate forum if the action is dismissed"); *Glenny v. Am. Metal Climax, Inc.*, 494 F.2d 651, 654 (10th Cir. 1974) (dismissing action for non-joinder where plaintiff had an adequate remedy in state court action "seeking the same relief").  Plaintiffs acknowledge that they continue to pursue their claims in Vienna against additional parties for essentially the same relief that they seek here.  Opp'n at 3-4.  Moreover, this Court may not reject Uzbekistan as an adequate forum based merely on Plaintiffs' allegations of corruption or bias there.  *Id.* at 14.[6]

### E.      Muzimpex And Uzbekistan Are Also Indispensable Parties

First, Plaintiffs' conclusory assertion that Muzimpex is merely an "extension of the Zeromax entities participating in this case" (Opp'n at 14) is insufficient to establish an alter-ego relationship.  *See, e.g.*, *Amore v. Accor North America*, No. 06-0198, 2008 WL 101708 at *6 (D.D.C. Jan. 10, 2008) (finding that "[a] party seeking to pierce the corporate veil must prove by 'affirmative evidence . . . (1) unity of ownership interest, and (2) use of the corporate form to perpetuate fraud or wrong'").

Second, Plaintiffs' contention that Uzbekistan also is not "necessary and indispensable" (Opp'n at 15) is disingenuous.  Plaintiffs assert that it is the "actions of the U.S. Zeromax entities

---

[5]     In a weak effort to excuse their failure to comply with the Vienna Arbitration award on costs in favor of Zeromax Group, Plaintiffs state: "Plaintiffs submit that the Tribunal was in error.  Perhaps that is why, Zeromax Group has not attempted to enforce this award under the Federal Arbitration Act or New York Convention."  Opp'n at 4 n.5.  Notwithstanding Plaintiffs' pure speculation as to when Zeromax Group may seek to enforce the costs award, the three-month period under Austrian law in which Plaintiffs could have challenged the final award — if they truly felt it was "in error" — has long passed.  *See* Austrian Code of Civil Procedure (Zivilprozeßordnung), 4th Chapter, Art. 596(2).

[6]     *See also Zschernig*, 389 U.S. at 440 (holding courts may not disregard the operation of a foreign sovereign's laws or legal system on the basis of alleged corruption or authoritarian rule); *Termorio S.A.*, 421 F. Supp. 2d at 103 (holding that a foreign forum will not be deemed "inadequate because of different adjudicative procedures or general allegations of corruption in the judicial system").

that [are] at issue here," and that "Plaintiffs' Complaint is ***infused*** with allegations of actions taken by Defendants to deprive Plaintiffs of their ownership rights."  Opp'n at 15 (emphasis added).  However, Plaintiffs overlook the fact that the Amended Complaint turns on allegations that their participatory interest in CCBU was "eliminate[d]" and "completely purge[d]" through a series of alleged "sham proceedings" initiated by Uzbekistan and culminating in an Uzbek court order approving the "seizure of ROZ's remaining interest in CCBU."  Am. Compl. ¶¶ 28, 31.[7] As discussed below, ***all*** of Plaintiffs' claims require this Court to adjudicate the validity of Uzbekistan's official sovereign acts, and accordingly, Plaintiffs' argument that Uzbekistan is not a necessary and indispensable party is without merit.  *See* Section IV, *infra*; Rev. Mot. at 25.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER THE U.S. ZEROMAX DEFENDANTS

### A.    The U.S. Zeromax Defendants May Raise Personal Jurisdiction Defenses At The Discretion Of The Court

Plaintiffs' argument that the U.S. Zeromax Defendants waived any personal jurisdiction defenses by failing to raise them in the Consolidated Motion to Dismiss (Opp'n at 15-17) is oversimplified and unavailing.  Significantly, Plaintiffs do not contest that the Court may, in its discretion, permit the U.S. Zeromax Defendants to raise jurisdictional defenses at this juncture.[8]

---

[7]    Moreover, the Amended Complaint lacks any factual allegation that the U.S. Zeromax Defendants were in any way involved in Uzbekistan's elimination of Plaintiffs' CCBU interest in 2002, alleging instead that the Zeromax Defendants acquired Plaintiffs' "former interest" in CCBU from Uzbekistan two years later in "late 2004."  Am. Compl. ¶¶ 41, 45.  Indeed, Plaintiffs admit that ROZ had been "completely excluded from its management interest in CCBU" (Opp'n at 8) ***before*** the U.S. Zeromax Defendants purportedly "attempted to avoid liability" by transferring their alleged indirect interest in CCBU to Zeromax GmbH (*id.*).

[8]    *See, e.g.*, *Bechtel*, 534 F.2d at 1341 n.8 (holding Rule 12(h) "does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing") (quoting *MacNeil v. Whittemore*, 254 F.2d 820, 821 (2d Cir. 1958)); *see also Guccione v. Flynt*, 617 F. Supp. 917 (S.D.N.Y. 1985) (granting subsequent motion to dismiss for lack of personal jurisdiction where defendant had not raised the defense in first motion); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1194 (2d ed. 1990) ("The use of judicial discretion [to permit amendment of motions] seems especially appropriate . . . if it will help resolve the litigation at an early date.").

In addition, Plaintiffs fail to account for the unique procedural posture of this case — in particular, the fact that the Court expressly authorized the U.S. Zeromax Defendants to amend their motion to dismiss. In its September 28 Order dismissing Zeromax GmbH for lack of personal jurisdiction, the Court held the remainder of the Defendants' motion in abeyance and invited the parties to "supplement the current briefing with additional grounds for dismissal" or to "revise their current arguments in any way." (Docket Entry No. 23.) In its accompanying Memorandum Opinion, the Court further noted that the dismissal of Zeromax GmbH could alter the posture of the parties, specifically including the U.S. Zeromax Defendants' earlier apparent submission to the jurisdiction of the Court: "[t]he U.S. Zeromax Defendants have specifically acknowledged that they submit to the personal jurisdiction of this Court; *however, the Court is aware that the dismissal of Zeromax GmbH may change the posture of the parties*." *ROZ Trading, Ltd.*, 2007 WL 2812760, at *11 (emphasis added).[9]

Plaintiffs completely disregard the Court's determination that the dismissal of Zeromax GmbH might alter the U.S. Zeromax Defendants' jurisdictional posture, and instead seize upon the U.S. Defendants' prior acknowledgment that they did not raise personal jurisdiction defenses in their first consolidated motion to dismiss. Opp'n at 16-17 (quoting Zeromax Reply at 8). However, the Court Order authorizing the U.S. Zeromax Defendants to amend their motion to dismiss effectively supersedes any purported waiver of jurisdictional defenses in the earlier motion papers. *See Bechtel*, 534 F.2d at 1341 n.8; *MacNeil*, 254 F.2d at 821; *Guccione*, 617 F. Supp. at 918-19.

---

[9]    *See also id.* at *1 ("The U.S. Zeromax Defendants have specifically acknowledged that they have submitted to the personal jurisdiction of this Court . . . . *Nevertheless*, the Court shall hold in abeyance the remainder of Defendants' Motion to Dismiss, because *the Court's dismissal of Zeromax GmbH may change the posture of the parties*.") (emphasis added).

Moreover, the Court's decision to permit amendment of the motion to dismiss does not implicate the policy considerations favoring application of the general waiver rule — namely, to "work[] against piecemeal consideration of a case" and to "forbid[] successive motions." *See* Fed. R. Civ. P. 12, Advisory Committee Notes (1966). The U.S. Zeromax Defendants have raised additional grounds for dismissal only at the express direction of the Court, which will now consider all defenses simultaneously. Further, Plaintiffs were given adequate opportunity to respond to these defenses through their own revised briefing. Under these circumstances, waiver of the personal jurisdiction defenses is not warranted.[10]

Because the Court has full discretion to permit the amendment of motions, and has exercised that discretion here, the U.S. Zeromax Defendants may properly raise the defense of personal jurisdiction at this time.

## B.     Plaintiffs Are Not Entitled To Jurisdictional Discovery

Plaintiffs do not attempt to counter any of the numerous jurisdictional defenses the U.S. Zeromax Defendants raise in their revised motion to dismiss. Instead, in a footnote, Plaintiffs argue in conclusory fashion that jurisdictional discovery would "yield documents" demonstrating that the U.S. Defendants had the requisite jurisdictional contacts with the forum. Opp'n at 17 n.16. However, Plaintiffs do not dispute that general jurisdictional contacts are measured at the time their action was commenced — when the U.S. Zeromax Defendants were all dissolved as a matter of law and thus incapable of "doing business" in the District. *See* Del. Code Ann. tit. 8,

---

[10]     *See Seal v. Riverside Fed. Sav. Bank*, 825 F. Supp. 686, 693 n.10 (E.D. Pa. 1993) ("[W]here defendant raised the new ground for dismissal in due time for the court to consider both motions simultaneously, and plaintiff has had adequate opportunity to respond to the new ground, there is no concern of piecemeal motions practice, and no rights of plaintiff are threatened."); *Guccione*, 617 F. Supp. at 919 ("Since both motions were argued together and are jointly submitted to the court, there is no issue of dilatory motion practice or unfairness to plaintiff, and the policy of Rule 12(g) is in no way frustrated.") (quoting *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519, 528 n.4 (S.D.N.Y. 1972)); *see also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1194 (2d ed. 1990) ("As long as the ability to amend a motion is left to the discretion of the trial judge, her ability to deny leave to amend . . . provides a sufficient safety valve.").

§ 278; *id.* tit. 6, § 18-804 (2007).  Further, Plaintiffs offer nothing to bolster their conclusory allegation (*see* Am. Compl. ¶ 11) that the U.S. Defendants transacted business in the District giving rise to Plaintiffs' claims.  If anything, the Opposition only underscores that Plaintiffs' claims arise from acts of Uzbekistan alleged to have taken place entirely in Uzbekistan.  *See* Opp'n at 1-8, 26-27.

Plaintiffs cannot rely on the prospect of discovery to cure their otherwise insufficient jurisdictional allegations, and have failed to demonstrate "a ***colorable basis*** for jurisdiction" that would warrant subjecting the U.S. Zeromax Defendants to "intrusive and burdensome discovery."  *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (quotation omitted) (emphasis added).[11]  In addition, Plaintiffs' cursory request for jurisdictional discovery fails to make the requisite "***detailed showing*** of what discovery [they] wish[] to conduct or what results [they] think[] such discovery would produce."  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (quotation omitted) (emphasis added).  Accordingly, Plaintiffs' request for jurisdictional discovery should be denied.

## III.  PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE U.S. ZEROMAX DEFENDANTS

Standing is a fundamental threshold issue that Plaintiffs relegate to a single footnote in their Opposition.  *See* Opp'n at 8 n.10.  Contrary to Plaintiffs' contention, the Amended Complaint does not link Plaintiffs' alleged injury — loss of ownership interest in CCBU — to the conduct of the U.S. Zeromax Defendants.  In fact, Plaintiffs' own allegations are that Uzbekistan — not the U.S. Zeromax Defendants — removed Plaintiffs' ownership interests in CCBU in 2002, thus causing Plaintiffs' alleged injury.  *See* Am. Compl. ¶¶ 28, 31.  Moreover,

---

[11]    *See also Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 63 (D.D.C. 2006) (denying jurisdictional discovery where it was "implausible that any additional discovery would be sufficient to establish general jurisdiction" and plaintiff had "not alleged how any of the contacts relate to or arise out of his claim").

Plaintiffs do not allege *any* connection between ROZ's interest in CCBU and the U.S. Zeromax Defendants until two years later in late 2004 when Plaintiffs allege that the U.S. Zeromax Defendants, through Muzimpex, acquired ROZ's "former interest" in CCBU from Uzbekistan. Am. Compl. ¶¶ 41, 45. Without any alleged causal connection between the U.S. Zeromax Defendants and Plaintiffs' alleged injury, Plaintiffs have no standing to bring claims against the U.S. Zeromax Defendants. *See* Rev. Mot. at 22-23 (citing cases).

## IV.    THE ACT OF STATE DOCTRINE BARS PLAINTIFFS' CLAIMS

### A.    The Act Of State Doctrine Bars Adjudication Of *All* Plaintiffs' Claims

Plaintiffs effectively concede that the act of state doctrine bars their claims for quiet title, unjust enrichment and conversion. Opp'n at 18 (asserting that "[t]he adjudication of *most* of Plaintiffs' claims does not . . . require this Court to pass on the legality of the acts of Uzbekistan" and further asserting that only breach of contract, tortious interference, conspiracy to do same, and fraudulent conveyance "do not call into question the validity of actions by the Uzbek government") (emphasis added); *see also id.* at 22.

With respect to Plaintiffs' breach of contract claim, it is based on the U.S. Zeromax Defendants' purported failure to comply with Plaintiffs' August 5, 2005 notice of termination under the 1993 JVA requesting that CCBU be liquidated. Opp'n at 19-20; Am. Compl. ¶¶ 48-50. Plaintiffs gloss over the fact that any notice of termination sent by them *after 2002* had no legal force and effect on any CCBU participant or their purported successors because Uzbekistan's acts of state had already allegedly "completely purge[d]" (Am. Compl. ¶ 30) Plaintiffs' 1993 JVA contract rights.[12] *See Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 224-25

---

[12]    Plaintiffs further ignore Uzbek law providing that any notice of termination sent by them *after September 22, 2003* had no legal force and effect on any CCBU participant or their purported successors. This was because on that date Uzpishcheprom and TCCEC executed and registered an Amended and Restated Joint Venture Agreement of CCBU ("2003 CCBU JVA") that rendered the 1993 JVA *null and void*. *See* Supp. Fayzullaev Decl. ¶¶ 8, 10 & Ex.

(2d Cir. 1985) (holding act of state doctrine barred breach of contract claim where Mexican decree implementing exchange controls extinguished plaintiff's former contract rights to demand payment from bank in dollars).  To reach the contrary conclusion, this Court would have to invalidate the 2002 Uzbek acts of state, including the Uzbek judicial forfeiture decisions and Decree No. 420 transferring Plaintiffs' CCBU interest to the State.

Notwithstanding the nullity of the 1993 JVA, Plaintiffs also claim that the language of the 1993 JVA itself can help them avoid the act of state doctrine.  Opp'n at 25.  This argument is unfounded.  Section 16.10 of the 1993 JVA does not "creat[e] a remedy for the sovereign's misdeeds via termination" by triggering the so-called termination rights under section 12.2.3.  *Id*. Rather, a plain reading reveals that section 16.10 applies only to "Adverse Changes in the Law" affecting the joint venture ***and not*** application of existing laws to joint venture participants for violation of those laws.  *See* Pls.' Ex. 9.

The act of state doctrine bars Plaintiffs' tortious interference claim (and conspiracy to commit tortious interference) for the same reasons it bars their contract claim: Plaintiffs' interest in CCBU was extinguished by Uzbekistan in 2002 — ***two years before*** the U.S. Zeromax Defendants' alleged involvement with that interest (albeit indirectly through Muzimpex).  Am. Compl. ¶ 45.  Logically then, there can be no tortious interference claim where there are no longer any contract rights with which to interfere.  Plaintiffs' attempt to twist the focus of their tortious interference claim (as stated in the Amended Complaint) by introducing new, conclusory assertions (Opp'n at 20) should be rejected.[13]

---

A.  Thus, for Plaintiffs to prove their contract claim, this Court would have to invalidate the 2003 CCBU JVA and undo the acts of state that made the 2003 CCBU JVA possible.  The act of state doctrine bars this determination.

[13]    In any event, Plaintiffs' vague assertion that Defendants tortiously interfered with Plaintiffs' former interest by "teaming up with Ms. Karimova and allowing her to take control of CCBU" (Opp'n at 20) does not establish the requisite improper means on the part of the U.S. Zeromax Defendants to state a claim for tortious interference.  *See Bowhead Info. Tech. Servs., LLC v. Catapult Tech.*, 377 F. Supp. 2d 166, 174 (D.D.C. 2005) (holding that to state a

Plaintiffs' fraudulent conveyance claim also runs afoul of the act of state doctrine. To prove their fraudulent conveyance claim, Plaintiffs must first succeed in establishing a debtor-creditor relationship between Plaintiffs and the U.S. Zeromax Defendants. *See, e.g.*, D.C. Code § 28-3104 (2001); *see also* Opp'n at 37 (acknowledging same). Plaintiffs' ability to establish a debtor-creditor relationship hinges upon a finding that the U.S. Zeromax Defendants wrongfully possess Plaintiffs' former CCBU interest, such that they are indebted to Plaintiffs. To reach this conclusion, the Court would be required to adjudicate the validity of Muzimpex's alleged title to the disputed property. The Court can only reach the conclusion that Muzimpex, and indirectly the U.S. Zeromax Defendants, hold invalid title by determining that the underlying Uzbek acts of state removing Plaintiffs' CCBU interest in 2002 were invalid, thus depriving the third-party purchaser of valid title. The act of state doctrine precludes this analysis. *See Glen*, 450 F.3d at 1255 (affirming dismissal of claims against third-party purchaser under act of state doctrine where resolution of claims wholly depended on questioning validity of Cuba's expropriation of plaintiffs' land).

### B. Plaintiffs Have Not Alleged Any Act Of The U.S. Zeromax Defendants That Can Be Adjudicated Apart From Uzbekistan's Underlying Acts Of State

Plaintiffs all but concede that the official Uzbek acts central to this dispute qualify as acts of state. Opp'n at 24 ("Plaintiffs do not dispute the official nature of some of Uzbekistan's acts."). Plaintiffs also concede that this dispute turns upon an adjudication of the validity of those acts. Opp'n at 26-27 (asserting that this case involves "Uzbekistan's expropriation and taking of ROZ's property" in violation of international law). Nevertheless, Plaintiffs attempt to avoid the act of state doctrine by asserting for the first time in their Opposition (Opp'n at 17-18,

---

claim for tortious interference a plaintiff must allege that the defendant accomplished the interference by "wrongful or improper means") (quoting *Furash & Co. v. Mc-Clave*, 130 F. Supp. 2d 48, 56 (D.D.C. 2001)). As a matter of Uzbek law, Uzbekistan took control of Plaintiffs' interest in CCBU through a valid and official Cabinet of Ministers decree. *See* Fayzullaev Decl. ¶¶ 18-20 & Ex. H.

20, 27, 29-31), without any factual basis, that the U.S. Zeromax Defendants had some kind of role in the Uzbek acts of state that removed Plaintiffs' interest in CCBU in 2002.[14]  There are several material problems with this newfound assertion.

First, the assertion is conclusory and absent from the Amended Complaint, and therefore should not be credited.[15]  In addition, Plaintiffs' bald assertions that the U.S. Zeromax Defendants "partner[ed] up" with Ms. Karimova to "set in motion a series of activities allowing them to obtain Plaintiffs' interest" in CCBU (Opp'n at 17) is patently frivolous as to Zeromax Group and Zeromax Logistics — incorporated, respectively, mere days before, and two months after, the alleged act of state affirming the removal of Plaintiffs' CCBU interest in September 2002.  *See* Am. Compl. ¶ 3 (Zeromax Group incorporated on September 4, 2002); *id*. ¶ 4 (Zeromax Logistics formed December 6, 2002); *id*. ¶ 31 (Supreme Economic Court decision of September 11, 2002 affirming removal of ROZ' remaining CCBU interest).[16]  Moreover, the

---

[14]    The extraneous materials attached to Plaintiffs' Opposition (purportedly to support their new assertion) (including the Inogambaev Declarations, Pls.' Exs. 2 & 3), introduce factual disputes that are inappropriate to defend a Rule 12(b)(6) motion.  *See Martin-Baker Aircraft*, 389 F.3d at 1257 ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which we may take judicial notice.") (internal quotation omitted).  Notably, the only materials attached to the U.S. Zeromax Defendants' motion to dismiss are those permitted pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, those incorporated by reference in the Amended Complaint, and those evidencing the acts of state at issue in this case of which the Court is permitted to take judicial notice.  *See* Restatement (Third) of Foreign Relations Law § 443 cmt. i (1987).

   In any event, the Inogambaev Declarations do not support Plaintiffs' new assertions: the 2007 Inogambaev Declaration is devoid of any reference to Zeromax (Pls.' Ex. 3) and the 2006 Inogambaev Declaration states only that Karimova told Inogambaev "that she intended to take control of CCBU, with the assistance of one of her companies" which "turned out" to be "Zeromax."  (Pls.' Ex. 2 ¶ 11).  At best, this statement (which is inadmissible hearsay) is indicative only of Ms. Karimova's purported intent to use one of her companies in some unspecified way and falls short of substantiating that any of the U.S. Zeromax Defendants was "one of her companies" or that she "used" them in any way.

[15]    *See Arbitraje Casa de Cambio S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 168, 170 (D.D.C. 2003) (holding that in the context of a Rule 12(b)(6) motion, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted); *see also Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1026 n.3 (6th Cir. 1990) (holding that a motion to dismiss on act-of-state grounds raises a Rule 12(b)(6) objection, not a jurisdictional defect).

[16]    In fact, Uzbekistan's alleged "attack on Maqsudi's family and business" were "immediately initiated" in July 2001 (Am. Compl. ¶¶ 20-21), more than a year before either Zeromax Group or Zeromax Logistics came into existence.

Amended Complaint contradicts Plaintiffs' new assertion by specifically alleging that the U.S. Zeromax Defendants, through Muzimpex, only became involved with the disputed interest in 2004, two years *after* Uzbekistan had "completely purged" that interest through a series of official acts of state. Am. Compl. ¶¶ 30, 45; *see also* Opp'n at 8 (acknowledging that ROZ "was *completely excluded* from its management interest in CCBU" before the U.S. Zeromax Defendants allegedly reorganized and before their purported obligations under the 1993 JVA allegedly were triggered) (emphasis added).

In the same vein, Plaintiffs have not alleged any facts to support their legal conclusion that Ms. Karimova "controls" the U.S. Zeromax Defendants. Opp'n at 30-31. Even if such facts were pleaded, Ms. Karimova's acts still could not, as a matter of law, be imputed to the U.S. Zeromax Defendants because agency law operates to attribute an agent's conduct to its principal, not the other way around. *See, e.g.*, *Bell v. Domino's Pizza Inc.*, No. Civ. A. 99-2376 (PLF/JMF), 2000 WL 1780266, at *1 (D.D.C. Nov. 21, 2000) ("If one party controls or has the power to control the manner in which another party creates a good or performs a service, the controlling party may be deemed the principal and the other party her agent, and be held vicariously *liable for the agent's acts*.") (emphasis added).

As a result, Plaintiffs misplace reliance on *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 404 (1990) (Opp'n at 19, 21), *Industrial Investment Development Corp. v. Mitsui & Co.*, 594 F.2d 48 (5th Cir. 1979) (Opp'n at 19), *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332 (EGS), 2006 WL 2711527, at *1 (D.D.C. Sept. 21, 2006) (Opp'n at 21), and *Timberlane Lumber Co. v. Bank of America N.T. and S.A.*, 549 F.2d 597 (9th Cir. 1976) (Opp'n at 29) because the courts in those cases were not called

upon to judge the validity of any acts of state.[17]   In contrast, the outcome of this case "turns upon" the "effect of official action by a foreign sovereign."  *W.S. Kirkpatrick*, 493 U.S. at 406. The gravamen of the Amended Complaint is unmistakably Uzbekistan's complete removal of Plaintiffs' interest in CCBU through a series of allegedly "sham" State-initiated judicial proceedings, official decrees and State orders.  Am. Compl. ¶¶ 29-31.  The Amended Complaint fails to allege any conduct by the U.S. Zeromax Defendants that caused that removal, and all of the purportedly unlawful conduct that Plaintiffs seek to attribute to the U.S. Zeromax Defendants is alleged to have occurred after ROZ had been "completely excluded" (Opp'n at 8) from its interest in CCBU.  *See, e.g.*, Am. Compl. ¶¶ 45-46.

Lastly, Plaintiffs appear to advocate (Opp'n at 29-31) an "orchestration" exception to the act of state doctrine which, they suggest, would permit this Court to invalidate the acts of state at issue if they were brought about by private third parties.   However, as set forth in the Supplemental Carter Declaration, none of Plaintiffs' cases support the existence of such an exception because none of their cases required invalidation of acts of state and so the act of state doctrine was not even implicated.  *See* Supplemental Declaration of Barry Carter dated January 23, 2008 ("Supp. Carter Decl.") ¶¶ 11-13 (attached hereto).  Further, such an exception would undermine the very policies underpinning the doctrine.  *See id.* ¶¶ 14-17.

---

[17]   *See W.S. Kirkpatrick*, 493 U.S. at 406 ("[N]either the claim nor any asserted defense require[d] a determination that Nigeria's [act] . . . was, or was not, effective."); *Oceanic Exploration Co.*, 2007 WL 2711527, at *15 (holding that the "legality or the illegality" of the government's act was "not a question to be determined," as "[t]he plaintiff was not trying to undo a foreign government's sovereign act"); *Industrial Investment Development Corp.*, 594 F.2d at 54 ("[N]either the validity of those [Indonesian] regulations nor the legality of the behavior of the Indonesian government is in question here."); *Timberlane Lumber*, 549 F.2d at 608 (holding that the act of state doctrine was not implicated where "allegedly 'sovereign' acts were judicial proceedings initiated by . . . a private party . . . , ***not by the Honduran government itself***") (emphasis added).

### C.    Plaintiffs' Claims Do Not Depend On Adjudication Of Any Commercial Activity Of Uzbekistan

Contrary to Plaintiffs' contentions (Opp'n at 22-24), this case does not turn on the Court's adjudication of any commercial acts of Uzbekistan.  As stated above, the gravamen of Plaintiffs' Amended Complaint centers on Uzbekistan's acts of state.  Am. Compl. ¶¶ 29-31; *see also* Opp'n at 24 ("Plaintiffs do not dispute the official nature of some of Uzbekistan's acts."). Plaintiffs' attempt to recast their claims in terms of purported breaches of the 1993 JVA by Uzbekistan and the U.S. Zeromax Defendants (Opp'n at 22-25) is disingenuous.

Plaintiffs appear to argue that the Uzbek acts of state at issue arose from Uzbekistan's alleged participation in CCBU.  Opp'n at 23-24.  Plaintiffs conclusorily allege, without more, that Uzbekistan was a party to the JVA.  Am. Compl. ¶ 13; *see also* Opp'n at 23, 24.  However, Uzbekistan was not a party to the 1993 JVA, as is evident from the face of the 1993 JVA.  Pls.' Ex. 9.  Plaintiffs conflate the purported acts of Uzpishcheprom with those of Uzbekistan but fail to allege any reason why Uzbekistan's and Uzpishcheprom's presumptive separateness should be disregarded.[18]

Further, Plaintiffs' contention that their claims "***arise from*** a commercial joint venture involving the production, bottling, and sale of Coca-Cola products in Uzbekistan" (Opp'n at 22 (emphasis added)) grossly misstates the nature of this case and ignores the alleged expropriation that is central to Plaintiffs' claims.  It is well-settled that expropriations constitute quintessential acts of state.[19]

---

[18]    *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627-28 (1983) ("[D]uly created instrumentalities of a foreign state are to be accorded a presumption of independent status."); *Peterson v. Royal Kingdom of Saudi Arabia*, 332 F. Supp. 2d 189, 198 (D.D.C. 2004) *aff'd on other grounds*, 416 F.3d 83 (D.C. Cir. 2005) (holding that agency or instrumentality of Saudi Arabia was an independent entity).

[19]    *See World Wide Minerals, Ltd.*, 296 F.3d at 1166; *see also Rong*, 452 F.3d at 890 (holding Chinese political subdivision's seizure of plaintiff's equity interest in commercial venture was sovereign and not "commercial" activity within the meaning of the FSIA); *Allen v. Russian Fed'n*, Civ. A. No. 05-2077-(CKK), 2007 WL 4145596,

Moreover, this Circuit and others have not recognized a "commercial act exception" to the act of state doctrine.[20]   Indeed, the plurality opinion in *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 706 (1976), relied upon by Plaintiffs (Opp'n at 22-23), has never commanded a majority of the Supreme Court, as that Court has repeatedly noted since.[21]

In any event, *Dunhill* is distinguishable from the present case in that no acts of state were even at issue, only a "purely commercial obligation."  *Dunhill*, 425 U.S. at 694-95.  Plaintiffs' reliance on *Virtual Defense and Development International, Inc. v. Republic of Moldova* (Opp'n at 23) is misplaced, because the court there acknowledged that even commercial acts of a sovereign could still mandate application of the act of state doctrine.  *Virtual Defense*, 133 F. Supp. 2d 1, 7 (D.D.C. 1999).  Additionally, *Virtual Defense* is inapposite because, unlike the U.S. Zeromax Defendants, the defendants in that case introduced no evidence whatsoever of any relevant acts of state.  *Id.* at 8.  Similarly, Plaintiffs' reliance on *Arango v. Guzman Travel Advisors Corp.* (Opp'n at 24-25) is also misplaced.  *Arango*, 621 F.2d 1371, 1380-81 (5th Cir. 1980) (holding court was not required to adjudicate the legitimacy of any acts of state to determine which party bore the risk of loss under insurance contracts triggered by the acts of state).  In contrast, in order to determine Plaintiffs' claims, this Court first would need to adjudicate the validity of Uzbekistan's acts of state.

---

at *17 (D.D.C. Nov. 26, 2007) (holding Federation's seizure of stock, initiation of tax proceedings, assessing tax penalties and auctioning off plaintiff's biggest asset to satisfy tax assessments were "all activities undertaken by sovereigns that could not be undertaken by private citizens").

[20]   *See World Wide Minerals, Ltd.*, 296 F.3d at 1166 ("The existence of such an exception is an unsettled question that this court has never addressed.  Nor need we do so today."); *Glen*, 450 F.3d at 1254 n.2 ("[W]e have unequivocally stated that 'there is no commercial exception to the act of state doctrine.'") (quoting *Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 550 (11th Cir. 1997)).

[21]   *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 613 (1992) (describing the *Dunhill* Court as "evenly divided" on whether the act of state doctrine has a commercial act exception); *W.S. Kirkpatrick*, 493 U.S. at 404 (describing the commercial act exception as a suggestion offered by "[s]ome Justices"); *see also* Declaration of Barry Carter ¶¶ 55-59 ("Carter Decl.") (discussing same) (attached to Rev. Mot.).

### D.     The Second Hickenlooper Amendment Does Not Apply

Plaintiffs have failed to satisfy the prerequisites necessary for the "Second Hickenlooper Amendment," 22 U.S.C. § 2370(e)(2) (the "Amendment") to override the act of state doctrine. In particular, Plaintiffs have failed to establish that (1) the property is in the United States, (2) the investment qualifies as a U.S. investment, or (3) the property was allegedly taken in violation of international law.[22]

### 1.     Plaintiffs Have Failed To Allege, Nor Can They, That The Property In Question Is In The United States

The majority of courts that have considered the applicability of the Amendment have held that it does not apply where the property in question is not within the United States at the time the action was commenced. *See, e.g.*, *Rong*, 362 F. Supp. 2d at 99 (citing Second and Fifth Circuits and Restatement authorities) (holding the Amendment was inapplicable because, *inter alia*, the property at issue (stock), even if covered by the Amendment, was located in China). Contrary to their contentions (Opp'n at 28), Plaintiffs cannot satisfy this requirement. Plaintiffs argue that the situs of the "majority interest in CCBU, prior to the expropriation," was the United States, due to ROZ Trading's New Jersey location and TCCEC's Atlanta location. Opp'n at 28. This explanation provides both the wrong test to determine situs and the wrong timeframe.

In fact, "[i]t is the settled general rule that the situs of corporate stock is deemed to be in the state where the corporation has its domicile, which is ordinarily the state under whose laws the corporation was created." *Ethiopian Spice Extraction Share Co. v. Kalamazoo Spice Extraction Co.*, 543 F. Supp. 1224, 1231 (W.D. Mich. 1982), *rev'd on other grounds sub nom*

---

[22]     Notably, Plaintiffs concede that the Amendment does not apply to ROZ(U)'s claims. Opp'n at 28 n.22. As a citizen of Uzbekistan, ROZ(U) cannot make any claim against Uzbekistan for a violation of international law. *See Rong*, 362 F. Supp. 2d 83, 101 (D.D.C. 2005) (holding that Chinese national had no claim for a violation of international law against China because expropriation by a sovereign state of the property of its own nationals does not implicate principles of international law).

*Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*, 729 F.2d 422 (6th Cir. 1984); *see also Jellenik v. Huron Copper Mining Co.*, 177 U.S. 1, 13 (1900) ("[T]he property represented by [stock] may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner."). As CCBU was organized in Uzbekistan under Uzbek law, the proper situs at all relevant times would be Uzbekistan. Even under a "tax purposes" analysis, which looks to "the domicile of the owner of the stock," *Ethiopian Spice*, 543 F. Supp. at 1231 (citation omitted), the relevant interest in CCBU is held by Muzimpex, the domicile of which also is Uzbekistan.

Furthermore, even if the Court uses Plaintiffs' theory of situs, ***and*** holds that the stock was transferred to the U.S. Zeromax Defendants in "Delaware, Maryland, or the District of Columbia," as opposed to Muzimpex, Plaintiffs ***still*** cannot prevail because the interest in CCBU was "held by the Swiss Zeromax GmbH" (Opp'n at 28) at the time the action was commenced. As *Rong* explains, the "Amendment 'is limited to actions asserting title to property ***before the court*** . . . . [T]he plaintiff must allege and prove that the property that is the subject of the claim ***is in the United States or was there at the time the action was commenced***.'" 362 F. Supp. 2d at 99-100 (emphasis added) (footnote omitted) (citing Restatement (Third) of Foreign Relations Law § 444 cmt. e (1987)).

### 2.    ROZ Trading's Former Interest In CCBU Does Not Fall Within The Protected Class Of Investments Contemplated By The Amendment

The Amendment also only protects U.S. investments. Any investment that ROZ Trading, as a self-admitted Cayman Islands entity (Am. Compl. ¶ 1), made in Uzbekistan was a U.K. and not a U.S. investment. [23]

---

[23]    *See Banco Nacional de Cuba v. First Nat'l City Bank of New York*, 431 F.2d 394, 402 (2d Cir. 1970) (extensive review of legislative history clearly demonstrated that Amendment was "designed to be invoked by American firms"); *Rong*, 362 F. Supp. 2d at 99 n.11 (alleged expropriation of Chinese investment was outside the scope of the

ROZ Trading's allegations that it maintains its principal place of business in New Jersey does not transform its former investment in CCBU into a "U.S. investment."[24]  Moreover, the Supreme Court has held that citizenship for diversity purposes is a distinct analysis that cannot be used to determine citizenship for other purposes.  *See Selover, Bates & Co. v. Walsh*, 226 U.S. 112, 126 (1912) (holding that citizenship for diversity purposes is not citizenship for purposes of the Privileges and Immunities Clause of the Fourteenth Amendment).

### 3.    ROZ Trading Fails To Make A Claim Based On A Violation Of Principles Of International Law

Finally, the Amendment does not apply because Uzbekistan's State-initiated judicial actions to recoup debts owed to the State constituted regulatory acts — not a "taking."  *See West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 832-33 (9th Cir. 1987) (holding Amendment inapplicable because Mexico's institution of exchange controls was an exercise of its basic authority to regulate its economic affairs); *French v. Banco Nacional de Cuba*, 242 N.E.2d 704, 710 (N.Y. 1968) ("A currency regulation . . . is not a 'confiscation' or 'taking.'").  The Uzbek Supreme Economic Court decisions are based on ROZ Trading's violation of Uzbek anti-monopoly laws and ROZ(U)'s debts owed to the Uzbek Treasury.  This is a classic case of regulatory action pursuant to a sovereign's exercise of its police powers.  *See Hilsenrath v. Swiss Confederation*, No. C. 07-02782 (WHA), 2007 WL 3119833, at *6 (N.D. Cal. Oct. 23, 2007) ("Plaintiff's assets were not frozen in violation of the principles of international law; the Swiss

---

Amendment where "the purposes of the amendment include the promotion and protection of United States investment in foreign countries") (internal citation omitted); *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982); 110 Cong. Rec. 19555, 19559 (1964) ("One of the principal reasons for the proposed amendment is that it will serve notice that foreign states taking action **against U.S. investments** in violation of international law cannot market the product of their expropriation in the United States free from the risk of litigation.") (emphasis added).

[24]  *See, e.g.*, *In re Bullmore*, 300 B.R. 719, 729 (Bankr. D. Neb. 2003) (holding that Cayman Islands debtor could avail itself of Bankruptcy Code provision applicable to foreign entities even though creditor argued debtor was "all-American company" by virtue of its Nebraska principal place of business) (quoting *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519 (1839)); *see also* Restatement (Third) of Foreign Relations Law § 213, Rep. Note 5 (1987) ("A corporation has the nationality of the state under the laws of which the corporation is organized.").

Defendants had ordered the freeze because Mr. Hilsenrath was under a criminal investigation."); Carter Decl. ¶ 36.  Indeed, Plaintiffs fail to state any claim based on a violation of international law.  *See* Carter Decl. ¶¶ 32-33, 35-39.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiffs' Amended Complaint, and any documents incorporated therein by reference, fail to plead any set of facts entitling Plaintiffs to relief.

### A.    Plaintiffs' Allegations Fail To Satisfy The Minimum Pleading Standards

The pleading standard invoked by Plaintiffs that "[a] complaint should not be dismissed for failure to state a claim unless it is beyond doubt that plaintiffs can prove no set of facts that would entitle them to relief" (Opp'n at 31) is a close paraphrase of *Conley v. Gibson*, 355 U.S. 41 (1957), which was recently retired by the Supreme Court.  *See Twombly*, 127 S.Ct. at 1969 ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts ***consistent with the allegations in the complaint***.") (emphasis added).

Plaintiffs' Amended Complaint fails to provide sufficient facts to support the general, sweeping, and conclusory allegations made against the U.S. Zeromax Defendants.  Indeed, rather than supporting Plaintiffs' claim, in several instances Plaintiffs' factual allegations preclude them.  *E.g.*, *compare* Am. Compl. ¶ 31 (admitting Plaintiffs' ownership interest in CCBU was fully divested by September 2002) *with id.* ¶ 77 (alleging Plaintiffs' "present ownership interest in the CCBU property"); *see also* Rev. Mot. at 33-36 (citing cases).

**B.    Plaintiffs Fail To State A Claim Under The Applicable Substantive Law**

**1.    Plaintiffs Fail To State A Claim Under Uzbek Law**

Contrary to Plaintiffs' contention (Opp'n at 31-32), this case presents a classic "false conflict." Uzbekistan is the only state whose policies are even implicated and would be advanced by application of its laws on the merits. *See* Rev. Mot. at 37-38 (identifying Uzbek policies and interests; citing cases). This dispute concerns alleged actions in Uzbekistan affecting a business venture in Uzbekistan. Thus, Uzbekistan has an overriding interest in seeing its laws applied to conduct within its borders. *See* Rev. Mot. at 38 (citing cases); *see also Stromberg*, 474 F. Supp. 2d at 62. In contrast, Plaintiffs fail to identify any District of Columbia interest or policy that would be advanced if its laws were to be applied. *See* Opp'n at 32. Indeed, the District of Columbia has no interest in ensuring that dissolved Delaware corporations, a Swiss corporation, and Uzbek entities are advancing the policies of the District's tort and contract laws in the conduct of their affairs in Uzbekistan.

Putting aside Plaintiffs' peculiar invocation of "U.S. interests" (as opposed to District of Columbia interests), Plaintiffs' apparent argument that the United States has a "dominant interest" in this case because Uzbek law does not recognize several of Plaintiffs' claims (*see* Opp'n at 32; *see also* Rev. Mot. at 38-40) is erroneous. Non-recognition of causes of action does not indicate a lack of policy interests in the matter nor does it preclude a false conflict.[25] Likewise, Plaintiffs' assertion that U.S. law should apply because "basic legal principles . . . may not be adhered to in the Uzbek judicial system" (Opp'n at 32) is also baseless.[26]

---

[25]    *See, e.g.*, *Beals v. Sicpa Securink, Corp.*, No. 92-1512, 92-2588 and 93-0190, 1994 WL 236018, at *7 (D.D.C. May 17, 1994) (applying Virginia law rather than D.C. law even though Virginia did not recognize plaintiff's cause of action and thus required it to be dismissed with prejudice); *Foretich v. Glamour*, 741 F. Supp. 247, 250-51 (D.D.C. 1990) (same); *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 41-42 (D.C. 1989) (same).

[26]    *See, e.g.*, *Walton v. Arabian Am. Oil Co.*, 233 F.2d 541, 544-45 (2d Cir. 1956) (affirming dismissal where plaintiff failed to show Saudi Arabian tort principles necessary for recovery and rejecting plaintiff's argument that

Similarly, Plaintiffs' further argument (Opp'n at 32) that U.S. law should be applied to pierce the veils of U.S. corporations also fails because Plaintiffs do not seek to pierce the veils of any U.S. corporations in connection with their claims on the merits. *See generally* Am. Compl. ¶¶ 57-83. Instead, in connection with their breach of contract, conversion, and fraudulent conveyance claims, Plaintiffs attempt to disregard the corporate formalities of Muzimpex, an Uzbek limited liability company, and impute its alleged acquisition of the CCBU interest at issue to the U.S. Zeromax Defendants. *See* Am. Compl. ¶¶ 42, 47; *see also* Opp'n at 34, 36, 38. Whether the separate legal status of an Uzbek entity can be disregarded is a question of Uzbek law in which neither the District of Columbia nor the United States has any interest. *See A.I. Trade Fin., Inc.*, 1994 WL 225383, at *2 (holding that the state of incorporation has paramount interest in regulating the standards which control piercing the veil of its corporations) (citation omitted).[27]

Without any true conflict between Uzbek and D.C. policies, a choice-of-law analysis with respect to each individual claim is unnecessary. *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 847-48 (D.D.C. 1996) (observing that federal courts sitting in diversity actions will not engage in a choice-of-law analysis when the laws of the potentially interested states present a "false conflict") (internal citations omitted). Nevertheless, Plaintiffs proceed to argue that the District of Columbia — not Uzbekistan — has the most significant relationship with the dispute because of "the domicile of the parties and the place where the injury was felt . . . ." *See* Opp'n at 32-33.

---

Saudi Arabia is uncivilized or effectively has "no law or legal system and no courts open to plaintiff but only a dictatorial monarch who decides according to his whim whether a claim like plaintiff's shall be redressed").

[27] Notably, none of the U.S. Zeromax Defendants is even incorporated in the District of Columbia. *See* Am. Compl. ¶¶ 3-5; Pls.' Exs. 19, 21-22.

Plaintiffs' choice-of-law analysis is incomplete and flawed. First, Plaintiffs fail to allege or otherwise explain how any "injury was felt" in the District of Columbia — particularly when, as alleged, (1) ROZ Trading is a Cayman Islands corporation with a principal place of business in New Jersey and having no alleged contacts with the District (*id.* at ¶ 1), and (2) ROZ(U) is a defunct Uzbek corporation also lacking any alleged contacts with the District (*id.* at ¶ 2).[28] Second, Plaintiffs only address the domicile of one Defendant — Zeromax Group — a dissolved Delaware corporation that allegedly once operated in the District. Opp'n at 33. However, as alleged, Zeromax Group has no current or prior connection to Muzimpex (the alleged holder of the CCBU interest at issue). *See* Am. Compl. ¶¶ 3, 40a, 40(e), 52. Indeed, "[t]he state with the most significant relationship will usually coincide with the state whose policy would be most advanced by the application of its law." *Long*, 877 F. Supp. at 11 n.1.

Plaintiffs acknowledge but do not rebut (Opp'n at 32) the U.S. Zeromax Defendants' argument that Plaintiffs' claims fail as a matter of Uzbek law. *See* Rev. Mot. at 38-40. Thus, the Amended Complaint should be dismissed for failure to state a claim under Uzbek law.

### 2. Even If D.C. Law Applies, Plaintiffs Fail To State Any Claim Upon Which Relief May Be Granted

Even assuming *arguendo* that the act of state doctrine does not bar Plaintiffs' claims and that Uzbek law does not apply, Plaintiffs' claims cannot proceed as a matter of District of Columbia law.

---

[28] Plaintiffs' assertion that the District of Columbia has a "significant relationship to the dispute" because the U.S. Zeromax Defendants purportedly hired a D.C.-based investigative firm (Opp'n at 33) is without merit. Not only is such an allegation completely absent from the Amended Complaint, but the separate litigation arising out of this assertion was brought only against Zeromax GmbH, and not against any of the U.S. Zeromax Defendants. *See* Opp'n at n.2 & 11; Pls.' Ex. 5. In any event, such a contact is unrelated to the claims asserted in this litigation and is insufficient under the District's choice-of-law analysis. *See Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995) (applying Restatement § 145 for tort cases); *Ideal Electronic Security Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997) (applying Restatement § 188 for contract cases).

### a.    Count I Fails To State A Claim For Breach Of Contract

Plaintiffs' claim for breach of contract fails because, by the Amended Complaint's own allegations, there was never any contract between Plaintiffs and any of the U.S. Zeromax Defendants.  *See* Am. Compl. ¶ 13 (admitting that the parties to the 1993 JVA did not include any of the U.S. Zeromax Defendants).[29]  The Complaint fails to allege that any of the U.S. Zeromax Defendants ever agreed to be bound by the terms of the 1993 JVA — only that they purportedly "[we]re required" to so agree under Article 5.5 of the 1993 JVA.  *Id.* ¶ 47.[30]  Thus, all of Plaintiffs' assertions that they were injured by the U.S. Zeromax Defendants' purported failure to abide by the terms of the 1993 CCBU JVA (*id.* ¶¶ 46-50, 57-60; Opp'n at 2, 8-9, 15,19-20, 25, 34) are unavailing because no contract exists to bind the U.S. Zeromax Defendants.

### b.    Count II Fails To State A Claim For Tortious Interference

To state a claim for tortious interference with business relations, a plaintiff must allege: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship on the part of the defendant, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage.  *Bowhead Info. Tech. Servs., LLC v. Catapult Tech.*, 377 F. Supp. 2d 166, 174 (D.D.C. 2005); *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 (D.D.C. 2004).  Plaintiffs' admission that their ownership interest in CCBU was "eliminate[d]" and "completely purge[d]" by September 2002 is fatal to their claim for tortious interference with business relations.  Am. Compl. ¶¶ 28, 30, 31; *see also* Opp'n at 8 (acknowledging that Plaintiffs were "completely excluded from [their]

---

[29]    *In re Belmar v. Garza*, 319 B.R. 748, 759-60 (Bankr. D.D.C. 2004) (holding that a breach of contract claim must allege, *inter alia*, that a contract existed); *Kissentaner v. General Motors Corp.*, No. 93-7008, 1993 WL 483946, at *1 (D.C. Cir. Nov. 9, 1993) (per curiam) (holding contract claim failed where complaint did not allege existence of contractual relationship between parties).

[30]    *See Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (in order to form a binding agreement, "both parties must have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract").

management interest in CCBU" before they even sent out their purported notice of termination). The U.S. Zeromax Defendants could not have interfered with ROZ's purported business relationship because that business relationship was extinguished publicly some two years prior to the U.S. Zeromax Defendants' alleged involvement in the facts of this case (*see id.* ¶¶ 31, 45, 47) and before Zeromax Logistics even existed (*see id.* ¶¶ 4, 40(d)).

### c.    Count IV Fails To State A Claim For Conversion

"Conversion is the unlawful exercise of ownership and dominion and control over the personal property of another in denial or repudiation of that person's right thereto."  *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 106 (D.D.C. 2004); *Shulman v. Voyou*, 251 F. Supp. 2d 166, 170 (D.D.C. 2003).  According to Plaintiffs' own allegations ***the U.S. Zeromax Defendants do not possess (nor have they ever possessed)*** any property belonging to Plaintiffs.  Instead, Plaintiffs allege that a purported Zeromax GmbH subsidiary, Muzimpex, was the purchaser of the CCBU interest from Uzbekistan.  Am. Compl. ¶ 45, 47.

Contrary to Plaintiffs' assertions (Opp'n at 35-36), their bare and conclusory allegations fail to provide any basis from which the Court could attribute Muzimpex's alleged activities to the U.S. Zeromax Defendants.  *See* Rev. Mot. at 34.  Nor do Plaintiffs allege any ***facts*** to show that the U.S. Zeromax Defendants proximately caused the alleged intentional deprivation of Plaintiffs' property.  *See* Rev. Mot at 33-34.  The Amended Complaint is devoid of any allegation that the U.S. Zeromax Defendants participated in the alleged deprevation in the first instance.  *See Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 8 (D.D.C. 1995) ("'[B]are conclusions of law, or sweeping and unwarranted averments of fact' will not be deemed admissible in the context of a motion to dismiss . . . [t]he court will not be persuaded by conclusory allegations devoid of factual support.") (internal citations omitted).

**d.      Counts III And V Fail To State A Claim For Conspiracy To Commit Conversion And Tortious Interference**

A civil conspiracy is not an independent cause of action but rather a means for establishing vicarious liability for some underlying tortious act.  *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002); *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005).  To survive a motion to dismiss, Plaintiffs must allege: (1) "an agreement to take part in an unlawful action or a lawful action in an unlawful manner"; and (2) "an overt tortious act in furtherance of the agreement that causes injury."  *Hall*, 285 F.3d at 82-83 (quotation omitted).  Plaintiffs assert that the U.S. Zeromax Defendants purportedly "reached and executed an agreement to formalize ROZ and ROZ(U)'s exclusion from the ownership and management of CCBU."  Am. Compl. ¶¶ 65, 73.   This conclusory allegation is contradicted by Plaintiffs' express allegations that Uzbekistan acting alone, through its courts, excluded ROZ from CCBU (*id.* at ¶¶ 29-31), and that Muzimpex — not the U.S. Zeromax Defendants — acquired an interest in CCBU from the State (*id.* at ¶ 45).

**e.      Count VI Fails To State A Claim To Quiet Title**

Plaintiffs' cases from South Carolina and Florida (Opp'n at 36-37) are insufficient to create a cause of action to quiet title to ***personal*** property in the District of Columbia.  The District of Columbia has only recognized the power of its courts to quiet title ***to land***.  *In re Tyree*, 493 A.2d 314, 317 (D.C. 1985) (citing *Sharon v. Tucker*, 144 U.S. 533, 544 (1892)).  Likewise, the sole provision in the D.C. Code addressing quiet title concerns "real property" only.  D.C. Code § 16-3301 (2001).  Shares of stock are not real property.  *See Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69, 81 (1926); *Shafer v. Children's Hosp. Soc'y. of Los Angeles, Cal.*, 265 F.2d 107, 109 (D.C. Cir. 1959).

**f.      Count VII Fails To State A Claim For Unjust Enrichment**

Count VII for unjust enrichment must be dismissed because Plaintiffs have failed to plead that they "conferred a legally cognizable benefit" upon the U.S. Zeromax Defendants.  *See Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. (Airline Div.) v. Ass'n of Flight Attendants, AFL-CIO*, 864 F.2d 173, 177 (D.C. Cir. 1988) (unjust enrichment claim failed where plaintiff had not conferred any benefit on defendant).  Any benefit was conferred on the U.S. Zeromax Defendants in this case was conferred by Uzbekistan — *not* by Plaintiffs — through an official privatization sale.  Am. Compl. ¶¶ 45, 47.  Moreover, by Plaintiffs' own allegations, any benefit conferred by Uzbekistan was conferred on Muzimpex — *not* on any of the U.S. Zeromax Defendants.  *Id.*  Moreover, Plaintiffs' unclean hands would bar any claimed recovery.

**g.      Count VIII Fails To State A Claim For Fraudulent Conveyance**

Plaintiffs' sole conclusory allegation of fraudulent conveyance is that "Defendants, acting alone or in concert, have sold or transferred their property interest in CCBU to their joint venture, Muzimpex, with actual intent to hinder, delay, or defraud creditor Plaintiffs."  Am. Compl. ¶ 83.  Yet, Plaintiffs allege that Muzimpex purchased their former CCBU interest directly *from Uzbekistan* — not any of the U.S. Zeromax Defendants — in "late 2004" and Muzimpex has held that interest from then until now.  *Id.* ¶¶ 45, 47.  These earlier allegations plainly contradict the conclusory allegation contained in paragraph 83, which therefore must be disregarded.  *See Browning*, 292 F.3d at 242.  Paragraph 83 and the Amended Complaint also fail to meet even the minimum pleading standard for fraudulent conveyance claims.  *See* Fed. R. Civ. P. 84, Appendix of Forms, Form 13 (setting forth a minimally acceptable claim for fraudulent conveyance).  Plaintiffs' attempt to cure these pleading deficiencies by raising new

allegations in their Opposition (at 37-38) fails. *See Henthorn*, 29, F.3d at 688; *Paley*, 20 F. Supp. 2d at 89.

### C.       Plaintiffs' Claims Are Time-Barred

Notwithstanding Plaintiffs' arguments to the contrary (Opp'n at 38-39), all of their claims are time-barred under the District of Columbia statute of limitations.  *See* D.C. Code § 12-301 (2001) (providing three-year limitations period); *id.* § 28-3109 (four-year period for fraudulent conveyance claims).  Even under the discovery-rule tolling standard that Plaintiffs ask the Court to apply (Opp'n at 39), for statute-of-limitations purposes a cause of action accrues "[a]t the latest" when a plaintiff "knows or reasonably should know that the cause of action exists." *Beard*, 790 A.2d at 546.  All of Plaintiffs' claims arise from the removal of their participatory and proprietary interest in CCBU, which Plaintiffs acknowledge was "eliminate[d]" by virtue of the "sham" Uzbek court proceedings ending in September 2002.  Am. Compl. ¶¶ 28-31.

Further, Plaintiffs' allegations indicate that they knew, or reasonably should have known, as early as 2001 that their rights and interests under the 1993 CCBU JVA had been violated.  *See Beard*, 790 A.2d at 546 ("[A]ll damages [need not] be sustained, or even identified, for the cause of action to accrue; any appreciable and actual harm . . . is sufficient.") (citation omitted).  The Amended Complaint alleges, *inter alia*, that "attacks" on Plaintiffs' CCBU interests were "immediately initiated" after Mansur Maqsudi separated from Gulnora Karimova in July 2001 (Am. Compl. ¶ 21); that Uzbek officials seized Plaintiffs' documents and personnel in August 2001 as part of the "intimidation and harassment of . . . Plaintiffs' interest in CCBU" (*id.* ¶ 27); and that Plaintiffs were denied "counsel or an opportunity to participate in" certain 2001 Uzbek court proceedings as part of the effort to "completely purge Plaintiffs from any further participation and management of the joint venture" (*id.* ¶ 30).

Because Plaintiffs allege to have known of "appreciable and actual harm" to their CCBU interests in 2001, their cause of action accrued at that time. *See Beard*, 790 A.2d at 546. Likewise, Plaintiffs' knowledge of harm five years before commencement of this action bars application of the equitable tolling doctrine which, as Plaintiffs acknowledge (Opp'n at 40-41), requires that they pursue their rights diligently. *See Commc'ns Vending Corp. of Arizona v. Fed. Commc'ns Comm'n*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (holding equitable tolling "unwarranted" where litigant "failed to exercise due diligence in preserving his legal rights") (internal citation omitted).

Further, Plaintiffs' suggestion that facts necessary to bring this action were "fraudulently concealed" as a result of "what was happening in Uzbekistan" (Opp'n at 40-41) also does not warrant tolling of the statute of limitations. Even if Uzbekistan's alleged acts worked to conceal facts giving rise to the cause of action, such concealment cannot be attributed to the U.S. Zeromax Defendants. *See Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1495 (D.C. Cir. 1989) (holding that defendant could not be held "vicariously responsible for misrepresentations" of others to toll the statute of limitations); *Houlihan v. Anderson-Stokes, Inc.*, 434 F. Supp. 1324, 1327 (D.D.C. 1977) ("[C]oncealment by a third-party simply will not suffice."). Finally, Plaintiffs' argument that the U.S. Zeromax Defendants "added to Plaintiffs' difficulties" by "re-registering" and "changing ownership" (Opp'n at 40) is irrelevant. Plaintiffs' own allegations place such purported Zeromax activities in 2005 (Am. Compl. ¶¶ 40(e)-(f)) — a year ***after*** Plaintiffs themselves claim to have discovered their injury in 2004 (*id.* ¶ 45). *See Riddell*, 866 F.2d at 1491 (holding that tolling for fraudulent concealment requires that Defendants "have done something of an affirmative nature designed to ***prevent*** discovery of the cause of action") (emphasis added) (citing *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191-92 (D.C. 1980)).

## VI.    THE DISTRICT OF COLUMBIA IS AN INCONVENIENT AND INADEQUATE FORUM

Contrary to Plaintiffs' assertions (Opp'n at 42), as foreign plaintiffs, ROZ Trading and ROZ(U) are not entitled to the "standard deference" accorded to a petitioner's choice of forum. *Monegasque*, 311 F.3d at 499 (according "little deference" to foreign plaintiff's New York choice of forum in favor of the Ukraine); *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 85 (D.D.C. 2003) ("While a plaintiff's choice of forum is usually given a strong presumption, this factor carries much less weight when the plaintiff is also a stranger to the forum.").

Moreover, Plaintiffs' claim that there are no adequate alternative fora for this dispute (Opp'n at 42) is incorrect.  ROZ Trading is pursing claims similar to those asserted here (and based on the same facts) against Uzbekistan, Uzpishcheprom, and TCCEC in the Vienna Arbitration.  ROZ Trading voluntarily dismissed Zeromax Group (the only Zeromax entity sued in Vienna) from those proceedings while expressly reserving its rights against Zeromax Group in other venues, not limited to the District of Columbia.  As a result, ROZ Trading theoretically could obtain full relief (i.e., compensation) from other parties in Vienna — or perhaps even in other jurisdictions as it reserved its right to do in its voluntary dismissal of Zeromax Group.  Thus, Plaintiffs can pursue (and indeed are pursuing) their requested relief outside of the District of Columbia.

Furthermore, both public and private factors weigh against hearing this case in the District of Columbia.  Plaintiffs fail to articulate any legitimate interest of the District of Columbia in this dispute sufficient to "justify the forum's commitment of judicial time and resources."  *Pain*, 637 F.2d at 791, *overruled in part on other grounds by Piper Aircraft Co.*, 454 U.S. 235, 241 (1981).  The U.S. Zeromax Defendants (formerly incorporated in Delaware) have been dissolved or defunct since at least September 2005; Zeromax GmbH (a Swiss entity with no

presence in the District of Columbia) has been dismissed from the action; and ROZ Trading (a Cayman Islands entity) and ROZ(U) (a dissolved Uzbek entity) also lack any presence in the District. That some witnesses and documents may be found in Atlanta, Georgia with TCCEC's parent, The Coca-Cola Company (Opp'n at 44 n.31), is irrelevant; neither TCCEC nor Coca-Cola is located in the District of Columbia and neither is a party to this action.

In contrast, the property in dispute is in Uzbekistan (Am. Compl. ¶¶ 13-14); the entity allegedly holding this property is an Uzbek limited liability company operating in Uzbekistan (*id.* ¶ 42); the alleged conduct all took place in Uzbekistan (*id.* ¶¶ 29-31); many witnesses and documents are located in Uzbekistan; and Uzbek law governs the resolution of the dispute. Further, contrary to Plaintiffs' contention (Opp'n at 42), this case is based on the actions of Uzbekistan — not the U.S. Zeromax Defendants. Thus, all factors point to Uzbekistan's interest in having this dispute resolved by the Uzbek courts.[31]

Finally, Plaintiffs' suggestion that this Court condemn the Uzbek legal system out of hand as corrupt (*id.* at 43) should be rejected. Plaintiffs make no effort to distinguish the litany of cases cited by the U.S. Zeromax Defendants (Rev. Mot. at 42-43 (citing cases)) for the proposition that a foreign sovereign's law or legal system may not be rejected simply based on allegations of bias or corruption.

In sum, notwithstanding Plaintiffs' suggestion to the contrary (Opp'n at 42), the U.S. Zeromax Defendants have met their burden to show that alternative fora exist for this dispute and that public and private factors weigh in favor of dismissal on *forum non conveniens* grounds.

---

[31]    *See Monegasque*, 311 F.3d at 493 ("Ukraine has a great interest in applying its own laws, especially with respect to establishing ownership interest of Naftogaz.") (internal citation omitted); *Rosario Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 307 (S.D.N.Y. 2007) ("Because the core events, operative facts, and associated private and institutional interests at issue are local to Switzerland, the dispute should be resolved in that country.").

## CONCLUSION

For all the foregoing reasons, this Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: January 25, 2008                Respectfully submitted,

**WHITE & CASE**LLP

/ s / Carolyn B. Lamm
Carolyn B. Lamm (D.C. Bar No. 221325)
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Nicole E. Erb  (D.C. Bar No. 466620)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Zeromax Group, Inc., Zeromax Logistics, Inc., and Zeromax LLC*